ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN LAU,<br><br>Defendant. | Case No. 5:24-cv-01940-SSS-SHKx<br><br>**DEFENDANT STEPHEN LAU'S ANSWER TO PLAINTIFF'S AMENDED COMPLAINT; AMENDED COUNTERCLAIMS**<br><br>**<u>JURY TRIAL DEMANDED</u>**<br><br>Complaint Filed: September 11, 2024 |
| STEPHEN LAU,<br><br>Cross-Complainant,<br><br>v.<br><br>AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>Cross-Defendant, | |

Defendant STEPHEN LAU ("Lau") responds to Plaintiff AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS' ("AICPA") Amended Complaint (D.E. 30)("Complaint") and Answer to Counterclaims (D.E. 31) as follows:

1. Mr. Lau admits that AICPA attempts to allege claims under the Copyright Act, the Defend Trade Secrets Act, and breach of contract. Mr. Lau denies that AICPA's complaint alleges any plausible federal claim for relief. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

2. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

3. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

4. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

5. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

6. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

7. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

8. Mr. Lau admits that a candidate must pass the Uniform CPA Examination as part of the process of becoming a licensed CPA in California. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

9. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

10. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

11. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

12. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

13. Mr. Lau admits that prior to taking Uniform CPA Examinations, Mr. Lau has clicked-through electronic messages presented by third parties and AICPA. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

14. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

15. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

16. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

17. Admitted.

18. Denied.

19. Denied.

20. Denied.

21. Mr. Lau admits that he discussed subject matter related to the topics of

information relevant to CPA exams in study groups that he participated in on Reddit and Discord. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Admitted that Mr. Lau resides within the territorial bounds of the Central District of California, Eastern Division. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

27. Admitted that Mr. Lau resides within the territorial bounds of the Central District of California, Eastern Division. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

28. Admitted that Mr. Lau resides within the territorial bounds of the Central District of California, Eastern Division. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

## **THE PARTIES**

29. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

30. Admitted that Mr. Lau resides within the territorial bounds of the Central District of California, Eastern Division.

### ***The AICPA and the Uniform CPA Exam***

31. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

32. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

33. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

34. Mr. Lau admits that the Uniform CPA Exam has been difficult for him. Mr. Lau admits that candidates are required to pass three Core exam sections and one of three Discipline exam sections. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

35. Admitted.

***The AICPA's Copyrights in the Uniform CPA Exam***

36. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

37. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

***The AICPA's [Alleged] Trade Secrets in the Uniform CPA Exam***

38. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

39. Denied.

40. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

41. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

42. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

43. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

44. Mr. Lau lacks sufficient information to admit the allegations of this

paragraph and therefore denies them.

45. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

46. Denied.

47. Denied.

48. Denied.

49. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

50. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

***Defendant's [Alleged] Contract with AICPA***

51. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint

52. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

53. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

54. Mr. Lau admits that as a prerequisite to being permitted to sit for the

Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

55. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

56. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

57. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

58. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

59. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly

admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

60. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

61. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

62. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

63. Admitted.

64. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

65. Admitted.

66. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly

admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

67. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

68. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

69. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

***Defendant's [Alleged] Unlawful Acts***

70. Denied.

71. Denied.

*Defendant [Allegedly] Leaks Exam Content on Discord*

72. Mr. Lau admits that he has used Discord, an online service accessible on the Internet that according to its website is a "place to hang out with your friends and build community around shared interests" that is "private and safe, by design" and provides "the best experience…and…resources you need, whether you're a teen, parent, educator, or long-time Discord user."[1]

[1] https://discord.com/safety

73. Mr. Lau admits that Discord's service includes a communication platform divided into private individual chat rooms that are sometimes referred to as "Discord Servers" or "Servers." Mr. Lau admits that the study group Discover Server described in the Complaint as the "CPA Study Group" was accessible only through an invite link from a pre-existing member of that CPA Study Group Discord Server.

74. Admitted.

75. Admitted.

76. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam on February 3, 2024, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

77. Mr. Lau admits discussing ideas related to how to study for the Uniform CPA Exam in a Discord server dedicated to people studying for the CPA Exam. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

78. Denied.

79. Denied.

*Defendant Makes [Alleged] Unauthorized Discloses of Exam Content on Reddit*

80. This allegation is unintelligible, and Mr. Lau therefore denies it.

81. Mr. Lau lacks sufficient information about AICPA's alleged investigation to admit the allegations of this paragraph and therefore denies them.

82. Admitted.

83. Admitted that Reddit is a news aggregation, content rating, and forum website divided into "subreddits" where users submit and discuss content related to a particular topic or interest. Except as expressly admitted, Mr. Lau denies any

other allegations made or implied by this paragraph of the Complaint.

84. Admitted.

85. Mr. Lau admits that he discussed subject matter related to the topics of information relevant to CPA exams in a study group post on Reddit. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

86. Denied.

87. Denied.

88. Denied.

**FIRST CLAIM FOR RELIEF**
**(Copyright Infringement in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501, et seq.)**

89. No response required.

90. Mr. Lau admits that AICPA has attempted to plead a claim for copyright infringement. Mr. Lau denies AICPA has satisfied the minimum pleading requirements for plausible alleging a copyright infringement claim. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

91. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

92. Denied.

93. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

94. Mr. Lau lacks sufficient information to admit the allegations of this paragraph and therefore denies them.

95. Denied.

96. Mr. Lau admits that AICPA never expressly authorized Mr. Lau to reproduce, publicly display or create derivative works of U.S. Copyright Reg. No.

TXu002287113 but denies that any authorization for his alleged conduct was required under the Copyright Act. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

97. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied

**SECOND CLAIM FOR RELIEF**
**(Misappropriation of Trade Secrets under 18 U.S.C. § 1836, et seq.)**

104. No response required.

105. Mr. Lau admits that AICPA has attempted to plead a claim for trade secrets misappropriation. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

106. Denied.

107. Mr. Lau admits that AICPA intends the alleged trade secrets to be available to and used in interstate and foreign commerce by anyone and everyone who is willing to pay the cost of accessing the Uniform CPA Exam or exam preparation materials.  Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

108. Mr. Lau lacks sufficient information to admit the allegations of this

paragraph and therefore denies them.

109. Denied.

110. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

111. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

112. Denied.

113. Denied.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied

119. Denied.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract)**

120. No response required.

121. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph

of the Complaint.

122. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

123. Admitted.

124. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

125. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

126. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

127. Mr. Lau admits that as a prerequisite to being permitted to sit for the Uniform CPA Exam, Mr. Lau had to click-through electronic messages, some of which were presented not by AICPA but by third parties. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

128. Denied.

129. Mr. Lau admits discussing information related to the subject matter of CPA exams in study groups hosted on Reddit and Discord. Except as expressly admitted, Mr. Lau denies any other allegations made or implied by this paragraph of the Complaint.

130. Denied.

131. Denied.

132. Denied.

## PRAYER FOR RELIEF

Mr. Lau denies that AICPA is entitled to any relief.

## AFFIRMATIVE DEFENSES

### First Defense
### No Federal Subject Matter Jurisdiction

Federal courts have a *sua sponte* duty to examine their own subject matter jurisdiction. In non-diversity cases, in order for a complaint to give rise to federal subject matter jurisdiction, the complaint must allege sufficient factual information to give rise to a plausible claim for relief on at least one federal claim. AICPA's Complaint does not meet this standard. Moreover, even at this very early stage of the case, it is apparent that AICPA's federal claims are implausible and meritless.

**Copyright Claim**. From a pleading perspective, AICPA fails to plead any plausible copyright infringement claim because the Complaint is "entirely devoid of allegations establishing the protectable elements of the infringed works" and makes "no effort to compare the copyrightable elements of the allegedly infringing and copyrighted works." *Evans v. McCoy-Harris*, No. C17-8345, 2019 U.S. Dist. LEXIS 42744, 2019 WL 1002512, at *3 (C.D. Cal. Jan. 4, 2019); *accord Boost Beauty, LLC v. Woo Signatures, LLC*, No. C18-2960, 2018 U.S. Dist. LEXIS 227156, 2018 WL 6219895, at *1, 4 (C.D. Cal. July 23, 2018) (allegation of copying "specific words

and language in a specific order" insufficient where complaint failed to provide "even written descriptions of the…words"); *Bungie, Inc. v. Aimjunkies.Com*, 2022 WL 1239906, at *2 (W.D. Wash. Apr. 27, 2022) (allegation that infringing software was "identical or substantially similar" to copyrighted work held insufficient)(quoting Twombly, 550 U.S. at 555). "Here, [AICPA's] allegations as to similarity are…no more than conclusory and do not suffice to state a claim." *Enlightened Today LLC v. Soulmate Medium LLC*, 2023 U.S. Dist. LEXIS 172087, at *11 (W.D. Wash. Sep. 26, 2023).

Moreover, from a legal perspective, even accepting the truth of AICAP's formulaic boilerplate, AICPA's copyright claim is facially meritless because there is no allegation that Mr. Lau violated any of AICPA's rights to the actual "work": U.S. Copyright Reg. No. TXu002287113. The "work" protected by Registration TXu002287113 is entitled "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019." AICPA does not and indeed cannot allege that Mr. Lau infringed any of AICPA's §106 rights to the compilation registered as Registration TXu002287113, i.e., the "*group of secure test items* examined [by the Copyright Office] on 11/8/2021." Dkt.1-1. Indeed, Mr. Lau has never even had access to that "work." In other words, although "there are just two fundamental elements to a copyright infringement claim: (1) access to a plaintiff's original work, and (2) substantial similarity of the works at issue," AICPA can't plead either of them. *Bassil v. Webster*, No. 2:20-cv-05099-SB (PDx), 2021 U.S. Dist. LEXIS 68981, at *4 (C.D. Cal. Jan. 15, 2021).

Instead, AICPA alleges that Mr. Lau "virtually exactl(y)" "reproduced" a *single* question and answer pairing from Registration TXu002287113. Under well settled Ninth Circuit law, Mr. Lau's alleged copying of a single-digit percentage of a the "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" work identified in Registration TXu002287113 cannot violate AICPA's §106

rights. *E.g.*, *Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc.*, 893 F.3d 1176, 1187 (9th Cir. 2018) ("Even assuming Natimark's pairings were exact copies of their counterparts in the Experian database, the match rate would only be 80% and insufficient to establish a bodily appropriation of Experian's work."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348, 111 S. Ct. 1282, 1289 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected").

Mr. Lau alleges that a reasonable opportunity for discovery will reveal that Registration TXu002287113 covers at least 200 question and answer sets comprising thousands of lines of text, a substantial majority of which text is made up of uncopyrightable factual information, short statements, and stock industry terms that are (i) necessary to describe the ideas that the question and answer sets are intended to convey, (ii) not subject to copyright protection in and of themselves, and (iii) are only entitled to copyright protection to the extent their *selection and arrangement* amounts to a creative and original work.

Moreover, even if the "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" is subject to copyright protection, that protection is necessarily very thin given the functional purpose of the work: to test the minimum qualifications of CPA candidates. The text Mr. Lau allegedly reproduced amounts to less than one percent of the overall work, which is not enough to give rise to infringement of such a work. According to AICPA, "[o]n February 3, 2024, [Mr. Lau]…unlawfully reproduced and publicly displayed on the CPA Study Group server in Discord, Exam Content." Compl. ¶ 90.[2] The "Exam Content" Mr. Lau allegedly reproduced consists of

(i) "a message Mr. Lau posted "in the CPA Study Group Discord server

[2] As discussed further below, the Discord server at issue is private, and communications in that study group server cannot be deemed public displays for purposes of § 106.

containing a virtually exact reproduction of both the content of an ISC multiple choice question along with the related answer choices"; and

(ii) "descriptions of the subject matter of three task-based simulations."

Compl. ¶¶ 73-75.

A "description[] of the subject matter" of a copyrighted work is not infringement, because facts and ideas "are not copyrightable." *Comparion Med. Analytics, Inc. v. Prime Healthcare Servs., Inc.*, 2015 WL 12746228, at *5 (C.D. Cal. Apr. 14, 2015) (*citing inter alia Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991)); *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1041 (9th Cir. 2015) ("an idea, process, or system…is not eligible for copyright protection"); *Advanta-STAR Auto. Research Corp. of Am. v. DealerCMO, Inc.*, No. 20-1150, 2022 U.S. Dist. LEXIS 10343, at *17 (E.D. La. Jan. 20, 2022) (collecting cases like *McGraw-Hill, Inc. v. Worth Publishers, Inc.*, 335 F. Supp. 415, 420-21 (S.D.N.Y. 1971) ("subject of an economics textbook restricted the language options available…given the corpus of technical words and phrases whose meanings have been fixed and concepts whose importance is generally acknowledged") and *Windsor v. Olson*, 2019 U.S. Dist. LEXIS 79755, 2019 WL 2080021, at *5 (N.D. Tex. 2019) (finding phrases functional and ineligible for protection because they defined a system and information contained therein and were thus not original); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."). "[C]opyright assures authors the right to their original expression, but encourages others to build freely upon the *ideas and information conveyed by a work*." *Feist*, 499 U.S. at 349-50 (emphasis added).

That leaves AICPA with only the alleged "virtually exact reproduction" of a *single ISC exam* question and answer set to hang its infringement case on, which clearly isn't enough. *See, e.g.*, *Experian*, 893 F.3d at 1187. Even assuming that that

Registration TXu002287113 includes only 100 question and answer sets, AICPA's allegations amounts to an assertion that Mr. Lau reproduced less than 1% of the AICPA's "work."[3] Mr. Lau avers that a reasonable opportunity for discovery will reveal that the content he allegedly "reproduced" consist largely of uncopyrightable stock phrases and factual information, and that the totality of the words he used amount to well under 1% of the lines of text contained in the "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" work. Mr. Lau further alleges that discovery will show that prior to filing suit, AICPA knew or should have known that Mr. Lau allegedly copied far, far less than the minimum amount of copying required to state an infringement claim under Ninth Circuit law. *E.g.*, *Bensbargains.Net, LLC. v. Xpbargains.Com*, 2007 WL 2385092, at *4 (S.D. Cal. Aug. 16, 2007) (dismissing claims based on copying less than 70% of compilation work) (collecting similar cases cases); *Experian* 893 F.3d at 1187 (80% copying held insufficient).

The inability of AICPA to prove that Mr. Lau reproduced AICPA's "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" work is particularly obvious given that the underlying content of the AICPA's compilation work is primarily functional and/or factual information related to "the knowledge and skills that all newly licensed CPAs need in their role." Compl. ¶ 34. Fact intensive, functional works are entitled only to "thin" copyright protection. *Experian*, 893 F.3d at 1187. While "a compilation of facts may be copyrightable even if the underlying facts are not," the "Ninth Circuit has held that copyright infringement of compilations consisting largely of uncopyrightable elements should not be found in the absence of 'bodily appropriation of expression,'" or "unauthorized use of substantially the entire item." *Bensbargains.Net, LLC. v. Xpbargains.Com*, 2007 WL 2385092, at *4 (citing *inter alia Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th

[3] AICPA alleges that exam sections take four hours to complete.

Cir.1989)). AICPA's allegations that Mr. Lau "virtually exact(ly)" copied only one item from the group of items comprising Registration No. TXu002287113 is insufficient as a matter of law to state a claim for infringement—and that is before the Court even considers the other facial problems with AICPA's copyright claim (like Mr. Lau's obvious fair use defense), which are detailed further below.

**DTSA Claim**. There are several problems with AICPA's complaint that render its federal trade secrets claim deficient on its face.[4] First, AICPA's complaint does not allege sufficient facts to plausibly describe any trade secrets. AICPA provides nothing more than bare conclusions and labels, which is insufficient. *Compare* Compl. ¶ 39-41 *with Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Creative Writer Software, LLC v. Schechter*, 2023 WL 6786796, at *4 (C.D. Cal. Sept. 6, 2023) (plausible trade secrets allegation requires plaintiff to allege "not only the categories of information but also their subject matter"). Paragraph 39 defines "Trade Secrets" as follows:

> "The Exam Content contains and is comprised in large part of trade secrets (the 'Trade Secrets')."

Compl. ¶ 39. Paragraph 9, in turn, defines "Exam Content" as

> the questions, problems and suggested answers ("Exam Content"), which include the prefatory material, narrative passages, diagrams and answer choices that make up the test items used in the Uniform CPA Exam."

Compl. ¶ 9. That's it. That's the "trade secrets" definition AICPA offers. But AICPA doesn't accused Mr. Lau of misappropriating all that stuff—"the prefatory material, narrative passages, diagrams and answer choices that make up the test items used in

[4] AICPA does not assert a claim under California's Uniform Trade Secrets Act, presumably because it hoped to forestall identifying with reasonable particularity the alleged trade secrets disclosed in Mr. Lau's alleged Reddit and Discord posts. *See, e.g.*, Cal. Code Civ. P. § 2019.210 (requiring California trade secrets to identify alleged trade secrets with reasonable particularity); *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1117 (N.D. Cal. 2016) (applying § 2019.210 in a federal case); *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) (same).

the Uniform CPA." AICPA alleges only that Mr. Lau discussed a few questions, without alleging anything substantive to suggest that the information reflected in those questions rises to the level of trade secret information.

Other than the spartan allegations of 39 and 9, the Complaint contains absolutely no allegations about the content of the information at issue. There are simply no qualitative allegations about Exam Content anywhere in the Complaint, which precludes the Court from obtaining DTSA jurisdiction because the existence of a trade secret has not been plausibly alleged. *See, e.g.*, *Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018). "[AICPA] has not pleaded sufficient facts to show plausible misappropriation of trade secrets. Indeed, [AICPA] has set out its purported trade secrets in broad, categorical terms, more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [AICPA] has a basis to believe actually were misappropriated here." *Id.*

"To determine whether a plaintiff sufficiently identified a trade secret, courts examine '(1) whether something beyond general knowledge is being claimed and (2) whether there is enough specificity to put the defendant on notice regarding the nature of the trade secret.'" *Creative Writer Software*, 2023 WL 6786796, at *3 (citing *Beluca Ventures LLC v. Einride Aktiebolag*, ––– F. Supp. 3d ––––, No. 21-06992, 2023 WL 2456716, at *5 (N.D. Cal. Mar. 10, 2023)). Here, the Court cannot even proceed past the first step, because there are insufficient factual allegations to determine "whether something beyond general knowledge is being claimed." *Id.* On the contrary, it appears that the primary purpose of the subject information ("Exam Content") is to test general knowledge in the accountancy industry.

Second, there are no allegations that plausibly suggest the subject information is valuable *because of its secrecy*. In a real trade secrets case, "it is the secrecy of the information that permits it to be treated as 'property,' because secrecy allows the

information-holder to exclude others from using that information." *Alderson v. United States*, 718 F. Supp. 2d 1186, 1199 (C.D. Cal. 2010), *aff'd*, 686 F.3d 791 (9th Cir. 2012) (citing *inter alia Ruckelshaus v. Monsanto Co*., 467 U.S. 986, 1011, 104 S. Ct. 2862, 2877, 81 L. Ed. 2d 815 (1984)). By contrast, here, AICPA cannot exclude others from using the subject information at all: its test questions are available for anyone who qualifies for the exam, and the underlying information in the test is pure industry knowledge. Rather than secrecy, it is AICPA's influence in the CPA licensure process and government-derived monopoly power as the sole supplier of CPA licensing exams that allows AICPA to treat its test information as "property." AICPA doesn't even have the right to exclude others from accessing the subject information—AICPA *must* make its tests available to anyone who meets the requirements to sit for their state's CPA licensure exam, and it must also make available the underlying information candidates need to prepare for the exam.

