ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
AVERY CARTWRIGHT (SBN 354724)
acartwright@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA 90071
Telephone: +1 213 629 2020
Facsimile: +1 213 612 2499

CHARLES WEINER (*Pro Hac Vice*)
charles@charlesweinerlaw.com
LAW OFFICE OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Telephone: + 1 267-685-6311
Facsimile: +1 215-340-768

Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, | Case No. 5:24-cv-01940-SSS-SHKx |
| Plaintiff, | ***EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |
| v. | |
| STEPHEN LAU, | |
| Defendant. | |
| STEPHEN LAU, | |
| Cross-Complainant, | |
| v. | |
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, | |
| Cross-Defendant, | |

*EX PARTE* **APPLICATION**

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD, PLEASE TAKE NOTICE** that Defendant and Counterclaimant Stephen Lau hereby moves pursuant to C.D. Cal. Local Civ. R. 7-19 and Fed. R. Civ. P. 65 for a temporary restraining order enjoining Cross-Defendant the American Institute of Certified Public Accountants ("AICPA") from:

(i) withholding Mr. Lau's September 24, 2024 Financial Accounting and Reporting ("FAR") exam score;

(ii) denying or interfering with Mr. Lau's entitlement to fair and equitable access to and implementation of the Uniform CPA Exam and Mr. Lau's ADA accommodations thereto.

Mr. Lau also respectfully requests that AICPA be ordered to show cause within 14 days why a preliminary injunction should not issue against AICPA enjoining AICPA from withholding Mr. Lau's future exam scores or interfering with his access and disability accommodations pending resolution of the merits of this dispute.

Mr. Lau's *ex parte* Application is based on the accompanying Memorandum of Points and Authorities and supporting evidence; C.D. Cal. Local Civ. R. 7-19; Fed. R. Civ. P. 65; the Americans with Disabilities Act, California common law, and California's Unfair Competition Law.  Mr. Lau's Application is also based on the pleadings on file in this action, all matters subject to judicial notice, and such other evidence and argument that may be received by the Court in connection with this Application.

AICPA's counsel oppose Mr. Lau's Application.  The names, telephone numbers, and email addresses for AICPA's counsel of record are:

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC
CASE NO. 5:24-CV-01940-SSS-SHKx

1

2   TENAYA RODEWALD
    trodewald@sheppardmullin.com
3   Telephone:   (818) 634-1917

4   KAZIM A. NAQVI
    knaqvi@sheppardmullin.com
5   Telephone:   (310) 228-3700

6   CHRISTOPHER M. THOMAS (*admitted pro hac vice*)
    christhomas@parkerpoe.com
7   Telephone:  (919) 835-4626

8   ANDREW P. TABELING (*admitted pro hac vice*)
    andytabeling@parkerpoe.com
9   Telephone:  (919) 835-4626

10  Nicholas H Lee (*admitted pro hac vice*)
    nicholaslee@parkerpoe.com
11  Telephone:  704-335-9876

12

13
    Dated: April 2, 2025                ORRICK, HERRINGTON & SUTCLIFFE LLP
14

15

16                                      By: _/s/ Robert L. Uriarte_
                                                ROBERT L. URIARTE
17                                      Attorneys for Defendant/Cross-Complainant
                                                    STEPHEN LAU
18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC
CASE No. 5:24-cv-01940-SSS-SHKx

# **TABLE OF CONTENTS**

INTRODUCTION………......……………………………………………………1

FACTUAL BACKGROUND

   The CBA and CPA Licensure in California …….…………………………...…2

   Accessing the Uniform CPA Examination in California………………….…....4

   Mr. Lau's Efforts to Obtain a CPA License in California…………………..….8

   AICPA's Unhinged Conduct……………………………………………………...9

LEGAL STANDARD...……………………………………………………………10

ARGUMENT

I.    Mr. Lau Is Likely to Succeed on the Merits of His Interference, Discrimination, and Unfair Competition Law Claims

     A. AICPA is Interfering with Mr. Lau's Contractual Rights..……………11

     B. AICPA is Retaliating Against Mr. Lau in Violation of the ADA…......14

     C. AICPA is Violating California's Unfair Competition Law…………..17

II.   AICPA is Causing Mr. Lau Irreparable Harm……………………………19

III.  The Balance of Equities and Public Interest Favor Mr. Lau………...……20

CONCLUSION…………………………………………………………………..21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph v. Coastal Auto Sales, Inc.*,
 184 Cal. App. 4th 1443 (2010)........................................................................17

*Am. Express Travel Related Servs. Co. v. Pirch, Inc.*,
 2024 U.S. Dist. LEXIS 162376 (S.D. Cal. 2024) ............................................11

*Aryeh v. Canon Bus. Sols., Inc.*,
 55 Cal. 4th 1185 (2013)..................................................................................18

*Bastidas v. Good Samaritan Hosp. LP*,
 2016 U.S. Dist. LEXIS 33405 (N.D. Cal. 2016).............................................15

*Bledea v. Indymac Fed. Bank*,
 2010 U.S. Dist. LEXIS 23391 (E.D. Cal. 2010) .............................................16

*Boschma v. Home Loan Ctr., Inc.*,
 198 Cal. App. 4th 230 (2011).........................................................................18

*Cappello v. Walmart Inc.*,
 394 F. Supp. 3d 1015 (N.D. Cal. 2019)..........................................................17

*Chapman v. Skype Inc.*,
 220 Cal. App. 4th 217, 162 Cal. Rptr. 3d 864 (2013) ....................................18

*Cleveland v. Ludwig Inst. for Cancer Research Ltd.*,
 2020 U.S. Dist. LEXIS 221934 (S.D. Cal. 2020) ...........................................16

*CRST Van Expedited, Inc. v. Werner Enterprises, Inc*,
 479 F.3d 1099 (9th Cir. 2007)........................................................................18

*Dawson v. Entek Int'l*,
 630 F.3d 928 (9th Cir. 2011)....................................................................15, 20

*Doe v. Samuel Merritt Univ.*,
 921 F. Supp. 958 (N.D. Cal. 2013).............................................................19, 20

*Donovan v. RRL Corp.*,
 26 Cal. 4th 261 (2001)....................................................................................12

*EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC
CASE NO. 5:24-cv-01940-SSS-SHKx

*E. & J. Gallo Winery v. Andina Licores S.A.*,
  2007 U.S. Dist. LEXIS 11281 (E.D. Cal. Jan. 29, 2007) ................................... 17

*Estakhrian v. Obenstine*,
  2017 U.S. Dist. LEXIS 224790 (C.D. Cal. 2017) ............................................. 20

