SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real Suite 120
Menlo Park, California 94025-4111
Telephone:  650.815.2600
Facsimile:   650.815.2601

KAZIM A. NAQVI, Cal. Bar No. 300438
knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-7017
Telephone:   310.228.3700
Facsimile:   310.228.3701

PARKER POE ADAMS & BERNSTEIN LLP
CHRISTOPHER M. THOMAS (*admitted pro hac vice*)
christhomas@parkerpoe.com
ANDREW P. TABELING (*admitted pro hac vice*)
andytabeling@parkerpoe.com
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina  27602-0389
Telephone:  (919) 835-4626
Facsimile:   (919) 834-4564

NICHOLAS H. LEE (*admitted pro hac vice*)
nicholaslee@parkerpoe.com
620 S. Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: 704-335-9876
Facsimile: 704-334-4706

Attorneys for Plaintiff and
Counterdefendant AMERICAN
INSTITUTE OF CERTIFIED PUBLIC
ACCOUNTANTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN LAU, <br><br> Defendant. | Case No. 5:24-cv-01940-SSS-SHK <br><br> **COUNTER-DEFENDANT AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS' OPPOSITION TO COUNTER-CLAIMANT'S *EX PARTE* APPLICATION FOR PRELIMINARY INJUNCTION** <br><br> [*Filed concurrently with Declarations of* |

1 | STEPHEN LAU,

2 |       Counter-Claimant,

3 |    v.

4 | AMERICAN INSTITUTE OF CERTIFIED PUBLIC

5 | ACCOUNTANTS

6 |       Counter-Defendant.

*William Emmer, Michael Cannon, and Carlos Vasquez*]

# **TABLE OF CONTENTS**

Page

I.    INTRODUCTION.................................................................................1

II.   FACTUAL BACKGROUND .................................................................3

    A.   Lau's Breach of Contract, Trade Secret Misappropriation, and Copyright Infringement .........................................................3

    B.   Lau's Informed Consent Agreement ..............................................5

    C.   Lau's Baseless Counterclaims........................................................5

III.  LEGAL STANDARD ...........................................................................5

    A.   Standard for Preliminary Injunctions ............................................5

    B.   *Ex Parte* Relief Standard.............................................................6

IV.   THE *EX PARTE* APPLICATION SHOULD BE DENIED ...................7

    A.   Lau's Inexcusable Delay Confirms that He Suffers no Irreparable Harm and There are No Exigent Circumstances.........................7

    B.   Lau Cannot Establish Any Chance of Success on the Merits .......8

        1.   Lau's Tortious Interference Claim Fails ...............................8

        2.   Lau Has No Substantial Likelihood of Success on Any Retaliation Claim ...............................................................11

            a.   Lau Blatantly Violates FRE 408 and Cannot Establish Causation ...............................................11

            b.   There Is No Possible ADA Discrimination Claim, so No Possible Retaliation Claim ...............................13

                (1)   The ADA's Retaliation Provision .........................13

                (2)   AICPA Is Not Subject to the ADA .......................14

            c.   Lau's Retaliation Claim Separately Fails Because His ADA Claim Was Not in Good Faith or Reasonable ................15

        3.   Lau Has No Chance of Success on his Unfair Competition Claim............16

    C.   Lau Cannot Establish Irreparable Harm .......................................18

    D.   The Balance of the Equities Favor AICPA ..................................20

    E.   Denying the Application is in the Public Interest ........................21

V.    CONCLUSION ...................................................................................22

1

2

## TABLE OF AUTHORITIES

Page(s)

3

<u>Cases</u>

4

*Am. Passage Media Corp. v. Cass Commc'ns, Inc.*
   750 F.2d 1470 (9th Cir. 1985) .................................................................. 19

*California by & through Becerra v. Azar*
   950 F.3d 1067 (9th Cir. 2020) (en banc) ................................................. 6

*Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*
   20 Cal.4th 163 (1999) ............................................................................. 18

*Clark Cty. Sch. Dist. v. Breeden*
   532 U.S. 268 (2001) ............................................................................... 16

*ConocoPhillips Co. v. Gonzalez*
   2012 WL 538266 (N.D.Cal. Feb. 17, 2012) ........................................... 19

*Crews v. Wachovia Mortg. Corp.*
   2010 WL 11601051 (C.D.Cal. July 23, 2010) ......................................... 8

*Daugherty v. Am. Honda Motor*
   144 Cal.App.4th 824 (2006) ................................................................... 17

*Dawson v. Entek Int'l*
   630 F.3d 928 (9th Cir. 2011) .................................................................. 12

*DCR Mktg. Inc. v. United States Alliance Group*
   2020 WL 5015265 (C.D.Cal. Apr. 20, 2020) .......................................... 7

*Doe v. CVS Pharmacy, Inc.*
   982 F.3d 1204 (9th Cir. 2020) .......................................................... 18, 20

*Doe v. Samuel Merritt Univ.*
   921 F.Supp.2d 958 (N.D.Cal. 2013) ....................................................... 20

*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*
   630 F.3d 1153 (9th Cir. 2011) ................................................................ 20

*Fenimore v. Lane Cty. Republican Cent. Comm.*
   2023 U.S.Dist.LEXIS 40542 (D.Or. Mar. 10, 2023) ............................. 13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Garcia v. Google, Inc.*
    786 F.3d 733 (9th Cir. 2015) (en banc) .................................................. 6

*Goodwin v. Butte Cnty.*
    2025 WL 821058 (E.D.Cal. Mar. 14, 2025) ......................................... 16

*Green v. City of Phx.*
    2019 U.S.Dist.LEXIS 144898 (D.Ariz. Aug. 26, 2019) ........................ 12

*Guess v. St. Martinus Univ.*
    2022 U.S.App.LEXIS 11466 (6th Cir. 2022) .................................... 14, 15

*Henry Schein, Inc. v. Cook*
    191 F.Supp.3d 1072 (N.D.Cal. 2016) ................................................... 22

*Herb Reed Enters., L.L.C. v. Fla. Ent. Mgmt.*
    736 F.3d 1239 (9th Cir. 2013) ............................................................. 18

*Honma Golf U.S., Ltd. v. Saddle Creek Corp.*
    2021 WL 3171894 (S.D.Cal. July 26, 2021) .......................................... 7

*iCall, Inc. v. Tribair, Inc.*
    2012 WL 5878389 (N.D.Cal. Nov. 21, 2012) ....................................... 19

*Iceberg v. Brookstone Landscape & Design LLC*
    2024 WL 1012895 (W.D.Wash. Mar. 8, 2024) ...................................... 13

