ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
AVERY CARTWRIGHT (SBN 354724)
acartwright@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA  90071
Telephone:  +1 213 629 2020
Facsimile:   +1 213 612 2499

CHARLES WEINER (*Pro Hac Vice*)
charles@charlesweinerlaw.com
LAW OFFICE OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Telephone:  + 1 267-685-6311
Facsimile:   +1 215-340-768

Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN LAU,<br><br>Defendant.<br>_____<br>STEPHEN LAU,<br><br>Cross-Complainant,<br><br>v.<br><br>AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>Cross-Defendant, | Case No. 5:24-cv-01940-SSS-SHKx<br><br>**REPLY TO AICPA's OPPOSITION TO *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |

## **INTRODUCTION**

AICPA's Opposition brief is most significant for what it *doesn't* say. AICPA doesn't say that it decided to withhold Mr. Lau's scores for non-retaliatory reasons. *See* Dkt. 57. AICPA does not even say that it decided to withhold Mr. Lau's September 2024 FAR Exam score before Mr. Lau threatened ADA claims on October 9. *See* Dkt. 55 (Opposition) and Dkt. 57 (Cannon Decl.). These omissions, combined with the already-strong inference of retaliation presented in Mr. Lau's *ex parte* Application, more than suffice to establish likelihood of success on Mr. Lau's claim that AICPA is withholding Mr. Lau's scores in retaliation for his assertion of ADA rights.

AICPA's *lawyers* argue that AICPA can withhold Mr. Lau's exam score because of yet *another* new contract document presented for the first time this morning, Dkt. 56-3, *compare* Dkt. 53-27 (document provided March 27, 2025). Mr. Lau disputes AICPA's inconsistent assertions about what he clicked through and when, but that dispute is immaterial since no one from AICPA was willing to state under oath that AICPA *actually* decided to withhold Mr. Lau's score based on either Dkt. 56-3 or Dkt. 53-27. Moreover, as AICPA's Opposition tacitly concedes through its silence on the point, neither Dkt. 56-3 or Dkt 53-27 helps AICPA because the terms of those documents both suggest, at most, that AICPA could withhold scores only for misconduct associated with *the* capital "T" "Test" at issue: the September 2024 FAR Exam. *Id*; Dkt. 52 at 16-17. "AICPA does not presently know if [Mr.] Lau made additional disclosures after the September 2024 exam," Dkt. 57 ¶ 28, so there is no basis for AICPA to withhold the 2024 FAR Exam Score under the authority of Dkt. 56-3 or Dkt 53-7 even if they do apply to Mr. Lau. Nor is there any Rule 11 basis for AICPA to allege Mr. Lau did anything wrong with respect to the September 2024 Exam. *Compare* Dkt. 57 ¶ 28 *with* Dkt. 55, n. 3.

Mr. Lau responds briefly below to a few other issues and materially incorrect statements contained in AICPA's Opposition.

REPLY RE *EX PARTE* APPLICATION FOR
TEMPOARY RESTRAINING ORDER
CASE NO. 5:24-CV-01940-SSS-SHKx

## ARGUMENT

### I.    AICPA's Delay Argument Lacks Merit

AICPA misrepresents that it "is undisputed that Lau has been aware of the alleged wrongdoing and harm for five months." Dkt. 55 at 7. In fact, Mr. Lau did not learn that AICPA was withholding his September 2024 FAR score until January 21, 2025.[1] *See* Lau Decl. ¶¶ 17-21.  Mr. Lau knew that he was being harmed by his inability to obtain his score, but he did not know *who* was doing that harm until January 21, 2025. Mr. Lau didn't obtain admissible evidence of the AICPA "wrongdoing" he now seeks to enjoin until March 27, 2025, when AICPA sent written evidence establishing that AICPA has no legitmate reason for withholding Mr. Lau's score. Dkt. 52 at 10; Exs. 27-28. Once Mr. Lau obtained admissible evidence of AICPA's retaliatory motives, he promptly moved *ex parte*.[2]