The fact that AICPA licenses and monetizes retired exam content to third parties for the express purpose of allowing those third parties to teach exam candidates the subject information proves that any economic value to AICPA's exam content comes not from its secrecy (retired exam content is anything but secret, after all) but from AICPA's monopoly as a test provider and, perhaps, its exclusionary rights for compilations of information under the Copyright Act. Mr. Lau alleges that a reasonable opportunity for discovery will show that AICPA has disclosed most if not all of the information it claims as trade secrets by including that information in prior exams, by licensing the same or similar content to test preparation providers, and/or by otherwise disclosing information about AICPA's exams and how to prepare for them.

AICPA admits that it licenses retired Exam Content to third party exam review course providers. Comp. ¶ 50. Mr. Lau alleges that a reasonable opportunity for discovery will reveal that past licensed content reflects AICPA's alleged "trade

secrets" in this case, and that the contracts referred to in paragraph 51 of AICPA's complaint will reveal licenses to and royalties for copyright licenses, not trade secrets licenses, or will otherwise prove that any economic value test materials have is not derived from secrecy.

Third, the Complaint does not plausibly allege any act of misappropriation by Mr. Lau. AICPA alleges only that (i) "On February 3, 2024…Defendant posted a message in the 'CPA Study Group' Discord server containing a virtually exact reproduction of both the content of an ISC multiple choice question;" (ii) "Defendant also disclosed descriptions of the subject matter of three task-based simulations on the same Discord server"; and (iii) in November 2023, "Defendant again provided details about the subject matters of four different multiple choice questions from the REG Exam." Compl. ¶¶ 73-74; 83. There are no further facts alleged about the content of these questions or Mr. Lau's posts, which precludes the Court from finding a plausible trade secrets claim based on Mr. Lau's study group communications. Moreover, the Complaint's own allegations suggest that Mr. Lau's study group discussions were made to other persons with authorization to access such information in any event. Such disclosures cannot amount to misappropriation.

"[T]rade secret law protects the right to maintain the confidentiality of facts, not ideas." *Loop AI Labs*, 195 F. Supp. 3d at 1111 (citation omitted). Here, the *facts* AICPA accuses Mr. Lau of disclosing are not the type of facts that "can, at the possessor's option, be made known to others, or withheld from them, i.e., kept secret." *Id*. On the contrary, the underlying facts contained in AICPA's exams consist of information that must be made known to all CPA applicants to provide them with "the knowledge and skills that all newly licensed CPAs need in their role." Compl. ¶ 34. It is axiomatic that "[t]he subject of a trade secret must be secret, and must not be of public knowledge or of a general knowledge in the trade or business." *Kewanee Oil Co. v. Bicron Corp*., 416 U.S. 470, 475 (1974). Yet general knowledge

in the trade is *exactly* what the Uniform CPA Exam is designed to test. *See, e.g.*, Compl. ¶¶ 14, 34-35.

According to AICPA's own allegations, the nature of Exam Content information is such that anyone who is "able to exercise the skills [] required of a newly licensed CPA" can "correctly answer the questions." Compl. ¶ 14. "The Core exam sections assess the knowledge and skills that all newly licensed CPAs need," while "The Discipline exam sections assess the knowledge and skills in the respective Discipline domain." Compl. ¶¶ 34-35. These allegations establish that the "subject matters" of and factual information contained within the four questions Mr. Lau discussed in his study group discussions cannot be subject to trade secret protection as a matter of law.

Finally, even assuming that Mr. Lau is "a person who…had reason to know… that [his] knowledge of trade secret was…acquired under circumstances giving rise to a duty to…limit the use of the trade secret," 18 U.S.C. § 1839(5), it is implausible to suggest that Mr. Lau intended to deprive AICPA of its ownership of Exam Content by talking about the subject information in the context of a study group discussion. Trade secret law "does not offer protection against discovery by fair and honest means, such as by independent invention, accidental disclosure, or by so-called reverse engineering." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 476, 94 S. Ct. 1879, 1883, 40 L. Ed. 2d 315 (1974). Any accidental disclosure of AICPA's alleged trade secrets during the course of Mr. Lau's alleged study group communications cannot be a trade secrets violation.

**Sua Sponte Dismissal**. Because Plaintiff fails to plausibly allege any federal claims, the Court has a *sua sponte* duty to dismiss this case for lack of jurisdiction. That would not leave AICPA without a potential remedy, however. If AICPA believes it has contract claims against Mr. Lau, AICPA can attempt to vindicate its alleged contract rights in State court.

**Second Defense**
**Failure to State a Claim for Copyright Infringement**

For the reasons discussed above in the copyright section of Mr. Lau's first affirmative defense, the Complaint fails to allege a claim for copyright infringement.

**Third Defense**
**Failure to State a DTSA Claim**

For the reasons discussed above in the DTSA section of Mr. Lau's first affirmative defense, the Complaint fails to allege a claim for trade secret misappropriation.

**Fourth Defense**
**Failure to State a Breach of Contract Claim**

Under California law, the elements of a breach of contract claim are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Shabazyan v. Berkshire Hathaway Homestate Ins. Co.*, 2023 WL 2631834, at *2 (C.D. Cal. Feb. 13, 2023) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011)). AICPA's complaint fails on its face to allege breach of contact, as AICPA does not even attempt to allege its own performance or excuse for nonperformance. Nor can AICPA claim damages. Any harms AICPA sustains because of this case will be entirely self-inflicted.

In addition, under California law, "the doctrine of mutuality of obligation requires that the promises on each side of a contract must be binding obligations in order to be consideration for each other." *Fosson v. Palace (Waterland), Ltd.*, 78 F.3d 1448, 1454 (9th Cir. 1996) (citing Witkin, Summary of California Law, Contracts § 228 (9th ed. 1987) and *Mattei v. Hopper*, 51 Cal.2d 119, 330 P.2d 625, 626 (1958)). AICPA does not allege *any* consideration of mutuality of obligation

for the alleged contract at issue.

**Fifth Defense**
**Failure to Mitigate Damages**

At all times relevant, AICPA has been a user of the Discord and Reddit study groups described in its Complaint. Mr. Lau avers that a reasonable opportunity for discovery will reveal that what originally began as a surreptitious attempt by AICPA to secretly surveil exam candidates' study group communications eventually became common knowledge of users of the subject Discord and Reddit due to AICPA's communications with study group members.

In the past, AICPA has reached out to users of these study groups to complain about postings that AICPA viewed as violative of its alleged rights. As a user of the Discord and Reddit groups, AICPA could have easily addressed and/or prevented the conduct it now complains of in this case through a simple Discord message to Mr. Lau or to the study groups generally. In fact, had AICPA acted promptly and in good faith by communicating with Mr. Lau when it first learned of Mr. Lau's original post, most of the alleged conduct AICPA alleges in the complaint would never even have happened.

Rather than comply with its duty to mitigate damages and extend to Mr. Lau the good faith and fair dealing that all contracting parties are required to provide to each other, AICPA elected instead to lie in wait, permit the conduct it complains of to continue (including, as discovery will show, by other members of the study groups), and predictably compounded its own alleged injuries. AICPA is barred from recovering damages that could have and would have been easily avoided by any good faith operator.

**Sixth Defense**
**Standing**

Mr. Lau avers that a reasonable opportunity for discovery will reveal that

AICPA lacks standing on certain portions of its copyright claim because the alleged content reproduced includes material that is either not the work registered under Registration TXu002287113 or registered as a compilation work under other registrations that have not been pleaded. *J & J Sports Prods., Inc. v. Kigo*, No. C 10-05512 SI, 2011 WL 3418394, at *1 (N.D. Cal. Aug. 4, 2011) ("plaintiff must affirmatively plead registration in order to adequately state a claim for copyright infringement."). Alternatively, Mr. Lau avers that a reasonable opportunity for discovery will reveal that the content he allegedly "reproduced" includes material that has never been subject to any copyright registration or application.

For example, to the extent AICPA can allege in good faith that the single test item Mr. Lau allegedly "virtually exact(ly)" reproduced is copyrightable on its own (i.e., the question itself has "artistic features that can be separated from [its] utilitarian function," ***see, e.g.***, *Fabrica Inc. v. El Dorado Corp.*, 697 F.2d 890, 894 (9th Cir. 1983) and is original, not just "expressions that are standard, stock, or common to a particular subject matter or medium," ***see, e.g.***, *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003), no such theory is alleged in the Complaint. Accordingly, Mr. Lau alleges that AICPA lacks statutory standing to bring copyright infringement claims for any materials that are not subject to Registration No. TXu002287113. 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Mr. Lau alleges that a reasonable opportunity for discovery will show that before filing this action, AICPA knew of or should have known of the registration problems.

**Seventh Affirmative Defense**
**Fair Use**

Section 107 of the Copyright Act provides that "Notwithstanding the

provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use…for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." Section 107 further provides that "[i]n determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

Here, AICPA admits that all of Mr. Lau's allegedly infringing posts were made in the context of exam candidate study groups. Such communications were obviously made for non-commercial fair use "purposes such as criticism, comment…teaching… scholarship, or research" and cannot be infringing as a matter of law. Each of Section 107's four statutorily enumerated fair use factors buttress this conclusion.

First, the purpose and character of the alleged communications were academic, critical, scholarly, and generally for purposes of study. *See, e.g., Sega Enterprises Ltd. v. Accolade, Inc*., 977 F.2d 1510, 1520 (9th Cir. 1992) ("Where there is good reason for studying or examining the unprotected aspects of a copyrighted [work]…such study or examination constitutes a fair use"). The character was not at all commercial. *Compare Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020) (using portion of work for "new and different" purpose that also furthered high school students' musical learning and development held fair use); *Loew's Inc. v. Columbia Broad. Sys*., 131 F. Supp. 165, 176 (S.D. Cal. 1955), *aff'd sub nom. Benny v. Loew's Inc.*, 239 F.2d 532 (9th Cir. 1956), *aff'd sub nom. Columbia Broad. Sys., Inc, v.*

*Loew's Inc*., 356 U.S. 43, 78 S. Ct. 667, 2 L. Ed. 2d 583 (1958) ("broader scope [of Fair Use] will be permitted the doctrine where the field of learning is concerned and a much narrower scope where the taking is solely for commercial gain."); *Newport-Mesa Unified Sch. Dist. v. State of California Dep't of Educ*., 371 F. Supp. 2d 1170, 1179 (C.D. Cal. 2005) ("The Court concludes a school giving parents of special education students copies of their children's test protocols when requested under California Education Code section 56504 is a fair use under 17 U.S.C. § 107.").

Second, the nature of the copyrighted work is highly functional (designed to qualify persons for the CPA profession) and factual (reflecting basic knowledge all CPAs must possess to perform their duties), such that the work receives only the thinnest form of copyright protection (if any). *See, e.g., Rassamni v. Fresno Auto Spa, Inc.*, 365 F. Supp. 3d 1039, 1046 (E.D. Cal. 2019) (discussing thin protection for factual compilations and noting that "systems…designed to assist in accomplishing a task…[are] not protected under copyright law")(citing *Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1525 (9th Cir. 1992)) *accord Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1038 (9th Cir. 2015) ("copyright in a manual describing how to organize roller-skating races does not extend to the rules for the races themselves")(citation omitted).

Third, Mr. Lau avers that a reasonable opportunity for discovery will reveal that any portions of the work he "reproduced" from memory are factual, *de minimis*, and insubstantial compared to the work as a whole, amounting to a mere fraction of a percent of the compilation comprising the work. *See, e.g.*, *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020) (use of only "small segments" of copyrighted works weighed in favor of fair use).

Fourth, Mr. Lau avers that a reasonable opportunity for discovery will reveal that his study group communications can have absolutely no effect on the market

for AICPA's Registration TXu002287113.

**Eighth Defense**
**Copyright Misuse**

"The defense of copyright misuse forbids a copyright holder from securing an exclusive right or limited monopoly not granted by the Copyright Office." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001). The misuse defense also "prevents a copyright holder that has misused its copyright from enforcing the copyright in a court of equity." *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1079 (N.D. Cal. 2007). A finding of copyright misuse precludes enforcement of the copyright to a work "during the period of misuse." *Id.*

To establish copyright misuse, an accused infringer need only show that a "copyright is being used in a manner violative of the public policy embodied in the grant of copyright;" the accused need not prove an antitrust violation to prevail on a misuse defense. *Id.* As discussed above and below in Mr. Lau's other copyright-related defenses, AICPA has no meritorious copyright infringement claim against Mr. Lau but is nevertheless pursuing claims that are foreclosed as a matter of law by binding Ninth Circuit precedent regarding *at least* (i) infringement of fact-heavy compilation works and (ii) fair use for educational purposes. In addition, AICPA has used this litigation as an anticompetitive weapon, abusing the process itself by needlessly sending a courier to hand Mr. Lau the complaint and summons as he was walking into the last CPA exam standing between him and licensure—after previously serving Mr. Lau at home the night before.

Mr. Lau avers that a reasonable opportunity for discovery will reveal that AICPA has, at all times relevant, engaged in a practice of asserting objectively baseless copyright infringement allegations in order to obtain rights that are not intended under, and indeed conflict with the very spirit of, the Copyright Act. Mr. Lau avers that a reasonable opportunity for discovery will reveal that AICPA has, at

all times relevant, engaged in unfair, deceptive, and illegal business practices related to its exam administration duties, including at least unlawful practices in connection with substantively and procedurally unconscionable contract-formation practices.

Even without discovery, it is clear from the face of AICPA's Complaint that AICPA is using its Registration TXu002287113 "in a manner violative of the public policy embodied in the grant of copyright" by accusing Mr. Lau of willful copyright infringement based on his discussion of the "subject matter" of Exam Content in online study groups. *Shloss*, 515 F. Supp. 2d at 1080 (copyright misuse defense "applies broadly 'if a copyright is leveraged to undermine the Constitution's goal of promoting invention and creative expression.'")(citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 995 (C.D. Cal. 2006) and *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1108 (N.D. Cal. 2002)).

**Ninth Defense**
**Merger**

"Under the merger doctrine, courts will not protect a copyrighted work from infringement if the idea underlying the copyrighted work can be expressed in only one way, lest there be a monopoly on the underlying idea." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000) (citing *CDN Inc. v. Kapes*, 197 F.3d 1256, 1261 (9th Cir.1999)). "In such an instance, it is said that the work's idea and expression 'merge.'" *Id*.

Mr. Lau understands from AICPA's unhinged copyright infringement theories that, to the extent Mr. Lau's posts contains portions of text found in the items registered as Registration TXu002287113, such portions of Registration TXu002287113 merged with the underlying ideas those portions express. "[T]here should be no monopoly on the underlying unprotectable idea," but such a monopoly

is exactly what AICPA appears to be trying to achieve through its copyright claim. *Id*.

In addition to his present understanding of AICPA's practices and objectives, which is based on AICPA's Complaint and past conduct in gaining access to and communicating with members of the Discord study group described in the Complaint, Mr. Lau avers that a reasonable opportunity for discovery will reveal that AICPA's own prior copyright registrations, licensing of retired Exam Content to CPA Exam review course providers (Compl. ¶ 50), publicly available AICPA materials, and third-party exam preparation publications will show that there are only a very limited number of ways to express the ideas underlying the exam items at issue, further supporting Mr. Lau's merger defense. *See, e.g., Satava v. Lowry*, 323 F.3d 805, 812 n. 5 (9th Cir. 2003) (accusations of infringement based on defendants' use of "standard and stereotyped elements" or "the combination of those elements" suggested merger).

**Tenth Defense**
**Scènes à Faire**

The scènes à faire doctrine "immunize[s] from liability similarity…that necessarily follows from a common theme or setting." *Ets-Hokin v. Skyy Spirits, Inc.*, 225 F.3d 1068, 1082 (9th Cir. 2000)(citing 4 Nimmer § 13.03). "[L]ike merger, the rationale is that there should be no monopoly on the underlying unprotectable idea." *Id*. "A scenes a faire finding…does not turn on whether plaintiff copied prior art" but rather on whether "motive similarities" that the plaintiff attributes to "copying" could "actually be explained by the commonplace presence of the same or similar motives within the relevant field." *Smith v. Jackson*, 84 F.3d 1213, 1219 (9th Cir. 1996). Mr. Lau avers that a reasonable opportunity for discovery will reveal that any portions of content from Registration TXu002287113 present in Mr. Lau's Reddit or Discord study group discussions are

the result of the commonplace presence of the same or similar expressions and short statements within the relevant field of accountancy policies and training materials.

**Eleventh Defense**
**De Minimis Copying**

Mr. Lau avers that a reasonable opportunity for discovery will reveal that any portions of the work he "reproduced" are factual, *de minimis*, and insubstantial compared to the work as a whole, amounting to a small fraction of a percent of the compilation comprising the Registered Work.

**Twelfth Defense**
**Copyright Preemption**

The Copyright Act preempt state law claims if (1) "the 'subject matter' of the state law claim falls within the subject matter of copyright"; and (2) "the rights asserted under state law" are "equivalent to the rights contained in 17 U.S.C. § 106." *Iron Orchid Designs, LLC v. Prima Mktg., Inc*., 2018 WL 5921351, at *3 (C.D. Cal. Nov. 9, 2018) (citing *Laws v. Sony Music Entertainment, Inc*., 448 F.3d 1134, 1137–38 (9th Cir. 2006)). Both conditions are satisfied here, as AICPA's Complaint expressly alleges that Mr. Lau breached the alleged contract by "copying, publicly displaying and disclosing Exam Content." Compl. ¶ 18; *see, e.g., Yellowcake, Inc. v. Hyphy Music, Inc*., No. 1:20-CV-0988 AWI BAM, 2021 WL 3052535, at *15 (E.D. Cal. July 20, 2021) ("Because the Court finds that the acts of reproducing, performing, and "misappropriating" are actions covered by § 106, the UCL claims against Yellowcake and Colonize are preempted by the Copyright Act.").

In addition, if AICPA is correct about its breach of contract theory-i.e., that anyone who writes about the "subject matter" of "Exam Content" breached the NDA and infringes AICPA's copyrights by reproducing, displaying, or creating a "derivative work" of Exam Content, one or more of AICPA's non-copyright claims

are preempted by the Copyright Act for the reasons stated above in Mr. Lau's other copyright-related defenses, including his copyright misuse defense. *See, e.g., Netbula, LLC v. BindView Dev. Corp.,* 516 F. Supp. 2d 1137, 1148 (N.D. Cal. 2007) ("federalism principles dictate that state rules of contractual construction cannot interfere with…federal copyright law and policy") (citation omitted).