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
  98 F.4th 1180 (9th Cir. 2024) ......................................................................... 11

*Gallagher v. San Diego Unified Port Dist.*,
  2009 U.S. Dist. LEXIS 9277 (S.D. Cal. 2009) ................................................ 15

*Gray v. Dignity Health*,
  70 Cal. App. 5th 225 (2021) ............................................................................ 19

*Hudson v. United States Bureau of Prisons*,
  1994 U.S. Dist. LEXIS 11664 (N.D. Cal. 1994) ........................................ 16, 17

*Huggard v. United Performance Metals, Inc.*,
  2011 U.S. Dist. LEXIS 151276 (S.D. Ohio 2011) .......................................... 14

*Irvin v. Roldan*,
  2019 U.S. Dist. LEXIS 228183 (C.D. Cal. 2019) ........................................... 14

*Isbell v. Oklahoma*,
  2018 U.S. Dist. LEXIS 112871 (N.D. Cal. 2018) ........................................... 14

*Ixchel Pharma, LLC v. Biogen, Inc.*,
  9 Cal. 5th 1130 (2020) .................................................................................... 12

*Jefferson Pilot Life Ins. Co. v. Goold*,
  2005 U.S. Dist. LEXIS 45931 (C.D. Cal. 2005) ............................................ 13

*Johnson v. Macy*,
  145 F. Supp. 3d 907 (C.D. Cal. 2015) ....................................................... 16, 17

*Karam v. Univ. of Ariz.*,
  2022 U.S. Dist. LEXIS 18997 (D. Ariz. 2022) .............................................. 14

*Leonel v. Am. Airlines, Inc.*,
  400 F.3d 702 (9th Cir. 2005) (ADA violations are UCL predicates) ............... 18

*Maczaczyj v. State of N.Y.*,
  956 F. Supp. 403 (W.D.N.Y. 1997) ................................................................ 20

*Meyers v. Kendall*,
   2024 U.S. Dist. LEXIS 99412 (C.D. Cal. 2024) .................................................. 15

*Moran v. Prime Healthcare Mgmt., Inc.*,
   3 Cal. App. 5th 1131 (2016) .......................................................................... 17

*Pardi v. Kaiser Found. Hosps.*,
   389 F.3d 840 (9th Cir. 2004) ......................................................................... 14

*Perez v. United States Postal Serv.*,
   76 F. Supp. 3d 1168 (W.D. Wash. 2015) ......................................................... 15

*Ross v. Indep. Living Res. of Contra Costa Cty.*,
   2010 U.S. Dist. LEXIS 32775 (N.D. Cal. 2010) ........................................... 10, 14

*Sachar v. Magasinn*,
   2023 Cal. Super. LEXIS 11102 (Cal. Sup. 2023) .............................................. 17

*Shroyer v. New Cingular Wireless Servs.*,
   622 F.3d 1035 (9th Cir. 2010) ....................................................................... 18

*Sonico v. Charter Communs., LLC*,
   2021 U.S. Dist. LEXIS 15585 (S.D. Cal. 2021) ............................................... 12

*Twaite v. Allstate Ins. Co.*,
   216 Cal. App. 3d 239 (1989) ......................................................................... 16

*Williams v. Ala. DOT*,
   509 F. Supp. 2d 1046 (M.D. Ala. 2007) .......................................................... 14

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ........................................................................................ 10

*Yates v. W. Contra Costa Unified Sch. Dist.*,
   2017 U.S. Dist. LEXIS 123594 (N.D. Cal. 2017) ............................................. 15

*Zhang v. Superior Court*,
   57 Cal. 4th 364 (2013) ................................................................................. 18

*Zoom Video Communs., Inc. v. Ringcentral, Inc.*,
   2021 U.S. Dist. LEXIS 59902 (N.D. Cal. 2021) ............................................... 20

**Statutes**

California Accountancy Act ............................................................................. 3, 18

*EX PARTE* APPLICATION FOR TEMPOARY
RESTRAINING ORDER AND OSC
CASE NO. 5:24-CV-01940-SSS-SHKx

ADA ............................................................................................................ *passim*

ADA Section 503(a) ......................................................................................... 13

Cal. Bus. & Prof. Code, § 17200 ....................................................................... 18

Cal. Bus. & Prof. Code §§ 480, 5100-5115 ........................................................ 3

Cal. Bus. & Prof. Code § 580 ............................................................................. 2

Cal. Bus. & Prof. Code § 5000.1 ....................................................................... 20

Cal. Bus. & Prof. Code § 5082.2 ......................................................................... 2

Cal. Civ. Code § 1550 ....................................................................................... 12

Cal. Civ. Code § 1642 ....................................................................................... 16

Cal. Gov't. Code § 11500 ................................................................................... 3

Cal Bus. & Prof. Code §5000 et seq. ................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 19 ............................................................................................. 16

Fed. R. Civ. P. 26(a) .................................................................................. 10, 16

L.R. 11-6.1 ....................................................................................................... 21

## MEMORANDUM OF POINTS AND AUTHORTIES

## INTRODUCTION

Stephen Lau has been working to pass the suite of exams required to become a Certified Public Accountant in California ("Uniform CPA Exam") for nearly 20 years. Mr. Lau's journey has been challenging due to learning disabilities, but he has persevered and passed at least three of four Uniform CPA Exam sections. Mr. Lau does not know whether he has passed his final examination section, a FAR Exam he took September 24, 2024. AICPA is unlawfully withholding that score because it is mad at Mr. Lau. In doing so, AICPA is acting as the *de facto* gatekeeper for Mr. Lau's California CPA license in an unlawful and retaliatory way that violates state and federal law. Mr. Lau seeks an order compelling AICPA to stop withholding his September 2024 FAR exam score and enjoining AICPA from further disability discrimination.

AICPA's conduct is unlawful for at least three reasons. First, AICPA is intentionally interfering with Mr. Lau's right to receive his score, and to receive the process he is due, under contracts with the California Board of Accountancy (CBA), the National Association of Boards of Accountancy (NASBA), and the test proctoring company Prometric. Second, AICPA's conduct is retaliatory in violation of the Americans with Disabilities Act. Third, AICPA's conduct violates California's Unfair Competition Law, whether AICPA's motives are deceptive (in violation of the UCL), retaliatory (in violation of the ADA), or both.