*In re Intermagnetics Am., Inc.*
    101 B.R. 191 (C.D.Cal. 1989) ................................................................. 6

*Kent v. Microsoft Corp.*
    2013 WL 3353875 (C.D.Cal. July 1, 2013) ............................................. 8

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*
    634 F.2d 1197 (9th Cir. 1980) ............................................................. 20

*Mendoza v. Ruesga*
    169 Cal.App.4th 270 (2008) ................................................................. 21

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*
    2001 WL 283083 (C.D.Cal. Feb. 2, 2001) ............................................ 21

*Midgett v. Tri-County Metro. Transp. Dist.*
    254 F.3d 846 (9th Cir. 2001) ............................................................... 18

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*
    883 F.Supp. 488 (C.D.Cal. 1995).......................................................................7

*Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*
    2020 WL 10965737 (C.D.Cal. Nov. 5, 2020)..............................................9, 10

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
    762 F.3d 1374 (9th Cir. 1985).............................................................................7

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
    810 F.3d 631 (9th Cir. 2015).............................................................................9

*Playboy Enters. V. Netscape Communs. Corp.*
    55 F.Supp.2d 1070 (C.D.Cal. 1999).................................................................8

*Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co.*
    324 U.S. 806 (1945) ........................................................................................21

*Rosales v. FitFlop USA, LLC*
    882 F.Supp.2d 1168 (S.D.Cal. 2012) ..............................................................18

*Sanchez v. Sanchez*
    2012 WL 6678223 (S.D.Cal. Dec. 21, 2012)....................................................8

*Saniefar v. Moore*
    2018 WL 3020458 (E.D.Cal. June 18, 2018)...................................................13

*Silcox v. State Farm Mut. Auto. Ins. Co.*
    2014 WL 7335741 (S.D.Cal. Dec. 22, 2014)...................................................17

*Stokely–Van Camp, Inc. v. Coca–Cola Co.*
    1987 WL 6300 (N.D.Ill.1987)............................................................................8

*Stokes v. CitiMortgage, Inc.*
    2014 WL 4359193 (C.D.Cal. Sept. 3, 2014)....................................................16

*Stone v. Universal City Studios*
    LLP, 2008 WL 11336889 (C.D.Cal. Aug. 20, 2008) .......................................8

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009).........................................................................20

*T.B. v. San Diego Unified Sch. Dist.*
    806 F.3d 451 (9th Cir. 2015)...........................................................................12

SMRH:4935-4472-5807.13

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009) ................................................................. 17

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.*
    368 F.Supp.2d 1121 (W.D.Wash. 2005) ........................................ 8

*Van Hulle v. Pac. Telesis Corp.*
    124 F.Supp.2d 642 (N.D.Cal. 2000) ........................................... 13

*WeRide Corp. v. Kun Huang*
    379 F.Supp.3d 834 (N.D.Cal. 2019) ........................................... 21

*Winter v. Nat. Res. Def. Council, Inc.*
    555 U.S. 7 (2008) ............................................................... 5, 6, 18

<u>Statutes</u>

42 U.S.C.
    § 12189 ..................................................................................... 14
    § 12203(a) ........................................................................... 11, 13

ADA ......................................................................... 11, 13, 14, 15

Cal. Bus. & Prof. Code
    §§ 5100, 5102 ...................................................................... 16, 17

Cal. Civ. Code
    § 3515 ......................................................................................... 8

Cal. Gov't. Code
    § 11500. (App., p. 18) ......................................................... 16, 17

<u>Other Authorities</u>

16 CCR § 7.1 ............................................................................... 19

Federal Rule of Evidence 408 ..................................................... 11

Federal Rule of Civil Procedure 65(c) ........................................ 22

I.       **<u>INTRODUCTION</u>**

Like almost any exam, the fairness and integrity of the Uniform CPA
Examination ("CPA Exam") depends on confidentiality.  It creates an unfair
advantage and erodes applicant and public trust in the exam, if some prospective
test-takers are given more detailed knowledge of the contents of the exam in
advance.  For this reason – just like with the bar exam and other professional
licensing exams – candidates who take the CPA Exam must agree to keep the
contents of the exam secret.  Counterclaimant Stephen Lau ("Lau") agreed to do just
that.  He agreed to multiple NDAs in order to access and take several of the four
sections of the CPA exam.  He repeatedly breached these contracts (and violated
counter-defendant American Institute of Certified Public Accountants' ("AICPA's")
trade secrets and copyrights) by publicly posting CPA Exam content after taking at
least two different CPA Exam sections.  Rather than accept responsibility for his
actions, he has burdened the Court with an emergency *ex parte* application (the
"Application" or "App."), claiming that he is entitled to drastic preliminary
injunctive relief to require AICPA to release his accounting exam score from a
September 24, 2024 exam.  Lau is not entitled to such relief because, among other
things, he unreasonably delayed in bringing his Application, he agreed AICPA
could withhold his score, and he has no possible claim against AICPA that could
support injunctive relief.  Lau's Application must be denied for numerous reasons.

*First,* Lau's substantial and inexcusable delay in bringing the Application
confirms there are no exigent circumstances warranting *ex parte* relief and no
irreparable harm requiring injunctive relief.  In his original counterclaims filed on
December 16, 2024, Lau acknowledged that he has known since November 1, 2024,
that his score had been withheld.  (ECF 28, ¶¶ 248, 249).  He further alleged on
December 16 that AICPA was causing his score to be withheld.  (*Id*., ¶¶ 240, 242.)
Thus, it **is undisputed that Lau has been aware of the alleged wrongdoing and
harm for at least five months**. Decisions in this District are unambiguous that this

type of delay requires denial of injunctive relief – especially when such relief is sought *ex parte* or without a properly-noticed motion, as it is here.

**Second**, Lau consented to AICPA withholding his scores – the very action he now complains is purported "wrongdoing." Lau entered into an Informed Consent Agreement with AICPA and the National Association of State Boards of Accountancy ("NASBA"), in which Lau affirmatively acknowledged that he had read, understood, and accepted that AICPA could refuse to release his scores in the event that his conduct violates his non-disclosure agreement with AICPA. As noted, and as detailed in AICPA's operative First Amended Complaint (ECF 30), AICPA was forced to commence this action against Lau because he violated his NDAs with AICPA, infringed AICPA's copyright rights, and misappropriated AICPA's trade secrets by disclosing AICPA's confidential and secret exam content online on multiple occasions, after at least two different exams. Thus, AICPA is permitted to withhold Lau's test score, including, as here, to protect its trade secrets, and Lau comes to the Court with unclean hands.

**Third,** Lau's counterclaims that are the subject of the Application fail on the merits—each for numerous reasons explained herein.