AICPA's delay argument is also legally incorrect. AICPA *concealed* its's score-withholding misconduct, first by not telling Mr. Lau it was holding his scores when it did so in October 2024, then by refusing to answer Mr. Lau's written request for an explanation in February 2025. Lau ¶¶18-20, Dkt. 53-26.  Delays caused by AICPA's efforts to conceal its' misconduct are neither "inexcusable" (Dkt. 55 at 8) nor attributable to Mr. Lau, *see, e.g., Sun World, Inc. v. Lizarazu Olivarria,* 804 F. Supp. 1264, 1268 (E.D. Cal. 1992) (rejecting argument that movant waited too long to seek injunction where non-moving party engaged in "delay and ball-hiding"); *see also Knight v. Wells Fargo Bank,* 2016 U.S. Dist. LEXIS 74837, at *17 (D. Mont. June 8, 2016) ("nondisclosure of information," and "whether the defendant acted to prevent discovery of [] facts" are relevant factors in

---

[1] Prior January 21, Mr. Lau believed that the CBA was holding his score, *see* Dkt. 53-25, because he received inquiries from CBA in November 2024 asking him questions about AICPA's complaint in this case.  Mr. Lau has reason to believe AICPA instigated the CBA investigation for retaliatory reasons, but AICPA is currently stonewalling Mr. Lau's discovery efforts on that score.

[2] Mr. Lau attempted to avoid the need for *ex parte* relief. Uriarte Decl. ¶7.

assessing equitable issues concerning alleged delay); *Grasshopper House, LLC v. Clean & Sober Media LLC*, 394 F. Supp. 3d 1073, 1097-98 (C.D. Cal. 2019)("Cliffside's fraudulent intent in its efforts to conceal its affiliation with The Fix constituted clear and convincing evidence of unclean hands in reference to Cliffside's laches defense, providing a secondary basis to conclude that laches does not apply to any delay in Passages' lawsuit.").

Contrary to AICPA's suggestion, courts don't "regularly find delays" of any particular length to be dispositive. Dkt. 55 at 7-8. Delay "is but a single factor to consider in evaluating irreparable injury," and "courts are loath to withhold relief" on that ground. *E.g., Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). Importantly, any alleged "tardiness is not particularly probative in the context of ongoing, worsening injuries" like those at issue here. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014).  Mr. Lau's time is running out, and his irreparable injury will only worsen as the clock ticks down. *Compare id*.

## II.     Mr. Lau is Suffering Worsening Irreparable Harm

If Mr. Lau passed 2024 FAR exam, he is entitled to a CPA license immediately. *E.g*., Dkt. 53-1 at 2; Cal. Bus. & Prof. Code § 580.  Inability to obtain professional license jeopardizes Mr. Lau's livelihood and is irreparable harm as a matter of law. *E.g., Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 838, 844 (9th Cir. 2024) (finding irreparable harm because licensing penalties jeopardized livelihood and ability to practice medicine); *Enyart v. Nat'l Conference of Bar Exam'rs, Inc.,* 630 F.3d 1153, 1165 (9th Cir. 2011) (similar); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) ("inability to obtain driver's licenses likely causes them irreparable harm").[3] AICPA attempts to distinguish *Enyart* by speculating that Mr. Lau "has the ability to extend the

---

[3] AICPA's critique of Mr. Lau's irreparable harm showing as "strikingly thin" (Dkt. 18) ignores the binding Ninth Circuit precedent establishing that licensure denial is irreparable harm because money damages are insufficient. *Id*.

REPLY RE *EX PARTE* APPLICATION FOR
TEMPORARY RESTRAINING ORDER
CASE NO. 5:24-CV-01940-SSS-SHKx

validity period of his prior test scores." Dkt. 55 at 20. But even if Mr. Lau could obtain such relief from the CBA, that would not remedy the irreparable harms Mr. Lau faces right now.