**Thirteenth Defense**
**Implied License**

Mr. Lau is aware of the AICPA's monitoring of and participation in the study groups at issue in this case and alleges that a reasonable opportunity for discovery will show "rigorous" monitoring of the study groups' communications for many years. Discord servers and Reddit communities are moderated by the users. At all times relevant, Mr. Lau has understood the conduct of participants in the Reddit and Discord study groups to be subject to rules implemented by the moderators of those study groups. Also at all times relevant, AICPA and/or its agents have been aware of the existence of the study groups and their respective rules, community standards, and the nature and frequency of moderators' enforcement of posted rules. Also at all times relevant, AICPA has been aware of conduct of the type it alleges in its complaint by numerous individuals other than Mr. Lau.

Mr. Lau's alleged conduct was consistent with routine conduct in the study groups and their respective rules, guidelines, and community standards as evidence by the nature and frequency of moderators' enforcement of posted rules. Mr. Lau believed his conduct was not objectionable because AICPA has long acquiesced to the conduct of which it now complains. Mr. Lau relied on AICPA's conduct and lack thereof. The totality of circumstances therefore creates an implied license. *See, e.g., Roblox Corp. v. WowWee Grp. Ltd*., No. 22-cv-04476-SI, 2024 U.S. Dist. LEXIS 158056, at *15 (N.D. Cal. Sep. 3, 2024) (collecting cases like *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1116 (D. Nev. 2006) ("An implied license can

be found" where rights holder engaged "in conduct from which the other party may properly infer that the owner consents to his use.") and *Mindys Cosmetics, Inc. v. Dakar*, No. CV 08-4459 SVW (RZx), 2009 U.S. Dist. LEXIS 141026 (C.D. Cal. July 14, 2009) (finding implied license where "plaintiff was well aware" of complained of conduct and "acquiesced to such use."); Melville B. Nimmer & David B. Nimmer, Nimmer on Copyright § 10.03[A][7] (revised ed. 2009) ("A nonexclusive license may therefore be granted orally, or may even be implied from conduct. Where the totality of the parties' conduct indicates an intent to grant such permission, the result is a nonexclusive license."); see Milgrim on Licensing § 5.41 (2010)(similar); *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241, 47 S. Ct. 366, 71 L. Ed. 625, 63 Ct. Cl. 677 (1927) ("No formal granting of a license is necessary in order to give it effect. Any . . . conduct on [the owner's] part exhibited to another, from which that other may properly infer that the owner consents to his use of the patent . . . constitutes a license . . . ."); *Interscope Records, Motown Record Co., L.P. v. Time Warner, Inc.*, No. CV 10-1662 SVW (PJWx), 2010 U.S. Dist. LEXIS 151460, at *11-12 (C.D. Cal. June 28, 2010) (collecting case); *Softketeers, Inc. v. Regal W. Corp.*, No. 8:19-cv-00519-JWH (JDEx), 2023 U.S. Dist. LEXIS 233249, at *17 (C.D. Cal. Dec. 26, 2023) (citing *Asset Mktg. Sys. v. Gagnon*, 542 F.3d 758, 752 (9th Cir. 2008) for the proposition that "because the alleged copyright infringer had an implied license to the copyrighted work, the license included access to any trade secret embodied therein").

**Fourteenth Defense**
**Laches**

The equitable doctrine of laches is a defense to equitable relief. *Trevari Media LLC v. Cantu*, 2024 WL 3411815, at *4 (D. Or. June 20, 2024) (citing *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. 663, 685 (2014)); *M.I.B. Grp. LLC v. Aguilar*, No. 5:23-CV-01597-SVW-SHK, 2024 WL 3857540, at *16 (C.D.

Cal. July 16, 2024) ("the Ninth Circuit has held that laches barred an otherwise meritorious trademark or copyright claim because the plaintiff had constructive knowledge of potentially infringing activity outside the limitation period"). Here, Mr. Lau understands that AICPA has been a member of the private Discord server referred to in the Complaint since at least 2022. Mr. Lau further alleges that a reasonable opportunity for discovery will reveal that AICPA has been a member of the subject Discord Server since prior to 2021, and that at all times relevant, AICPA has aware of allegedly infringing conduct on that Discord Server that occurred more than three years before AICPA filed its case against Mr. Lau.

**Fifteenth Defense**
**Privilege**

Mr. Lau's alleged communications were constitutionally protected statements about matters of public concern. In addition, and/or in the alternative, Mr. Lau's alleged communications are privileged under California Civil Code 47.

**Sixteenth Defense**
**Unconscionability**

AICPA's contract claim and all claims that depend on the existence of a contract are barred by the doctrine of unconscionability. Under California law, a court can decline to enforce a contract if it is "unconscionable in both the procedural and substantive senses." *E.g.*, *Lynda Tyler, Plaintiff, v. Tailored Shared Servs., LLC, Defendant.*, 2024 WL 4894589, at *5 (E.D. Cal. Nov. 26, 2024) (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911, 353 P.3d 741, 748 (2015)). "The more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unconscionable, and vice versa." *Id*. "The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as "overly harsh.'" *Sanchez v. Valencia Holding Co., LLC*, 61

Cal. 4th 899, 910, 353 P.3d 741, 748 (2015). Here, AICPA's alleged Contract is highly unconscionable in both the procedural and substantive sense; "overly harsh" perfectly describes AICPA's breach of contract claim.

Procedurally, the alleged contracts (collectively, the alleged "NDA") are pure adhesion contracts: the NDA was "drafted and imposed" unilaterally by AICPA, a monopolist "party of superior bargaining strength," and it was offered to Mr. Lau "on essentially a 'take it or leave it' basis without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or services except by acquiescing in the form contract." *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal. 4th 899, 930, 353 P.3d 741, 762 (2015). In fact, discovery may reveal that Mr. Lau was not even provided with an opportunity to read the contract at the time of alleged contact formation—a situation that would be so procedurally unconscionable as to require only nominal evidence of substantive unconscionability under California's sliding scale approach. *Id*.[5]

Substantively, the NDA is extremely oppressive—as AICPA's own allegations make clear. According to AICPA, a test taker breaches the NDA by merely *remembering* any "Exam Content," Compl. ¶¶ 58 (alleging NDA prohibits "memorization"), 60 ("reconstruction through memorization"), 124 (similar), 125 (similar) or *discussing in a study group* the "subject matters" contained in Exam Conduct. Worse still, "Exam Content" is vaguely and broadly defined to include everything about the Exam, from exam questions to "prefatory material," regardless of whether such materials actually reflect any non-public information. Compl. ¶ 9.

---

[5] According to AICPA, Mr. Lau entered into the NDA when he scheduled himself to sit for CPA Exams. But Mr. Lau scheduled his exams on a third-party website that provided a purported NDA that is different than the one attached to AICPA's complaint, and it is unclear whether that third party had sufficient authority to enter into contracts on behalf of AICPA. To the extent AICPA contends that a valid contract was formed when Mr. Lau clicked through notices on the day of his exam, it is unclear what consideration supported that agreement and Mr. Lau does not recall being able to actually access the terms of the NDA from his exam room.

Moreover, the AICPA attempts to force candidates to agree that material is confidential/trade secret information before candidates are allowed to even see such information. In brief, AICPA's adhesion contracts like the alleged NDA "include 'terms that impair the integrity of the bargaining process," "contravene the public interest and public policy," "attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law," and "seek to negate the reasonable expectations of the nondrafting party," imposing "unreasonably and unexpectedly harsh terms." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911, 353 P.3d 741, 748 (2015).

**Seventeenth Defense**
**Mistake**

AICPA's contract claims and all claims that depend on the existence of a contract are barred by the doctrine of mistake. A party may rescind a contract if his or her consent was given by mistake. Civ.Code, § 1689, subd. (b)(1). "A factual mistake by one party to a contract, or unilateral mistake, affords a ground for rescission in some circumstances. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 278, 27 P.3d 702, 714 (2001), as modified (Sept. 12, 2001) (citing Cal. Civil Code section 1577: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: [¶] 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract").

Here, there was a mistake of fact with respect to Mr. Lau's understanding of the alleged NDA. First, it is unclear what documents actually comprise that parties' agreement, especially in view of the thicket of agreements and disclaimers made by multiple parties through the course of alleged contract formation. It appears from AICPA's allegations that there was no moment when AICPA or anyone else provided Mr. Lau with all the documents comprising his alleged agreement with AICPA.

Second, Neither Mr. Lau nor any other reasonable person entering into the NDA could be expected to know of AICPA's unreasonable and/or illegal interpretation of the NDA's provisions. Nor could Mr. Lau or anyone else be expected to know that AICPA would claim foundational factual information known to all CPA exam candidates as AICPA's "trade secrets" or "Confidential Information." For example, Mr. Lau did not believe that discussing the "subject matters" of Exam Content-something done routinely in the study group, which has been monitored by AICPA and its agents at all times relevant—on a private study group Discord server would be deemed a breach, much less result in a federal case alleging trade secrets crimes. Mr. Lau understood the NDA to apply only to information that is actually confidential, whereas AICPA now claims publicly available information as its confidential or trade secrets information. "[T]he consequences of [this] mistake are so grave that enforcement of the contract would be unconscionable." *Donovan*, 26 Cal. 4th at 281. Third, Mr. Lau was unaware of the fact that AICPA does not make good on the duty of good faith and fair dealing that is implied in any real contractual relationship.

Mr. Lau is entitled to recission of the alleged agreement because he (1) made a mistake regarding a basic assumption upon which the defendant made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to Mr. Lau; (3) Mr. Lau does not bear the risk of the mistake; and (4) the effect of the mistake is such that enforcement of the contract would be unconscionable.

**Eighteenth Defense**
**Misrepresentation**

AICPA's contract claim and all claims that depend on the existence of a contract are bared by the doctrine of misrepresentation. At all times relevant, AICPA had reason to know and/or did in fact know that certain Exam Content does

not qualify as confidential information, trade secret, or copyrightable subject matter. Without permitting Mr. Lau to first see Exam Content, AICPA misrepresented that all exam content was protectable as trade secret and/or copyright information and required Mr. Lau to confirm same.

AICPA had reason to know and/or did in fact know that Mr. Lau believed AICPA's NDA prevented disclosed only of information that is actually confidential. Nevertheless, AICPA misleadingly asked Mr. Lau to agree that all Exam Content is confidential, knowing its positions to be factually incorrect and legally baseless. In addition, by soliciting a contract with Mr. Lau, AICPA misrepresented that it would comply with "the implied covenant of good faith and fair dealing," which "imposes upon each [contractual] party a duty of good faith and fair dealing in its performance and its enforcement." *Carma Devs. (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 371, 826 P.2d 710, 726 (1992).

**Nineteenth Defense**
**Undue Influence**

AICPA's contract claim and all claims that depend on the existence of a contract are bared by the doctrine of undue influence. Under California law, undue influence "is a shorthand legal phrase used to describe persuasion which tends to be coercive in nature, persuasion which overcomes the will without convincing the judgment." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 130, 54 Cal. Rptr. 533, 539 (Ct. App. 1966). "The hallmark of such persuasion is high pressure, a pressure which works on mental, moral, or emotional weakness to such an extent that it approaches the boundaries of coercion." *Id.*

"In essence undue influence involves the use of excessive pressure to persuade one vulnerable to such pressure, pressure applied by a dominant subject to a servient object." *Id.* There can be no doubt that AICPA, a monopolist that anyone wishing to become a licensed CPA *must* do business with, is the dominant

subject in the NDA transaction. In addition, it appears that AICPA may have required Mr. Lau to enter into a contract without providing access to its full terms, and at a time when AICPA knew Mr. Lau was on the clock before commencement of an exam. "In combination, the elements of undue susceptibility in the servient person and excessive pressure by the dominating person make the latter's influence undue, for it results in the apparent will of the servient person being in fact the will of the dominant person." *Odorizzi v. Bloomfield Sch. Dist.*, 246 Cal. App. 2d 123, 131, 54 Cal. Rptr. 533, 540 (Ct. App. 1966). "Whether a person of subnormal capacities has been subjected to ordinary force or a person of normal capacities subjected to extraordinary force, the match is equally out of balance." *Id.* Accordingly, Mr. Lau is entitled to recission of the NDA.

**Twentieth Defense**
**Duress**

AICPA's contract claim and all claims that depend on the existence of a contract are bared by the doctrine of duress. "Duress generally exists whenever one is induced by the unlawful act of another to make a contract or perform some other act under circumstances that deprive him of the exercise of free will." *Tarpy v. Cnty. of San Diego*, 110 Cal. App. 4th 267, 276 (2003). "[A]n unlawful act, to constitute duress, may be either a tort or a crime." *In re Marriage of Gonzalez*, 57 Cal. App. 3d 736, 743, 129 Cal. Rptr. 566, 570 (Ct. App. 1976). For the reasons discussed above and below, AICPA has engaged in at least tortious conduct by misusing its copyrights and engaging in unfair, deceptive and misleading practices with respect to its NDAs. Accordingly, Mr. Lau is entitled to recission of the NDA.

**Twenty-First Defense**
**Illegality**

AICPA's contract claim and all claims that depend on the existence of a contract are bared by the doctrine of illegality. "No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a

court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction." *Holm v. Bramwell*, 20 Cal. App. 2d 332, 336, 67 P.2d 114, 116 (1937). "Such agreements are traditionally referred to as 'illegal contracts,' even though they are functionally described as contracts unenforceable on grounds of public policy." *Kashani v. Tsann Kuen China Enter. Co.*, 118 Cal. App. 4th 531, 541, 13 Cal. Rptr. 3d 174, 179 (2004). "[A] bargain may be illegal even though no illegal performance is either promised or executed as the consideration for a promise; it may be illegal because the making of such a bargain is itself forbidden." *Id*. a 542. For the reasons discussed above, AICPA's contract violates the Copyright Act and its policies, and contract formation was tainted by AICPA's unlawful conduct, including conduct prohibited by California's Unfair Competition Law, as described above and below.

**Twenty-Second Defense**
**Unclean Hands**

For the reasons discussed above and below, AICPA comes to the Court with unclean hands relative to the matter in which AICPA seeks relief, which bars AICPA from obtaining any relief. Among other unlawful and/or inequitable conduct, AICPA has engaged in copyright misuse; taken objectively baseless positions regarding the scope of its intellectual property and contract rights; engaged in misleading and unfair practices in violation of California's Unfair Competition Law; and has engaged in unethical business practices that shock the conscience.

## AMENDED COUNTERCLAIMS

1. Stephen Lau is an aspiring Certified Public Accountant ("CPA") who grew up in Upland, California. Mr. Lau earned a B.S. Degree in Accounting from the University of Southern California in May 2004 and has been working hard to complete the Uniform CPA Exam requirements necessary for a California CPA

license since then. Mr. Lau has one more test section to pass before he is eligible for a California CPA license.

2. Mr. Lau is an individual diagnosed with Autism Spectrum Disorder, Attention Deficit Disorder, and Language Processing Disorder. Mr. Lau received his diagnosis later in life, and he struggled with the AICPA exam for several years before realizing he was entitled to disability accommodations. Despite many challenges, Mr. Lau refuses to give up on his goal of becoming a licensed CPA in California. In November 2017, the California Board of Accountancy ("CBA") provided Mr. Lau with written confirmation of his entitlement to testing accommodations pursuant to the Americans with Disabilities Act ("ADA"). Subsequent to CBA's November 2017 confirmation letter ("Accommodation Letter"), AICPA afforded Mr. Lau reasonable testing accommodations.

3. Unfortunately, all semblance of reasonableness at AICPA disappeared earlier this year, when AICPA sued Mr. Lau alleging objectively baseless copyright infringement and trade secrets claims based on routine statements made in study group discussions on Discord and Reddit. AICPA's federal claims are shams. Mr. Lau has never infringed any AICPA copyrightable work, and AICPA's alleged "trade secrets" consist of old information from a discontinued 2019 test, information from which had already been disclosed to *at least a quarter million people* by the time of Mr. Lau's Reddit and Discord posts. Such information is not "secret" by any stretch of the imagination, and it cannot possibly possess economic value by virtue of its alleged secrecy. In fact, the year after the subject copyright registration was filed, AICPA publicized its intent to phased the BEC exam out altogether.

4. After sitting by idly observing Discord and Reddit study group discussions about AICPA exam content for years, AICPA surprised Mr. Lau with a federal lawsuit on September 11, 2024. AICPA then waited until September 23, the

night before Mr. Lau sat for what he hoped would be his last CPA Exam, to serve him at home with the Complaint and summons. Perhaps that was just a coincidence. What was clearly not a coincidence was AICPA's callous and legally pointless act of sending a messenger to slap Mr. Lau with a second copy of the Complaint as Mr. Lau was walking into what he hoped would be his final CPA exam—an exam for which AICPA understood Mr. Lau needed reasonable disability accommodations. AICPA's conduct has caused Mr. Lau and his family to suffer physical manifestations of severe emotional distress, some of which has necessitated medical care.

5. Mr. Lau and his family are real people who are enduring real suffering because of AICPA's fake federal claims. Mr. Lau cannot move forward with his chose profession until AICPA's sham claims are disposed of, and his reputation and earning capability have needlessly suffered because of this case. Meanwhile, AICPA has no legitimate federal IP interests in this case. AICPA's copyright claim is dead on arrival for all the reasons explained in Mr. Lau's Affirmative Defenses and below, and AICPA's trade secrets claim is similarly doomed to fail given the words of AICPA's own Director of Psychometrics & Research for AICPA Examinations, John Mattar: "If somebody uses [the AICPA's publicly available exam] blueprint to guide their studying, they're going be looking at a detailed map of what could be on the test."[6]

6. To recap, AICPA is suing Mr. Lau for communicating about studying for CPA exams in online study groups for CPA exams that AICPA has been monitoring for years. Rather than immediately email Mr. Lau to inform him of their objections to his study group communications, AICPA chose instead to lurk on Discord and Reddit hoping to build a federal case. Such is not the conduct of a

---

[6] https://www.journalofaccountancy.com/news/2017/jun/how-cpa-exam-is-scored-201716840.html; *see also* https://www.aicpa-cima.com/resources/article/learn-what-is-tested-on-the-cpa-exam

good faith plaintiff coming to the Court for real justice.

**The Parties**

7. Mr. Lau is a resident of Upland, California and an aspiring CPA.

8. According to AICPA's Complaint, AICPA is a non-profit corporation doing regular business in California and is the world's largest member association representing the accounting profession.

**Jurisdiction and Venue**

9. Mr. Lau contends that AICPA's Complaint fails to support federal subject matter jurisdiction because it does not state any federal claim for relief. In the alternative, to the extent the Complaint does allege facts sufficient to support federal subject matter jurisdiction, the Court has jurisdiction over Mr. Lau's mirror image counterclaims seeking declaratory relief related to AICPA's federal claims.

10. Mr. Lau contends that venue in this Court is improper because AICPA's Complaint fails to support federal subject matter jurisdiction, which makes this an incorrect forum. In the alternative, to the extent the Complaint does allege facts sufficient to support federal subject matter jurisdiction, this Court is the proper venue because a substantial part of the events giving rise to the parties' claims occurred within his judicial district.