During the parties' Civ.L.R. 7-3 discussions, AICPA said it's withholding Mr. Lau's September 2024 FAR Score because of online study group comments Mr. Lau made in November 2023 and February 2024 about different exams. AICPA also invoked a new alleged contract between AICPA and Mr. Lau that that AICPA has never pleaded or mentioned. AICPA's newfound arguments lack merit, and they are obvious pretexts. AICPA timely tendered a failing FAR score to Mr. Lau in July 2024 for a June 2024 exam, and it did nothing to stop Mr. Lau from

scheduling, paying for, and taking the FAR Exam again in September 2024. In the *status quo ante*, Mr. Lau was being permitted to schedule exams, take them, and timely receive his scores. Only after Mr. Mr. Lau asserted his rights under the ADA and undertook to defend himself against AICPA's claims in this case did AICPA begin secretly withholding Mr. Lau's scores. AICPA's sham claims about Mr. Lau's study group comments will be resolved in due course. The narrow question presented by this motion is whether AICPA's self-help tactic of withholding Mr. Lau's scores for a September 2024 FAR exam is unlawful conduct that should be enjoined.

## **FACTUAL BACKGROUND**

Mr. Lau cannot move forward with his CBA license application if AICPA continues withholding his September 2024 FAR score. If Mr. Lau passed the exam, he is entitled to complete his licensure application immediately. Ex 1 at 2; Cal. Bus. & Prof. Code § 580. If Mr. Lau did not pass, then he is entitled to reschedule another FAR exam. Cal. Bus. & Prof. Code § 5082.2; 16 Cal.Code Reg. § 7.1(a). But he can only do these things if AICPA stops its self-help score withholding. Time is of the essence: if Mr. Lau can't obtain a passing FAR score by June 30, 2025, his previous exam scores will begin to expire and he will lose credit for tests he has already worked many years to pass. *Id*. Declaration of Stephen Lau ("Lau Decl.") ¶7. If he needs to retake the FAR exam, every day that goes by is one less day Mr. Lau has to schedule and mentally prepare for it. AICPA is intentionally inflicting injury on Mr. Lau and only the Court can put a stop to it.

**The CBA and CPA Licensure**

"[T]he California Legislature has entrusted the California Board of Accountancy (CBA) with protecting the public related to the practice of public accountancy in California." Ex. 2 at 1. The CBA acts by the authority of the California Accountancy Act, Cal Bus. & Prof. Code §5000 et seq. *Id*. There are three general requirements for CPA licensure in California. A candidate must (1)

pass the Uniform CPA Examination, (2) complete the required education, and (3) obtain accounting experience. "After passage of the Uniform CPA Examination, and fulfillment of the requisite education and experience, an applicant may apply for licensure." Ex. 2 at 11. Upon receipt of an application, the CBA processes the applicant's application and payment, reviews the applicant's requirements information and will then issue a license upon payment of the applicant's initial license fee. Ex. 4 at 2. Mr. Lau has satisfied each of the requirements for licensure except passage of his final CPA exam section. Lau Decl. ¶5. Mr. Lau stands ready to complete his application and pay all necessary fees if he passed his 2024 FAR exam; if Mr. Lau did not pass, he wishes to reschedule and retake the exam as soon as possible. *Id*. ¶8.

The Accountancy Act gives the CBA responsibility for "[ensuring] that only candidates who meet [the CBA's] qualifications are allowed to take the national Uniform CPA Examination" in California. Ex. 2 at 1. California law also gives CBA the authority to determine whether to take disciplinary action against a licensee or license candidate. Cal. Bus. & Prof. Code §§ 5100, 5110. Because of the important due process implications of such a decision, the CBA's authority is constrained by formal procedures that must be followed *before* adverse action can be taken against a candidate. Cal. Bus. & Prof. Code §§ 480, 5100-5115.

Only "[a]fter notice and hearing" may the CBA deny an applicant's license or restrict access to the Uniform CPA Exam. *See, e.g*., Cal. Bus. & Prof. Code §§ 5100 & 5102; Cal. Gov't. Code § 11500. For example, the CBA may, "*after notice and an opportunity for a hearing*…deny an application to take the licensing examination, deny admission to current and future licensing examinations, void examination grades, and deny an application for a license or registration" based on certain conduct like "cheating." Cal. Bus. & Prof. Code § 5110. "Applicants, who are aggrieved by any action taken by a committee or staff of the CBA as it relates to experience for CPA licensure, can submit an appeal." Ex. 2 at 9.

**Accessing the Uniform CPA Examination in California**

In California, there are three organizations that a CPA exam candidate directly interfaces with in order to schedule, take, and receive scores for sections of the Uniform CPA exam: (i) the CBA; (ii) the National Association of Boards of Accountancy ("NASBA:"); and (iii) Prometric. Ex.4 at 2.

**CBA's Process.** A candidate must first create a client account with the CBA by visiting its website. *Id*.; Lau Decl. ¶ 10. A prominent "Examination" menu box on the CBA website contains two weblinks: one link for "Video and Information About How to Apply" and another link to "Apply for Examination Now." Ex. 6. The video entitled "How to Apply for the CPA Exam on the CBA Website" tells candidates "exactly how to apply for the CPA exam on the California Board of Accountancy website" and says that answering "yes" to application question number 8 "will allow you to receive your exam scores in your [CBA] account." Ex. 7. The CBA also states that candidates must fill out a "remittance form," "which is how you select your exam…when you are ready to take or retake [exam] sections." This remittance form must be printed and mailed to the CBA along with an application fee. The CBA tells candidates: "when you're ready for more [exam] sections you just send us another remittance form and fee. You will receive your CPA exam scores…in your client account" once they are available. Ex. 7.

Clicking the "Apply for Examination Now" link takes users to a webpage that directs users to a Reasonable Accommodations Webpage that informs candidates that CBA "approves reasonable accommodations based on a physical or mental disability or medical condition." Lau Decl. ¶10. "All requests for accommodations require CBA approval," and "[r]equests must include all required documentation and must be submitted to the CBA with the Application Remittance Form and payment." Ex. 9 at 1-2. Candidates must comply with all of the CBA's accommodation request requirements "[e]ach time [they] apply and pay the examination application fee to the CBA." *Id.*at 3. The Reasonable

Accommodations Webpage also directs users to review a "CPA Exam Candidate Guide" provided on NASBA's website and to "[v]isit Prometric's website for information regarding items that are allowed in the testing room without prior CBA approval."  Ex. 9.  Clicking on the "CPA Exam Candidate Guide" link takes users to a NASBA controlled URL that contains a further link to a "Candidate Guide." Pages 49-50 of the Candidate Guide contain a section entitled "Receive Your Scores" which informs users in pertinent part:

> After the Examination, candidate responses are forwarded to the AICPA for scoring. The AICPA does not receive or have access to candidate identities...*When advisory scores become available, the AICPA forwards them to NASBA, which then matches the scores to individual candidates. NASBA then forwards the scores to Boards of Accountancy for approval and subsequent release* to candidates…
>
> *If you fail an examination section, you will receive a Candidate Performance Report*, providing information about your examination performance as it compares with the performance of candidates in the "just passed" category...*You are likely to find this information helpful when preparing to retake an examination section*. This information is a tool to evaluate your performance and to *serve as a study guide.*

Ex. 11 at 49 (emphasis added).  The Candidate Guide further states that scores "will be released by NASBA to state Boards of Accountancy based upon the target score release date timeline" provided by the AICPA.