**Fourth**, Lau is not entitled to injunctive relief because the Application relies on new contracts, statutes, and theories not pled in the SACC.

**Finally,** Lau also cannot establish any irreparable harm. Any alleged harm is of Lau's own doing. And, given that AICPA is merely seeking to enforce its contractual and intellectual property rights and maintain the fairness of an exam on which many people depend, the balance of equities and public interest factors weigh strongly in AICPA's favor.

SMRH:4935-4472-5807.13

## II.    FACTUAL BACKGROUND

### A.    Lau's Breach of Contract, Trade Secret Misappropriation, and Copyright Infringement

AICPA was founded to establish, maintain, and advance public and client trust in the accountancy profession.  One way AICPA fulfills its mission is through the CPA Exam.  AICPA develops, designs and scores the CPA Exam.[1]  (Declaration of Michale Cannon, ¶ 1.)  The AICPA is the author of the questions, problems and suggested answers ("Exam Content") that make up the CPA Exam, and has registered copyrights in the content.  (*Id.*, ¶ 2-10, Ex. 1.)  The Exam Content is also comprised in large part of trade secrets.  (*Id.*)  The AICPA goes to great lengths to protect its intellectual property and keep the Exam Content secret and secure. (*Id.*)

California, like other states, requires CPA Exam candidates to pass four exam sections before becoming a licensed CPA.  Lau entered into non-disclosure agreements ("NDAs") with AICPA to sit for sections of the CPA Exam in November 2023 and February 2024.  (*Id.*, ¶¶ 11-21, Ex. 11.)  He reaffirmed those NDAs immediately before taking the CPA Exam on those days.  (*Id.*, ¶¶ 22-25, Exs. 12-14.)  Lau acknowledged and agreed, among other things, that he would not share, post, display, disclose, or communicate about Exam Content in any way, with anyone, at any time, including via the Internet, social media, chat or any other medium.  (*Id.*, Ex. 4 at 1, Ex. 5 at 1; ECF 30-2 and 3-3 at 1-2).

Nevertheless, on the day after he took an exam section in November 2023 and on the same day he took an exam section in February 2024, Lau violated his NDAs, infringed AICPA's copyright rights, and misappropriated AICPA's trade secrets by publicly disclosing Exam Content online on Discord and Reddit.  (ECF 30, ¶¶ 70-

---

[1]  However, AICPA does not administer the CPA Exam, or control whether states mandate candidates to pass the CPA Exam to become licensed, or control who takes the exam.  It's role is to develop the Exam Content, score the exam results, and ensure the integrity of that content.  (*Id.*)

88.)  **_Lau does not deny he made the posts_** (under pseudonyms designed to conceal his identity).  (ECF 42 [Answer], ¶¶ 74-77, 84-85.)  Lau's acts violated the law and his contractual obligations and jeopardized the integrity and fairness of the CPA Exam by providing advance notice to people who read his posts of specific Exam Content they would encounter on the exam.  (ECF 30, ¶¶ 79, 86, 87; Cannon Decl., ¶ 5.)  In order to protect its intellectual property rights, safeguard the Exam Content, and maintain the public trust, on September 11, 2024, AICPA filed this action asserting claims for copyright infringement, misappropriation of trade secrets, and breach of contract against Lau.  (ECFs 1, 30.)  AICPA does not control who registers or sits for exams, and Lau subsequently sat for another section of the CPA Exam on September 24, 2024.[2]  Discovery in this action has just commenced, and AICPA does not presently know if Lau made additional disclosures after the September exam (particularly given that Lau's prior disclosures were under pseudonyms).  (Cannon Decl., ¶ 28.)  To protect its trade secrets and provide time to investigate the full scope of Lau's violations of AICPA's rights, and whether those violations continue to the present day, and pursuant to the Informed Consent Agreement (described below), AICPA withheld the results of Lau's September 24 exam.  (ECF 52-2, ¶ 4; ECF 30, ¶ 24.)

Between September 18, 2024 and September 22, 2024, a process server attempted service on Lau five days in a row—at varying times—at his potential residence, all without success.  (Declaration of Carlos Vasquez, ¶¶ 4 – 9, 15, Ex. 1.)  The process serving company made a final attempt to serve at this residence on the evening of September 23, but was not able to convey the information that the service package had been delivered to someone who said she was Lau's mother *until*

---

[2]  Lau alleges he also took an exam in June 2024.  AICPA was not aware that he had done so until after it had released is scores.  (Cannon Decl., ¶ 27.)

1  *after* personal service on Lau had been completed at 7:55am the following morning
2  at the testing facility.  (*Id.*, ¶¶ 10 - 17.)

3        **B.**    **Lau's Informed Consent Agreement**

4       On at least February 4, 2023, Lau affirmatively acknowledged that he had
5  read, understood, and accepted the terms of the Informed Consent Agreement.
6  (Declaration of William Emmer, ¶¶ 7-17, Exs. 3-5.)  He knew this was a binding
7  agreement between himself, NASBA and AICPA.  (*Id.*, ¶ 7.)  He explicitly agreed,
8  in Section II(c), that NASBA or AICPA may, among other things, refuse to release
9  his scores in the event that his conduct violates the rules or conduct and non-
10 disclosure requirements of AICPA.  (*Id.*, Ex. 3, p. 3-4.)

11       **C.**    **Lau's Baseless Counterclaims**

12      Lau has filed three answers and counterclaims in this action—each time
13 alleging even more baseless counterclaims.  (ECF 28, 34, 42.)  In all of Lau's
14 pleadings, he admits he made the public disclosures of Exam Content, but claims
15 that he did not agree to any NDAs with AICPA, is not bound by them (*e.g.,* ECF 42
16 [Second Amended Counterclaims ("SACC")], ¶¶ 67, 130-36, 299-329, 393-98 &
17 Sixteenth, Seventeenth, Nineteenth, Twentieth Affirmative Defenses), and for
18 various baseless technical reasons, claims that the Exam Content is not trade secret
19 and he did not commit copyright infringement.  Notably, Lau does not deny that he
20 made disclosures after each of the November 2023 and February 2024 exams under
21 pseudonyms that initially hid his identity.

22      As explained in Section IV.A. below. Lau's various pleadings and his
23 Application confirm he was aware of the withholding of his test score and purported
24 harm *for five months*.

25 **III.**  **LEGAL STANDARD**

26       **A.**    **Standard for Preliminary Injunctions**

27      Lau recognizes that *Winter* requires "[a] plaintiff seeking a preliminary
28 injunction must establish [1] that he is likely to succeed on the merits, [2] that he is

likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). "'The first factor—likelihood of success on the merits—is the most important factor.'" *California by & through Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)). Relying on a "sliding scale" approach Lau implies he need only raise "serious questions" as to the merits of his claims. Lau's assertion is at odds with the Ninth Circuit's *en banc* opinions holding that the first *Winter* factor is necessary—and the most important.