If Mr. Lau passed his last FAR exam, then Mr. Lau is being deprived of a professional license that he is already entitled to.[4]  If AICPA is permitted to hold up Mr. Lau's score through trial and appeal, that could mean depriving Mr. Lau of a CPA license for years—years that he would otherwise be entitled to practice as a licensed CPA in California.  The irreparable harm will be even worse if Mr. Lau did not pass the September 2024 FAR exam, in which case he should have already been able to reschedule and retake the exam with his last attempts still fresh in his mind. Cal. Bus. & Prof. Code § 5082.2; 16 Cal.Code Reg. § 7.1(a). If he does not pass all sections of the CPA exam "within a rolling 30-month period," his exam scores will begin to expire, starting with this December 15, 2023 REG score. Dkt. 52-24. The speculative possibility that the CBA might extend the validity of his prior scores would not remedy the harm to Mr. Lau's current ability to schedule, prepare for, take, and pass the FAR exam.

## III.    AICPA's Merits Arguments Fail

### A.    AICPA is Subject to the ADA and Has Violated It

AICPA asserts that it is "not subject to the ADA" because it does not have "significant control" over administration of the Uniform CPA Exam. Dkt. 55 at 14. This argument is a red herring: Mr. Lau seeks injunctive relief based on his retaliation claim, which is not contingent on whether or not AICPA "offers" the Uniform CPA Exam or not.  Dkt. 52 at 13-15; *see, e.g.*, *Guess v. St. Martinus Univ.*, 2022 U.S. App. LEXIS 11466, at *10 (6th Cir. 2022) (unpublished) (analyzing retaliation claim separately after finding that plaintiff could not state an

---

[4] Unlike AICPA, Mr. Lau is not a well-heeled litigant capable of spinning up parallel proceedings.  He is an aspiring CPA with learning disabilities asking this Court for protection.

REPLY RE *EX PARTE* APPLICATION FOR TEMPOARY RESTRAINING ORDER CASE NO. 5:24-CV-01940-SSS-SHKx

accommodations claim); Dkt. 42 ¶¶350 (alleging retaliation claim based on score withholding, separate and apart from the September 24, 2024 interference with Mr. Lau's exam accommodations).[5]

AICPA's argument also flies in the face its own allegations in this case.  Mr. Lau "would not have been permitted to schedule, sit for, take or otherwise view these sections of the CPA Exam and the Exam Content if he had refused or failed to" contract with AICPA, Dkt. 30 ¶ 53, and AICPA's alleged contracts required Mr. Lau to "comply at all times with all testing policies and procedures" proscribed by AICPA, *id*. ¶55.  AICPA claims to be the owner of "all rights, title, and interest" to the "various versions of the CPA Exams" that it offers, Dkt. 30 ¶¶ 14, 36, 37, 40, and AICPA says it controls access to CPA Exams *inter alia* by controlling how "the exam administrator securely transmits the CPA Exam to its test centers," Dkt. 30 ¶ 45.  AICPA's control over exam administration even extends to conducting "security screening and monitoring of [] testing facilities and testing candidates in its operations related to the CPA Exam."  *Id*. According to AICPA's own complaint, "access to and use" of the CPA Exam "is strictly limited and controlled by the AICPA." *Id*. ¶ 59. Mr. Lau's evidence is in accord with AICPA's judicial admissions. Dkt. 53-19 at (AICPA agreement that Prometric forces candidates to sign to gain access to AICPA exams). AICPA tells the world outright on its website that the Uniform CPA Exam "is administered...*by NASBA and the AICPA* on behalf of the state boards of accountancy." Dkt. 53-20 at 1 (directing candidates to contact