**Mr. Lau's Endeavor to Become a Licensed CPA**

11. Mr. Lau earned a B.S. Degree in Accounting from the University of Southern California in May 2004. Since then, he has been working hard to complete the Uniform CPA Exam requirements necessary for a California CPA license. Mr. Lau has one more test section to pass before he is eligible for a California CPA license.

12. In October 2017, Mr. Lau submitted to the California Board of Accountancy a request for reasonable disability accommodations in connection with his attempts to pass the CPA exam.

13. In November 2017, the California Board of Accountancy granted Mr. Lau's request for reasonable disability accommodations.

14. Since obtaining from the California Board of Accountancy its confirmation that Mr. Lau is entitled to reasonable disability accommodations in connection with his efforts to pass the CPA exam, the following steps have occurred each time Mr. Lau scheduled himself for CPA exams:

a. Mr. Lau would pay his exam sitting fee to NASBA in order to obtain a notice to schedule (NTS) his exams
b. After obtaining an NTS, Mr. Lau would contact the California Board of Accountancy to ask them to relay to NASBA Mr. Lau's continuing entitlement to disability accommodations
c. NASBA would then transmit to Mr. Lau an updated NTS with accommodations listed; these accommodations have included extended time to complete the exam and a separate room free from unnecessary distractions
d. Mr. Lau would then deliver to Prometric the NTS and schedule an exam with the accommodations designated in the NTS
e. In response, Prometric would send Mr. Lau a confirmation of his exam appointment, including confirmation of the accommodations identified in the NTS.

15. Commencing in November 2017, administrators of the CPA exam began affording to Mr. Lau disability-related accommodations for taking the Uniform CPA Exam.

16. Commencing in November 2017, AICPA and AICPA's agents began affording to Mr. Lau disability-related accommodations for taking the Uniform CPA Exam.

17. One of the accommodations afforded to Mr. Lau by administrators of

the Uniform CPA exam is designed specifically to cut down on unnecessary distractions.

18. Prior to September 2024, Prometric provided to Mr. Lau disability-related accommodations for taking the Uniform CPA Exam. The accommodations provided by Prometric included a private room equipped with a white noise machine and other features designed to cut down on unnecessary distractions.

19. AICPA has access to Prometric information regarding when, where, and how the Uniform CPA Exam is administered to candidates in California.

20. AICPA has access to Prometric information regarding administration of the Uniform CPA Exam to persons entitled to disability accommodations.

21. AICPA knew where Mr. Lau would be on the morning of September 24, 2024 because of its access to Prometric information regarding Mr. Lau's exam schedule and location.

22. AICPA knew that that Mr. Lau's disability entitles him to distraction-limiting accommodations.

23. Being handed a federal lawsuit immediately prior to walking into an important exam is a significant distraction.

24. AICPA intentionally created an exam environment that was not free of unnecessary distractions.

25. AICPA deprived Mr. Lau of the rights and privileges he is entitled to under California law by interfering with his entitlement to a test environment free of unnecessary distractions.

26. Over the past two decades, Mr. Lau has submitted CPA testing applications 64 times. Despite many challenges, Mr. Lau refuses to give up on his goal of becoming a licensed CPA in California.

27. Mr. Lau has passed three out of the four required sections of the CPA Exam and performed over several thousand attest hours.

28. Over the past 20 years, Mr. Lau has taken 25 CPA exams and has been exposed to several hundred if not thousands of questions and answers.

29. At least some of the exam questions and/or exam sections Mr. Lau has taken in the past have been retired and are obtainable from sources other than AICPA. Mr. Lau's knowledge of the Uniform CPA Exam and related content comprising the terminology, regulations, theories, and methodologies of the accounting profession is based on his two decades of experience taking CPA exams, as well as his undergraduate education and post-graduate work experience in the field.

30. At least some of the information at issue in this case is disclosed in exam questions and/or exam sections Mr. Lau has taken in the past that have been retired and are obtainable from sources other than AICPA. As Mr. Lau understands AICPA's allegations, nearly all of the subject information in this case is general knowledge known to those in the relevant industries.

31. Mr. Lau has spent thousands of hours studying and applying the type of information provided in CPA Exam prep course materials, college courses on accounting, public domain information about the CPA Exam, and materials like the AICPA's testing blueprints. To date, Mr. Lau has spent over $10,000.00 in exam sitting fees and more than $15,000.00 for CPA Review Courses, Review Materials, and Study Guides.

**Online Study Groups for the CPA Exam**

32. Mr. Lau has at times felt it productive to participate in online study group discussions hosted on Reddit and Discord. In fact, one post from another study group member who passed the exam in his early 40's was instrumental in inspiring Mr. Lau to keep going and to not give up on his dream of becoming a licensed CPA.

33. The study groups Mr. Lau has participated in post rules to govern the

conduct of group members. A reasonable opportunity for discovery is likely to yield evidence that AICPA has known of and acquiesced to the study group rules since long before the events giving rise to AICPA's lawsuit against Mr. Lau.

34. Prior to this lawsuit, Mr. Lau's understanding was that the study group rules were generally designed to ensure that members do not violate any confidentiality obligations associated with the CPA exam. For example, the rules posting for the Reddit study group Mr. Lau sometimes participated in provides in pertinent part:

**Do not outright ask "What was on your exam". Do not outright say "My exam had ___". This includes topics etc.**

GENERAL

Hello Candidates!

Updating the stickied post about sub rules as there have been a few rascals griping about "not seeing a rule saying xyz" even though they received a ban for it. If the rule you broke was relating to exam disclosure - thats not even a sub rule. Thats a rule you agreed to when you sat for the exam. Do not solicit or provide exam content.

First – I want to point out we do have an Automod in place that removes anything from accounts < 5 days old or with < 5 combined karma. We do get some spam posted here and this automod helps quite a bit. **If you are on a new account and start posting here, add a comment with a** u/galbert123 **mention and ill approve it asap**

**Put at least a little effort into your posts, especially titles** Yes this is me on a power trip. I hate clickbait. If your question fits into a post title, ask the question! Dont post "I have a question..." "Should I get my cpa if..."

**No Clickbait Post Titles**

**Be ethical** – Do not post, offer to share, buy, sell or ask for copywritten study material – This is an immediate ban

**No Promotional Accounts** - This is not a place to advertise products. There are some clear xyz product Ambassador accounts that ONLY comment about what study material they use. I'm removing that stuff. If you throw it in every once and a while fine, but some account I see are literally just ads for the study material. Organic conversation about the study material you use is great. Here are reddit guidelines on self promotion.

> But what about those ads/promotions I see for xyz product

That company pays for those through the proper reddit channels.

**This is NOT a study material marketplace** Do not make posts trying to sell your old material, your post removed, maybe a ban if it looks overly sketchy

**Use tact and be generally kind to each other** – The downvotes usually speak for themselves on this. When I start to see one user getting a bunch of reports and it looks like an obvious troll, I'll probably ban. This is a judgement call.

The Reddit study group rules post further provides:

> Asking what should I study is ok. Asking "**Those who recently took AUD**, what should I study" leans toward not ok because of the implication. People here are generally good people. Exclude any references to your exam or recent exam takers etc. They'll tell you what to study.
>
> "What sim topics **did you see (on your exam)**?" No.
>
> What sim topics **should I study**? - good
>
> "Just got out of AUD, I **saw** sims on X Y and Z **(on my exam)**" - No.
>
> "Study this because I **saw it on my exam**". No good. Just say "it would be wise study this". Get it? If you are talking about your exam, or asking other candidates about their exam, don't.
>
> If you get banned for this, its usually just to get your attention that what you posted broke the rule. Send me a message and ill undo it, just keep your posts compliant with AICPA disclosure policy. I dont want to ban anyone ever.
>
> Please see this post for some examples.

35. Similarly, the rules for the Discord study group that Mr. Lau sometimes participated in provides:

> #1: Do not disclose CPA exam content, questions, or answers. See # -announcements for AICPA confidentiality agreement.
>
> #2: No spamming the chat.
>
> #3: No adult, explicit, graphic content including but not limited to images, text, nicknames, etc.
>
> #4: No racist, homophobic, or degrading content. No bullying. This may result in an immediate ban.
>
> #5: No advertising, including other sites/discord servers (contact moderator for permission).
>
> #6: Do not mention everyone without permission from moderator.
>
> #7: Do not cause a nuisance in the community, repeated complaints from several members will lead to administrative action.
>
> #8: Do not DM members without their explicit consent. If you need to communicate with someone privately, ask for permission first or use appropriate channels provided by the server.
>
> #9: No soliciting or begging other members for access to CPA review courses or materials.
>
> Depending on the offense, you may be warned then kicked or banned from the group. Please contact myself or a moderator if you have any issues with other members. (edited)
>
> May 29, 2024
>
> 5:08 PM APP **Carl-bot** Click the ✅ emoji to confirm your understanding and unlock the rest of the server.
>
> ✅ 1

36. A related Discord post provides:




37. In Mr. Lau's experience, study group members usually comply with posted rules and are able to discuss general exam concepts and study strategies without creating any problems. Exemplary examples of posts Mr. Lau is aware of include the following post:



Jus took FAR (9/13/24)

FAR

Damn nfp and govt. I saw a few questions on mcq in the first testlet, thinking I will just pick whatever, but then it came back with full force in the second testlet. I'm talking every other question. I was writing down questions to go back to work on but quickly realized there was no point (I had no idea so whatever random one I picked might as well be the best bet).

The rest was very straight forward. Foreign exchange, bond, more bond, lease, more lease. I remember feeling like every question asked in the first one gets asked again in the second testlet.

Task-based: Error/ change in principle/estimate Rev rec with multiple performance obligations Subsequent events Reconciliation between accounts Statement of stakeholders' equity Error corrections on different financial statements Change in estimates calculation Impact on inventory/net income/current ratio

I really don't want to have to take it again but man, I should've paid more attention to nfp/govt stuff. I guess I was not desperate enough.

Mr. Lau is also aware of the following post:



I've heard that the test will throw softballs of all sorts of different topics at you, and if you miss it, they throw even more at you, to confirm you really don't know anything about it

Mr. Lau is also aware of the following post:


Wednesday, September 25, 2024 at 1:07:43 PM PDT

Just took FAR

It was a grueling exam and requires total focus. The amount of information covered by FAR is vast. You really need to know what you're doing on every type of calculation they throw at you - bond amortization, lease amortization, consolidations, credit losses, and on and on.

BUT...I have to say I was expecting a LOT worse. Most of the MCQs were fairly straightforward. There were a lot of calculation MCQs, but they were not as complex as I feared. I had 2:45 left going into testlet 3...

Which is probably why I don't have the same complaints as many others here on the TBSs. The TBSs were challenging, with plenty exhibits and a lot of reading. But I didn't feel overwhelmed. I think as long as you have enough time you'll be ok. My bank rec was off by $50 so I definitely didn't get a 100 lol.

Hopefully I'm not jinxing myself, but I felt pretty good coming out of the exam.

I used UWorld and the MCQs there were much longer and more complex than the actual exam. I only did a handful of practice TBSs but I'd say the actual TBSs were tougher and definitely took longer.

So far I've taken AUD (passed on 2nd attempt) and FAR. FAR was the tougher exam but AUD was more mentally taxing, if that makes sense. Almost every AUD question was a trick question and you had to focus on every word. And so much to memorize. That's not really the case with most of FAR. As long as you know your calcs, and all of the ins and outs, you'll be ok.

15 10 Share

Mr. Lau is also aware of the following post:


how to tackle sims?

FAR

soooo i am def having a far retake with the performance i did yesterday. i noticed i struggled with AJEs. i barely knew where to start and i personally feel like the AJE sims on becker aren't enough. anyone know any materials i can look at??

4 4 Share

Add a comment

38. The above posts are illustrative of the type of content that is routinely posted on the subject study group forums. Mr. Lau alleges that a reasonable

opportunity for discovery will yield evidence that AICPA is aware of scores if not hundreds of such communications made routinely over the past several years, and that AICPA has never taken any effective action to abate such conduct. To Mr. Lau's knowledge, AICPA has never filed a federal case against another study group member for their communications on study group forums.

39. In a few instances, Mr. Lau recalls posts by others that may have been too specific and were flagged as problematic before being altered and/or removed. To Mr. Lau's knowledge, none of these instances of post removal/alteration resulted in any lawsuits, much less federal cases alleging copyright or trade secrets misappropriation.

40. Mr. Lau also recalls posts by other study group members that resulted in those members being contacted by persons purporting to act on behalf of AICPA. For example, Mr. Lau is aware of the following communication:




41. A reasonable opportunity for discovery is likely to reveal that there are many communications between someone at AICPA named Taryn and members of the study groups in issue that are relevant to Mr. Lau's claims and defenses in this action.

42. Members of the study groups have long been aware that AICPA monitors their communications looking for potential compliance issues. Knowledge

of AICPA's monitoring of study group communications is part of the reason why Mr. Lau never believed that his posts, which are compliant with the study groups rules and normal practices, were violative of any of AICPA's rights. For example, Mr. Lau is aware of the following communication:

> I was not expecting this kind of response when I saw this post go up.
>
> I'd ask all of you reprising back against this post to consider that Galbert is not asking us to cease all discussion about content potentially on the CPA exam and that he's the main mod of the sub (who, as far as I see, is on here regularly). Use a mite of discretion and read the situation. I cannot be any clearer than this.
>
> I am of the belief (one that, to be clear, has no basis in facts) that the AICPA is aware of this sub, at the least. Probably have been for a long time.

Mr. Lau is also aware of the following communication:




Mr. Lau is also aware of the following communication:



**RE: Possible Impersonation**

Thank you for your email. The post in question was indeed made on behalf of the AICPA, specifically by a monitoring group of the AICPA Examination Team. The AICPA follows a rigorous monitoring process that has been in place for many years that helps us identify when and where the AICPA's protected exam content is potentially being disclosed.

Again, thank you for your email, Alexis. I always appreciate hearing from our candidates and CPA community.

Best Always,

Taryn

Compliance is the Hallmark of Good Security

Senior Manager – CPA Exams Compliance – Public Accounting

Association | AICPA | CIMA

43. A reasonable opportunity for discovery is likely to reveal that there are many such communications between AICPA and members of the study groups in issue that are similar to the above and supportive of Mr. Lau's claims and defenses in this action.

44. In late November 2023, Mr. Lau made a post in the Reddit study group forum ("Reddit Post") in which he expressed frustration with the REG portion of the Uniform CPA exam, which Mr. Lau has attempted to pass on five separate occasions. Mr. Lau's Reddit Post contained statements like "on what planet do you expect me to understand tax treatment to such a degree that I would remember that …"; "why are my prep books wasting so many pages about basis in property transactions"; "I studied…as presented in the text, but said presentation didn't

mention anything about wash rules/disallowed losses…or does it?"; "or what about co guarantors bailing out a principal debtor…can they still go after each other? Idk bro, business law was optional for me 20 years ago;" "Am I expected to be intellectually curious or or [sic] care to bridge my learning beyond what is presented in the text?"; and "TLDR; Rant over. Time to reset, pray for the best, and prepare to try again between 12/5 and 12/13."

45. The overall themes expressed in Mr. Lau's Reddit Post were that the REG exam was unfair, that the quality of the preparation materials Mr. Lau used was poor, and that Mr. Lau was worried about his exam performance because of these facts. At the time of the Reddit Post, Mr. Lau did not remember the exact nature, wording, or expressions found in the REG exam and did not believe that any of the subject matter discussed in his post violated the Reddit study group's guidelines or AICPA's rights. Other posts made before Mr. Lau's, which remained up on Reddit at the time of Mr. Lau's post, discussed the same subject matter. In addition, at the time he made his Reddit Post, Mr. Lau was aware that the subject matter discussed in his post was referred to in the AICPA's Exam Blueprint, which had been publicly available to everyone in the world (not just exam candidates) for a long time prior to the time of Mr. Lau's statement.

46. Mr. Lau's criticisms of the AICPA's REG exam and preparation materials in his Reddit Post were statements concerning matters about which the public has an interest, and Mr. Lau's Reddit Post contributed to public debate and conversation on the topic of the fairness of the REG exam. Mr. Lau made his statements to an audience that is keenly concerned with the fairness of the REG exam and standards applicable to the accounting profession, as participants in the Reddit study group forum at issue are CPA candidates, licensed CPAs, and even AICPA itself.

47. At all times relevant, AICPA has known that California's Anti-SLAPP

statute protects speech in connection with a public issue or issue of public interest, and that Mr. Lau's Reddit Post qualified for such protection. In order to avoid the consequences of filing in California state court a strategic lawsuit against public participation seeking to penalize Mr. Lau for his protected speech, AICPA endeavored to gin up federal claims.

48. Mr. Lau's statements were made for the obvious purpose of criticism, commentary, academic study, and fostering discussion of factual information and ideas over which AICPA has no monopoly.

49. The factual information discussed in the Reddit Post consists almost entirely of facts that do not belong to AICPA.

50. All information found in the Reddit Post can be readily ascertained by the public.

51. Even the fact that the subject information is tested by the REG exam fails to qualify for trade secret protection, because as AICPA's own executive has explained, "If somebody uses [the AICPA's publicly available exam] blueprint to guide their studying, they're going be looking at a detailed map of what could be on the test."

52. In addition, Mr. Lau believes that a reasonable opportunity for discovery will show that the subject matter discussed in Mr. Lau's Reddit Post does not qualify as "Exam Content" under the AICPA's purported NDA agreements because the relevant questions, answers, and/or subject matter have all been previously disclosed to the public. Certainly all information found in the Reddit Post can be readily ascertained by the public.

53. In early February 2024, Mr. Lau made a few posts in the Discord study group that also appeared to have drawn AICPA's ire. Like his Reddit Post, the themes of Mr. Lau's Discord posts included criticism of AICPA's exam and the preparation materials Mr. Lau used, the unfairness of certain AICPA exam tactics,

and ideas for how to improve candidate study methodology.

54. Mr. Lau believes that a reasonable opportunity for discovery will show that the subject matter discussed in his Discord posts is not copyrightable and/or that Mr. Lau's statements did not amount to "bodily appropriation of expression" of the Registered Work as required to establish infringement of a compilation work. Moreover, even if his statements did amount to bodily appropriation of expression, Mr. Lau's statements were made for the obvious purpose of criticism, commentary, academic study, and fostering discussion of factual information and ideas over which AICPA has no monopoly. This is classic fair use.

55. The Discord posts cannot violate the DTSA either. Mr. Lau believes that discovery will show that the information in the Discord posts at issue can be readily ascertained by the public. Even the fact that the subject information is tested by AICPA fails to qualify for trade secret protection, because as AICPA's own executives has explained, "If somebody uses [the AICPA's publicly available exam] blueprint to guide their studying, they're going be looking at a detailed map of what could be on the test." Mr. Lau believes that a reasonable opportunity for discovery will show that the subject matter discussed in Mr. Lau's Discord posts does not qualify as "Exam Content" under the AICPA's purported NDA agreements because the relevant questions, answers, and/or subject matter have all been previously disclosed to the public.

56. AICPA did not contact Mr. Lau about his Discord posts.

57. AICPA could contacted Mr. Lau about his Discord posts by messaging his Discord account or posting a response to the subject statements.