Returning to the CBA's website (Ex. 7), an "Information" tab to the right of the "Overview" tab takes users to an "Application Information" webpage. Ex. 12. The Application Information webpage tells candidates that "The CBA releases exam scores within two days following the publicly announced calendar of target score release dates. You may access your score(s) via your client account by selecting the 'Status' tab within your client account."  *Id*.  These statements accurately describe Mr. Lau's experience for all prior CBA exam sections and scores prior to the September 2024 FAR exam. Lau Decl. ¶ 12.

A tab to the right of the "Information" tab is entitled "Establish Account." Ex. 13.  First time candidates are directed to click an "establish an account" link that walks them through a series of questions and prompts for establishing a CBA

client account.  After the CBA approves a candidate to take a CPA exam, the applicant is directed to submit payment to NASBA. Ex. 4, Lau Decl. ¶13.

**NASBA's Process.**  "The CBA has a contract with the [NASBA], who maintains a national computerized CPA examination candidate database that stores information for the 55 jurisdictions on candidate's eligibility to test." Ex. 2 at 11. Persons wishing to submit a payment to NASBA for a California CPA examination may access NASBA's Payment Portal website.  Ex. 14.  A candidate visiting the NASBA payment portal must click the "pay exam fees" button and will then be prompted to login using NASBA account credentials. Lau Decl. ¶ 14. According to NASBA, after applying for the CPA Exam, being found eligible, and paying the associated fees to register for CPA Examination Sections, candidates will be issued a Notice to Schedule (NTS).  Ex. 11 at 18.  The NTS becomes available to view and print from an applicant's CPA Candidate Portal after the requirements have been met to issue the NTS, and once it issues, the NTS is an exam candidate's "ticket" used "to schedule and then take the specified Exam section."[1]

A "Score Information" link on the NASBA Payment Portal page informs candidates that "You can refer to the score release timeline from the AICPA to see when your scores will be sent to NASBA…All scores for that 'release date' should be posted within 48 hours from when NASBA started receiving the scores."  Unlike in "all other states," California candidates are told they will obtain their scores "from your board of accountancy's website."  Ex. 15 at 1-2; *see also* Ex. 16 at 3. NASBA tells California candidates that their scores will be posted on the CBA portal "within 72 hours from when your advisory score is posted," and that a "candidate performance report" will be available for failed scores. NASBA says that "if your *Board of Accountancy* informs NASBA that you are no longer eligible to take the Uniform CPA Examination because of changes in education

---

[1] https://nasba.org/blog/2023/04/17/what-exactly-is-a-notice-to-schedule-nts/

requirements, *candidate misconduct*, or other reasons *determined by the board*, your NTS will be canceled. NASBA will contact Prometric to rescind your eligibility."  Ex. 11 at 35 (emphasis added).

**Prometric's Process.**  NASBA's website directs candidates who have received an NTS to visit Prometric's CPA webpage to schedule their exam(s).  Ex. 11 at 25. California CPA exam applicants wishing to schedule an exam must use the Prometric "Pro Scheduler" website.  Lau Decl. ¶ 16; Ex. 17.  The "Pro Scheduler" website contains a link to a "Prometric Policy Page" that discusses Prometric's Testing Accommodations Policy. Ex. 18. A user who scrolls to the bottom of the Prometric Policy Page can see a section entitled "Important Information About Your Test Event," within which Prometric provides information and weblinks to *inter alia* NASBA's CPA Exam Candidate Guide and an AICPA website entitled "Everything you need to know about the CPA Exam."  The latter link resolves to an AICPA controlled webpage that provides information about the CPA exam and its scoring.

After clicking a "next" button on the Prometric Policy Page, users encounter a message entitled "The Uniform CPA Examination Conduct and Non-Disclosure Agreement." Ex. 19. This message appears to be an attempt by Prometric to cause users to contract with AICPA.[2]

**CBA's Arrangement with AICPA.**  The CBA has a contract with AICPA pursuant to which the Uniform CPA Exam given in California "is written and graded by the [AICPA]." Ex. 2 at 11. According to the AICPA, the Uniform CPA Exam "is owned by the AICPA, and administered in Prometric test centers by NASBA and the AICPA on behalf of the state boards of accountancy."[3] Ex. 20 at 1. AICPA's FAQ website (Ex. 20) provides links where candidates are told "when

---

[2] This purported agreement is different from the NDAs alleged in AICPA's FAC. Dkt.30-2.

[3] AICPA's "ownership" is contested. *See* Dkt.42 at 84-108.

*EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND OSC
CASE NO. 5:24-CV-01940-SSS-SHKx

you'll get your CPA Exam score" and "how we score the CPA Exam."  Exs. 21 &
22.  AICPA represents to exam applicants that scores will be released on pre-
scheduled "release dates" and acknowledges that predictably about "when you can
expect to receive your score" is important to "help[] you to better plan your testing
schedule." Ex. 21. With respect to methodology, AICPA informs exam applicants
that "[s]coring is fully automated for all CPA Exam components," and that "CPA
Exam scoring is treated with a high level of importance..." Ex. 20. AICPA also
advertises on its website that "[w]hen you fail an Exam section, you'll…receive a
Candidate Performance Report that assesses your performance on that specific
section."[4]

**Mr. Lau's Efforts to Obtain a CPA License in California**

Mr. Lau is an individual diagnosed with Autism Spectrum Disorder,
Attention Deficit Disorder, and Language Processing Disorder.  Despite challenges,
Mr. Lau earned a B.S. Degree in Accounting from the University of Southern
California in May 2004 and has been working hard to pass the Uniform CPA Exam
since then. In November 2017, the California Board of Accountancy ("CBA")
provided Mr. Lau with written confirmation of his entitlement to testing
accommodations pursuant to the ADA.  Ex. 23. Subsequent to CBA's
Accommodation Letter, the CBA, NASBA, and Prometric all communicated and
cooperated to afford Mr. Lau testing accommodations.  Mr. Lau's accommodations
include extra time and a private room equipped with a white noise machine and
other features designed to minimize unnecessary distractions. Lau Decl.¶4.