Moreover, Lau ignores that the standard for granting an injunction is "doubly demanding" when, as here, the movant seeks a mandatory injunction, *i.e.,* an injunction that "orders a responsible party to take action." *Garcia*, 786 F.3d at 740 (internal quotation marks omitted). This is because "a mandatory injunction goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored." *Id*. (internal citations omitted). Accordingly, "[t]he district court should deny such relief unless the facts and law clearly favor the moving party." *Id*. (internal citations omitted).

Here, Lau seeks an order requiring AICPA to take affirmative action—release his exam scores—as opposed to just being enjoined from taking action and preserving the status quo. Thus, Lau must establish that the "facts and law clearly favor" him. He has not met this burden.

### B.    *Ex Parte* Relief Standard

*Ex parte* applications are "nearly always improper," and "the opportunities for legitimate [ones] are extremely limited." *In re Intermagnetics Am., Inc.*, 101 B.R. 191, 192, 193 (C.D.Cal. 1989). To obtain *ex parte* relief, the moving party must show that it "will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures," and that the moving party "is

1  without fault in creating the crisis that requires ex parte relief." *Mission Power*
2  *Eng'g Co. v. Cont'l Cas. Co.*, 883 F.Supp. 488, 492 (C.D.Cal. 1995).

3  **IV.    THE *EX PARTE* APPLICATION SHOULD BE DENIED**

4          **A.    Lau's Inexcusable Delay Confirms that He Suffers no Irreparable**
5                 **Harm and There are No Exigent Circumstances**

6          "Requests for *ex parte* relief are disfavored because they 'debilitate the
7  adversary system.'" *DCR Mktg. Inc. v. United States Alliance Group*, 2020 WL
8  5015265, *1 (C.D.Cal. Apr. 20, 2020).  "*Ex parte* proceedings are exclusively
9  reserved for emergency circumstances." *Honma Golf U.S., Ltd. v. Saddle Creek*
10 *Corp.*, 2021 WL 3171894, *1 (S.D.Cal. July 26, 2021).  Importantly, a plaintiff's
11 long delay before seeking a preliminary injunction "implies a lack of urgency and
12 irreparable harm."  *Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.3d 1374,
13 1377 (9th Cir. 1985).

14         Lau's inexcusable delay in bringing Application provides ample confirmation
15 that there are no exigent circumstances and no irreparable harm.  Lau was aware of
16 the withholding of his test score and purported harm for months.  In his original
17 counterclaims filed on December 16, 2024, Lau complained AICPA was
18 withholding his test score. (ECF 28, ¶¶ 240, 242). Lau even acknowledged that
19 "FAR exam scores were released on October 30 and/or October 31, 2024" and that
20 on **"November 1, 2024**, Lau learned that status postings between CBA and NASBA
21 showed no FAR exam scheduled or attended for Lau." (*Id*., ¶¶ 248, 249).  He
22 affirms his allegations that AICPA was withholding his test score in his January 28,
23 2025 first amended counterclaims. (ECF 34, ¶¶ 271, 273, 279-285).  He also alleged
24 in his first and second amended counterclaims that ***he was told*** by CBA ***in January***
25 ***2025*** that AICPA placed a hold on Lau's exam scores—a fact he affirms in his
26 Application.  (ECF 34, ¶ 283; SACC, ¶ 324; App. ).

27         Thus, it ***is undisputed that Lau has been aware of the alleged wrongdoing***
28 ***and harm for five months***.  Courts regularly find delays of this length to show a

1    lack of irreparable harm.  *E.g., Playboy Enters. V. Netscape Communs. Corp.*, 55
2    F.Supp.2d 1070, 1080, 1090 (C.D.Cal. 1999) (five-month delay demonstrated lack
3    of irreparable harm); *Stokely–Van Camp, Inc. v. Coca–Cola Co.*, 1987 WL 6300, *3
4    (N.D.Ill.1987) (same, three month delay); *Valeo Intellectual Prop., Inc. v. Data
5    Depth Corp.*, 368 F.Supp.2d 1121, 1128 (W.D.Wash. 2005) (same, three month
6    delay).  Further, Ninth Circuit courts often deny *ex parte* applications where, like
7    here, there was inexcusable delay in their filing.  *See Stone v. Universal City
8    Studios*, LLP, 2008 WL 11336889, at *2 (C.D.Cal. Aug. 20, 2008); *Crews v.
9    Wachovia Mortg. Corp.*, 2010 WL 11601051, at *4 (C.D.Cal. July 23, 2010).
10          Lau's motion should be denied for this reason alone.
11   **B.    Lau Cannot Establish Any Chance of Success on the Merits**
12          **1.    Lau's Tortious Interference Claim Fails**
13          As a threshold matter, Lau's tortious interference claim fails because he
14   explicitly agreed to the Informed Consent Agreement, in which he expressly agreed
15   that AICPA could withhold his score if he violated his contractual obligations to
16   AICPA (including his confidentiality and non-disclosure obligations).  (Emmer
17   Decl., ¶¶ 7-17; Ex. 3, p. 3-4.)  It is black letter law that "[a] person who consents to
18   an act is not wronged by it."  Cal. Civ. Code § 3515.  Further, courts are
19   unambiguous that where the claimant has expressly consented to or authorized the
20   allegedly wrongful conduct at issue, there can be no tortious interference claim.
21   *Kent v. Microsoft Corp.*, 2013 WL 3353875, at *6 (C.D.Cal. July 1, 2013)
22   ("plaintiffs generally may not assert a wrong arising out of an action which they
23   consented to. Cal. Civ. Code § 3515"); *Sanchez v. Sanchez*, 2012 WL 6678223, *5
24   n.3 (S.D.Cal. Dec. 21, 2012) ("consent is a defense to intentional torts. See Cal
25
26
27
28

SMRH:4935-4472-5807.13

Civ.Code § 3515.").  Accordingly, Lau cannot bring a tort claim for an act to which he expressly agreed.[3]

Further, Lau's allegations in his Application go well beyond his pleadings in the SACC, which is impermissible.  There must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).  "Absent that relationship or nexus, the district court ***lacks authority to grant the relief requested***." *Id*.  For the first time in his Application, Lau identifies 18 documents he claims are third-party contracts, and claims for the first time such contracts are "evidenced" by the parties' conduct. (ECF 52-3, ¶¶ 1-18; App. at 12).  These purported contracts are not attached to or identified in any manner of specificity in the SACC and there is no allegation of any contracts "evidenced" by "conduct."  Thus, Lau would have no basis for obtaining relief under the SACC based on these purported third-party contracts because they are not mentioned in the SACC—so he cannot obtain injunctive relief based on them.