---

[5] AICPA's Rule 408 argument is not a serious one. "Statements made during the course of settlement negotiations regarding one claim are admissible to support an independent claim of retaliation." *E.g., Samadi v. Quality Furniture LLC*, 2012 U.S. Dist. LEXIS 192291, at *10 (D. Ariz. July 23, 2012) (collecting cases). "Rule 408 is designed to ensure that parties may make offers during settlement negotiations without fear that those same offers will be used to establish liability should settlement efforts fail." *Rhoades v. Avon Prods.*, 504 F.3d 1151, 1161-62 (9th Cir. 2007).  Using *Mr. Lau's* threat of ADA claims as evidence of *AICPA's* retaliatory motive has nothing to do with the Rule 408. *Resolution Tr. Corp. v. Blasdell*, 154 F.R.D. 675, 681 (D. Ariz. 1993) ("this evidence was presented to prove motive rather than liability, Rule 408 does not render it inadmissible.").

REPLY RE *EX PARTE* APPLICATION FOR
TEMPOARY RESTRAINING ORDER
CASE NO. 5:24-CV-01940-SSS-SHKx

NASBA for information about accommodations and stating that AICPA and NASBA administer exam); accord Dkt. 53-27 at 2 (purported contract between candidate and AICPA describing coronavirus procedures). And of course, AICPA wets its beak each time exam fees are paid. Dkt. 53-11 at 15 ("fees are established by Boards of Accountancy, NASBA, the AICPA and Prometric").

AICPA's judicial admissions and the record evidence establish that this case is nothing like the unpublished, non-precedential case AICPA relies on, in which the defendant was a private university (not the test creator/offeror) that "did not exercise any 'authority over the manner and administration of the NBME prep exams administered by Prometric.'" Dkt. 55 at 14 (citing *Guess,* No. 21-1478, 2022 U.S. App. LEXIS 11466, at *9).

### B.     The Record Belies AICPA's Interference and UCL Arguments

AICPA's argument (Dkt. 55 at 9) that Mr. Lau's contracts with the CBA, NASBA, and Prometric are not "identified in any manner of specificity" in Mr. Lau's Second Amended Counterclaims is demonstrably incorrect. *See, e.g.,* Dkt. 42 ¶¶92-96; 103-115; 132-134, 314404-408. AICPA's argument (Dkt. 55 at 10) that "nowhere does Lau specifically identify any third-party contractual provision governing the release of Lau's test score" is also demonstrably false. *See, e.g.,* Dkt. 52 at 2 ("the California Board of Accountancy website" and says that answering "yes" to application question number 8 "will allow you to receive your exam scores in your [CBA] account.")(citing Exhibit 7); Dkt. 52 at 5 ("When advisory scores become available, the AICPA forwards them to NASBA, which then matches the scores to individual candidates. NASBA then forwards the scores to Boards of Accountancy for approval and subsequent release to candidates…If you fail an examination section, you will receive a Candidate Performance Report)(citing Dkt. 53-11 at 49); Dkt. 52 at 6 (citing Dkt. 53-15 and 53-16); Dkt. 52 at 7 (citing Dkt. 53-18). AICPA's attempt to plead ignorance (Dkt. 55 at 10) of Mr. Lau's contracts with Prometric, CBA, and NASBA is, quite simply, unbelievable. Dkt. 53-2

- 6 -

(discussing AICPA's contract with CBA); Dkt. 53-11 at 49 (Discussing NASBA-AICPA-Prometric relationship).

Mr. Lau's operative UCL pleading incorporates by reference the California Business and professions code sections that govern licensure of CPAs in California and states that the CBA has been entrusted by the legislature with ensuring only qualified licensees practice public accountancy in accordance with applicable professional standards. Dkt. 42 ¶¶ 90-94; 412.  Contrary to AICPA's assertions (Dkt. 55 at 11, 16), "the liberal pleading requirement of Rule 8 does not require that a specific statute be invoked in a complaint." *Novobilski v. Specialized Loan Servicing, LLC*, 2022 U.S. Dist. LEXIS 88993, at *8 (C.D. Cal. Apr. 22, 2022).