58. AICPA did not contact Mr. Lau about his Reddit posts.

59. AICPA could have contacted Mr. Lau about his Reddit posts by messaging his Reddit account or posting a response to the subject statements.

60. Mr. Lau first learned that AICPA took issue with any of his social

media posts in July 2024, when he received an email from Discord notifying Mr. Lau that Discord had received a DMCA take down demand from AICPA.

61. At least one of AICPA's DMCA notices was so dubious that Discord was "unable to locate [AICPA's copyrighted work] in the content [AICPA] identified as allegedly infringing material."

62. In response to one of AICPA's DMCA take down requests, Discord responded to AICPA that Discord was "unable to locate [AICPA's copyrighted work] in the content [AICPA] identified as allegedly infringing material."

63. Eventually, however, AICPA's efforts paid off: Mr. Lau's posts were removed based on AICPA's objectively baseless copyright infringement allegations.

64. Mr. Lau first learned that AICPA took issue with his Reddit Post when he received this lawsuit.

65. Two days after this lawsuit was filed, the moderator of the Reddit study group permanently banned Mr. Lau, deleted the Reddit Post, and pinned a link to AICPA's lawsuit to the Reddit study group. Mr. Lau alleges that a reasonable opportunity for discovery will reveal that AICPA caused at least some of the foregoing conduct in an attempt to defame Mr. Lau and intimidate other study group members with the implicit threat of objectively baseless federal IP claims.

66. Mr. Lau alleges that a reasonable opportunity for discovery will reveal that AICPA never conducted a good faith fair use analysis of Mr. Lau's posts before sending out DMCA notices related to Mr. Lau's Reddit and Discord posts, and that at all times relevant, AICPA knew of (or recklessly disregarded) binding Ninth Circuit law which holds that "if a copyright holder ignores or neglects our unequivocal holding that it must consider fair use before sending a takedown notification, it is liable for damages under § 512(f)." *Lenz v. Universal Music*

*Corp*., 815 F.3d 1145, 1154 (9th Cir. 2016).

67. Mr. Lau was injured by AICPA's objectively baseless, sham DMCA takedown notices.

68. As a result of AICPA's takedown notices, Mr. Lau was banned from his study groups and subjected to account restrictions on his social media accounts.

69. Mr. Lau has incurred and will continue to incur attorneys' fees as a result of AICPA's conduct and the injuries caused thereby.

70. California has bestowed on AICPA the privilege of serving as the provider of exam content for California's CPA licensure requirements.

71. AICPA has the power to delay or prevent the release of CPA exam test scores, and by extension, a person's licensure in California.

72. With AICPA's privilege and power comes great responsibility.

73. Rather use its power and privilege in a manner consistent with AICPA's stated goals of serving the public interest, AICPA is wielding its power in an unfair manner designed to coerce candidates into unconscionable agreements, stifle public criticism and debate over AICPA's role and the purported value it brings to the accounting profession, and intimidate exam candidates from speaking out. AICPA has engaged in these and other unfair, deceptive, and unlawful business practices, thereby causing injury to Mr. Lau, other CPA exam candidates, and the public at large.

## **CPA Licensure and Testing in California**

74. California Business and Professions Code governs licensure of certified public accountants in California.

75. For over 100 years, the California Legislature has entrusted the California Board of Accountancy (CBA) with protecting the public related to the practice of public accountancy in California. The CBA's mission evokes this charge: "To protect consumers by ensuring only qualified licensees practice public

accountancy in accordance with applicable professional standards."

76. According to the California Board of Accountancy's website, "To sit for the CPA Exam" in California, a candidate "must have a baccalaureate degree or higher, including 24 semester units each of accounting and business-related subjects," or "must be enrolled in a college or university and within 180 days of meeting the CPA Exam educational requirements." Anyone who meets these requirements may schedule themselves for CPA exams in California. According to the California Board of Accountancy's website, CBA "approves reasonable accommodations based on a physical or mental disability or medical condition."

77. According to the CBA's "CPA Exam Quick Tips," anyone who meets the requirements for taking a CPA exam can readily sign up to do so by establishing an account and completing an application. Thereafter, CBA will approve the application, at which point a candidate can select which exams they wish to take, submit required payments, and schedule their exam by visting the domain www.prometric.com. The info graphic below depicts the CPA exam sign-up and scheduling flow:



The above diagram shows how easy it is for anyone who qualifies (e.g., a universe of untold *thousands* of people) to get lawful access to AICPA's alleged "trade secret" CPA exam content. The only thing a person needs to do to gain access to AICPA's alleged "trade secrets" is show *the CBA* that they possess the required educational prerequisites, submit the exam fee, and schedule the exam. Incredibly, it appears from AICPA's Complaint and the relevant third party websites that AICPA does not even have a proper click-through process in place and is thus not forming binding, enforceable contracts with any exam candidates before granting them access the alleged trade secrets.

78. As noted in the CBA info graphic above, the third to last step in scheduling a CPA exam is submission of payment to "NASBA." NASBA is the National Association of State Boards of Accountancy. According to NASBA's website, NASBA provides "a comprehensive array of services related to the Uniform CPA Examination."

79. Persons wishing to submit a payment to NASBA for a California CPA examination may access NASBA's payment portal by visiting the URL "https://nasba.org/exams/cpaexam/california/". A screen shot depicting the website hosted at the NASBA payment portal URL is set forth below:



NASBA National Association of State Boards of Accountancy

CONTACT US | ABOUT US | CAREERS

MEMBER CENTER | EXAMS | LICENSURE | EDUCATION

CPA PORTAL
MEETINGS & EVENTS
INTERNATIONAL
NEWS
PUBLICATIONS
BOARDS OF ACCOUNTANCY

PRODUCTS & SERVICES

AEQUO INTERNATIONAL

MEDIA & RESOURCES

Home CPA ExamCalifornia

# California

## How to Apply for the Uniform CPA Examination

Please visit the California Board of Accountancy website for more information.

## Payment Coupon

This service allows you to pay the Exam fees via a NASBA Payment Coupon. The NASBA Payment Coupon is sent to you via the contact preference as indicated on your application/registration. If you have not received a NASBA Payment Coupon, you cannot pay the Exam fees via this service.

You need your Payment Coupon and credit card to proceed.

Pay Exam Fees | Reprint Coupon

You should receive your Notice to Schedule (NTS) within four business days of paying your Exam fee. If you do not receive your NTS, call a NASBA Candidate Service Associate at 1-866-MY-NASBA or cbtcpa@nasba.org.

You will not be able to schedule an Exam appointment or take the Exam without a valid NTS.

Reprint NTS

## Whom Should I Contact?

**Contact NASBA:** For questions about receiving/replacing your NTS, payment coupons (if applicable) and general comments about the test center where you took the Exam:

**Contact Prometric:** For questions about scheduling, rescheduling or canceling your Exam appointment:

For questions about name and/or address changes, Exam scores and eligibility to take the Exam:

- **Contact the Board of Accountancy** you submitted your application to directly, OR
- **Contact the Board designee** (e.g., CPA Examination Services) to which you submitted your application.

The Uniform CPA Examination®

**USEFUL LINKS**
California Board of Accountancy
Score Information
CPA Exam FAQ

**CONTACT US**
800-CPA-EXAM (800-272-3926)
International: (615) 880-4250

**Email Inquiries:**
CBTCPA@nasba.org

**Mail Inquiries:**
2450 Venture Oaks Way, Suite 300
Sacramento, CA 95833

NASBA

CONTACT US | ABOUT US | CAREERS | EMAIL SIGNUP | PRIVACY POLICY | TERMS OF USE | TECHNICAL SUPPORT

**NASBA Membership**
150 Fourth Ave. North
Suite 700
Nashville, TN 37219-2417
Tel: 615-880-4200
Fax: 615-880-4290

**CPA Examination Services**
800-CPA-EXAM (800-272-3926)
International: 615-880-4250
cpaexam@nasba.org

Copyright © 2008 – 2024 National Association of State Boards of Accountancy, Inc. All rights reserved.

80. NASBA payment portal URL contains a passive link to terms of use located at the URL “https://nasba.org/wp-content/uploads/2021/01/NASBA-Revised-Terms-of-Use-2021-0114.pdf” (NASBA ToS).

81. The NASBA ToS makes unspecified “agents” third party beneficiaries of the agreement but does not identify any such agents.

82. The NASBA ToS contains an arbitration provision which provides in part: "ANY DISPUTE ARISING OUT OF OR RELATING IN ANY WAY TO YOUR USE OF OUR SITES REQUIRES THAT SUCH CLAIM BE RESOLVED EXCLUSIVELY BY CONFIDENTIAL BINDING ARBITRATION, EXCEPT FOR CLAIMS BY NASBA THAT YOU HAVE VIOLATED OR THREATENED TO VIOLATE NASBA'S INTELLECTUAL PROPERTY RIGHTS." The NASBA ToS Arbitration provision further provides: "For all disputes, you agree to first give NASBA the opportunity to resolve the issue, by contacting NASBA with your name, address, and a written description of your claim. You must then provide NASBA with 60 business days to resolve the issue before resorting to arbitration."

83. The NASBA ToS also contains a provision which provides: "any claim or cause of action arising out of your use of our Sites or these Terms of Use must be filed within one (1) year after such claim or cause of action arose or it shall forever be barred, notwithstanding any statute of limitations or other law to the contrary."

84. The NASBA ToS also contains a provision which provides in part "NASBA IS NOT CONSIDERED TO BE (1) A LICENSING JURISDICTION, REGULATOR, LICENSING AUTHORITY, CERTIFYING ORGANIZATION OR THE LIKE WITH AUTHORITY TO GOVERN, ADVISE, OR MAKE ANY OFFICIAL DECISIONS OF ANY NATURE REGARDING ANY OFFICIAL RULES CONCERNING LICENSING; (2) AN ENTITY AUTHORIZED BY ANY LICENSING JURISDICTION, LICENSING AUTHORITY, CERTIFYING ORGANIZATION OR THE LIKE TO MAINTAIN OFFICIAL RECORDS REGARDING LICENSURE OTHER THAN PROVIDED THROUGH CERTAIN NASBA SERVICES; OR (3) AN AUTHORITY PROVIDING LEGAL ADVICE ON ANY MATTER REGARDING LICENSURE, AND NASBA SHALL NOT BE RESPONSIBLE FOR ANY DECISIONS OR INDECISIONS, FOR

WHATEVER REASON MADE, MADE BY ANY USER OF OUR SITES."

85. The NASBA ToS contains a "Refund Policy" clause. NASBA's refund policy is essentially that there are no refunds allowed.

86. There is no reference to AICPA found on the NASBA payment portal or in the NASBA ToS.

87. After clicking the "pay exam fees" button, users are prompted to login using NASBA account credentials. There is no mention of AICPA during the NASBA payment flow.

88. After NASBA accepts payment, it provides the payor with a "NTS," or "notice to schedule." According to NASBA's website, "After applying for the CPA Exam, being found eligible, and paying the associated fees to register for CPA Examination Sections, you will be issued an NTS from NASBA/CPA Examination Services. The Notice to Schedule (NTS) is not emailed directly to candidates. It becomes available to view/print from your CPA Candidate Portal after the requirements have been met to issue the NTS. The NTS is your 'ticket' used to schedule and then take the specified Exam section you signed up for. You are allowed to register for multiple sections of the Exam at one time but those Exam sections you register for must be taken within the time frame as set by your State Board of Accountancy." NASBA's website directs candidates who have received an NTS to visit "https://www.prometric.com/test-takers/search/cpa" to schedule their exam(s).

89. According to its website, Prometric is "a leading provider of technology-enabled testing and assessment solutions to many of the world's most recognized licensing and certification organizations, academic institutions, and government agencies."

90. The Prometric scheduling website provides a passive link to terms of service located at the URL https://www.prometric.com/privacy-policy. ("Prometric

ToS”). The Prometric ToS contains the following passage under the heading “Conditions of Use”:

> Prometric LLC and its affiliates ("Prometric") provide this website, test services and solutions (“Services”) expressly subject to the following terms and conditions set forth below ("Terms") provided, however, that other terms of use shall apply with respect to Prometric's affiliates' websites, as specified on each such website. Any use by you of this website or the Services constitutes your agreement to abide by the Terms. We reserve the right to amend or change the Terms at any time by posting the amended terms on this site, and it is your responsibility to ensure that you are aware of the most up-to-date Terms. Prometric complies with all applicable laws in the jurisdictions where we deliver Services and, as such, if a particular Term herein has the effect of violating a local law in the jurisdiction where individual(s) reside and/or utilize (as applicable) the Services, such Term does not apply to such individual(s). You agree to use this site only for lawful purposes, and agree not to take any action that might compromise the security or accessibility of the site.

91. Mr. Lau’s understanding is that the term “affiliates” as used in the above passage is used in its plain and ordinary sense and refers to corporate affiliates of Prometric but not third parties outside of Prometric’s corporate affiliate family structure.

92. The Prometric ToS contains a “Copyright and Trademarks” section that provides in part as follows: “All content provided on this site is owned by or licensed to Prometric and/or its affiliates (the "Prometric Content") and protected by United States and international intellectual property laws.”

93. The Prometric ToS contains a disclaimer section that provides in part as follows: “PROMETRIC MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND, EXPRESS OR IMPLIED, AS TO…THE INFORMATION, CONTENT OR MATERIALS INCLUDED ON THIS SITE…”

94. The Prometric ToS contains a “Third Party Websites” section that provides: “Any links provided to third party websites are supplied merely as a convenience and are not under the control of or the responsibility of Prometric.”

95. The Prometric ToS makes no mention of AICPA.

96. The Prometric scheduling website contains a passive link to the AICPA's website at the URL: "https://www.aicpa-cima.com/news/download/uniform-cpa-examination-conduct-and-non-disclosure-agreement".

97. The Uniform CPA Examination Conduct and Non-Disclosure Agreement is not displayed at the URL: "https://www.aicpa-cima.com/news/download/uniform-cpa-examination-conduct-and-non-disclosure-agreement". Instead, the website provides a further link that can be used to download a PDF document. A screenshot of this website is provided below.




98. Although that PDF document that is downloadable from "https://www.aicpa-cima.com/news/download/uniform-cpa-examination-conduct-and-non-disclosure-agreement" (AICPA Downloadable NDA) contains check

boxes that state "I Accept" and "I Do Not Agree," a user does not have to download the PDF, click either box, or submit a copy of the PDF to complete the scheduling process.

99. The AICPA URL "https://www.aicpa-cima.com/news/download/uniform-cpa-examination-conduct-and-non-disclosure-agreement" contains a passive link to terms and conditions located at the URL "https://www.aicpa-cima.com/help/terms-and-conditions" ("AICPA ToS").

100. The opening clause of the AICPA ToS states "This website, including any content, functionality, and services offered on or through this website (collectively, the "Website") is offered by the Association of International Certified Professional Accountants ("Association"), American Institute of Certified Public Accountants ("AICPA"), and The Chartered Institute of Management Accountants ("CIMA," together CIMA, the Association and the AICPA, collectively, "we" or "us"). As the context requires, "we" or "us" may also refer just to the Association, the AICPA, or CIMA on its own or in combination with only one of the other entities. Your access to and use of the Website is subject to the following terms and conditions ("Terms and Conditions" or "Terms") and all applicable law."

101. The AICPA ToS includes a disclaimer section that provides as follows: "We do not supply legal, investment, professional, career, or any other advice. Nothing on the Website or within the documents available through the Website constitutes legal, investment, career or other professional advice. You should not rely on any information posted on the Website as if it were legal, investment, career or other professional advice. The documents provided on the Website are for general guidance only and do not contain definitive advice. We cannot and do not guarantee or warrant that any of the information that you may receive through the Website, or links to third party websites is accurate, up-to-date or complete and we do not accept any responsibility for any errors or omissions, or

for any damage or loss you may suffer."

102. Section 2.2 of the AICPA ToS provides in part "These Terms and Conditions permit you to use the Website and related Website Content for your personal, non-commercial use only."

103. Section 2.7 of the AICPA ToS provides in part "We reserve the right, in our discretion, to withdraw, suspend or modify the Website, the Website Content, or certain features or parts of the Website or Website Content with or without notice to you, at our discretion."

104. Section 6.1 of the AICPA ToS provides in part: "From the Website you may be able to obtain access to websites operated by others. The content of such third-party websites to which you may navigate, by means of hypertext links, from the Website is beyond our control. You proceed entirely at your own risk. We do not accept any responsibility for any damage or loss you may suffer arising out of access to those websites, including, but not limited to, damage or loss arising from your use of documents or other information found on those websites. These links are not monitored or maintained by us nor are we responsible for the content of any third-party websites."

105. Section 6.2 of the AICPA ToS provides "Any links to such third-party websites are for your convenience and the inclusion of the links on our Sites does not imply any endorsement, guarantee, warranty or representation by us of the quality or accuracy of the information, products or services provided to you on those third-party websites.

106. Section 8.2 of the AICPA ToS provides: "We shall not be liable to you for any loss arising out of the inaccuracy or incompleteness of information, including the Website Content or any of your or any third party's Contributions, contained on the Website or in the services available through the Website."

107. Section 8.5 of the AICPA ToS provides in part: "The information

presented on or through the Website is made available solely for general information purposes. We do not warrant the accuracy, completeness, or usefulness of this information. Any reliance you place on such information is strictly at your own risk. We disclaim all liability and responsibility arising from any reliance placed on such materials by you or any other visitor to the Website, or by anyone who may be informed of any of its contents… We are not responsible, or liable to you or any third party, for the content or accuracy of any materials provided by any third parties."

108. Section 9.1 of the AICPA ToS provides in part: "All matters relating to the Website, Website Content, and these Terms, and any dispute or claim arising therefrom or related thereto (in each case, including non-contractual disputes or claims), shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule. Any legal suit, action, or proceeding arising out of, or related to, these Terms, the Website, or any Website Content shall be instituted exclusively in the federal courts of the United States or the courts of the State of New York, in each case located in or having jurisdiction over the City of New York."

109. Section 9.2 of the AICPA ToS provides "At our sole discretion, we may require you to submit any disputes arising from these Terms or use of the Website or Website Content, including disputes arising from or concerning their interpretation, violation, invalidity, non-performance, or termination, to final and binding arbitration under the Rules of Arbitration of the American Arbitration Association applying New York law."

110. Section 9.4 of the AICPA ToS provides "ANY CAUSE OF ACTION OR CLAIM YOU MAY HAVE ARISING OUT OF OR RELATING TO THESE TERMS, THE WEBSITE, OR ANY WEBSITE CONTENT MUST BE COMMENCED WITHIN ONE (1) YEAR AFTER THE CAUSE OF ACTION

ACCRUES; OTHERWISE, SUCH CAUSE OF ACTION OR CLAIM IS PERMANENTLY BARRED."

111. Section 10.3 of the AICPA ToS provides: "These Terms and Conditions and our Privacy Policy constitute the sole and entire agreement between you and us regarding the Website and supersede all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, regarding the Website."