Mr. Lau has passed three out of four sections of the Uniform CPA Exam. Lau
Decl. ¶6, Ex. 24.  He attempted to pass his final section, the FAR exam, on June 22,
2024, but received a fail score on July 31, 2024. Lau Decl. ¶17.  In August 2024,
Mr. Lau scheduled a FAR exam for September 24, 2024.  *Id*. Mr. Lau paid all

---

[4] https://www.aicpa-cima.com/resources/article/the-candidate-performance-report-
provides-helpful-information

necessary fees, received an NTS, and appeared for the exam at the appointed time and place. Mr. Lau completed his exam within the allotted time, complied with all exam rules, and expected to receive his score on October 31, 2024. Lau Decl. ¶ 18. Mr. Lau has not been accused of any misconduct with respect to his September 24, 2024 Far Exam. Nevertheless, Mr. Lau's score for the September 24 FAR Exam were not released on the scheduled release date. After investigating the status of his scores, Mr. Lau learned from the CBA on January 21, 2025 that AICPA was withholding his score without explanation. Ex. 25. Mr. Lau then emailed AICPA directly to inquire about his scores, but AICPA never responded. Lau Decl. ¶20; Ex. 26. Mr. Lau did not learn until March 27, 2025 that AICPA was withholding his scores based on prior conduct unrelated to his 2024 FAR Exam, allegedly under the authority of an "Informed Consent" document that Mr. Lau had never even seen. Lau Decl. ¶21; Ex. 27.

**AICPA's Unhinged Conduct**

On September 11, 2024, AICPA sued Mr. Lau for copyright infringement, trade secret misappropriation, and breach of contract based on statements Mr. Lau made during study group discussions.[5] According to AICPA, these statements concern content from a copyrighted 2019 exam, portions of which Mr. Lau would have seen during his REG exam on November 25, 2023 and February 3, 2024 ISC exams. AICPA's breach of contract theory alleges that Mr. Lau gained access to the subject "Exam Content" by entering into NDAs dated November 16, 2023 and December 28, 2023.

Although AICPA filed suit on September 11, 2024, AICPA waited until September 23 (the night before what should have been Mr. Lau's final CPA exam) to serve him at home with a copy of the complaint. The following morning, without any legal justification, AICPA intercepted Mr. Lau as he was walking into his

---

[5] Those claims are objectively baseless for reasons described in Mr. Lau's Answer and First Amended Counterclaims ("FACC"), Dkt. 42.

special accommodations testing facility and slapped him with another copy of the complaint. Mr. Lau found it hard to focus on his exam because of AICPA's conduct on September 24, 2024.  On October 9, 2024, Mr. Lau informed AICPA that he intended to bring disability discrimination claims arising from AICPA's September 24, 2024 misconduct if the parties were unable reach a settlement. Declaration of Robert L. Uriarte ("Uriarte Decl.") ¶3.  A few weeks later, AICPA withheld Mr. Lau's September 2024 FAR score. During meet and confer discussions in advance of this motion, AICPA attempted to justify its score withholding by invoking Mr. Lau's study group communications from late 2023 and early 2024 and an "Informed Consent" document that was never mentioned until March 27, 2025, more than six months into this case. *Id*.; *contra* Dkt. 29 at 2, Fed. R. Civ. P. 26(a). AICPA's counsel was unable during the meet and confer session to provide a factual basis for its assertion that Mr. Lau agreed to the Informed Consent document. Uriarte Decl. ¶6.

## **LEGAL STANDARD**

A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *E.g., Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).  The Ninth Circuit also employs an alternative "serious questions" standard "under which "[the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." *Am. Express Travel Related Servs. Co. v. Pirch, Inc.*, 2024 U.S. Dist. LEXIS 162376, at \*7 (S.D. Cal. 2024); *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024) (affirming sliding scale standard).

# ARGUMENT

## I.    Mr. Lau Is Likely to Succeed on the Merits of His Interference, Discrimination, and Unfair Competition Law Claims

Mr. Lau seeks injunctive relief pursuant to, and is likely to succeed on the merits of: (i) his tortious interference claim (Dkt. 42, FACC ¶¶404-411); (ii) his ADA retaliation claim (¶¶346-369); and (iii) his unfair competition claim ("UCL" claim) (FACC¶412-419). With respect to Mr. Lau's interference claim, Mr. Lau need only demonstrate "serious questions" about whether AICPA's withholding of his September 2024 FAR score is an intentional act designed to disrupt Mr. Lau's contracts with CBA, NASBA, or Prometric. With respect to his ADA retaliation claim, Mr. Lau need only demonstrate serious questions about whether AICPA is withholding Mr. Lau's 2024 FAR exam score in retaliation for Mr. Lau's assertion of discrimination claims.  With respect to his UCL claim, Mr. Lau need only demonstrate serious questions about whether AICPA has conducted business in an unfair, deceptive, or unlawful manner. Mr. Lau's evidence goes beyond raising "serious questions" to provide the answers: the record shows that AICPA intentionally disrupting Mr. Lau's contracts, retaliating against Mr. Lau, and engaging in unlawful, unfair, and deceptive business practices.

### A.    AICPA is Interfering with Mr. Lau's Contractual Rights

Tortious interference with contractual relations requires "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc.,* 9 Cal. 5th 1130, 1141 (2020).

**Existence of Contracts**. California Civil Code § 1550 requires four elements for contract formation: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Sonico v. Charter*

- 11 -

1    *Communs., LLC*, 2021 U.S. Dist. LEXIS 15585, at *13 (S.D. Cal. 2021). Here, Mr.

2    Lau entered into contracts with NASBA, Prometric, and the CBA, and the terms of

3    those contracts are evidenced by the written representations and the parties' conduct

4    reflecting their mutual assent to those terms. *Donovan v. RRL Corp*., 26 Cal. 4th

5    261, 271, (2001); Exs.1-18. California processed and approved Mr. Lau's

6    examination application and remittance form; NASBA took Mr. Lau's payment and

7    issued to Mr. Lau an NTS; and Prometric permitted Mr. Lau to use his NTS to

8    schedule, appear for, access, and complete the September 2024 FAR Exam.  Lau

9    Decl.¶¶9-18.  In scheduling, paying for, and taking the September 2024 FAR Exam,

10   Mr. Lau acted in reliance on representations by the CBA, NASBA, and Prometric,

11   and Mr. Lau paid exam fees in exchange for the promises that (i) he would timely

12   receive his exam score; and (ii) have the ability to promptly receive a performance

13   report and reschedule exams as needed. Lau Decl. ¶15.