Furthermore, Lau's attachment of 18 webpages, online manuals, videos, and exam guides to his declaration entirely fails to establish his claim.  (ECF 52-3, Exs. 1-18).  Nowhere does Lau establish that each of these documents constitutes a valid contract between Lau and a third party.  *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.,* 2020 WL 10965737, at *5 (C.D.Cal. Nov. 5, 2020) (a claim for intentional interference with contract requires "(1) a valid contract between

---

[3]  Nor is it correct that AICPA's claims are unrelated to the September 2024 exam. AICPA alleges Lau is likely to have continued his actions and sought to enjoin him (*e.g.*, ECF 30, ¶ 130, prayer ¶¶ 7-9), and, given that Lau previously violated AICPA's rights via pseudonymous accounts that concealed his identity, and discovery in this action began recently, AICPA had not verified that Lau has not also disclosed September 2024 Exam Content.

plaintiff and a third party").  Indeed, a cursory look at the webpages confirms they
are merely public-facing web pages with information about registering and taking
the CPA Exam.  Lau has not met his burden to establish these are valid, enforceable
contracts.  Further, nowhere does Lau specifically identify any third-party
contractual provision governing the release of Lau's test score.  Generally citing to
and attaching online brochures that provide general information about the testing
process is insufficient.  Lau cannot establish an entitlement to relief, and AICPA
cannot meaningfully defend against this claim, unless Lau identifies with certainty
valid, enforceable contracts and underlying provisions with which he alleges AICPA
interfered.

Lau must also establish "defendant's knowledge of [the third party] contract."
*Nat'l Funding, Inc.,* 2020 WL 10965737, at *5.  Instead of submitting admissible
evidence with facts, Lau rattles off nothing but speculative attorney argument
regarding AICPA's purported knowledge of the third party contracts.  For example,
Lau claims (with no evidentiary support) that "AICPA ***appears*** to have an agent-
principal relationship with at least NASBA and Prometric."[4]  (App. at 12 (emphasis
added)).  He similarly speculates, with no evidentiary support, "it ***appears*** that
AICPA pocketed at least some of the money collected from Mr. Lau for the
September 2024 FAR exam."  (*Id.*, p. 13, emphasis added).  He similarly
hypothesizes, with no underlying support, that "AICPA new [sic] where Mr. Lau
was going to be on the morning of September 24, 2024 because AICPA had access
to NASBA and/or Prometric NTS information."  (*Id.*)  Lau's speculation and what
"appears" to him to be the underlying facts and events do not constitute admissible
evidence sufficient to meet his high burden on an *ex parte* application and TRO.
Because Lau provides zero evidence or facts supporting the knowledge element of

---

[4]  This is wholly insufficient and inaccurate.  (Cannon Decl., ¶ 26.)

this claim, Lau has not met his burden to show the "facts and law clearly favor the moving party."

### 2.    Lau Has No Substantial Likelihood of Success on Any Retaliation Claim

Lau does not specifically plead a cause of action pursuant to the ADA's retaliation provision at 42 U.S.C. § 12203(a) (referred to in the Application as "Section 503(a)"). He mentions the statute nowhere in his counterclaims. Even if he had, such claim would have no chance of success. Lau alleges the following purported scenario: (a) AICPA served Lau with AICPA's original complaint in this action before his exam and outside the exam facility before he entered the exam (Application, 9:23-10:6; ECF 52-3, ¶ 22; SACC, ¶¶ 4, 355-357); (b) these actions allegedly "discriminated" against him in violation of the ADA by "distracting" him and so "interfering" with specific testing accommodations he was granted (*id*.); (c) during settlement communications in early October, 2024, Lau's counsel claims he said that Lau would bring disability discrimination counterclaims "if the parties were unable reach a settlement" (ECF 52-2, ¶ 3); (d) AICPA then allegedly "retaliated" by withholding Lau's score.

Every element of this story fails.

### a.    *Lau Blatantly Violates FRE 408 and Cannot Establish Causation*

In blatant violation of Federal Rule of Evidence 408, Lau's entire claim is based on settlement communications. (ECF 52-2, ¶ 3.) FRE 408 provides: "Evidence of the following is not admissible—***on behalf of any party***—either to prove or disprove the validity or amount of a disputed claim… (2) conduct or a statement made during compromise negotiations about the claim…" Statements are inadmissible under Rule 408 "even when a party seeks to admit its own settlement offer or statements made in settlement negotiations." FRE 408, Adv. Comm. Notes, 2006 Amend. Thus, Lau is prohibited from relying on statements his counsel

purportedly made during a settlement negotiation to try to prove the validity of his claim. His purported evidence must be stricken and disregarded. Lau's claim therefore fails. Lau did not actually bring any claims for discrimination against AICPA until January 28, 2025 (ECF 34 at Fifth Counterclaim)–*after* AICPA allegedly began withholding the score, which was ***not*** in retaliation for Lau bringing (or mentioning that he might bring) any such claims.

Even if Lau's improper evidence is considered, his claim fails. He cannot show a ***but-for*** causal link between any purported complaint about discrimination and the alleged "retaliation" of withholding his test score. *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (citing *In University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 352 (2013), as requiring "but-for" causation standard for ADA retaliation claims). Lau cites a *pre-Nassar*, *pre-T.B.* case from 2011 for the proposition that all he must show is "temporal proximity" to establish causation. (ECF 52:2-9 (relying on *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011).) However, under *Nassar's* but-for test, temporal proximity alone is not sufficient to establish a *prima facie* case of retaliation. *Green v. City of Phx.*, 2019 U.S.Dist.LEXIS 144898, *31 (D.Ariz. Aug. 26, 2019) (collecting cases). His claim therefore fails.[5]

---

[5] Moreover, AICPA did not know that Lau had taken the June 2024 exam until after it released the score, and AICPA does not control who sits for the exam. (Cannon Decl., ¶ 27.) There is no "policy or procedure" that AICPA is deviating from, and Lau points to none. AICPA also filed the instant action to enforce its rights. Further, ***AICPA did not plead the Informed Consent Agreement or raise it earlier because AICPA's claims are not based on it.*** (See ECF 30, ¶¶ 51-69.) Lau points to no authority that AICPA must attach agreements it is not relying on to its complaint.

b.      ***There Is No Possible ADA Discrimination Claim, so No Possible Retaliation Claim***

AICPA could not possibly be liable for Lau's purported ADA "discrimination" claim. There is no possible ADA violation in the first instance, and so no possible retaliation claim. Put simply, "Defendants who are not otherwise subject to ADA remedies cannot be sued for retaliation under the ADA." *Saniefar v. Moore*, 2018 WL 3020458, *6 (E.D.Cal. June 18, 2018).