## IV.     The Equities Favor Mr. Lau and AICPA's Request for An Oppressive Security Bond Proves it

The equities relevant to Mr. Lau's application are the equities concerning Mr. Lau's September 2024 FAR exam, which AICPA permitted Mr. Lau to schedule, pay for, access, and complete.  Any breaches of prior alleged agreements in November 2023 and February 2024 don't have anything to do with the September 2024 FAR exam.[6] Sixth months into this case and more than a year after it began investigating Mr. Lau, AICPA has no Rule 11 basis to accuse Mr. Lau of any misconduct related to the September 2024 FAR exam; *a fortiori*, it has no justification for withholding his score.  AICPA's attempt to relegate this critical point to a footnote (Dkt. 55 at 9 n.3) is a huge tell. AICPA has not "sought to enjoin" Mr. Lau from anything. *Id.*  Had it done so, Mr. Lau would have had due process.  Instead, AICPA resorted to the self-help tactic of holding up Mr. Lau's September 2024 FAR score without even providing notice that it was doing so. Withholding Mr. Lau's score without any evidence of wrongdoing related to the

---

[6] AICPA misrepresents that Mr. Lau "admits he disclosed Exam Content," (Dkt. 55 at 21), even though Mr. Lau expressly denies that allegation, *e.g.*, Dkt. 42 at 8, ¶71 ("Denied," responding to Dkt. 30 ¶ 71 ("Defendant…disclosed Exam Content..")).

REPLY RE *EX PARTE* APPLICATION FOR
TEMPOARY RESTRAINING ORDER
CASE NO. 5:24-CV-01940-SSS-SHKx

September 2024 FAR exam is fundamentally inequitable and contrary to the public's interest in due process and the orderly administration of justice. *Zoom Video Communs., Inc. v. Ringcentral, Inc.*, 2021 U.S. Dist. LEXIS 59902, at *14 (N.D. Cal. 2021) (citation omitted).

AICPA's argument that Mr. Lau should have to post a security bond of $126,000 is outrageous but telling. The principal relief Mr. Lau requests is simply release of his September 2024 FAR exam score. Why then is AICPA tying the amount of its requested security bond to speculative risks concerning any "additional exams?" Dkt. 55 at 22. The answer to this question lays bare AICPA's unlawful motives. Knowing that it could not obtain from this Court an injunction prohibiting Mr. Lau from accessing "additional exams" (especially since Mr. Lau took multiple exams after the ones described in AICPA's complaint and has not made any disclosures related to those exams, Lau Decl. ¶¶ 17-18), AICPA simply took it upon itself to lock Mr. Lau out of "additional exams" through the self-help measure of holding up his score. Mr. Lau seeks to return to the *status quo ante* as it existed before AICPA retaliated against him, which is why his requested injunction is prohibitory, not mandatory. *See, e.g., Pac. Sunwear of Cal. Inc. v. KP Fashion Co.*, 2009 U.S. Dist. LEXIS 139342, at *15 (C.D. Cal. Mar. 20, 2009); *Lahr v. Nat'l Safety Transp. Bd.*, 2006 U.S. Dist. LEXIS 76170, at *6 (C.D. Cal. Oct. 4, 2006) ("SAC seeks…preliminary and final injunctions prohibiting Defendants from further withholding the records at issue"); *Dillon v. Montana*, 451 F. Supp. 168, 176-77 (D. Mont. 1978) (prohibitory injunction regarding "illegal withholding of tax). But regardless of how the injunction is characterized, it is richly deserved given the equities and evidence presented. The cost of a retest is $50 dollars. Lau Decl. ¶ 13. That is the amount of security Mr. Lau should have to post, if any.

**<u>CONCLUSION</u>**

For the foregoing reasons, Mr. Lau respectfully requests that his Application be granted in its entirety.

Dated:    April 3, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Robert L. Uriarte*
ROBERT L. URIARTE
Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

REPLY RE *EX PARTE* APPLICATION FOR
TEMPOARY RESTRAINING ORDER
CASE NO. 5:24-CV-01940-SSS-SHKX