112. As noted, the Prometric scheduling flow does not require a candidate to actually visit any AICPA URL in order to complete scheduling. Instead, users are directed to the Prometric URL https://proscheduler.prometric.com/home, which provides access to Prometric's "Pro Scheduler" tool. The user interface for the Pro Scheduler tools is depicted below.




113. The Pro Scheduler tool URL provides a passive link to the Prometric ToS discussed above.

114. At no point prior to scheduling his exam was Mr. Lau required to

affirmatively assent to the AICPA Downloadable NDA agreement.

115. At no point during the morning of his exam was he required to affirmatively assent to the AICPA Downloadable NDA agreement.

116. To the best of Mr. Lau's recollection, on the day he scheduled his relevant examinations, Mr. Lau did encounter a click-through message styled as a "The Uniform CPA Examination Conduct and Non-Disclosure Agreement." But the terms of that agreement are different from the AICPA's downloadable NDA agreement and also from the document attached to AICPA's Complaint. As of the date of this filing, the so-called "Uniform CPA Examination Conduct and Non-Disclosure Agreement" presented during the Prometric scheduling flow contains statements not found in the other "Uniform" agreements discussed herein. For example, the Prometric version of the "Uniform" agreement contains the phrase "a conflict between this Agreement and the NASBA's CPA Exam Candidate Guide," whereas that phrase does not appear in the document attached to AICPA's complaint or downloadable from AICPA's website.

117. Neither Prometric nor AICPA provided to him at the time of alleged contracting the "NASBA's CPA Exam Candidate Guide" referenced in the Prometric click-through message.

118. The document referred to as "NASBA's CPA Exam Candidate Guide" in the Prometric click-through message is different from the "Candidate Bulletin" document referenced in the AICPA Downloadable NDA and document attached to AICPA's complaint in this action.

119. AICPA has no record of Mr. Lau affirmatively assenting to the document attached to its original complaint.

120. Mr. Lau alleges that reasonable opportunity for discovery will reveal that AICPA has not granted Prometric actual authority to enter into contracts on AICPA's behalf or to other bind AICPA to legal obligations.

121. At all times relevant, Prometric has lacked apparent authority to contract on behalf of AICPA given the disclaimers and language found in the relevant Prometric and AICPA terms of service discussed above.

**AICPA's Sham Federal Claims**

122. AICPA's federal causes of action are sham claims designed to manufacture federal jurisdiction in furtherance of AICPA's attempt to use the process of litigation as an anti-competitive weapon and tool to inflict emotional distress on Mr. Lau, in violation of California law.

123. Mr. Lau alleges that a reasonable opportunity for discovery is likely to show that AICPA filed sham federal claims in order to deprive Mr. Lau of the protections he would have been entitled to had AICPA filed a state court breach of contract action, including the protections provided by California's Anti-SLAPP statute and California Code of Civil Procedure 2019.210.

124. Mr. Lau alleges that a reasonable opportunity for discovery is likely to show that AICPA also filed sham federal claims in furtherance of its effort to shame and defame Mr. Lau in the most public way possible. AICPA wanted to make a federal case out of an alleged problem that could have been resolved privately because AICPA wanted its scurrilous allegations against Mr. Lau to be as widely publicized as possible.

125. At the time it filed its original complaint in this action, AICPA lacked evidentiary support for the following allegations contained in its original complaint:

- Mr. Lau's alleged acts "were willful and malicious" (Compl. ¶ 86)
- Mr. Lau acted with "blatant disregard of his personal legal obligations" (Compl. ¶ 23)
- "He did so in violation of the public's trust in the accounting profession and its members" (Compl. ¶ 24)
- The alleged "Trade Secrets are the subject of efforts that are

reasonable under the circumstances to maintain secrecy" (Comp. ¶ 43)

- AICPA's Trade Secrets derive independent actual and potential economic value from not being generally known to, and not being readily ascertainable through proper means" (Compl. ¶46)
- "unauthorized disclosure of Exam Content causes significant harm to the AICPA including, but not limited to, creating the need to develop additional Exam Content to replace the disclosed Exam Content" (Compl. ¶ 48)
- Mr. Lau "risked undermining the public trust in the accountancy profession by repeatedly disclosing Exam Content where it was likely to be seen by others taking the CPA Exam." (Compl. ¶ 67)
- Mr. Lau "provided an unfair advantage to other test takers" (Compl. ¶ 76)
- Mr. Lau's alleged acts "jeopardize the integrity and fairness of the CPA Exam and threaten to undermine the foundations of public trust upon which the accounting profession is built, necessitating the AICPA to take action to prevent further disclosure of Exam Content" (Compl. ¶ 85)
- "Defendant unlawfully reproduced and publicly displayed on the CPA Study Group server in Discord, Exam Content that is the subject of U.S. Copyright Reg. No. TXu002287113" (Compl. ¶ 90)
- "The Registered Work was part of the ISC section of the CPA Exam, which Defendant sat for on February 3, 2024" (Compl. ¶ 91)
- "While sitting for the ISC section of the CPA Exam, Defendant had access to the Registered Work" (Compl. ¶ 92)
- "Defendant infringed the AICPA's copyright in the Registered Work by unlawfully publicly displaying an unauthorized reproduction of

and/or derivative work based upon the Registered Work" (Compl. ¶ 93)

- Mr. Lau's alleged copyright infringement was "willful" (Compl. ¶95)
- "AICPA has suffered actual damages" as a result of the alleged infringement (Compl. ¶ 97)
- "AICPA is entitled to receive…profits made by Defendant" (Compl. ¶ 98)
- "AICPA is entitled to statutory damages" (Compl. ¶ 99)
- "Defendant's conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiff great and irreparable injury" (Compl. ¶ 100)
- "Defendant's misappropriation was willful and malicious because he disclosed the AICPA's Trade Secrets repeatedly" (Compl. ¶ 112)
- "As a result of the misappropriation, Defendant has proximately caused harm to the AICPA and is in a position to continue to injure the AICPA" (Compl. ¶ 113)
- "The AICPA has incurred actual losses, and/or Defendant has been unjustly enriched as a result of Defendant's misappropriation of the AICPA's Trade Secrets." (Compl. ¶ 114)
- "The AICPA is entitled to injunctive relief against Defendant, who should be preliminary and permanently enjoined pursuant to 18 U.S.C. § 1836(b)(3)(A)" (Compl. ¶ 117)
- "Defendant has and will likely continue to knowingly, intentionally, and materially breach the NDA" (Compl. ¶ 128)

126. In addition to lacking evidentiary support for the above allegations contained in its complaint, AICPA's federal claims are also objectively baseless as a matter of law. AICPA's copyright and DTSA claims are foreclosed by binding

statutory law and well-settled Ninth Circuit precedent. Taken together, the lack of evidentiary and legal support for AICPA's federal claims is more than sufficient to permit a rational jury to conclude that no reasonable litigant could expect success on AICPA's federal claims.

127. In addition to the objectively baseless nature of AICPA's federal claims, the manner in which AICPA has prosecuted this case supports and inference that AICPA is acting with improper subjective motives.

128. For example, AICPA's malicious interference with Mr. Lau's CPA exam on the morning of Mr. Lau's last CPA exam by delivering to him a copy of the complaint and summons shocks the conscience. This outrageous conduct had absolutely no legal purpose, since AICPA had already effected proper service the night before. The only inference to draw from AICPA's conduct is that it used its sham service of process to intentionally torpedo Mr. Lau's prospects of passing the exam, in violation of Mr. Lau's rights.

129. Even worse, AICPA's conduct was carried out with express knowledge that Mr. Lau is a disabled individual who was entitled to special exam accommodations designed specifically to reduce distractions. Rather than comply with its legal duty to provide Mr. Lau with reasonable accommodations by providing an environment free of unnecessary distractions, AICPA intentionally distracted and inflicted sever emotional distress on Mr. Lau as he was walking into his special accommodations facility in hopes of making him fail the exam.

130. AICPA's sham delivery of sham federal claims to Mr. Lau as he was walking into his exam were the moving force of the harms caused to Mr. Lau thereafter. Had AICPA simply complied with its legal obligations, including the covenant of good faith and fair dealing that applies to any contractual relationship between the parties, or had AICPA filed its lawsuit in an appropriate state law forum alleging only claims with reasonable legal and factual support, and had

AICPA refrained from abusing legal process by pointlessly serving Mr. Lau as he walked into his special accommodations exam facility, the injuries AICPA caused to Mr. Lau, his family, and the public complained of herein would not have been sustained.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Judgment of Non-Infringement of Copyright)**

131. Mr. Lau incorporates by reference and re-alleges herein the allegations contained in paragraphs 1-130 above.

132. An actual justiciable controversy exists between Mr. Lau, on the one hand, and AICPA, on the other, because AICPA accuses Mr. Lau of copyright infringement, and Mr. Lau denies AICPA's allegation.

133. Mr. Lau and AICPA have adverse legal interests.

134. The sufficiency and immediacy of the parties' dispute warrants the issuance of declaratory judgment under 28 U. S. C. § 2201.

135. AICPA's objectively baseless copyright allegations against Mr. Lau have caused him injury.

136. A judicial determination declaring that Mr. Lau has not infringed AICPA's copyright rights would help abate the injury AICPA has caused.

137. Mr. Lau is entitled to a declaration that he has not infringed AICPA's copyrights and such other equitable relief as the Court deems appropriate.

138. Mr. Lau is entitled to a declaration that he has not willfully infringed AICPA's copyrights and such other equitable relief as the Court deems appropriate.

139. Mr. Lau is entitled to a declaration that his alleged conduct is fair use under 17 U.S.C. § 107 and such other equitable relief as the Court deems appropriate.

140. Mr. Lau is entitled to a declaration that AICPA's asserted copyright is unenforceable due to copyright misuse.

141. Mr. Lau is entitled to a declaration that AICPA's copyright infringement allegations are objectively baseless for at least the reasons explained below and in Mr. Lau's affirmative defenses.

142. Mr. Lau is entitled to attorneys' fees incurred responding to AICPA's objectively baseless copyright allegations.

**No Substantial Similarity is Factually or Legally Possible**

143. The "Work" at issue is U.S. Copyright Reg. No. TXu002287113, which is a *compilation* of test items examined on November 8, 2021. AICPA cannot possibly in good faith allege that Mr. Lau infringed any of AICPA's §106 rights to the compilation registered as Registration TXu002287113, i.e., the "*group of secure test items* examined [by the Copyright Office] on 11/8/2021." Dkt. 1-1.

144. As an objective matter of fact and as a matter of law, there is no substantial similarity between the registered Work and Mr. Lau's Reddit or Discord posts.

145. The registered work is entitled "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019".

146. Mr. Lau has taken BEC exams in the past and is familiar with their content.

147. Mr. Lau last took the BEC in 2021.

148. The Business Environment Concepts (BEC) section tests content across five areas: corporate governance, economic concepts and analysis, financial management, information technology, and operations management.

149. In contrast to the BEC as it existed in the 2019 to 2021 timeframe, the ISC section tests different subject matter in a different format.

150. The "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" is not contained within the ISC Section of the CPA Exam that Mr. Lau sat for on February 3, 2024.

151. The Registered Work is entitled to only to "thin" copyright protection. It is highly factual, comprised primarily of concepts, ideas, terms, and phrases that are necessary to convey the non-protectable information underlying AICPA's expression, and it is also highly functional because its purpose is to test the minimum requirements that any registered CPA must have to carry out their duties.

152. While "a compilation of facts may be copyrightable even if the underlying facts are not," the "Ninth Circuit has held that copyright infringement of compilations consisting largely of uncopyrightable elements should not be found in the absence of 'bodily appropriation of expression,'" or "unauthorized use of substantially the entire item." *Bensbargains.Net, LLC. v. Xpbargains.Com*, 2007 WL 2385092, at *4 (citing *inter alia Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 205 (9th Cir.1989)).

153. Whatever the bounds are of AICPA's ultrathin protection are, there is no way Mr. Lau's alleged conduct can fall within those bounds. Unlike the Work, Mr. Lau's posts look nothing like a CPA exam. They consist of commentary and discussion about the ideas and concepts tested in the exam and were made to foster discussion, debate, and study about the test and its content.

154. According to AICPA, there are two types of "reproductions" at issue. "On February 3, 2024, [Mr. Lau]…unlawfully reproduced and publicly displayed on the CPA Study Group server in Discord, Exam Content." Compl. ¶ 90. The "Exam Content" Mr. Lau allegedly reproduced consists of (i) "a message Mr. Lau posted "in the CPA Study Group Discord server containing a virtually exact reproduction of both the content of an ISC multiple choice question along with the related answer choices"; and (ii) "descriptions of the subject matter of three task-based simulations." Compl. ¶¶ 73-75.

155. A "description[] of the subject matter" of a copyrighted work is not infringement, because facts and ideas "are not copyrightable." *Comparion Med.*

*Analytics, Inc. v. Prime Healthcare Servs., Inc.*, 2015 WL 12746228, at *5 (C.D. Cal. Apr. 14, 2015) (*citing inter alia Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344 (1991)); *Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1041 (9th Cir. 2015) ("an idea, process, or system…is not eligible for copyright protection"); *Advanta-STAR Auto. Research Corp. of Am. v. DealerCMO, Inc.*, No. 20-1150, 2022 U.S. Dist. LEXIS 10343, at *17 (E.D. La. Jan. 20, 2022) (collecting cases like *McGraw-Hill, Inc. v. Worth Publishers, Inc.*, 335 F. Supp. 415, 420-21 (S.D.N.Y. 1971) ("subject of an economics textbook restricted the language options available…given the corpus of technical words and phrases whose meanings have been fixed and concepts whose importance is generally acknowledged") and *Windsor v. Olson*, 2019 U.S. Dist. LEXIS 79755, 2019 WL 2080021, at *5 (N.D. Tex. 2019) (finding phrases functional and ineligible for protection because they defined a system and information contained therein and were thus not original); *Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003) ("expressions that are standard, stock, or common to a particular subject matter or medium are not protectable under copyright law."). "[C]opyright assures authors the right to their original expression, but encourages others to build freely upon the *ideas and information conveyed by a work*." *Feist*, 499 U.S. at 349-50.

156. That leaves AICPA with only the alleged "virtually exact reproduction" of a single ISC exam question and answer set to hang its infringement case on, which clearly isn't enough. *See, e.g.*, *Experian*, 893 F.3d at 1187. Even assuming that that Registration TXu002287113 includes only 100 question and answer sets, AICPA's allegations amounts to an assertion that Mr. Lau reproduced less than 1% of the "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019."

157. Mr. Lau avers that a reasonable opportunity for discovery will reveal that the content he allegedly "reproduced" consist largely of uncopyrightable stock

phrases and factual information, and that the totality of the words he used amount to well under 1% of the lines of text contained in the "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" .

158. Mr. Lau further alleges that discovery will show that prior to filing suit, AICPA knew or should have known that Mr. Lau allegedly copied far, far less than the minimum amount of copying required to state an infringement claim under Ninth Circuit law. *E.g., Bensbargains.Net, LLC. v. Xpbargains.Com*, 2007 WL 2385092, at *4 (S.D. Cal. Aug. 16, 2007) (dismissing claims based on copying less than 70% of compilation work) (collecting similar cases cases); *Experian* 893 F.3d at 1187 (80% copying held insufficient).

159. AICPA's copyright infringement allegations are objectively baseless because no reasonable litigant could expect to prevail in the Ninth Circuit on a claim for infringement of a functional, fact-intensive compilation work based on copying of 1% or less of the work.

160. Binding Ninth Circuit case law establishing the objective baselessness of AICPA's claims is so prevalent, and the underlying legal principles supporting these holdings are so basic, that AICPA could not have been ignorant of the objective baseless of its claims. See, e.g., *E.g., Experian Info. Sols., Inc. v. Nationwide Mktg. Servs. Inc*., 893 F.3d 1176, 1187 (9th Cir. 2018) ("Even assuming Natimark's pairings were exact copies of their counterparts in the Experian database, the match rate would only be 80% and insufficient to establish a bodily appropriation of Experian's work."); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 348, 111 S. Ct. 1282, 1289 (1991) ("The mere fact that a work is copyrighted does not mean that every element of the work may be protected").

161. The weight of precedent makes it so obvious that AICPA has no meritorious infringement claim arising from Mr. Lau's study group communications that AICPA's filing of a federal copyright infringement lawsuit

supports a plausible inference of improper subjective motives.

162. A plausible inference of improper subjective motives underlying AICPA's copyright claim is also supported by AICPA's bad faith conduct in slapping Mr. Lau with a duplicate copy of the lawsuit as we walked into his exam, and by AICPA's other bad faith conduct as described above and below.

**Sham Pleading Tactics**

163. The objective baselessness of AICPA's claims is also evidenced by AICPA's inability to properly plead the basic elements of a copyright infringement claim. AICPA does not and cannot allege the fundamental threshold element of a copyright claim: that Mr. Lau had access to the Work.

164. AICPA does not say that the two different CPA exams at issue, which Mr. Lau took in late 2023 and early 2024, are each subject to their own copyright registrations. Instead, AICPA suggests that some of the material from those exams was also the "subject of" a much older test submitted for copyright registration in 2019.

165. According to AICPA's registration, the Work is entitled "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" and consists of "a group of secure test items examined on 11/8/2021." Dkt. 1-1 at 3. According to what AICPA told the Copyright Office, the Work was completed in 2019. Dkt. 1-1 at 2. Among the "group of secure test items" comprising the Work are multiple items (presumably test and answer pairs) that are excluded from AICPA's copyright claim, presumably because these items were already published, subject to another registration, not eligible for copyright protection, not authored by the same author as required by the form of registration, and/or some other fact or combination of factors that would have precluded registration of TXu-2-287-113 but for their exclusion:

## Completion/Publication

**Year of Completion:** 2019

## Author

- **Author:** AICPA
  **Author Created:** text
  **Work made for hire:** Yes
  **Citizen of:** United States
  **Domiciled in:** United States

## Copyright Claimant

**Copyright Claimant:** American Institute of Certified Public Accountants
100 Princeton South, Suite 200, Ewing, NJ, 08628-3018, United States

## Limitation of copyright claim

**Material excluded from this claim:** Items 92774, 92860, 95302, 95392, 95438, 95586, 98850, 99320, 99468, 100208, 500575, 501041, 501047, 501141, 501225, 503429, 503455, 503694, 504799, 505039, 505091

166. Unlike the "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019", the exams Mr. Lau is alleged to have talked about in study groups were (i) a November 2023 REG exam and (ii) February 2024 ISC exam. At most, only some of the questions in the tests he took in 2023 and 2024 were hold over questions from the aging 2019 exam referenced in TXu2287113.

167. The AICPA's own exam blueprints state that the REG exam does not include BEC subject matter.

168. Content from "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" cannot (or should not) be included in the REG exam.

169. Because AICPA knows Mr. Lau has never seen the "GRSTQ: Uniform CPA Examination Business Environment and Concepts 2019" registered with the Copyright Office, AICPA alleges only that "the Exam Content infringed by

Defendant *is the subject* of U.S. Copyright Reg. No. TXu002287113 (dated July 6, 2020).” Compl. ¶¶37; 90. Note that AICPA does not say that *the tests* Mr. Lau took are “the subject of” any registration—only that *the content* of the two tests Mr. Lau allegedly “infringed” are “the subject of” the old 2019 registration.