14         Although the thicket of websites, terms of services, and disparate forms

15   presented to Mr. Lau over the years is difficult to comprehend, *see* Dkt. 42 ¶¶92-

16   137, with respect to the 2024 FAR Exam, the essence of Mr. Lau's agreements with

17   NASBA, Prometric, and the CBA was that if he paid each of them to take the Exam

18   and completed it as instructed, he would timely receive his scores, timely be able to

19   reschedule the exam if needed, and would have a Performance Report to help him

20   study. Lau Decl. ¶15.

21         **AICPA's Knowledge**. AICPA is aware of Mr. Lau's contracts with NASBA,

22   Prometric, and the CBA. AICPA's websites provide links to some of the contract

23   documents; AICPA's business model depends on these types of contracts; and

24   AICPA appears to have an agent-principal relationship with at least NASBA and

25   Prometric, both of whom perform tasks necessary for AICPA to conduct its exam

26   scheduling, scoring, and disability accommodations responsibilities. Ex.19; Ex. 20

27   at 1-2 (directing candidates to contact NASBA for information about

28   accommodations and stating that AICPA and NASBA administer exam via

Prometic). Indeed, it appears that AICPA pocketed at least some of the money collected from Mr. Lau for the September 2024 FAR exam. Ex. 11 at 15. As a matter of law, AICPA is charged with the knowledge of its agents. *E.g., Jefferson Pilot Life Ins. Co. v. Goold*, 2005 U.S. Dist. LEXIS 45931, at *6 (C.D. Cal. 2005). As a matter of fact, AICPA new exactly where Mr. Lau was going to be on the morning of September 24, 2024 because AICPA had access to NASBA and/or Prometic NTS information.

**AICPA's Intentional Conduct.** AICPA has admitted that it is intentionally withholding Mr. Lau's exam scores. Ex. 28. AICPA is doing so knowing that obtaining his exam score is the reason Mr. Lau entered into agreements with the CBA, NASBA, and Prometic and paid money to take the September 2024 FAR exam. Ex. 21.

**AICPA's Causation of Disruption and Damages.** Mr. Lau paid money to take a test that he still doesn't have scores for, which is an injury to his contractual rights. If he did pass, then every day that AICPA continues to withhold his score is a day that Mr. Lau is unable to obtain a California CPA license *that he already qualifies for*. If he did not pass, Mr. Lau is being deprived of his right to reschedule his exam and prepare to retake it with the benefit of a performance report. Ex 11 at 49. In addition to loss of the value of the time and money he invested to prepare for and take the 2024 FAR Exam, Mr. Lau is also suffering psychological harm every day that goes by because he can not reschedule or even properly prepare for retaking the test if he needs to do so.

### B. AICPA is Retaliating Against Mr. Lau in Violation of the ADA

Section 503(a) of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge…under this Act." *Ross v. Indep. Living Res. of Contra Costa Cty*., 2010 U.S. Dist. LEXIS 32775, at *6 (N.D. Cal. 2010) (quoting 42 U.S.C. § 12203(a)). "A prima facie case

of retaliation under the ADA requires the plaintiff to show by a preponderance that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) the adverse action occurred because of the protected activity. *Karam v. Univ. of Ariz.*, 2022 U.S. Dist. LEXIS 18997, at \*15-16 (D. Ariz. 2022) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)).

**Protected Activity**. On October 9, 2024, Mr. Lau engaged in "protected conduct" by "threatening a lawsuit under the ADA." Uriarte Decl. ¶3; *Huggard v. United Performance Metals, Inc.*, 2011 U.S. Dist. LEXIS 151276, at \*44-45 (S.D. Ohio 2011); *Irvin v. Roldan*, 2019 U.S. Dist. LEXIS 228183, at \*16 (C.D. Cal. 2019) (citing *Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017) ("threatening to file a [discrimination] charge" is "is clearly protected"); *Williams v. Ala. DOT*, 509 F. Supp. 2d 1046, 1064 (M.D. Ala. 2007)(litigation "'threat' is protected conduct")(collecting cases).

**Adverse Action.** On October 31, 2024, AICPA withheld Mr. Lau's FAR exam scores, thereby preventing Mr. Lau from obtaining his CPA license—or even knowing the fate of his 2024 FAR Exam. AICPA's conduct is "reasonably likely" to deter persons like Mr. Lau from engaging in protected activity and is therefore actionable under the "expansive view" of adverse action in the retaliation context. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (employment context). Under the ADA "[a]ny action that is reasonably likely to deter a person from engaging in the protected activity at issue constitutes an 'adverse action,' and such an action can include failing to timely update…records." *Isbell v. Oklahoma*, 2018 U.S. Dist. LEXIS 112871, at \*10 (N.D. Cal. 2018) (citing *Pardi*, *supra*); *accord Gallagher v. San Diego Unified Port Dist.*, 2009 U.S. Dist. LEXIS 9277, at \*20-21 (S.D. Cal. 2009) (ignoring requests and ultimately denying renewal request); *Yates v. W. Contra Costa Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 123594, at \*25 (N.D. Cal. 2017) ("Reporting…adverse information to a credentialing agency"); *Bastidas v. Good Samaritan Hosp. LP*, 2016 U.S. Dist.

LEXIS 33405, at *5 (N.D. Cal. 2016) (failure to institute a proctoring program).

**Causation**. Causation between protected activity and adverse action "may be inferred from circumstantial evidence." *Meyers v. Kendall*, 2024 U.S. Dist. LEXIS 99412, at *26 (C.D. Cal. 2024).  Here, AICPA's "knowledge that [Mr. Lau] engaged in protected activities and the proximity in time between the protected action" and AICPA's withholding of Mr. Lau's scores is sufficient to carry Mr. Lau's burden of production. *Id*. "[T]emporal proximity can by itself constitute sufficient circumstantial evidence of retaliation." *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011).