(1)      ***The ADA's Retaliation Provision***

The ADA prohibits discrimination in three areas: employment (Subchapter I); public services (Subchapter II); and public accommodations (Subchapter III). Section 12203, appears in the "miscellaneous" provisions of Subchapter IV, and prohibits retaliation or coercion against individuals who "oppose[] ***acts made unlawful by*** [the ADA]." 42 U.S.C. § 12203(a).

Thus, the anti-retaliation provision is contingent upon the substantive provisions of the ADA applying in the first instance. ***"[A] plaintiff cannot maintain an ADA retaliation claim against entities which are not otherwise subject to Subchapters I, II, and III of the ADA.***" *Van Hulle v. Pac. Telesis Corp.*, 124 F.Supp.2d 642, 645-46 (N.D.Cal. 2000) (collecting authority) (holding because "an employer-provided insurance carrier, Cigna [was] not a 'place of public accommodation' under Subchapter III," Cigna could not be liable for retaliation). Similarly, in *Saniefar,* because the plaintiff did not own or operate any place of public accommodation within the scope of Subchapter III at the time of the alleged retaliation, there was no potential violation of Subchapter III and therefore no potential retaliation claim under 12203. *Saniefar,* 2018 WL 3020458, *5-6. *See also, e.g., Iceberg v. Brookstone Landscape & Design LLC*, 2024 WL 1012895, at *3 (W.D.Wash. Mar. 8, 2024) ("[A]ny retaliation claim also fails because Brookstone does not own, lease, or operate a place of public accommodation" under Subchapter III); *Fenimore v. Lane Cty. Republican Cent. Comm.*, 2023

U.S.Dist.LEXIS 40542, *13 (D.Or. Mar. 10, 2023) ("Because Plaintiffs failed to allege facts to show that the ADA applied to Defendants, either as a public entity under Title II or a place of public accommodation under Title III, Plaintiffs also cannot sustain a retaliation claim.")

(2)    ***AICPA Is Not Subject to the ADA***

Lau alleges that AICPA purportedly "discriminated" against him in violation of 42 U.S.C. § 12189, which is part of ADA Subchapter III.  (SACC, ¶ 348.) Section 12189 "requires entities ***that offer*** examinations 'related to applications, licensing, certification, or credentialing for . . . professional, or trade purposes' to 'offer such examinations . . . ***in a place and manner accessible to persons with disabilities***."   42 U.S.C. § 12189 (emphasis added).

But to be governed by this section, AICPA must have ***significant control*** over the administration or accommodation of the test at issue.  *Guess v. St. Martinus Univ.*, 2022 U.S.App.LEXIS 11466, *9 (6th Cir. 2022) (emphasis added).  As the Sixth Circuit explained, "[w]hile the term 'offer' is not defined in Title III of the ADA, the statute's context indicates that an entity that 'offers examinations' under this provision must be able to provide an accessible place and manner for administration of the tests, or arrange for alternative, accessible accommodations." *Id.*  "Title III's implementing regulations support the interpretation that an entity offering the exam must ***have significant control*** over its ***administration or accommodation***." *Id.* (*citing* 28 C.F.R. § 36.309(b)(4)).  Thus, in *Guess*, a case with strikingly similar facts as here, the court dismissed ADA claims against defendant St. Martinus because it did not "offer" the exam at issue.  *Id.*, *9-10.  Like AICPA here, St. Martinus did not exercise any "authority over the manner and administration of the NBME prep exams administered by Prometric . . . [a]nd [] [plaintiff] presented no evidence that St. Martinus or any other named party ha[d] any 'authority to grant accommodations' for that exam."

SMRH:4935-4472-5807.13

Lau admits and affirmatively alleges that ***AICPA <u>did not</u> offer the exam.*** Rather:

- The California Board of Accountancy ("CBA"), evaluated and granted his request for accommodation, which—Lau's evidence shows—were extended time ("Time and one-half") for the exam and a "Separate room". (ECF 52-3, ¶ 4, 10-14,  47; ECF 53-23, Page ID 841 (the letter itself); SACC, ¶¶ 2; 13-17; 19-20; 316-318.)

- He paid testing fees to CBA and NASBA. (*Id*.)

- On instruction from CBA, NASBA provided an updated NTS listing the specific accommodations for him. (*Id.*)

- Lau sent this to *Prometric,* the entity that administers the CPA Exam, to schedule an exam with those accommodations. (*Id.*)

- Prometric, confirmed his accommodations, and Prometric provided all the listed accommodations at the test on September 24, 2024. (*Id.*)

AICPA did not have any role whatsoever in evaluating his entitlement to accommodations, determining or offering accommodations, taking payment, issuing an NTS, or controlling the location or accommodations for the test.  Lau readily admits that all of these functions were handled exclusively by CBA, NASBA and/or Prometric.  (*Id*.)  Therefore, AICPA is not governed by the ADA for Lau's "disability" claim.  *Guess*, 2022 U.S.App.LEXIS 11466, *9-10.

Accordingly, AICPA is not within the ADA's Subchapter III, and AICPA cannot have retaliated against Lau in violation of the ADA either.

### c.    *<u>Lau's Retaliation Claim Separately Fails Because His ADA Claim Was Not in Good Faith or Reasonable</u>*

Lau's own evidence is that the actual accommodations he was granted were "Time and one-half" and a "Separate room".  (ECF 52-3, ¶ 47; ECF 53-23, Page ID 841.)  ***He received both these things***.  Even under Lau's theory, to bring a valid retaliation claim, he needed to have a good faith, reasonable belief he was denied the

1  accommodations to which he was entitled.  He cannot possibly have had such belief

2  when *he knew he had received the exact accommodations he was granted*.  Thus,

3  his retaliation claim fails.  *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268,

4  270 (2001) (Single incident of allegedly lewd joking was not reasonably viewed as

5  sexual harassment, and therefore could not support claim that employee was

6  retaliated against for complaining about it).[6]

### 3.   Lau Has No Chance of Success on his Unfair Competition Claim

9  Lau's UCL claim cannot provide injunctive relief because it too is divorced

10  from his SACC.  Lau now claims for the first time that AICPA has committed

11  Unfair Competition under the "unlawful" prong by violating the following statutes:

12  Cal. Bus. & Prof. Code §§ 5100, 5102 and Cal. Gov't. Code § 11500. (App., p. 18).

13  *None of these statutes are mentioned anywhere in the SACC*.  Thus, Lau would

14  have no basis for obtaining relief under these statues based on his claims and

15  allegations in the SACC.  Similarly, because Lau did not plead any request for

16  injunctive relief in connection with his UCL claim in the SACC, he is barred from

17  such relief now under this claim.  *See Goodwin v. Butte Cnty.*, 2025 WL 821058, *1

18  (E.D.Cal. Mar. 14, 2025) ("Because plaintiff does not assert a claim for injunctive

19  relief in her amended complaint, the court cannot grant preliminary injunctive

20  relief.").