170. AICPA’s “subject of” allegation could mean that some of the words and phrases Mr. Lau is alleged to have “reproduced” are included in the old 2019 test that AICPA registered for copyright, or it could even mean more broadly that the questions relate to the same factual subject matter. Either way, AICPA’s resort to this type of hand waiving on the most basic element of copyright infringement supports plausible inferences that permit a finding that AICPA’s claims are objectively baselessness and pursued for subjective improper motives.

171. AICPA does not have registrations for each of the exam questions at issue or the exams Mr. Lau took in 2023 and 2024.

172. Mr. Lau avers that a reasonable opportunity for discovery will reveal that AICPA lacks standing on certain portions of its copyright claim because the alleged content reproduced includes material that is either not registered under Registration TXu002287113 or registered as a compilation work under other registrations that have not been pleaded. *J & J Sports Prods., Inc. v. Kigo*, No. C 10-05512 SI, 2011 WL 3418394, at *1 (N.D. Cal. Aug. 4, 2011) (“plaintiff must affirmatively plead registration in order to adequately state a claim for copyright infringement.”).

173. Alternatively, Mr. Lau avers that a reasonable opportunity for discovery will reveal that the content he allegedly “reproduced” includes material that has never been subject to any copyright registration or application.

174. To the extent AICPA can allege in good faith that the single test item Mr. Lau allegedly “virtually exact(ly)” reproduced is copyrightable on its own (i.e., the question itself has “artistic features that can be separated from [its] utilitarian

function," *see, e.g., Fabrica Inc. v. El Dorado Corp*., 697 F.2d 890, 894 (9th Cir. 1983) and is original, not just "expressions that are standard, stock, or common to a particular subject matter or medium," *see, e.g., Satava v. Lowry*, 323 F.3d 805, 810 (9th Cir. 2003), that single-question registration does not exist, and such a theory has not been pleaded. 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.").

175. AICPA lacks statutory standing to bring copyright infringement claims for any materials that are not subject to Registration No. TXu002287113. Mr. Lau alleges that a reasonable opportunity for discovery will show that before filing this action, AICPA knew of or should have known of the registration problems that preclude AICPA's standing for its copyright claims as pled.

176. In addition to not even pleading threshold issues like standing or the fundamental element of access to the Work, AICPA' Complaint is "entirely devoid of allegations establishing the protectable elements of the infringed works" and makes "no effort to compare the copyrightable elements of the allegedly infringing and copyrighted works." *Evans v. McCoy-Harris*, No. C17-8345, 2019 U.S. Dist. LEXIS 42744, 2019 WL 1002512, at *3 (C.D. Cal. Jan. 4, 2019); *accord Boost Beauty, LLC v. Woo Signatures, LLC*, No. C18-2960, 2018 U.S. Dist. LEXIS 227156, 2018 WL 6219895, at *1, 4 (C.D. Cal. July 23, 2018) (allegation of copying "specific words and language in a specific order" insufficient where complaint failed to provide "even written descriptions of the…words"); *Bungie, Inc. v. Aimjunkies.Com*, 2022 WL 1239906, at *2 (W.D. Wash. Apr. 27, 2022) (allegation that infringing software was "identical or substantially similar" to copyrighted work held insufficient)(quoting Twombly, 550 U.S. at 555).

177. Mr. Lau alleges that a reasonable opportunity for discovery will reveal that Registration TXu002287113 covers at least 200 question and answer sets

comprising thousands of lines of text, a substantial majority of which text is made up of uncopyrightable factual information, short statements, and stock industry terms that are (i) necessary to describe the ideas that the question and answer sets are intended to convey, (ii) not subject to copyright protection in and of themselves, and (iii) are only entitled to copyright protection to the extent their *selection and arrangement into a compilation* amounts to a creative and original work. Moreover, even if the compilation is subject to copyright protection, that protection is necessarily very thin given the functional purpose of the work: to test the minimum qualifications of CPA candidates. The text Mr. Lau allegedly reproduced amounts to likely less than one percent of the overall work, which is not enough to give rise to infringement of such a work.

**Failure to Conduct Fair Use Analysis**

178. Mr. Lau's study group discussions are classic fair use. Section 107 of the Copyright Act provides that "Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use…for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." Section 107 further provides that "[i]n determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107.

179. AICPA admits that all of Mr. Lau's allegedly infringing posts were made in the context of exam candidate study groups. Such communications were obviously made for non-commercial fair use "purposes such as criticism,

comment…teaching… scholarship, or research" and cannot be infringing as a matter of law.

180. The purpose and character of the alleged communications were academic, critical, scholarly, and generally for purposes of study. *See, e.g., Sega Enterprises Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1520 (9th Cir. 1992) ("Where there is good reason for studying or examining the unprotected aspects of a copyrighted [work]…such study or examination constitutes a fair use"). The character was not at all commercial. *Compare Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020) (using portion of work for "new and different" purpose that also furthered high school students' musical learning and development held fair use); *Loew's Inc. v. Columbia Broad. Sys.*, 131 F. Supp. 165, 176 (S.D. Cal. 1955), *aff'd sub nom. Benny v. Loew's Inc.*, 239 F.2d 532 (9th Cir. 1956), *aff'd sub nom. Columbia Broad. Sys., Inc, v. Loew's Inc.*, 356 U.S. 43, 78 S. Ct. 667, 2 L. Ed. 2d 583 (1958) ("broader scope [of Fair Use] will be permitted the doctrine where the field of learning is concerned and a much narrower scope where the taking is solely for commercial gain."); *Newport-Mesa Unified Sch. Dist. v. State of California Dep't of Educ.*, 371 F. Supp. 2d 1170, 1179 (C.D. Cal. 2005) ("The Court concludes a school giving parents of special education students copies of their children's test protocols when requested under California Education Code section 56504 is a fair use under 17 U.S.C. § 107.").

181. The nature of the copyrighted work is highly functional (designed to qualify persons for the CPA profession) and factual (reflecting basic knowledge all CPAs must possess to perform their duties), such that the work receives only the thinnest form of copyright protection (if any). *See, e.g., Rassamni v. Fresno Auto Spa, Inc.*, 365 F. Supp. 3d 1039, 1046 (E.D. Cal. 2019) (discussing thin protection for factual compilations and noting that "systems…designed to assist in accomplishing a task…[are] not protected under copyright law")(citing *Sega*

*Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1525 (9th Cir. 1992)) *accord Bikram's Yoga Coll. of India, L.P. v. Evolation Yoga, LLC*, 803 F.3d 1032, 1038 (9th Cir. 2015) ("copyright in a manual describing how to organize roller-skating races does not extend to the rules for the races themselves")(citation omitted).

182. Any portions of text actually "reproduced" from memory are necessarily *de minimis* and insubstantial compared to the work as a whole, amounting to a mere fraction of a percent of the compilation comprising the work. *See, e.g.*, *Tresona Multimedia, LLC v. Burbank High Sch. Vocal Music Ass'n*, 953 F.3d 638, 651 (9th Cir. 2020) (use of only "small segments" of copyrighted works weighed in favor of fair use).

183. Mr. Lau avers that a reasonable opportunity for discovery will reveal that his study group communications can have absolutely no effect on the market for AICPA's Registration TXu002287113.

184. No reasonable litigant could expect to overcome Mr. Lau's facially obvious fair use defense to copyright infringement claims arising from his discussion of material in a study group setting, especially given the thin nature of protection afforded to the Work at issue.

185. AICPA either did not conduct, or ignored the results of, a reasonable good faith pre-suit investigation and analysis of Mr. Lau's obvious fair use defense.

186. In addition, "[t]he defense of copyright misuse forbids a copyright holder from securing an exclusive right or limited monopoly not granted by the Copyright Office." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001). The misuse defense also "prevents a copyright holder that has misused its copyright from enforcing the copyright in a court of equity." *Shloss v. Sweeney*, 515 F. Supp. 2d 1068, 1079 (N.D. Cal. 2007). A finding of copyright misuse precludes enforcement of the copyright to a work "during the period of misuse." *Id*.

187. To establish copyright misuse, an accused infringer need only show

that a "copyright is being used in a manner violative of the public policy embodied in the grant of copyright;" the accused need not prove an antitrust violation to prevail on a misuse defense. *Id*.

188. AICPA has no meritorious copyright infringement claim against Mr. Lau but is nevertheless pursuing claims that are foreclosed as a matter of law by binding Ninth Circuit precedent regarding *at least* (i) infringement of fact-heavy compilation works and (ii) fair use for educational purposes. In addition, AICPA has used this litigation as an anticompetitive weapon, abusing the process itself by needlessly sending a process server to hand Mr. Lau the complaint and summons as he was walking into the last CPA exam standing between him and licensure—after previously serving Mr. Lau at home the night before.

189. Mr. Lau avers that a reasonable opportunity for discovery will reveal that AICPA has, at all times relevant, engaged in a practice of asserting objectively baseless copyright infringement allegations in order to obtain rights that are not intended under, and indeed conflict with the very spirit of, the Copyright Act.

190. Even without discovery, it is clear from the face of AICPA's Complaint that AICPA is using its Registration TXu002287113 "in a manner violative of the public policy embodied in the grant of copyright" by accusing Mr. Lau of willful copyright infringement based on his discussion of the "subject matter" of Exam Content in online study groups. *Shloss*, 515 F. Supp. 2d at 1080 (copyright misuse defense "applies broadly 'if a copyright is leveraged to undermine the Constitution's goal of promoting invention and creative expression.'")(citing *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966, 995 (C.D. Cal. 2006) and *In re Napster, Inc. Copyright Litig.*, 191 F. Supp. 2d 1087, 1108 (N.D. Cal. 2002)).

**SECOND CLAIM FOR RELIEF**
**(Declaratory Judgment of No Trade Secret Misappropriation)**

191. Mr. Lau incorporates by reference and re-alleges herein the allegations contained in paragraphs 1-190 above.

192. An actual justiciable controversy exists between Mr. Lau, on the one hand, and AICPA, on the other, because AICPA accuses Mr. Lau of trade secrets misappropriation, and Mr. Lau denies AICPA's allegation.

193. Mr. Lau and AICPA have adverse legal interests.

194. The sufficiency and immediacy of the parties' dispute warrants the issuance of declaratory judgment under 28 U. S. C. § 2201.

195. AICPA's objectively baseless trade secrets allegations against Mr. Lau have caused him injury.

196. A judicial determination declaring that Mr. Lau has not misappropriated any trade secrets would help abate the injury AICPA has caused.

197. Mr. Lau is entitled to a declaration that he has not misappropriated AICPA's trade secrets and such other equitable relief as the Court deems appropriate.

198. Mr. Lau is entitled to an award of reasonable attorney's fees incurred defending AICPA's bad faith trade secrets claim pursuant to 8 U.S.C. § 1836(b)(3)(D).

199. AICPA's DTSA claim is objectively baseless and brought in bad faith.

**Sham Pleading Tactics**

200. AICPA did not identify its trade secrets with sufficient factual information to provide fair notice.

201. No reasonable litigant could expect to prevail on a trade secrets claim that defines the alleged trade secrets as broadly and vaguely as AICPA has.

202. The alleged "Trade Secrets" at issue areExam Content", which

includes the questions, problems and suggested answers, prefatory material, narrative passages, diagrams and answer choices that make up the test items used in the Uniform CPA Exam.

203. There are no qualitative allegations about Exam Content anywhere in the Complaint. *See, e.g., Vendavo, Inc. v. Price f(x) AG*, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018).

204. Complaint does not plausibly allege any act of misappropriation by Mr. Lau. AICPA alleges only that (i) "On February 3, 2024…Defendant posted a message in the 'CPA Study Group' Discord server containing a virtually exact reproduction of both the content of an ISC multiple choice question;" (ii) "Defendant also disclosed descriptions of the subject matter of three task-based simulations on the same Discord server"; and (iii) in November 2023, "Defendant again provided details about the subject matters of four different multiple choice questions from the REG Exam." Compl. ¶¶ 73-74; 83. There are no further facts alleged about the content of these questions or Mr. Lau's posts, which precludes the Court from finding a plausible trade secrets claim based on Mr. Lau's study group communications.

205. The most plausible inferences that can be draw from AICPA's suggest that Mr. Lau's study group discussions did not involve any actual trade secrets.

206. At the time it filed its original complaint in this action, AICPA had no evidence that anyone who saw Mr. Lau's communications were persons who were not authorized to see, or who had not already seen, the alleged "trade secrets."

**No Secrecy**

207. The content tested by all sections of the Uniform CPA Exam is general industry knowledge.

208. There are only a limited number of ways to test general industry knowledge.

209. If somebody uses the AICPA's publicly available exam blueprint to guide their studying, they're going be looking at a detailed map of what could be on the test.

210. Persons who use the full scope of CPA exam study materials that are readily available through appropriate means have all the information they need to understand the subject matter of CPA exams.

211. Persons who use the full scope of CPA exam study materials that are readily available through appropriate means have all the information they need to be able to pass CPA exams.

212. Persons who use the full scope of CPA exam study materials that are readily available through appropriate means have all the information they need to understand the nature of CPA exam questions.

213. Persons who use the full scope of CPA exam study materials that are readily available through appropriate means have all the information they need to understand how test question formulations.

214. Persons who use the full scope of CPA exam study materials that are readily available through appropriate means have all the information they need to understand how test questions are organized.

215. The primary purpose of the subject information ("Exam Content") is to test general knowledge in the accountancy industry.

216. AICPA *must* make its tests available to anyone who meets the requirements to sit for their state's CPA licensure exam, and it must also make available the underlying information candidates need to prepare for the exam.

217. Mr. Lau alleges that a reasonable opportunity for discovery will show that AICPA has disclosed most if not all of the information it claims as trade secrets in prior exams, by licensing the same or similar content to test preparation providers, and by otherwise disclosing information about AICPA's exams and how

to prepare for them.

218. In 2018, the AICPA post online the BEC Exam Blueprint, with an effective date of July 1, 2019. https://us.aicpa.org/content/dam/aicpa/becomeacpa/cpaexam/examinationcontent/downloadabledocuments/cpa-exam-blueprint-bec-section-july-2019.pdf

219. On pages BEC13 to BEC17 of the BEC Exam Blueprint, it clues candidates into representative tasks on the Exam which include but is not limited to:

- Understand key characteristics of a relational database (e.g., data dictionary, data types, tables, records, fields, relationships, keys, views, queries and reports).
- Understand the flow of transactions represented in a flowchart, data diagram and system interface diagram.
- Identify the role of information systems (e.g., enterprise and application systems) in key business processes (e.g., sales, cash collections, purchasing, disbursements, human resources, payroll, production, treasury, fixed assets, general ledger and reporting).
- Use business intelligence (including data analytics and statistics) to support business decisions.
- Determine the risks associated with ensuring the completeness, accuracy and continued processing integrity in input, storage, processing and output processes.
- Determine the role and appropriateness of input, storage, processing and output application controls (e.g., authorizations, approvals, tolerance levels, input edits and configurations) to support completeness, accuracy and continued processing integrity
- Identify effective IT control activities, including manual, IT dependent

and automated controls, as well as preventive, detective and corrective controls.

- Apply cost accounting concepts, terminology, methods and measurement techniques within an entity.
- Determine the appropriate variance analysis method to measure the key cost drivers by analyzing business scenarios.

220. An updated Exam Blueprint was released in 2020, with an effective July 1, 2021. https://us.aicpa.org/content/dam/aicpa/becomeacpa/cpaexam/examinationcontent/downloadabledocuments/cpa-exam-blueprints-effective-july-2021.pdf. Therein, BEC content was updated to include:

- Obtaining and transforming data to prepare it for data analytics to support business decisions

221. Effective July 1, 2021, representative tasks were updated to include:

- Understand considerations associated with loading data into the final target database (e.g., operational data store, data warehouse or data lake) including the constraints that apply (e.g., uniqueness, referential integrity, mandatory fields), the types of loading (initial, incremental, full refresh) and load verification
- Define the attributes of a data repository such as its relevance, elements to be included or excluded, relationships between those elements and characteristics used to determine its validity, completeness and accuracy.
- Determine methods to transform raw data (structured and unstructured) to make it useful for decision-making by correcting or removing data in the dataset that is incorrect, inaccurate, incomplete, improperly formatted or duplicated and to convert, aggregate, merge,

replace, validate, format and split data

- Understand the capabilities needed in tools that support data modeling and analysis.
- Understand the data visualization techniques used to make patterns, trends and correlations more easily detected in support of better decisions.

222. The 2020 Exam Blueprint revealed the expectation for candidates to know database design techniques, including an understanding of the database structured query language also known as SQL. These topics are typically courses of study offered adjacent through information sciences programs in business or engineering degree programs; but not always made available within the accounting degree program itself.

223. The 2020 Exam Blueprint updated its BEC source material to include: the AICPA TSP 100: 2017 Trust Services Criteria for Security, Availability, Processing Integrity, Confidentiality, and Privacy (includes March 2020 updates).

224. The representative tasks combine both the applicable content knowledge and the skills required in the context of the work that a newly licensed CPA would reasonably be expected to perform.

225. Difficulty in the Exam is attributed to the different skill levels evaluated and expected of candidates that are assigned to any test item. The four (4) skill levels: remembering and understanding, application, analysis, and evaluation.

| Skill levels | |
|---|---|
| Evaluation | The examination or assessment of problems, and use of judgment to draw conclusions. |
| Analysis | The examination and study of the interrelationships of separate areas in order to identify causes and find evidence to support inferences. |
| Application | The use or demonstration of knowledge, concepts or techniques. |
| Remembering and Understanding | The perception and comprehension of the significance of an area utilizing knowledge gained. |

226. Remembering and Understanding is tested in all five areas of the BEC section. Remembering and understanding tasks focus on the knowledge necessary to demonstrate an understanding of the general business environment and business concepts, such as those involving enterprise risk management.

227. Application is also tested in all five areas of the BEC section. Application tasks focus on general topics such as those found in the subjects of economics and information technology, and the day-to-day financial management tasks that newly licensed CPAs perform, such as those involving calculations involving ratios, valuation and budgeting.

228. Analysis skills, tested in Areas II, III and V involve tasks that require a higher level of analysis and interpretation. These tasks, such as comparing investment alternatives using calculations of financial metrics, financial modeling, forecasting and projection, frequently require newly licensed CPAs to gather evidence to support inferences.

229. The BEC section does not test any content at the Evaluation skill level as newly licensed CPAs are not expected to demonstrate that level of skill in regards to the BEC content.

230. 2019 BEC Pass Rates: The pass rates for the BEC section in 2019 were 58.00% in the first quarter, 59.74% in the second quarter, 63.04% in the third quarter, and 58.61% in the fourth quarter, with a cumulative pass rate of 59.98%.

231. 2020 BEC Pass Rates: In 2020, the pass rates for the BEC section were 61.76% in the first quarter, 76.92% in the second quarter, 69.89% in the third quarter, and 60.77% in the fourth quarter, with a cumulative pass rate of 65.56%.