AICPA's attempts to justify its score withholding by invoking conduct that predates the September 2024 FAR Exam and a never-before-seen-or-pled "Informed Consent" document is inconsistent with its past conduct.  If AICPA thought it could withhold Mr. Lau's future FAR scores based on statements he made about the 2023 REG and 2024 ISC exams, why didn't it do so in July 2024? AICPA's position is also inconsistent with its conduct in permitting Mr. Lau to schedule, sit for, and complete the September 24, 2024 FAR exam. Why would AICPA take his money and allow him to sit for the September 2024 FAR exam in the first place if it intended to prevent him from obtaining his scores for it? And why wouldn't AICPA follow any formal procedures for revoking Mr. Lau's permissions via NASBA, Prometric, or the CBA to stop Mr. Lau from scheduling or taking the exam?  *Compare Perez v. United States Postal Serv*., 76 F. Supp. 3d 1168, 1190 (W.D. Wash. 2015) ("deviation from its own policies and procedures" held to "provide circumstantial evidence of retaliatory intent."). It was not until October 31, 2024, *after* Mr. Lau raised ADA claims, that AICPA began surreptitiously withhold Mr. Lau's scores. And when Mr. Lau reached out to AICPA to inquire about his scores, AICPA refused to provide him with any answer. *Compare Hudson v. United States Bureau of Prisons,* 1994 U.S. Dist. LEXIS 11664, at *14 (N.D. Cal. 1994)("Defendants' divergent, and often contradictory,

justifications…smack of post hoc rationalization"); *Johnson v. Macy*, 145 F. Supp. 3d 907, 917 (C.D. Cal. 2015)(similar).

AICPA's belated invocation of a new "Informed Consent" document also betrays AICPA's true retaliatory motives. Were the Informed Consent agreement actually part of Mr. Lau's contractual relationship with AICPA, AICPA would have had a duty to plead it. *E.g., Twaite v. Allstate Ins. Co*., 216 Cal. App. 3d 239, 252-53 (1989) ("to state a cause of action for breach of contract, it is absolutely essential to plead the terms of the contract…"); Cal. Civ. Code § 1642 ("[s]everal contracts relating to the same matters…are to be taken together."); *see also Cleveland v. Ludwig Inst. for Cancer Research Ltd*., 2020 U.S. Dist. LEXIS 221934, at *22 (S.D. Cal. 2020) (dismissing breach claim where plaintiff failed to plead existence of related contract); *Bledea v. Indymac Fed. Bank,* 2010 U.S. Dist. LEXIS 23391, at *33-34 n.8 (E.D. Cal. 2010) (dismissing claim where "the promises plaintiffs specify…exceed the scope of the instruments…pleaded"); Fed. R. Civ. P. 19 (required joinder of parties).[6] AICPA certainly would've had a duty to produce it under Rule 26 and the Court's Standing Order, Dkt. 29 at 2, and this duty is particularly important given the document's mandatory arbitration clause. "[N]ot breathing a word about the existence of an arbitration agreement" and "withholding production of the arbitration agreement" until after the time has passed to file pleading motions evidences bad faith. *E.g.*, *Adolph v. Coastal Auto Sales, Inc*., 184 Cal. App. 4th 1443, 1452-53 (2010).

Assuming *arguendo* that the Informed Consent document does apply to Mr. Lau, the terms of the document do not even support AICPA's position. The language AICPA invokes says "AICPA may refuse to process your Test results, refuse to release your scores, or recommend that the State Board cancel your Test scores in the event NASBA or AICPA have reason to believe your Test scores may

---

[6] The Informed Consent document purports to be a multiparty contract that includes multiple parties not before the Court, including NASBA and the CBA.

*EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC
CASE NO. 5:24-CV-01940-SSS-SHKx

not be valid or result from any fraudulent activity." Exs. 27&28.  But the capital "T" "Test" referred to can only mean *the Test* whose scores are called into question. The language AICPA attempts to rely belies AICPA's assertion that it can cancel scores for whatever test it wants to based on any prior misconduct it gins up.

In any event, whether the Informed Consent agreement applies or not, the fact that AICPA's lawyers scrambled to invoke it for the first time on March 27, 2025 reeks of pretext. Where, as here, "defendant's purported nondiscriminatory reasons" are "reasons that not been previously asserted" and contradict the defendants' past conduct, such reasons are discredited. *See, e.g., Johnson*, 145 F. Supp. 3d at 917; *Hudson,* 1994 U.S. Dist. LEXIS 11664, at *14.

### C.     AICPA is Violating California's Unfair Competition Law

The UCL broadly proscribes "any unlawful, unfair or fraudulent business act or practice . . . ." *Cappello v. Walmart Inc.,* 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019). "[T]o bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition." *Id.*

**Standing**. Mr. Lau has suffered economic harm due to AICPA's unlawful conduct including by "surrender[ing] in a transaction more, or acquires in a transaction less, than he…otherwise would have," as he agreed to obligations, paid money, and performed his obligations, but has not received his test scores.  In addition, both his ability to obtain a license and ability to earn money as a licensed CPA are being diminished. *Cappello*, 394 F. Supp. 3d at 1019. He has also been put to the expense of spending money on this motion. *Id.; E. & J. Gallo Winery v. Andina Licores S.A*., 2007 U.S. Dist. LEXIS 11281, at *9 (E.D. Cal. Jan. 29, 2007) (discussing attorneys fees as damages); *Sachar v. Magasinn*, 2023 Cal. Super. LEXIS 11102 (Cal. Sup. 2023) (same, collecting cases).

**Unlawful Practices**. The "UCL borrows violations of other laws" and "makes those unlawful practices actionable under the UCL." *Moran v. Prime Healthcare Mgmt., Inc*., 3 Cal. App. 5th 1131, 1142 (2016).  As discussed above,

AICPA is tortiously interfering with Mr. Lau's contractual rights, which is an unlawful practice in California. *Aryeh v. Canon Bus. Sols., Inc*., 55 Cal. 4th 1185, 1196 (2013); *Zhang v. Superior Court*, 57 Cal. 4th 364, 384 (2013)("conduct that violates…statutes or the common law" can give rise to a UCL action).[7]  AICPA is also violating the ADA by retaliating against Mr. Lau. *Leonel v. Am. Airlines, Inc*., 400 F.3d 702, 715 (9th Cir. 2005) (ADA violations are UCL predicates). AICPA is also violating the false advertising law by withholding Mr. Lau's scores in a manner inconsistent with the representations by AICPA and its agents about score release timelines and performance reports. Exs. 19-22; *Chapman v. Skype Inc*., 220 Cal. App. 4th 217, 226, 162 Cal. Rptr. 3d 864, 871 (2013) (UCL and FAL prohibit "any statement … which is untrue or misleading,  and which is known, or … should be known, to be untrue or misleading …"). AICPA is also violating the Accountancy Act by intentionally usurping and preventing CBA from exercising its statutory authority and depriving Mr. Lau of due process. Cal. Bus. & Prof. Code §§ 5100, 5110; Cal. Gov't. Code § 11500; Ex. 2 at 9.  AICPA is also violating the law by retaliating against Mr. Lau simply because AICPA and Mr. Lau "are adverse parties in a lawsuit," which is "exactly the type of behavior" that anti-retaliation laws aim to prevent. *See, e.g., Johnson v. Jew*, 2021 U.S. Dist. LEXIS 154022, at *10 (N.D. Cal. 2021).