21  Lau's UCL claim fails under the "unlawful" prong to the extent it is

22  predicated on his other counterclaims addressed above.  *Stokes v. CitiMortgage,*

23  *Inc.*, 2014 WL 4359193, *11 (C.D.Cal. Sept. 3, 2014) (if "a plaintiff cannot state a

24  claim under the predicate law . . . [the UCL] claim also fails.").  Lau also argues that

---

[6]  Put another way, Lau cannot have any reasonable or good faith belief that he was entitled to elimination of "distractions" *outside* the test facility, or to have events *before* the test administration modified or controlled.

1  AICPA's actions are "unlawful" because it is "violating the Accountancy Act."
2  (App., p. 18).  But, none of the statutes to which Lau points purport to regulate
3  AICPA at all.  They impose no requirements, burdens or mandates on AICPA
4  whatsoever.  *See* Cal. Bus. & Prof. Code §§ 5100, 5102 (regulating actions of
5  Accounting Board) and Cal. Gov't. Code § 11500 (governing "state boards,
6  commission and officers").  Nor do they purport to override AICPA's right to
7  protect its intellectual property, or force AICPA to disclose exam scores to an
8  individual who has breached his confidentiality commitments in his NDAs with
9  AICPA.  AICPA cannot be liable under statutes it is not subject to.  *See Silcox v.*
10 *State Farm Mut. Auto. Ins. Co.*, 2014 WL 7335741, *5 (S.D.Cal. Dec. 22, 2014)
11 (dismissing UCL claim under "unlawful" prong because "[e]ach of the three alleged
12 statutory violations fail for lack of specificity as to how these statutes or code
13 sections are applicable and were allegedly violated by State Farm's denial of policy
14 benefits").

15      Lau argues AICPA violated the "fraudulent" prong of the UCL because it
16 "permitted Mr. Lau to schedule, pay for, and sit for the 2024 FAR exam, knowing
17 all along that it would withhold Mr. Lau's scores indefinitely without even telling
18 him." (App., p. 19).  But, as noted above, Lau asserts that he scheduled with and
19 paid NASBA and sat for the exam with Prometric. *See* Section IV.B.2(b)(2) *supra*.
20 Moreover, these claims are limited to Lau and Lau only.  The "term 'fraudulent,' as
21 used in the UCL, has required . . . a showing that members of the public are likely to
22 be deceived." *Daugherty v. Am. Honda Motor*, 144 Cal.App.4th 824, 838 (2006);
23 *see also In re Tobacco II Cases*, 46 Cal.4th 298, 31 (2009) (a fraudulent business
24 practice is one that is likely to mislead consumers).  Lau provides no evidence
25 demonstrating that AICPA is likely to mislead consumers at large.  Lau also fails to
26 allege any facts or provide evidence regarding any purported fraudulent conduct by
27 AICPA.  Lau has not asserted any fraud claim and, even if he did, the SACC (and
28 Application) fails to satisfy the "who, what, when, where, how" requirements of a

1  fraud claim.  *See Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1175 (S.D.Cal.
2  2012).

3          Finally, Lau argues AICPA violated the "unfair" prong because it
4  allegedly "pocket[ed] Mr. Lau's cash, secretly with[eld] his scores, and then use[d]
5  its unlawful score withholding as a de facto barrier to Mr. Lau's ability to pursue his
6  lawful profession."  (App. at 19.)  This is, again, inconsistent with Lau's own
7  pleadings and otherwise lacks underlying evidence. Lau says he gave his "cash" to
8  CBA and NASBA, Section IV.B.2(b)(2), *supra*, and provides no evidence regarding
9  harm to consumers at large, let alone any "immoral, unethical, oppressive,
10  unscrupulous, or substantially injurious" conduct. *See Doe v. CVS Pharmacy, Inc*.,
11  982 F.3d 1204, 1215 (9th Cir. 2020).  As demonstrated herein, it is not immoral for
12  AICPA to assert its contractual rights and protect its intellectual property.  Lau also
13  has not demonstrated any incipient violation of the antitrust laws, nor does the
14  SACC explain how its causes of action relate to conduct that violates the policy or
15  spirit of the antitrust laws.  *See Cel-Tech Comm's, Inc. v. Los Angeles Cellular*
16  *Telephone Co*., 20 Cal.4th 163, 187 (1999).

17          **C.    Lau Cannot Establish Irreparable Harm**

18          Plaintiff bears a heavy burden to show that "irreparable injury is likely in the
19  absence of an injunction."  *Winter*, 555 U.S. at 21-22.  A plaintiff must show that
20  she faces "a real or immediate threat of substantial or irreparable injury." *Midgett v.*
21  *Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850 (9th Cir. 2001).  Conclusory or
22  speculative allegations are not enough.  *Herb Reed Enters., L.L.C. v. Fla. Ent.*
23  *Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

24          First, Lau cannot establish the irreparable harm factor because he delayed for
25  months in seeking injunctive relief.  *See* Section IV.A, *supra*.

26          Nor does Lau adequately demonstrate any irreparable harm.  Lau's treatment
27  of the "irreparable harm" factor, totaling a half-page, is strikingly thin.  Lau
28  concludes, without citing to any evidence, that he is "not able to exercise his

SMRH:4935-4472-5807.13

Case No. 5:24-cv-01940-SSS-SHK
OPPOSITION TO *EX PARTE* APPLICATION

statutory right to seek a CPA license because of AICPA's score withholding." (App. at 19.)  Lau further concludes, without any supporting evidence, that he "faces the prospect of losing the benefit of prior exams he has already passed." (*Id.*)  But, nowhere does Lau specify in detail when his prior exam scores expire and why he faces irreparable harm therefrom.  To the extent Lau relies on his statement that "his previous exam scores will begin to expire" if he does not receive a passing score "by June 30, 2025", this statement confirms there are no exigent circumstances that require the Court to "drop everything" and decide an emergency application immediately.  June 30, 2025 is nearly three months away and Lau does not explain why he could not have filed a noticed motion to obtain the relief he seeks.