232. 2021 BEC Pass Rates: The pass rates for the BEC section in 2021 were 62.16% in the first quarter, 63.31% in the second quarter, 61.73% in the third quarter, and 60.27% in the fourth quarter, with a cumulative pass rate of 61.94%.

233. BEC pass rates were generally higher among the 4 sections of the exam, with highest pass rates seen in years 2019, 2020, and 2021.[7]

234. According to AICPA's published data, pass rates for 2024 are depicted in the table below.

**2024**

| Section | Q1 | Q2 | Q3 | Cumulative |
|---|---|---|---|---|
| AUD | 44.63% | 46.58% | 47.80% | 46.53% |
| FAR | 41.92% | 40.58% | 39.82% | 40.59% |
| REG | 63.43% | 63.45% | 62.97% | 63.26% |

235. Between 2020 to 2023, the AICPA took measures to revamp and enhance the CPA Exam to reflect changes to accountancy in large. Effective Jan 1, 2024, the BEC Exam, in its lasting/final form, removed from the CPA exam.[8] "The

[7] https://ipassthecpaexam.com/cpa-exam-pass-rate/

[8] https://www.evolutionofcpa.org/

creation of three Core Exam sections and three Discipline Exam sections required realignment of some existing CPA Exam content and the identification of new content to be assessed on the 2024 CPA Exam. Substantially all of the content previously assessed in the Business Environment and Concepts (BEC) section has been reallocated to the AUD, FAR, BAR, and ISC Exam sections."[9]

236. Over 67,000 people took the CPA exam in 2022 and 72,000 took the CPA exam in 2021.[10]

237. In other words, at all times relevant, AICPA expected and intended for its so called "trade secrets" to be exposed to at least 70,000 people *each year*.

238. Since the subject 2019 BEC test was created, its content was exposed to at least 70,000 people in 2020, 70,000 people in 2021, 67,000 people in 2022, and at least 50,000 people in 2023.

239. Thus, at the time of Mr. Lau's alleged conduct in 2024, no less than 250,000 people have had access to the alleged trade secrets at issue.

240. Information known to at least 250,000 people cannot be considered a secret.

**No Value Because of Secrecy**

241. AICPA's influence in the CPA licensure process and power as the sole supplier of CPA licensing exams that allows AICPA to treat its test information as "property."

242. AICPA licenses and monetizes retired exam content to third parties for the express purpose of allowing those third parties to teach exam candidates the subject information.

243. Mr. Lau alleges that a reasonable opportunity for discovery will reveal

---

[9] https://www.aicpa-cima.com/resources/download/exposure-draft-proposed-2024-cpa-exam-changes

[10] https://www.nysscpa.org/article-content/cpa-exam-takers-in-2022-fewest-in-17-years-053023#sthash.8lBnJ7Zm.DyEZi4j8.dpbs

that the contracts referred to in paragraph 51 of AICPA's complaint show licenses to and royalties for copyright licenses, not trade secrets licenses, and will otherwise prove that any economic value test materials have is not derived from secrecy.

**Readily Ascertainable Through Proper Means**

244. Anyone who wants access to the alleged trade secrets and has the minimum qualifications necessary to sit for a CPA exam in any U.S. State or territory can readily ascertain the alleged trade secrets through proper means.

245. In California, the steps for gaining access to the alleged trade secrets is depicted in the info graphic below:




246. AICPA doesn't have the right to exclude qualified exam candidates from accessing the information contained in CPA Exams.

247. AICPA *must* make its tests available to anyone who meets the requirements to sit for their state's CPA licensure exam, and it must also make available the underlying information candidates need to prepare for such tests.

248. Anyone qualified candidate who wishes to access CPA Exam Content has a "need to know" that information. *See* Compl. ¶ 45.

249. Over the past 20 years, Mr. Lau has taken 25 CPA exams and has been exposed to several hundred if not thousands of questions and answers.

250. At least some of the exam questions and/or exam sections Mr. Lau has taken in the past have been retired and are obtainable from sources other than AICPA.

251. Mr. Lau's knowledge of the Uniform CPA Exam and related content comprising the terminology, regulations, theories, and methodologies of the accounting profession is based on his two decades of experience taking CPA exams, as well as his undergraduate education and post-graduate work experience in the field.

252. At least some of the information at issue in this case is disclosed in exam questions and/or exam sections Mr. Lau has taken in the past that have been retired and are obtainable from sources other than AICPA. As Mr. Lau understands AICPA's allegations, nearly all of the subject information in this case is general knowledge known to those in the relevant industries.

253. AICPA has been making false and objectively baseless allegations of trade secret misappropriation against Mr. Lau since before this action commenced. For example, Mr. Lau understands that AICPA maliciously misrepresented to at least one law enforcement agency that Mr. Lau had committed criminal activity in order to trick that agency into issuing a search warrant to a third-party ISP. Mr. Lau avers that a reasonable opportunity for discovery will show that AICPA's allegation was objectively baseless and made for subjectively improper purposes. AICPA has engaged in a pattern of sham activity designed to injure Mr. Lau and intimidate the public.

**No Misappropriation**

254. Mr. Lau did not acquire the alleged trade secrets by improper means.

255. Mr. Lau did not use the alleged trade secrets without express or at least

implied consent.

256. Mr. Lau believes he did not disclose the alleged trade secrets to anyone who had not already accessed them and/or obtained the minimum qualifications for accessing them, and Mr. Lau did not have the intent to deprive AICPA of any property.

## THIRD CLAIM FOR RELIEF
## (Declaratory Judgement of No Breach or Damages)

257. Mr. Lau incorporates by reference and re-alleges herein the allegations contained in paragraphs 1-256 above.

258. An actual justiciable controversy exists between Mr. Lau, on the one hand, and AICPA, on the other, because AICPA accuses Mr. Lau of breach of contract, and Mr. Lau denies AICPA's allegation.

259. Mr. Lau and AICPA have adverse legal interests.

260. The sufficiency and immediacy of the parties' dispute warrants the issuance of declaratory judgment under 28 U. S. C. § 2201.

261. AICPA's breach of contract allegations against Mr. Lau have caused him injury.

262. A judicial determination declaring that Mr. Lau has not breached any contract would help abate the injury AICPA has caused.

263. Mr. Lau is entitled to a declaration that he has not breached any enforceable contract and that AICPA is not entitled to any relief on any breach of contract claim, as well as such other equitable relief as the Court deems appropriate.

264. AICPA has not performed and is not excused from performing the obligations it owes to Mr. Lau.

265. AICPA has a policy and practice of attempting to force CPA candidates into agreeing to unconscionable contracts of adhesion that CPA uses for unlawful purposes, such as to use support sham copyright allegations to obtain

illegal monopolies over uncopyrightable ideas and concepts and to support sham trade secrets claims.

266. AICPA does not make the terms of its alleged NDA agreements clear to exam candidates. Instead, AICPA permits third parties to present to candidates a thicket of disparate terms of service, disclosure agreements, and so-called "Uniform" NDAs that don't actually have uniform terms. As a result, candidates like Mr. Lau are never presented in one place and at one time all of the documents AICPA contends comprise the subject agreements.

267. By the time AICPA causes third parties to present so-called "Uniform" NDAs to candidates, those candidates already have entitlement from relevant licensing authorities to access AICPA exam content, which entitlements are matters of state law and may not be denied by AICPA in service of its own private interests in monetizing exam content.

268. By the time AICPA causes third parties to present so-called "Uniform" NDAs to candidates, those candidates already paid monies in order to prepare for and schedule their CPA Exams, which monies will not be refunded should the candidate decide not to sign the AICPA's purported NDAs.

269. AICPA's NDAs are not supported by valid consideration.

270. AICPA's NDAs do not have the required mutuality of obligation required to create an enforceable contract.

271. AICPA is interfering with Mr. Lau's ability to become licensed by causing the withholding of exam scores that have nothing to do with the allegations of the Complaint.

272. AICPA is without legal basis preventing Mr. Lau from reattempting another retake of his final CPA exam in the current test window, making it more expensive than it once was for Mr. Lau to obtain licensure.

273. AICPA interfered with Mr. Lau's contracts with third parties, denying

Mr. Lau disability accommodations owed to him under California law and interfering with performance owed to Mr. Lau under third party agreements with test providers. Mr. Lau has paid money to take a test and receive scores for tests, and AICPA both torpedoed his testing attempts and is causing the scores to be unlawfully withheld.

274. To the extent there is any binding contract between Mr. Lau and AICPA, AICPA has breached it.

275. On or around August 12, 2024, Mr. Lau made a payment to the California Board of Accountancy, which payment authorized Mr. Lau under state law to sit for the FAR examination and receive reasonable disability accommodations for that exam.

276. On August 14, 2024, Mr. Lau made another payment to NASBA, which payment entitled him to schedule the FAR exam and receive for reasonable disability accommodations for that exam.

277. On September 24, 2024, Mr. Lau sat for the FAR examination and received a paper attendance ticket.

278. On September 25, 2024, the test window cutoff expired.

279. FAR exam scores were released on October 30 and/or October 31, 2024. Mr. Lau's scores have not been provided or posted.

280. On November 1, 2024, Mr. Lau learned that status postings between CBA and NASBA showed no FAR exam scheduled or attended for Mr. Lau, despite the monies he paid and time he spent to sit for the exam.

281. From November 3 to November 15, 2024, Mr. Lau confirmed with Prometric that his test was submitted for scoring on September 24, 2024 and confirmed with NASBA that they must receive a scored exam back from AICPA in order to update status from scheduled to scored.

282. On November 16, 2024, Mr. Lau received an inquiry letter from the

CBA regarding AICPA's allegations in this case.

283. On January 25, 2025, the CBA confirmed that AICPA has placed a hold on Mr. Lau's September, 24, 2024 FAR exam scores.

284. AICPA is holding Mr. Lau's September, 24, 2024 FAR exam scores hostage in an attempt to obtain an undue advantage in its sham litigation against Mr. Lau.

285. There is no lawful justification for AICPA's withholding of Mr. Lau's September, 24, 2024 FAR exam scores. Mr. Lau's September, 24, 2024 FAR exam scores have nothing to do with the conduct alleged in AICPA's complaint.

286. Mr. Lau alleges that a reasonable opportunity for discovery will yield evidence that AICPA has been communicating with CBA in an attempt to interfere with Mr. Lau's licensure and in hopes of gaining an undue, unfair advantage in this sham civil case.

287. AICPA breached the covenant of good faith and fair dealing, including by failing to contact Mr. Lau concerning his alleged breaches.

288. AICPA's breaches of its own duties and obligations bar it from any contract or equitable relief on its breach claims.

## FOURTH CLAIM FOR RELIEF
## (Tortious Interference)

289. Mr. Lau incorporates by reference and re-alleges herein the allegations contained in paragraphs 1-254 above.

290. Mr. Lau entered into valid contracts with NASBA, Prometric, and the CBA.

291. AICPA had knowledge of Mr. Lau contracts with NASBA, Prometric, and the CBA.

292. Mr. Lau's contracts included the right to reasonable disability accommodations designed to minimize distractions.

293. Mr. Lau's contracts included the right to receive timely exam scores.

294. AICPA wrongfully interfered with Mr. Lau's disability accommodations by slapping him with a copy of the original complaint in this action as Mr. Lau was entering his exam facility.

295. AICPA wrongfully interfered with Mr. Lau's contractual relations by causing Mr. Lau's score for his September 24, 2024 examination to be withheld.

296. Mr. Lau has suffered harm due to AICPA's interference with his contracts with NASBA, Prometric, and the CBA. AICPA is effectively preventing Mr. Lau from obtaining licensure in California.

297. Mr. Lau is entitled to damages in an amount to be determined by the jury at trial.

298. Mr. Lau is also entitled to equitable relief to abate and remedy the harms caused by AICAP's tortious interference.

## FIFTH CLAIM FOR RELIEF
**(Disability Discrimination in violation of the Americans with Disabilities Act, 42 U.S.C. § 12189)**

299. Mr. Lau incorporates by reference and re-alleges herein the allegations contained in paragraphs 1-298 above.

300. AICPA offers examinations and courses related to licensing for professional and trade purposes.

301. AICPA is subject to the requirement of 42 U.S.C. § 12189 to offer CPA "examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals."

302. Mr. Lau suffers from an impairment that substantially limits major life activities within the meaning of 42 U.S.C.S. § 12102.

303. Mr. Lau requested reasonable disability accommodations from CBA, NASBA, and Prometric in connection with his efforts to pass the Uniform CPA Exam.

304. Mr. Lau requested reasonable disability accommodations from AICPA and its agents in connection with his efforts to pass the Uniform CPA Exam.

305. CBA, Prometric, and NASBA recognized that Mr. Lau is entitled to reasonable exam accommodations due to his disability.

306. AICPA and its agents recognized that Mr. Lau is entitled to reasonable exam accommodations due to his disability.

307. AICPA and its agents recognized that Mr. Lau is entitled to reasonable exam accommodations that include a testing environment free from unnecessary distractions.

308. AICPA intentionally denied Mr. Lau a testing environment free from unnecessary distractions by maliciously carrying out the legally pointless conduct of handing Mr. Lau a copy of the complaint as he was walking into what should have been his last CPA exam.

309. AICPA's intentional and malicious denial of disability accommodations to Mr. Lau that AICPA and its agents had already agreed to provide to Mr. Lay amounts to disability discrimination in violation of the Americans with Disabilities Act.

310. Mr. Lau suffered harm due to AICPA's misconduct. Mr. Lau was unable to perform his best on his September 24, 2024 exam and has not been able to even obtain his scores due to AICPA's discriminatory conduct.

311. Mr. Lau is entitled to compensatory damages under 42 U.S.C. § 12117(a) and 42 U.S. Code § 1981a in an amount to be determined by the jury at trial.

312. ADA's conduct towards Mr. Lau was a discriminatory practice carried out with malice or with reckless indifference to the federally protected rights of Mr. Lau.

313. Mr. Lau is entitled to punitive damages pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 1981a(b).

314. A reasonable opportunity for discovery is likely to show that AICPA has more than 500 employees for purposes of 42 U.S. Code § 1981a(b)(3)(D).

315. Mr. Lau is entitled to attorneys' fees and such other equitable relief as the Court deems necessary to abate and remedy the harms caused by AICAP's discriminatory conduct.

**FIFTH CLAIM FOR RELIEF**
**(Disability Discrimination in violation of the California Unruh Act, Cal. Civ. Code § 51)**

316. Mr. Lau incorporates by reference and re-alleges herein the allegations contained in paragraphs 1-278 above.

317. AICPA violated Cal. Civ. Code § 51(f) by intentionally denying Mr. Lau disability accommodations.

318. Mr. Lau suffered harm due to AICPA's misconduct.

319. Mr. Lau has been unable to obtain licensure in California due to AICPA's conduct, which has prevented Mr. Lau from pursuing a lawful profession and has suppressed the amount of wages Mr. Lau can earn.

320. Mr. Lau is entitled to compensatory damages under Cal. Civ. Code § 52.

321. Mr. Lau is entitled to treble damages under Cal. Civ. Code § 52(a).

322. Mr. Lau is entitled to attorneys fees and such other equitable relief as the Court deems necessary to abate and remedy the harms caused by AICAP's discriminatory conduct.

**SIXTH CLAIM FOR RELIEF**
**(Violation of California's Unfair Competition Law, Cal. Civ. Code § 17200 et seq.)**

323. Mr. Lau incorporates by reference and re-alleges herein the allegations

contained in paragraphs 1-322 above.

324. AICPA regularly conducts business in California and is subject to California's Unfair Competition Law, Cal. Civ. Code § 17200 *et seq*.

325. AICPA has engaged in unfair, unlawful, and deceptive business practices as discussed above and in Mr. Lau's affirmative defenses, including by engaging in unscrupulous and coercive contracting practices, engaging in deliberate disability discrimination, engaging in copyright misuse, initiating and maliciously prosecuting sham legal proceedings, and interfering with contractual rights.

326. In addition to the violations of law, breaches of ethical standards, and incipient violations of antitrust laws discussed above, AICPA has engaged in the following unlawful conduct amounting to practices violative of California's Unfair Competition Law:

a. Attempting to coerce agreements that unlawfully restrain California resident's pursuit of their lawful profession, in violation of Cal. Bus. & Prof. Code § 16600;

b. Deceptively gaining access to third party platforms like Reddit by misrepresenting that AICPA would abide by platform terms of service which provide, for example, that the platform's services would not be used by AICPA for its own commercial purposes

c. Inducing third party end users of to breach their obligations to third party platform providers by, e.g., enlisting those third parties to use platforms for AICPA's own commercial purposes, in violation of contractual obligations.

327. AICPA's violations of the UCL have caused Mr. Lau injury in fact, including economic injury. For example, each time Mr. Lau has taken a test, he as paid money to do so. Mr. Lau's last payment of fees for the September 24, 2024 exam exceeded $250 dollars.

328. Mr. Lau's efforts to pursue his lawful profession have been hindered by AICPA's misconduct. For example, he cannot continue to pursue licensure because of AICPA's conduct.

329. Mr. Lau is entitled to attorneys fees and such other equitable relief as the Court deems necessary to abate and remedy the harms caused by AICPA's UCL violations.

WHEREFORE, Mr. Lau prays for judgment as follows:

1. Declaratory judgment that the material Mr. Lau allegedly copied is not entitled to copyright protection;
2. Declaratory judgment that Mr. Lau has not infringed the Registered Work;
3. Declaratory judgment that the material Mr. Lau allegedly copied is not entitled to trade secrets protection;
4. Declaratory judgment that Mr. Lau has not misappropriated AICPA's trade secrets;
5. Declaratory judgment that Mr. Lau has not breached any enforceable contract with AICPA;
6. Declaratory judgment that AICPA is not entitled to any relief on its contact claim due to AICPA's own breaches and bad faith conduct;
7. Declaratory judgment that Mr. Lau is the prevailing party in this action;
8. Judgement that AICPA has tortiously interfered with Mr. Lau's contracts and an award of damages caused by such tortious conduct;
9. Judgment that AICPA has violated the American's With Disability Act and an award of damages caused by such violations, along with reasonable attorneys fees incurred in prosecuting Mr. Lau's ADA claim;

10. Judgment that AICPA has violated the California Unruh Civil Rights Act and an award of treble damages caused by such violations, along with reasonable attorneys fees incurred in prosecuting Mr. Lau's claim;
11. Attorneys' fees incurred defending AICPA's copyright infringement claim pursuant to 17 U.S.C. § 505;
12. Attorneys' fees incurred defending AICPA's DTSA claim pursuant to 18 U.S.C. § 1836(b)(3)(D);
13. Such other equitable and legal relief as the Court deems reasonable and just.

Dated: January 28, 2025 ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Robert L. Uriarte*
ROBERT L. URIARTE
Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

**JURY TRIAL DEMANDED**

Pursuant to the Seventh Amendment to the United States Constitution and Fed. R. Civ. P. 38, Mr. Lau hereby demands a jury trial on all issues so triable as of right.

Dated: January 28, 2025 ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Robert L. Uriarte*
ROBERT L. URIARTE
Attorneys for Defendant/Cross-Complainant
STEPHEN LAU