**Deceptive Practices.**  The UCL prohibits "any fraudulent business act or

[7] *Shroyer v. New Cingular Wireless Servs* summarily held that "a common law violation" is insufficient to state a UCL claim. 622 F.3d 1035, 1044 (9th Cir. 2010) (quizzically quoting *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994) (UCL unlawfulness means "forbidden by law, be it civil or criminal…statutory, regulatory, *or court-made*.")(emphasis added); *but see CRST Van Expedited, Inc. v. Werner Enterprises, Inc*, 479 F.3d 1099, 1107 (9th Cir. 2007) (tortious interference supports UCL claim). Although some district courts have relied on *Shroyer*, intervening California Supreme Court authority makes clear that *Shroyer* was always incorrect.  *See, e.g., Zhang*, 57 Cal. 4th at 384 ("Under settled precedent…common law breaches…provide the predicate for [UCL] claims.").

practice" and any "deceptive, untrue or misleading advertising." Bus. & Prof. Code,
§ 17200. AICPA is engaged in deceptive practices to the extent it permitted Mr.
Lau to schedule, pay for, and sit for the 2024 FAR exam, knowing all along that it
would withhold Mr. Lau's scores indefinitely without even telling him. *See, e.g.*,
*Boschma v. Home Loan Ctr., Inc.*, 198 Cal. App. 4th 230, 253-54 (2011)("statement
couched in such a manner that it is likely to mislead or deceive the consumer…is
actionable under the UCL").

**Unfair.** "It is frequently stated that '[a] business practice is unfair within the
meaning of the UCL if it violates established public policy or if it is immoral,
unethical, oppressive or unscrupulous and causes injury to consumers which
outweighs its benefits.'" *Gray v. Dignity Health*, 70 Cal. App. 5th 225, 238 (2021).
AICPA's conduct is all of the above. It is extremely unscrupulous and oppressive
for AICPA to pocket Mr. Lau's cash, secretly withhold his scores, and then use its
unlawful score withholding as a *de facto* barrier to Mr. Lau's ability to pursue his
lawful profession. It is also immoral for AICPA to treat Mr. Lau as it has. At a
minimum, AICPA's conduct violates the California Legislature's carefully crafted
regime for giving CBA control over CPA licensure, and for affording candidates
due process before invalidating exam scores or denying access to a CPA license or
the Uniform CPA Exam.

## II.    AICPA is Causing Mr. Lau Irreparable Harm

Mr. Lau is not able to exercise his statutory right to seek a CPA license
because of AICPA's score withholding. In addition, Mr. Lau faces the prospect of
losing the benefit of prior exams he has already passed.  Money damages cannot
remedy such harms. Courts view as irreparable injury a person's psychological
harm in not being able to pursue their chosen profession. For instance, in *Enyart v.
Nat'l Conference of Bar Examiners*, the Ninth Circuit affirmed the grant of a
preliminary injunction requiring bar exam administrators to provide
accommodations for a blind test-taker, explaining that the test-taker had

"demonstrated irreparable harm in the form of the loss of opportunity to pursue her chosen profession." 630 F.3d 1153, 1165 (9th Cir. 2011). The case of *Doe v. Samuel Merritt Univ*., 921 F. Supp. 958 (N.D. Cal. 2013) is also instructive. In that case, a podiatry student obtained a preliminary injunction requiring her program to maintain her status as an enrolled student so that she could take the podiatry licensing exam. The court held that without such an injunction in place, the student would be irreparably harmed because she would be "preclude[ed] from advancing her professional career." *Id*. at 964; *accord Maczaczyj v. State of N.Y*., 956 F. Supp. 403, 408 (W.D.N.Y. 1997) (similar).

## III.    The Balance of Equities and Public Interest Favor Mr. Lau

The balance of equities favors Mr. Lau. AICPA has nothing legitimate to lose by releasing Mr. Lau's score. None of the misconduct alleged in AICPA's FAC has anything to do with the equities of this motion.  AICPA can still have its day in court to argue about Mr. Lau's November 2023 and February 2024 conduct.  It is for the Court to decide those claims. AICPA is not entitled to act as Mr. Lau's judge, jury, and career executioner by withholding scores for a September 2024 exam for which Mr. Lau is not even accused of doing anything wrong. Such self help is antithetical to equity and to the public's interest. *Zoom Video Communs., Inc. v. Ringcentral, Inc*., 2021 U.S. Dist. LEXIS 59902, at *14 (N.D. Cal. 2021) (citation omitted).

The public has a strong interest in upholding the CBA's authority and due process protections, *see* Cal. Bus. & Prof. Code § 5000.1("Protection of the public shall be the highest priority for the California Board of Accountancy"), enforcing disability discrimination statutes like the ADA, *e.g., Enyart*, 630 F.3d at 1167, upholding contractual rights, *Zoom*, 2021 U.S. Dist. LEXIS 59902, at *14, and enforcing California's UCL, e.g., *Estakhrian v. Obenstine*, 2017 U.S. Dist. LEXIS 224790, at *5 (C.D. Cal. 2017). All of these interests are magnified here, as AICPA is abusing the position of trust and privilege bestowed upon AICPA by the CBA.

1

## CONCLUSION

2      For the foregoing reasons, Mr. Lau respectfully request that his motion be

3  granted in its entirety.

4

5

## Civil Local Rule 11-6.2. Certificate of Compliance

6      The undersigned, counsel of record for Stephen Lau, certifies that this

7  Memorandum of Points and Authorities contains 6,888 words, which complies with

8  the word limit of L.R. 11-6.1.

9

10

## Civil Local Rule 7-3 Statement

11      This motion is made following the conference of counsel pursuant to L.R.7-3

12  which took place on March 28, 2025.

13

14  Dated:   April 2, 2025                 ORRICK, HERRINGTON & SUTCLIFFE LLP

15

16                                         By: _/s/ Robert L. Uriarte_

17                                         ROBERT L. URIARTE
                                           Attorneys for Defendant/Cross-Complainant
                                           STEPHEN LAU

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND OSC
Case No. 5:24-cv-01940-SSS-SHKx