Further, Lau's lack of irreparable harm is underscored by the fact that he can apply to the CBA to extend the validity period of his prior test scores.  *See* 16 CCR § 7.1 (CBA can extend the validity period of scores for numerous reasons including "because the applicant was prevented from sitting for an unpassed test section or sections before credit for passed test sections expired" or "other good cause.")  He has not explained why he has not done this.  This silence is deafening.

Lau's declaration is also rife with unsupported speculation.  For example, he complains that not knowing whether he "passed the 2024 FAR exam is causing me a lot of stress." (ECF 52-3, ¶ 23).  The alleged causing of stress does not amount to a "real or immediate threat of substantial or irreparable injury."  Nor does the alleged "pressure [Lau] feel[s] to complete the FAR exam before June 30, 2025." (*Id.*).  Simply put, Lau's conclusory statements of harm are insufficient. *See ConocoPhillips Co. v. Gonzalez*, 2012 WL 538266, * 3 (N.D.Cal. Feb. 17, 2012); *see also iCall, Inc. v. Tribair, Inc.*, 2012 WL 5878389, * 14 (N.D.Cal. Nov. 21, 2012) (holding that the "conclusory declaration of [plaintiff's] CEO" was insufficient to establish irreparable harm); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (rejecting "affidavits [that] are conclusory and without sufficient support in facts.").

Finally, the cases Lau cites in support of irreparable harm are all distinguishable. In *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1166 (9th Cir. 2011), the plaintiff was denied requested accommodations to use a "computer equipped with assistive technology" to take the Multistate Professional Responsibility Exam, and the court found sufficient irreparable harm because she would lose "the opportunity afforded by her two-year, public-interest fellowship as a result of her inability to practice law." *Id*. at 1165-66.  In *Doe v. Samuel Merritt Univ.*, 921 F.Supp.2d 958 (N.D.Cal. 2013), the defendant did not permit the plaintiff to sit for a fourth attempt at passing a podiatric exam because of a requirement that the exam be passed in the first three attempts. *Id*. at 961.  The court found a showing of irreparable harm because "she will not be able to earn her degree from SMU during the pendency of the litigation, thus precluding her from advancing her professional career." *Id*. at 964.

Neither of these cases involve a scenario, like here, where an exam result was withheld because the examinee violated contracts and was accused of misappropriating the exam creator's intellectual property.  Any harm faced by Lau is caused by his own wrongful conduct.  Moreover, here, there are no allegations that Lau was not provided the physical testing accommodations that he requested. To the contrary, he was provided them.  And, unlike *Enyart* and *Doe*, there is no immediate danger to Lau to not participate in a job opportunity or graduate from his current school.  Lau has the ability to extend the validity period of his prior test scores.

### D.     The Balance of the Equities Favor AICPA

"To qualify for injunctive relief, Plaintiff[s] must establish that 'the balance of the equities tips in [their] favor.'"  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20).  A court has the "duty . . . to balance the interests of all parties and weigh the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

Here, AICPA has merely taken actions to allow it time to pursue its claims against him, investigate whether Lau also violated his NDA and AICPA's legal rights with respect to the September 24 exam before releasing the score, and to prevent Lau from accessing, possessing, using, or disclosing AICPA's trade secrets and further violating the applicable contracts. AICPA is taking actions Lau consented to by contract. Under these circumstances, the balance of equities tips heavily in AICPA's favor. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, 2001 WL 283083, *6 (C.D.Cal. Feb. 2, 2001) (balance of the equities favored enjoining potential misappropriation because "an injunction merely prohibits Defendants from misappropriating the trade secrets of Merrill Lynch, and requires them to comply with the reasonable terms of their Agreements").

Further, the doctrine of unclean hands is "a complete defense to legal as well as equitable causes of action." *Mendoza v. Ruesga*, 169 Cal.App.4th 270, 279 (2008). And it is certainly reason enough to deny a preliminary injunction, which seeks extraordinary relief. *Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (unclean hands "that closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant"). Here, as described above, Lau is not entitled to equitable relief. He admits he disclosed Exam Content. He therefore violated his contractual commitments to AICPA, and committed trade secret misappropriation and copyright infringement.

**E.   Denying the Application is in the Public Interest**

"Courts often find that the public has a strong interest in protecting intellectual property rights." *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 854 (N.D.Cal. 2019). Though California has a strong public policy in favor of vigorous competition, that interest "yields to California's interest in protecting a company's trade secrets." *Latona v. Aetna U.S. Healthcare*, Inc., 82 F.Supp.2d 1089, 1096 (C.D.Cal. 1999). "The public interest is served when [a] defendant is asked to do no

more than abide by trade laws and the obligations of contractual agreements signed with [his] employer.  The public interest is also served by enabling the protection of trade secrets."  *Henry Schein, Inc. v. Cook*, 191 F.Supp.3d 1072, 1078 (N.D.Cal. 2016) (citing *Bank of Am., N.A. v. Lee*, 2008 WL 4351348, *7 (C.D.Cal. Sept. 22, 2008)).  Accordingly, the public interest in requiring Lau to abide by trade laws, protect AICPA's trade secrets, and honor his ongoing contractual obligations to AICPA.

**V.    CONCLUSION**

For all of the forgoing reasons, Lau's Application should be denied. However, if the Court grants Lau's Application in any form, AICPA requests that Lau be ordered to abide by AICPA's NDA and not disclose any Exam Content whatsoever to anyone.  This is necessary given that Lau admits disclosing Exam Content on several prior instances, and he claims he is not subject to the NDAs and has no duty to refrain from disclosing the Exam Content.  Additionally, AICPA requests that the Court impose a security—as required by FRCP 65(c).  AICPA requests a security of $126,000, to cover the costs of monitoring and attempting to investigate if Lau again discloses Exam Content by way of additional exams.

Dated:  April 3, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        /s/ *Tenaya Rodewald*

TENAYA RODEWALD
KAZIM A. NAQVI
Attorneys for Plaintiff
AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

**L.R. 11-6.1 Certification**

The undersigned, counsel of record for Counter-defendant American Institute of Certified Public Accountants, certifies that this brief contains 6989 words, which complies with the word limit of L.R. 11-6.1

Dated:  April 3, 2025          SHEPPARD, MULLIN, RICHTER & HAMPTON
LLP

                              By  _____
                                         /s/ Tenaya Rodewald
                                      TENAYA RODEWALD
                                      KAZIM A. NAQVI
                                      Attorneys for Plaintiff
                                 AMERICAN INSTITUTE OF CERTIFIED
                                      PUBLIC ACCOUNTANTS