**SHEPPARD, MULLIN, RICHTER & HAMPTON LLP**
  A Limited Liability Partnership
  Including Professional Corporations
TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real Suite 120
Menlo Park, California 94025-4111
Telephone: 650.815.2600
Facsimile: 650.815.2601

KAZIM A. NAQVI, Cal. Bar No. 300438
knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-7017
Telephone:   310.228.3700
Facsimile:   310.228.3701

[*Additional counsel listed on signature page*]

*Attorneys for Plaintiff and Counter-Defendant AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>        Plaintiff,<br><br>      v.<br><br>STEPHEN LAU,<br><br>        Defendant.<br><hr>STEPHEN LAU,<br><br>        Counterclaimant,<br><br>      v.<br><br>AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>        Counter-Defendant. | Case No. 5:24-cv-01940-SSS-SHKx<br><br>**COUNTER-DEFENDANT AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS':**<br><br>**(1)  NOTICE OF MOTION AND MOTION TO DISMISS COUNTERCLAIMANT LAU'S COUNTERCLAIMS 4 – 10 PURSUANT TO RULE 12(b)(6); AND**<br><br>**(2)  MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Declaration of Tenaya Rodewald, Request For Judicial Notice and Proposed Order Filed Concurrently Herewith*]<br><br>Hearing Date:  May 9, 2025<br>Time:           2:00 pm<br>Ctrm.:          2 |

**TO THE ABOVE-CAPTIONED COURT AND TO DEFENDANT AND COUNTERCLAIMANT AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that at 2:00 p.m. on May 9, 2025, or as soon thereafter as this matter may be heard in Courtroom 2 of the above-captioned Court, located at the United States District Court, 3470 Twelfth Street, Riverside, California 92501-3801, the Honorable Sunshine S. Sykes presiding, Plaintiff and Counter-Defendant American Institute of Certified Public Accountants ("AICPA") will and hereby does move for an order dismissing Counterclaimant Stephen Lau's ("Lau's") Second Amended Counterclaims 4 – 10 in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

This motion is made on the following grounds:

- Lau's Counterclaim 4 for purported violation of the Digital Millenium Copyright Act ("DMCA") fails because (1) Lau impermissibly relies on speculation about what anticipated discovery might show rather than allegations of facts to support his claims; (2) Lau does not and cannot allege that the DMCA notice AICPA sent to Discord, Inc. ("Discord") and related subpoena request were submitted in bad faith, and his attempt to plead this element contradicts the documents he incorporates into his counterclaims, misstates the law, and is implausible; and (3) Lau cannot allege a material misrepresentation in the notice to Discord because the only purported misrepresentation he identifies is contradicted by the document itself (which Lau incorporates by reference) and the purported misrepresentation did not have any impact on Discord and so was not material.

- Lau's Counterclaim 5 for purported violation of the American's with Disabilities Act ("ADA") fails as AICPA did not possibly "discriminate" in violation of the ADA because: (a) AICPA is not within the scope of any entity regulated by the ADA since AICPA does not "offer" the

uniform CPA exam within the meaning of the law; and (b) moreover, Lau admits he received all of the accommodations to which he was entitled (a semi-private room, and extra time to take the exam) – there is no possible argument that Lau was entitled to any other accommodation or any accommodation related to events *outside* the testing facility or *before* the time when the test was being taken.  Lau cannot possibly assert a "retaliation" claim under the ADA because: (a) he does not allege such in his counterclaims, (b) AICPA cannot be the subject of a retaliation claim because it is not subject to the ADA in the first instance; and (c) Lau does not and cannot allege he had a good faith reasonable belief that there had been a violation of the ADA because he admits receiving all accommodations to which he was entitled, nor does he adequately plead that he opposed discrimination or that but for such opposition he would not have suffered the alleged retaliation.

- Lau's Counterclaim 6 for purported violation of the Rehabilitation Act fails because: (a) Lau cannot allege that he was discriminated against or denied an accommodation because he received all the accommodations he requested and was granted; (b) he cannot allege the purported discrimination (the personal service of the Complaint in this action on him as he entered the test facility) was because of his disability rather than routine litigation activity; and (c) he fails to allege that AICPA receives federal financial assistance.

- Lau's Counterclaim 7 for purported violation of the California Unruh Act fails because: (a) this claim is entirely dependent on the alleged violation of the ADA, which fails, and (b) it is based on the personal service on him of the original complaint in this action, which is absolutely privileged under the California litigation privilege.

- Lau's Counterclaim 8 for breach of the covenant of good faith and fair dealing fails because: (a) Lau does not identify any express contractual provision subject to his counterclaim; (b) to the extent Lau does attempt to identify the NDAs as the underlying contracts, Lau's claim contradicts the terms of the written contracts at issue, which protect AICPA's intellectual property and cannot be interpreted as providing Lau advance notice of AICPA's claims against him; and (c) this counterclaim can only be predicated on AICPA's assertion of its own claims in this action – which is absolutely privileged under the California litigation privilege.

- Lau's Counterclaim 9 for tortious interference fails because Lau does not sufficiently identify the third-party contracts or terms that were purportedly interfered with, or AICPA's knowledge of such contracts or terms.

- Lau's Counterclaim 10 for violation of California's Unfair Competition Law ("UCL") fails because: (a) Lau lacks standing to assert a claim under the UCL; (b) Lau fails to allege facts establishing any "unlawful" conduct by AICPA; (c) Lau lacks standing to allege any "unlawful" conduct based on California Civil Code Section 16600; (d) Lau fails to allege facts establishing any "unfair" conduct by AICPA because there are no antitrust violations alleged or harm to consumers at large, no facts that balance the harms to consumers against the benefits of the NDAs, and no facts establishing any other wrongful conduct; and (e) Lau fails to allege facts establishing any "fraudulent" conduct by AICPA because there is no alleged harm to consumers at large, Lau does not allege any fraudulent conduct by AICPA, and even if he did Lau does not satisfy the heightened pleading standard for fraud claims.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, and Declaration of

Tenaya Rodewald, all pleadings, papers and other documentary materials in the Court's file for this action, those matters of which this Court may or must take judicial notice, and such other matters as this Court may consider in connection with the hearing on this matter.

This motion is made following the conference of counsel pursuant to C.D. Cal. L.R. 7-3 that took place on April 3, 2025. Declaration of Tenaya Rodewald, filed herewith, ¶ 4. The conference was held by zoom video conference and lasted approximately 25 minutes. *Id*. Tenaya Rodewald, Kazim Naqvi, Christopher Thomas and Andrew Tabeling participated for the AICPA and Robert L. Uriarte And Charles Weiner participated for defendant Lau. *Id*. Counsel for AICPA explained the bases for dismissing each of Lau's counterclaims 4-10, and Lau's counsel did not agree that any claims warranted dismissal. *Id*., ¶¶ 5, 6.

Dated: April 10, 2025                    SHEPPARD MULLIN RICHTER & HAMPTON LLP

By _____*/s/ Tenaya Rodewald*_____
TENAYA RODEWALD
KAZIM NAQVI

**PARKER POE ADAMS & BERNSTEIN LLP**
CHRISTOPHER M. THOMAS (*admitted pro hac vice*)
christhomas@parkerpoe.com
ANDREW P. TABELING (*admitted pro hac vice*)
andytabeling@parkerpoe.com
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina 27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564

NICHOLAS H. LEE (*admitted pro hac vice*)
nicholaslee@parkerpoe.com
620 S. Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: 704-335-9876
Facsimile: 704-334-4706

Attorneys for Plaintiff and Counter-Defendant
AMERICAN INSTITUTE OF CERTIFIED
PUBLIC ACCOUNTANTS

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................1

II.   FACTS ...............................................................................................1

    A.    AICPA's Lawsuit Against Lau ...............................................1

    B.    Lau's Counterclaims ..............................................................2

III.  LEGAL STANDARD ........................................................................3

IV.   LAU DOES NOT ALLEGE ANY VIABLE COUNTERCLAIM AGAINST AICPA ...............................................................................3

    A.    Counterclaim 4 for Purported Violation of the DMCA Fails ..................3

    B.    Lau's Discrimination Counterclaims (Counterclaims 5-7) Fail ...............6

        1.    Counterclaim 5 Fails ...................................................6

            a.    Any ADA "Discrimination" Claim Fails Including Because AICPA Is Not Subject to the ADA .......................6

            b.    Lau Does Not Allege an ADA "Retaliation" Claim, and Any Such Claim Fails ...........................................9

        2.    Lau's Unruh Act Counterclaim 7 Fails ...........................11

            a.    Counterclaim 7 Fails because Lau's ADA Claim Fails ......11

            b.    Counterclaim 7 Is Also Barred By the Litigation Privilege ..........................................................11

        3.    Lau's "Rehabilitation Act" Counterclaim 6 Fails ....................12

    C.    Counterclaim 8 for Breach of the Covenant of Good Faith and Fair Dealing Fails .................................................14

    D.    Counterclaim 9 for Tortious Interference Fails ........................16

    E.    Counterclaim 10 For Violation of California's UCL Fails ..................17

        1.    Lau Lacks Standing for His UCL Counterclaim ...................17

        2.    Lau Cannot Satisfy the "Unlawful" Prong ......................18

            a.    Lau's Purported Section 16600 Violation Fails .................18

        3.    Lau Cannot Satisfy the "Unfair" Prong .........................20

        4.    Lau Cannot Satisfy the "Fraudulent" Prong ....................21

V.    CONCLUSION ..................................................................................22

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*21st Century Ins. Co. v. Super. Ct.*
  47 Cal.4th 511 (2009) ................................................................................15

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ....................................................................................3

*Becerra v. Dr Pepper/Seven Up, Inc.*
  945 F.3d 1225 (9th Cir. 2019) ..................................................................21

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ....................................................................................3

*Binno v. American Bar Association*
  826 F.3d 338 (2016) ...........................................................................6, 7, 8

*Bosnich v. Chase Bank USA, N.A.*
  2011 WL 1790106 (C.D.Cal. May 9, 2011) .............................................12

*Capitol Recs., Inc. v. MP3tunes, LLC*
  611 F.Supp.2d 342 (S.D.N.Y. 2009) ..........................................................6

*Castro v. Food City*
  2022 WL 3718350 (D.Ariz. June 22, 2022) .............................................10

*Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*
  20 Cal.4th 163 (1999) ...............................................................................20

*Clark Cty. Sch. Dist. v. Breeden*
  532 U.S. 268 (2001) ..................................................................................10

*Coto Settlement v. Eisenberg*
  593 F.3d 1031 (9th Cir. 2010) ....................................................................3

*Cullen v. Netflix, Inc.*
  600 F. App'x 508 (9th Cir. 2015) .............................................................11

*Daugherty v. Am. Honda Motor*
  144 Cal.App.4th 824 (2006) ......................................................................21

*Davis v. HSBC Bank*
   691 F.3d 1152 (9th Cir. 2012) ............................................................................ 20

*Doe v. CVS Pharmacy, Inc.*
   982 F.3d 1204 (9th Cir. 2020) ............................................................................ 20

*Dowell v. Biosense Webster, Inc.*
   179 Cal.App.4th 564 (2009) ............................................................................... 19

*Duvall v. County of Kitsap*,
   260 F.3d 1124 (9th Cir. 2001), *as amended on denial of reh'g*
   (Oct. 11, 2001) .................................................................................................... 12

*Educ. Testing Serv. v. Simon*
   95 F.Supp.2d 1081 (C.D.Cal. 1999) ..................................................................... 5

*Feldman v. 1100 Park Lane Assocs*.
   160 Cal.App.4th 1467 (2008) ............................................................................. 12

*Fenimore v. Lane Cnty. Republican Cent. Comm.*,
   2023 WL 2456266 (D.Or. Mar. 10, 2023), *aff'd*, 2024 WL 3250368
   (9th Cir. July 1, 2024) ........................................................................................... 9

*Fowler v. Varian Associates, Inc.*
   196 Cal.App.3d 34 (1987) .................................................................................. 19

*Gemsa Enterprises, LLC v. Pretium Packaging, LLC*
   2021 WL 4551200 (C.D.Cal. July 27, 2021) ..................................................... 16

*Guess v. St. Martinus Univ.*
   2022 WL 1224555 (6th Cir. Apr. 26, 2022) ...................................................... 7, 8

*Herman v. United Bhd. of Carpenters*
   60 F.3d 1375 (9th Cir. 1995) ............................................................................. 13

*Iceberg v. Brookstone Landscape & Design LLC*
   2024 WL 1012895 (W.D.Wash. Mar. 8, 2024) ..................................................... 9

*Kwikset Corp. v. Super. Ct.*
   51 Cal.4th 310 (2011) ........................................................................................ 17

*Loral Corp. v. Moyes*
   174 Cal.App.3d 268 (1985) ............................................................................... 19

*Moog Inc. v. Skyryse, Inc.*
2023 WL 3432213 (C.D.Cal. Apr. 14, 2023) ...................................................... 17

*Moonbug Enter. Ltd. v. Babybus (Fujian) Network Tech. Co.*
2022 WL 580788 (N.D.Cal. Feb. 25, 2022) ........................................................ 3

*Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*
2020 WL 10965737 (C.D.Cal. Nov. 5, 2020) ..................................................... 16

*Ouellette v. Viacom Int'l, Inc.*
2012 WL 1435703 (D.Mont. Apr. 25, 2012), *aff'd*, 671 F.App'x 972 (9th Cir. 2016) .......................................................................................................... 3

*QuickLogic Corp. v. Konda Techs., Inc.*
618 F.Supp.3d 873 (N.D.Cal. 2022) ............................................................ 14, 15

*Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*
11 Cal.App.4th 1026 (1992) ............................................................................. 14

*Rockridge Tr. v. Wells Fargo, N.A.*
985 F.Supp.2d 1110 (N.D.Cal. 2013) ............................................................... 14

*Rosales v. FitFlop USA, LLC*
882 F.Supp.2d 1168 (S.D.Cal. 2012) ............................................................... 21

*Rosenfeld v. JPMorgan Chase Bank, N.A.*
732 F.Supp.2d 952 (N.D.Cal. 2010) ................................................................. 14

*Rossi v. Motion Picture Ass'n of Am. Inc.*
391 F.3d 1000 (9th Cir. 2004) ........................................................................ 3, 4

*Rubin v. Green*
4 Cal.4th 1187 (1993) ...................................................................................... 12

*Rusheen v. Cohen*
37 Cal.4th 1048 (2006) .................................................................................... 12

*Saniefar v. Moore*
2018 WL 3020458 (E.D. Cal. June 18, 2018) ..................................................... 9

*Stokes v. CitiMortgage, Inc.*
2014 WL 4359193 (C.D.Cal. Sept. 3, 2014) ...................................................... 18

*Swipe & Bite, Inc. v. Chow*
147 F.Supp.3d 924 (N.D.Cal. 2015) ................................................................. 17

*T.B. v. San Diego Unified Sch. Dist.*
    806 F.3d 451 (9th Cir. 2015) ...................................................................... 10

*Teledyne Risi, Inc. v. Martin-Baker Aircraft Co. Ltd.*
    2016 WL 8857029 (C.D.Cal. Feb. 2, 2016) ............................................... 16

*Thompson v. Davis*
    295 F.3d 890 (9th Cir. 2002) ........................................................................ 3

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009) ................................................................................ 21

*Updike v. Multnomah Cnty.*
    870 F.3d 939 (9th Cir. 2017) ...................................................................... 12

*Van Hulle v. Pac. Telesis Corp.*
    124 F.Supp.2d 642 (N.D. Cal. 2000) ............................................................ 9

*Venkatraman v. REI Sys., Inc.*
    417 F.3d 418 (4th Cir. 2005) ...................................................................... 13

*Whitaker v. Tesla Motors, Inc.*
    985 F.3d 1173 (9th Cir. 2021) ................................................................. 4, 5

Statutes

17 U.S.C. § 107(2) ............................................................................................ 4

17 U.S.C. § 512(f) ............................................................................... 3, 4, 5, 6

42 U.S.C. § 12189 ............................................................................................ 6

42 U.S.C. § 12203 ............................................................................................ 9

42 U.S.C. § 12203(a) ....................................................................................... 9

Cal. Bus. & Prof. Code § 16600 ............................................................... 18, 19

Cal. Bus. & Prof. Code § 16600.5(e)(1) ........................................................ 19

Cal. Civil Code § 47(b) ............................................................................. 11, 12

Cal. Civil Code § 51(f) ................................................................................... 11

Rehabilitation Act § 504 ............................................................................ 12, 13

Other Authorities

28 CFR § 36.309(b)(4) ............................................................................................... 7

37 CFR 202.4(k) ....................................................................................................... 4

37 CFR § 202.4(o) ................................................................................................... 4

37 CFR § 202.13(b)(5) ............................................................................................ 4

45 CFR § 84.10 ...................................................................................................... 13

137 Cong. Rec. S13923 (daily ed. Sept. 27, 1991) ................................................. 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiff and Counter-Defendant American Institute of Certified Public Accountants ("AICPA") brought this lawsuit against Defendant and Counterclaimant Stephen Lau ("Lau") because Lau illegally, and in violation of his contractual commitments to AICPA, disclosed the contents of the Uniform CPA Examination ("CPA Exam") to the public and other prospective test takers.  Lau made such disclosures in social media posts after taking at least two different CPA Exam sections.  He made these disclosures under pseudonyms that hid his identity.  Lau does not deny he made the social media posts at issue in AICPA's claims.  Instead, in his Second Amended Counterclaims (ECF 40 ("SACC")), he makes lengthy, irrelevant arguments as to why his cheating did not actually violate the law.  He then asserts seven affirmative counterclaims (Counterclaims 4 – 10) against AICPA based on AICPA's litigation of the instant case and purported "retaliation" against him which he disguises in frivolous disability discrimination claims.  Despite this being Lau's **third** pleading of counterclaims (*see* ECF 28, 34, 42), Lau still cannot allege any claim that meets the applicable pleading standards.

## II.   FACTS

### A.   AICPA's Lawsuit Against Lau

Certified Public Accountants ("CPAs") must pass the CPA Exam as part of becoming licensed in the United States.  AICPA is a non-profit corporation that is responsible for developing the content of and scoring the CPA Exam.  Like almost any exam, the fairness and integrity of the CPA Exam depends on confidentiality.  If some prospective test-takers are given more detailed knowledge of the contents of the exam in advance, it creates an unfair advantage and erodes applicant and public trust in the exam.  AICPA works diligently to maintain the secrecy of the CPA Exam content so that candidates who sit for the exam do not obtain an unfair advantage by knowing the contents in advance.  On September 11, 2024, AICPA filed its original

complaint in this action alleging that, *at least twice*, Lau sat for a section of the CPA Exam and then that same day or the next day, unlawfully posted content from each of those Exam sections to social media websites, including Discord and Reddit. Lau's actions violated the NDAs to which he agreed, misappropriated AICPA's trade secrets, and infringed AICPA's copyright.  On September 18, 2024, the instant Court issued a summons to AICPA permitting it to effectuate service of process on Lau. (ECF 12.)  The AICPA then took steps to meet its service obligations by causing the complaint to be personally served on Lau on September 24, 2024.  (ECF 24.)

### B.    Lau's Counterclaims

Lau originally filed an answer and counterclaims on December 16, 2024.  (ECF 28.)  Lau then filed First Amended Counterclaims on January 28, 2025.  (ECF 34.)  After the parties' conferred regarding AICPA's anticipated motion to dismiss his affirmative counterclaims, the parties agreed Lau could amend those counterclaims to address AICPA's arguments.  (ECF 38.)  Lau then filed the current Second Amended Counterclaims.  (ECF 42.)  At present, Lau alleges ten Counterclaims total. Counterclaims 1 – 3 seek declaratory judgment that Lau did not infringe AICPA's copyrights, misappropriate its trade secrets, or breach any contract with AICPA; AICPA does not at this time move to dismiss these counterclaims even though they merely re-assert issues that are already before the Court on the AICPA's Complaint. AICPA does move to dismiss the remainder of Lau's counterclaims.  Lau alleges AICPA made "material misrepresentations" in bad faith in a DMCA notice and subpoena sent to third-party Discord (Counterclaim 4).  Lau takes issue with AICPA's personal service of its complaint on him alleging that the act of serving him as he entered the testing facility amounted to "disability discrimination" since it caused him to be distracted. (Counterclaims 5 – 7).  Lau alleges that AICPA's filing of the instant lawsuit without first contacting him in advance constitutes purported violation of the covenant of good faith and fair dealing (Counterclaim 8).  He alleges that AICPA interfered with unidentified terms in unidentified third-party contracts by withholding

his score for the September 24, 2024 exam (Counterclaim 9).  He alleges, among other things, AICPA allegedly receiving money for Lau's September 24, 2024 FAR exam but withholding the score, and the contracts it required Lau to enter into, violated California's UCL (Counterclaim 10).

### III.   LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party.  *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).  However, a complaint survives only to the extent it contains "enough facts to state a claim to relief that is plausible on its face."  *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although a plaintiff need not offer "detailed factual allegations" at this stage (*Twombly*, 550 U.S. at 555), he must provide more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009).  In short, the question is whether the plaintiff has plead sufficient "factual content" to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (internal quotation marks omitted).

### IV.   LAU DOES NOT ALLEGE ANY VIABLE COUNTERCLAIM AGAINST AICPA

#### A.   Counterclaim 4 for Purported Violation of the DMCA Fails

To state a claim under 17 U.S.C. §512(f), Lau "must allege: (1) a material misrepresentation in a takedown notice that led to a takedown, and (2) that the takedown notice was submitted in subjective bad faith." *Moonbug Enter. Ltd. v. Babybus (Fujian) Network Tech. Co.*, 2022 WL 580788, *7 (N.D.Cal. Feb. 25, 2022) (citing *Rossi v. Motion Picture Ass'n of Am. Inc.*, 391 F.3d 1000, 1005 (9th Cir. 2004)). Thus, Lau must allege facts demonstrating that AICPA acted without a good-faith belief in submitting its June 3, 2024 DMCA notice to Discord ( "Notice") or its June 14, 2024 subpoena request ("Request").  *Ouellette v. Viacom Int'l, Inc.*, 2012

WL 1435703, *3 (D.Mont. Apr. 25, 2012), *aff'd*, 671 F.App'x 972 (9th Cir. 2016). Lau's claim that AICPA acted in bad faith by failing to conduct a fair use analysis is based only on his misunderstanding of the law, mischaracterization of judicially-noticeable documents, and speculation about what discovery might show.  He also cannot show any material misrepresentation.  Consequently, his claim must be dismissed for each reason below.  *See* 17 U.S.C § 512(f); *Rossi*, 391 F.3d at 1004.

*First*, Lau alleges that "a reasonable opportunity for discovery will reveal that AICPA never conducted a good faith fair use assessment/analysis" before sending the Notice and Request.  (SACC ¶¶ 83, 336-37).  But a plaintiff is not permitted "to rely on anticipated discovery to satisfy Rules 8 and 12(b)(6); rather, pleadings must assert well-pleaded factual allegations to advance to discovery."  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021) (citation omitted).

*Second*, Lau's claims that the Notice and Request are "objectively baseless" and "shams" (SACC ¶¶ 74, 75, 78, 79, 80, 82, 83, 84, 339, 340, 342, 343, 345), and therefore in "bad faith" also fail.  These are conclusory statements with no factual basis connecting them to Lau's §512(f) claim.  And they are implausible.  Lau's fair use argument and §512(f) claim focus on the nature of AICPA's copyrighted work.  17 U.S.C. § 107(2).  Throughout the SACC, Lau relies on incorrectly describing U.S. Copyright Reg. No. TXu002287113 (the "Registration") as a "*compilation* copyright."  SACC ¶¶ 66, 184, 193, 199, 200, 213, 218, 223, 229.  He argues that, as such, it is entitled to only "thin" protection.  *E.g.,* SACC ¶¶ 184, 192, 194 226.  But the Registration itself clearly shows that it is a *group registration of unpublished secure test items*[1] registered under 37 CFR 202.4(k)[2].  *See* Request for Judicial Notice filed herewith ("RJN"), at 5, Ex. 1, p. 013.  As a matter of law, each item in the Registration is an independent work.  37 CFR § 202.13(b)(5).  Notably, secure test items are treated much differently than compilations, especially in the context of a fair

---

[1]  Lau even admits this when it suits him.  (SACC, ¶ 206.)
[2]  Subsequently re-lettered as 202.4(o).

use analysis. *E.g., Educ. Testing Serv. v. Simon*, 95 F.Supp.2d 1081, 1090 (C.D.Cal. 1999) ("Secure tests are particularly vulnerable to having their utility obliterated by unauthorized disclosure. The courts have, accordingly, been particularly solicitous in protecting these works. Indeed, so far as we are aware, the courts have never upheld a fair use claim advanced by any private entity with regard to copying of secure tests or test questions.") (quoting 137 Cong. Rec. S13923 (daily ed. Sept. 27, 1991)). Because Lau's accusations regarding the AICPA's failure to do a fair use analysis are based on his implausible allegations concerning the nature of the infringed work (*e.g.*, SACC ¶¶ 222, 225, 226), and his allegations about what "a reasonable opportunity for discovery will reveal" are purely speculative and otherwise improper (*e.g., Whitaker,* 985 F.3d at 177, *supra*), Lau does not plausibly allege that AICPA acted without a good-faith belief in submitting the Notice or Request. He therefore does not satisfy §512(f)'s second prong and his claim should be dismissed.

*Third*, Lau does not satisfy §512(f)'s first prong. Lau's allegations in paragraphs 331-343 of the SACC do not plausibly allege material misrepresentations in the Notice or Request because such allegations are contradicted by these documents and Discord's response (all incorporated by reference into the SACC). *See* RJN, at 7-8, Exs. 5, 6, 7. Lau claims that the Notice "misrepresented" which Discord posts were subject to AICPA's copyright claim. (SACC, ¶¶ 332, 333, 336.) According to Lau, the Notice identified multiple social media posts (multiple website URLs) as copyright-infringing, but according to Lau, this was false because only one post (only one URL) could have infringed AICPA's copyrights. (SACC, ¶¶ 332 ["AICPA knew all along that its alleged copyright interests extend, at most, only to specific question and answer pairings contained in U.S. Copyright Reg. No. TXu002287113, not to 'other content related to the Uniform CPA examination.'"], ¶ 333, ¶ 336 [claiming AICPA made copyright infringement allegations for *all* "'Posted Materials'"].) But the Notice shows AICPA **only identified a single post** (single URL) as "Infringing Content" in the Request and Notice. RJN, Ex. 6, p. 051; *see also*

Ex. 5, p. 027; Ex. 7, p. 059.  The Notice also shows *no* copyright claim was ever made for "other Exam Content" or all "Posted Materials."  The Notice clearly addressed the single post that was subject to the copyright claim separately from the other posts (URLs) that had material "protected under trade secret law which was posted in violation of a non disclosure agreement." *Id*., Ex. 6, p. 051.  Thus, Lau's claim that there was a purported "misrepresentation" is not plausible.  Moreover, Lau admits only a single post was removed by Discord. *Id.,* Ex. 7, p. 059; SACC, ¶ 76-77.  To be an actionable material misrepresentation the alleged misrepresentation must "affect[]the [service provider's] response to a DMCA letter." *Capitol Recs., Inc. v. MP3tunes, LLC*, 611 F.Supp.2d 342, 346–47 (S.D.N.Y. 2009).  Here, Lau admits Discord was unable to locate and did not act on any of the material Lau claims was misrepresented.  (SACC ¶¶ 76-77.)  Thus, none of Lau's allegations plausibly allege a material misrepresentation in the Request since he admits the purported misrepresentation did not affect Discord's response.  Lau's § 512(f) claim should be dismissed on this basis as well.

**B.    Lau's Discrimination Counterclaims (Counterclaims 5-7) Fail**

**1.    Counterclaim 5 Fails**

**a.    Any ADA "Discrimination" Claim Fails Including Because AICPA Is Not Subject to the ADA**

Lau alleges that AICPA's personal service of its Complaint on him purportedly "discriminated" against him in violation of 42 U.S.C. § 12189, which is part of ADA Subchapter III.  (SACC, ¶ 348.)  Section 12189 "requires entities *that offer* examinations 'related to applications, licensing, certification, or credentialing for . . . professional, or trade purposes' to 'offer such examinations . . . *in a place and manner accessible to persons with disabilities*."   42 U.S.C. § 12189 (emphasis added).

But to be governed by this section, AICPA must have *significant control* over the physical administration or accommodation of the test at issue.  *Binno v. American*

*Bar Association*, 826 F.3d 338, 346-47 (2016); *Guess v. St. Martinus Univ.*, 2022 WL 1224555, at *3 (6th Cir. Apr. 26, 2022). While the term "offer" is not defined in Title III of the ADA, "the statute's context indicates that an entity that 'offers examinations' under this provision must be able to provide an accessible place and manner for administration of the tests, or arrange for alternative, accessible accommodations." *Binno*, 826 F.3d at 346. "Title III's implementing regulations support the interpretation that an entity offering the exam must **have significant control** over its **administration or accommodation**." *Id.*, 347 (*citing* 28 C.F.R. § 36.309(b)(4)). "Because the statute states that an entity that 'offers' exams must do so 'in a place and manner accessible' to disabled persons or else offer alternative accommodations, the entity must have some ability to grant those accommodations in the administration of the exam." *Id*. Thus, in *Binno*, the ABA did not "offer" the LSAT, and the court granted the ABA's motion to dismiss, because plaintiff could not plead facts showing that the ABA had "authority over the manner and administration of the LSAT" and "authority to grant accommodations or make other arrangements in connection with the exam." *Id.*, 348. And in *Guess*, a case with strikingly similar facts as here, the court dismissed ADA claims against defendant St. Martinus because, like AICPA here, St. Martinus did not exercise any "authority over the manner and administration of the NBME prep exams administered by Prometric . . . [a]nd [] [plaintiff] presented no evidence that St. Martinus or any other named party ha[d] any 'authority to grant accommodations' for that exam." *Guess*, 2022 WL 1224555, at *3.

Lau admits and affirmatively alleges that **AICPA <u>did not</u> offer the exam.** Rather:

- The California Board of Accountancy ("CBA"), evaluated and granted his request for accommodation in the form of extended time ("Time and one-half") for the exam, and a "Separate room". (RJN, at 5-6, Ex. 2, p. 015; SACC, ¶¶ 2; 13-17; 19-20; 316-318.)

- He paid testing fees to CBA and NASBA. (*Id.*)
- On instruction from CBA, NASBA provided an updated NTS listing the specific accommodations for him. (*Id.*)
- Lau sent this to Prometric, the entity that administers the CPA Exam, to schedule an exam with those accommodations. (*Id.*)
- Prometric, confirmed his accommodations, and Prometric provided all the listed accommodations at the test on September 24, 2024. (*Id.*)

AICPA did not have any role whatsoever in evaluating his entitlement to accommodations, determining or offering accommodations, taking payment, issuing an NTS, or controlling the location or accommodations for the test. Lau admits that all of these functions were handled exclusively by CBA, NASBA and/or Prometric. (*Id.*) Lau's own admissions prove unequivocally that the AICPA did not "offer" the exam and so is not scoped by the ADA, and any disability discrimination claim necessarily fails on this basis. *Binno*, 826 F.3d at 347-48; *Guess*, 2022 WL 1224555, at *3.

Moreover, even were AICPA within the scope of the ADA (it is not), any "discrimination" claim still fails. Lau's claim is rooted entirely in the allegation that AICPA's personal service of the instant complaint on him as he was "walking into" the Prometric testing facility caused him to be "distracted" and was, on that basis, a discriminatory act in violation of the ADA. (SACC, ¶¶ 4, 356.) This is nonsense. Lau readily admits that ***he received all of the accommodations he requested*** and as outlined in the "Accommodation Letter" when he sat for the exam, specifically "Time and one-half" and a "Separate room". (RJN, Ex. 2, p. 015; SACC, ¶¶ 2; 13-17; 19-20; 316-318; 350-354.) Lau was not entitled to any "accommodation" with respect to the space outside the testing facility or before the test began, and he cannot have been discriminated against when he received the exact accommodations granted in the Accommodation Letter. In sum, Lau cannot allege any facts that AICPA "offers" the

CPA Exam as required for the ADA to apply and, even if he could, Lau readily admits he received all the accommodations he requested.

### b. Lau Does Not Allege an ADA "Retaliation" Claim, and Any Such Claim Fails

*First,* Retaliation claims are governed by 42 U.S.C. § 12203.  Lau does not mention this statute anywhere in his Counterclaims, and so fails to provide adequate notice of any retaliation claim.  (SACC, ¶¶ 346-369.)

*Second*, any retaliation claim fails because AICPA is not within the scope of the ADA.  The ADA prohibits discrimination in three areas: employment (Subchapter I); public services (Subchapter II); and public accommodations (Subchapter III).  The "retaliation" provision, Section 12203, appears in the "miscellaneous" provisions of Subchapter IV, and prohibits retaliation or coercion against individuals who "***oppose[] acts made unlawful by*** [the ADA]."  42 U.S.C. § 12203(a).

Thus, the anti-retaliation provision is contingent upon the substantive provisions of the ADA applying in the first instance.  ***"[A] plaintiff cannot maintain an ADA retaliation claim against entities which are not otherwise subject to Subchapters I, II, and III of the ADA."***  *Van Hulle v. Pac. Telesis Corp.*, 124 F.Supp.2d 642, 645-46 (N.D. Cal. 2000) (collecting authority) (holding because "an employer-provided insurance carrier, Cigna [was] not a 'place of public accommodation' under Subchapter III," Cigna could not be liable for retaliation).  Similarly, in *Saniefar v. Moore*, 2018 WL 3020458 (E.D. Cal. June 18, 2018)*,* because the plaintiff did not own or operate any place of public accommodation within the scope of Subchapter III at the time of the alleged retaliation, there was no potential violation of Subchapter III and therefore no potential retaliation claim under 12203.  *Id.* at *5-6.  *See also, e.g., Iceberg v. Brookstone Landscape & Design LLC*, 2024 WL 1012895, at *3 (W.D.Wash. Mar. 8, 2024) ("[A]ny retaliation claim also fails because Brookstone does not own, lease, or operate a place of public accommodation" under Subchapter III); *Fenimore v. Lane Cnty. Republican Cent.*

*Comm.*, 2023 WL 2456266, at *5 (D.Or. Mar. 10, 2023), *aff'd*, 2024 WL 3250368 (9th Cir. July 1, 2024) ("Because Plaintiffs failed to allege facts to show that the ADA applied to Defendants, either as a public entity under Title II or a place of public accommodation under Title III, Plaintiffs also cannot sustain a retaliation claim.")

Since AICPA is not subject to Title III of the ADA (Section IV.B.1.a, *supra*), Lau cannot possibly plead any ADA "retaliation" claim.

***Third,*** even if the ADA applied to AICPA, Lau still cannot possibly allege a retaliation claim. Lau must establish he had *a good faith, reasonable belief* he was denied accommodations to which he was entitled, that he "opposed" such discrimination, and he was then retaliated against for such "opposition." *E.g.,Castro v. Food City*, 2022 WL 3718350, at *4 (D.Ariz. June 22, 2022). He must show that "but for" the "opposition," he would not have suffered retaliation. *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015).

As a matter of law, Lau had no reasonable, good faith belief that AICPA violated the ADA or discriminated against him in the first place. Lau claims that being served with AICPA's complaint constituted discrimination. This assertion is entirely disingenuous because Lau readily admits that he received the exact accommodations he requested – "Time and one-half" and a "Separate room." (ECF 52-3, ¶ 47; ECF 53-23, Page ID 841.)[3] Thus, Lau cannot possibly have had a reasonable good faith belief he was denied accommodations, and his retaliation claim fails. *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (single incident of allegedly lewd joking was not reasonably viewed as sexual harassment, and therefore could not support claim that employee was retaliated against for complaining about it).

Lau also does not adequately plead any "opposition," or any facts showing a causal link between any "opposition" and any retaliation. His sole allegation is the

---

[3] Similarly, Lau cannot have had any reasonable or good faith belief that he was entitled to accommodations *outside* the test facility or *before* the test.

factually-unsupported assertion that "Mr. Lau opposed AICPA's discriminatory conduct, made a charge that AICPA violated the ADA, and participated in an investigation and proceeding under the ADA." (SACC, ¶ 359.) The only act he identifies that might fit this description is his filing of discrimination counterclaims against AICPA. However, Lau admits that his score was withheld beginning on October 30 or October 31, 2024 (ECF 28, ¶¶ 240, 242, 248, 249), but Lau did not file any discrimination counterclaims against AICPA until January 28, 2025 (ECF 34). For these reasons as well he cannot plead a retaliation claim.

### 2. Lau's Unruh Act Counterclaim 7 Fails

#### a. Counterclaim 7 Fails because Lau's ADA Claim Fails

Lau's Unruh Act counterclaim is brought pursuant California Civil Code § 51(f), which provides merely that "[a] violation of the right of any individual under the federal [ADA] shall also constitute a violation of this section." (SACC, ¶¶ 383-385.) Lau's claim depends entirely on his meritless ADA counterclaim. Since Lau has failed to plead an ADA violation, his Unruh Act claim fails. *Cullen v. Netflix, Inc.*, 600 F. App'x 508, 509 (9th Cir. 2015) (Section 51(f) claim fails if the ADA claim fails).

#### b. Counterclaim 7 Is Also Barred By the Litigation Privilege

Even if Lau had an ADA claim, his Unruh Act claim still fails because it is barred by the litigation privilege. The purported "discrimination" was that AICPA served Lau with the complaint in this action as he was entering the Prometric test facility. (SACC, ¶¶ 4, 356.) AICPA's service of the original complaint in this action is ***absolutely privileged*** under the "litigation privilege" of California Civil Code § 47(b). Therefore, any state law counterclaim based on service of the complaint— including Lau's Unruh Act claim—fails and must be dismissed under the litigation privilege.

"For well over a century, communications with 'some relation' to judicial proceedings have been **absolutely immune** from tort liability by the privilege codified as section 47(b)." *Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993) (emphasis added). The privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation." *Rusheen v. Cohen*, 37 Cal.4th 1048, 1057 (2006).

Personal service on Lau of the original complaint in this action was a communication to achieve the objects of the litigation, and thus absolutely privileged. *E.g., Feldman v. 1100 Park Lane Assocs.*, 160 Cal.App.4th 1467, 1486-88 (2008) (service of a three-day notice to quit—the initial step in an unlawful detainer action—is privileged); *Rusheen*, 37 Cal.4th at 1061, 1065 (filing a declaration of service is privileged, as are any "noncommunicative acts that are necessarily related to the communicative conduct"); *Bosnich v. Chase Bank USA, N.A.*, 2011 WL 1790106, at *3 (C.D.Cal. May 9, 2011) (litigation privilege applied to "service of process, or service of writs of garnishment"). Thus, the Unruh Act counterclaim—which asserts "discrimination" based on service of the complaint—fails as a matter of law.

### 3.   Lau's "Rehabilitation Act" Counterclaim 6 Fails

A plaintiff bringing suit under Section 504 of the Rehabilitation Act must show: (1) he is a qualified individual with a disability; (2) he was discriminated against; (3) such discrimination was by reason of his disability; and (4) the program at issue receives federal financial assistance. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001), *as amended on denial of reh'g* (Oct. 11, 2001). Additionally, for money damages Lau must establish "'mens rea of intentional discrimination,'" "which 'may be met by showing deliberate indifference' . . . 'Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that [] likelihood.'" *Duvall*, 260 F.3d at 1138-39. Deliberate indifference also requires more than negligence. *Updike v. Multnomah Cnty.*, 870 F.3d 939, 950-51 (9th Cir. 2017).

Lau's Section 504 claim fails because he does not and cannot set forth facts supporting elements (2) to (4).  First, Lau complains he was denied accommodations (SACC, ¶¶ 376, 379) but readily admits he received all the accommodations required by the Accommodation Letter.  (*See* Section IV.B.1.a, *supra*.)  While Lau seeks to focus his complaint on the "sham service of process," it is entirely irrelevant here.  Indeed, nothing in the Accommodations Letter required as an accommodation that he be free from distraction *outside* of the testing facility.  Lau also fails to set forth any facts suggesting that personal service of process on him outside the test facility was *due to his disability* and not a regular part of litigation activities.  (ECF 24.)  Finally, Lau fails to sufficiently allege AICPA receives federal financial assistance.  Lau alleges "USASpending.gov returns multiple entries indicating that AICPA has received federal funds."  (SACC, ¶ 374.)  But that website shows only federal procurement contracts with AICPA, and these are *not* "federal financial assistance" and do not subject AICPA to the Rehabilitation Act.  *See* Rodewald Decl., ¶¶ 14-15, RJN, at 8-9, Exs. 8, 9; 45 CFR 84.10; https://www.hhs.gov/civil-rights/for-individuals/disability/section-504-rehabilitation-act-of-1973/ocr-detailed-504-fact-sheet/index.html (procurement contracts are not financial assistance); *see also, e.g., Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 421 (4th Cir. 2005) (defendant's "status as a government contractor is irrelevant to Title VI liability [because Title VI] coverage turns on the receipt of "federal financial assistance", not the existence of a contractual relationship.")  Similarly, Lau does not state any facts to indicate that copyright registrations, or "accommodations" in obtaining registrations, are in any way federal financial assistance.  They are not.  *See, e.g., Herman v. United Bhd. of Carpenters*, 60 F.3d 1375, 1381-82 (9th Cir. 1995) (licenses, certifications, and federal mediation services are not federal financial assistance).

Lau's Section 504 claim also fails because he does not set forth any facts suggesting that Defendant engaged in the requisite "intentional discrimination." Instead, Lau takes issue with the fact that he was served with a copy of the instant

complaint as he waited outside the Prometric testing facility and thus allegedly denied "accommodations" (SACC, ¶¶ 376, 379); however, these acts alone do not constitute *intentional discrimination* nor has he shown that they do.

## C. Counterclaim 8 for Breach of the Covenant of Good Faith and Fair Dealing Fails

The only contract that Lau purports to identify under this claim are the "NDAs dated November 16 2023 and December 28, 2023." (SACC, ¶ 393; *see also* RJN, at 6-7, Exs. 3, 4.) Without identifying any specific contractual provisions whatsoever (from the NDAs or any other agreement), Lau alleges AICPA breached the implied covenant by: (1) "failing to promptly and directly contact Mr. Lau to provide notice of AICPA's objections to his study group communications"; and (2) AICPA "fail[ed] to take reasonable steps to mitigate its alleged damages"—without explaining how AICPA allegedly failed to mitigate. (SACC, ¶¶ 395-95.) Lau then claims AICPA has "unfairly interfered with Mr. Lau's rights to receive the benefits of the NDAs." (*Id.*, ¶ 397.)

*First*, implied covenant claims are "limited to **assuring compliance with the express terms** of the contract, and **cannot be extended to create obligations not contemplated in the contract.**" *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal.App.4th 1026, 1032 (1992) (emphasis added).[4] To state a claim, "a plaintiff must identify the specific contractual provision that was frustrated." *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F.Supp.2d 1110, 1156 (N.D.Cal. 2013); *Rosenfeld v. JPMorgan Chase Bank, N.A.*, 732 F.Supp.2d 952, 968 (N.D.Cal. 2010).

Lau does not identify any express contractual provision or obligation he alleges was frustrated. The AICPA cannot defend against this claim unless it knows with specificity which contractual obligations it is charged with violating. Lau's "breach

---

[4] *QuickLogic Corp. v. Konda Techs., Inc.*, 618 F.Supp.3d 873, 886 (N.D.Cal. 2022) (the implied covenant "'is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose.'")

of covenant theory thus fails because the [contracts at issue] do[] not reach the charged conduct." *QuickLogic*, 618 F.Supp.3d at 886 (dismissing claim).

Moreover, Lau's allegations that the AICPA interfered with his rights under the NDAs fail as a matter of law.  The NDAs confirm their purpose and terms are for the protection of secrecy and confidentiality of the Exam Content and AICPA's intellectual property.  (RJN, Exs. 3, 4.)  Nothing in the NDAs comes close to requiring that AICPA provide Lau advance notice of AICPA's allegations against him.  Lau's demand that AICPA should have provided him notice would therefore create an obligation not contemplated by the agreement.  Similarly, Lau identifies no manner in which AICPA failed to mitigate its damages.  Rather, AICPA sued Lau for breach, which it is expressly permitted to do.  (RJN, Ex. 3, p. 019, Ex. 4, p. 023 ("[I]f you violate the terms of this agreement … AICPA may use every legal means available to prevent the infringement, misappropriation, unauthorized disclosure, or other misuse of the Uniform CPA Exam and any Exam Content, including by bringing a lawsuit against You.")  "[O]ne cannot invoke the implied covenant to prohibit conduct that a contract expressly allows." *21st Century Ins. Co. v. Super. Ct.*, 47 Cal.4th 511, 526-27 (2009).  Lau's claim fails.

**Second**, Lau points to vague, unidentified contracts by alleging "[t]o the extent Mr. Lau entered into any binding contract with AICPA in connection with Mr. Lau's scheduling and taking of the September 24, 2024 FAR exam."  (SACC, ¶ 399).  Lau cannot assert an implied covenant claim based on speculative contracts he does not even identify.

**Third**, Lau's counterclaim is barred by the litigation privilege.  The only conceivable harm Lau alleges is that AICPA sued him in this action.  However, as explained above, Lau cannot bring any state law claim against AICPA based on AICPA's litigation activity, which is absolutely privileged.  (Section IV.B.2.b, *supra*.)

### D.     Counterclaim 9 for Tortious Interference Fails

Lau alleges that AICPA purportedly tortiously interfered with unidentified contracts he claims to have entered into with NASBA, Prometric, and the CBA, by allegedly "placing holds on Mr. Lau's score for [the September 24, 2024 examination without legal justification or any explanation." (SACC, ¶ 408.)

Under California law, a claim for intentional interference with contract requires: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.,* 2020 WL 10965737, *5 (C.D.Cal. Nov. 5, 2020) (citation omitted).

Lau's tortious interference claim fails for several reasons.

***First***, in the SACC, Lau generally refers to websites, terms of services, and online links involving NASBA, Prometric, and the CBA.  (SACC, ¶¶ 92-112). However, nowhere in the SACC does Lau specifically identify or summarize any specific contract that he entered into with NASBA, Prometric, or the CBA.  He does not attach any alleged third-party contract to his pleading.  He also does not identify any specific contract by its date, terms, or otherwise.  He does not specifically identify any third-party contractual provision requiring the return of Lau's test scores by any specific date.  As a result, AICPA cannot defend against a claim that it interfered with third party contract(s) when it does not know specifically what those contracts are and which provisions relate to return of test scores.  Ninth Circuit courts routinely dismiss tortious interference claims on similar grounds. *See Teledyne Risi, Inc. v. Martin-Baker Aircraft Co. Ltd.*, 2016 WL 8857029, at *5 (C.D.Cal. Feb. 2, 2016) ("Here, Plaintiff has failed to identify the specific contract with which Defendant interfered. Plaintiff also does not provide any factual allegation that MB in fact knew about the alleged third party contract."); *Gemsa Enterprises, LLC v. Pretium Packaging, LLC,*

2021 WL 4551200, *6 (C.D.Cal. July 27, 2021) (dismissing claim with prejudice "because Gemsa does not identify any specific contract with any specific third party").

**Second**, Lau fails to plead sufficient facts establishing that AICPA had knowledge of the alleged third-party contracts at issue. Lau's **only** allegation is: "AICPA has had knowledge of Mr. Lau's contracts with NASBA, Prometric, and the CBA at all relevant times." (SACC, ¶ 408). Courts hold these exact types of conclusory allegations are insufficient. *See Moog Inc. v. Skyryse, Inc.*, 2023 WL 3432213, *21 (C.D.Cal. Apr. 14, 2023) ("Skyryse's only allegation as to Moog's knowledge of the contracts states: 'On information and belief, Moog was aware of these contracts.' CC ¶ 127. Although Skyryse need not plead facts with specificity at the motion to dismiss stage, mere conclusory allegations will not suffice."); *see also Swipe & Bite, Inc. v. Chow*, 147 F.Supp.3d 924, 935 (N.D.Cal. 2015) (finding dismissal appropriate where Plaintiff merely alleged knowledge of agreements without any facts showing knowledge).

### E.   Counterclaim 10 For Violation of California's UCL Fails

#### 1.   Lau Lacks Standing for His UCL Counterclaim

A UCL plaintiff must: "(1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, *i.e.*, **economic injury**, and (2) show that that economic injury was the result of, *i.e.*, **caused by**, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal.4th 310, 322 (2011) (italics original, bold added). Here, Lau generally alleges "AICPA's violations of the UCL have caused Mr. Lau injury in fact, including economic injury" and alleges: "each time Mr. Lau has taken a test, he as paid money to do so. Mr. Lau's last payment of fees for the September 24, 2024 exam exceeded $250 dollars." And he paid $1300 and $900 for CPA preparation materials, and "at least 25% of these costs are attributable to FAR." (SACC, ¶ 416.)

The only alleged conduct by AICPA with any potential economic relationship *to his test fees* is AICPA's alleged disability discrimination and interference with contract.  These two predicates fail to state any claim however, as described above.  Moreover, *all of Lau's other alleged predicates for his UCL counterclaim* in paragraph 415(a)-(f) (including AICPA's alleged "contracting practices", "misleading exam candidates about the nature of "Exam Content," "interfering with contractual rights," Section 16600 violation, "deceptively gaining access" to Reddit, "inducing" third parties to breach unspecified obligations, and purported breach of the NDAs' covenant of good faith and fair dealing) could not have and are not alleged to have caused any injury in fact in relation to his payment of test fees or otherwise.  Therefore, all of these allegations underlying Lau's UCL counterclaim fail to qualify as injury in fact and do not provide standing.[5]

### 2.      Lau Cannot Satisfy the "Unlawful" Prong

A claim under the UCL's "unlawful" prong is met if a practice violates some other law.  A claim under this prong hinges upon whether a plaintiff can formulate a claim under the predicate law. *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, *11 (C.D.Cal. Sept. 3, 2014).  Thus, if "a plaintiff cannot state a claim under the predicate law . . . [the UCL] claim also fails." *Id.*  Each of Lau's substantive Counterclaims 4 through 9—including the ADA violations and tortious interference counterclaims— fail for the reasons described above, so he cannot state a claim under the UCL's "unlawful" prong.

### a.      Lau's Purported Section 16600 Violation Fails

To the extent Lau attempts to rely on a purported Section 16600 violation as a basis for UCL liability, that also fails.  Section 16600 provides that, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." "When an

---

[5]  Indeed, Lau does not even explain what the allegations in paragraph 415(a)-(e) mean.

employer includes a non-compete provision in an employment agreement that violates Section 16600, it acts unlawfully under the UCL." *Dowell v. Biosense Webster, Inc.*, 179 Cal.App.4th 564, 575 (2009).

Lau cannot plausibly allege any Section 16600 violation.  As a threshold matter, standing to assert a Section 16600 violation is limited to "[a]n employee, former employee, or prospective employee."  Cal. Bus. & Prof. Code § 16600.5(e)(1). Lau is not alleged to be a current, former, or prospective employee of AICPA.  He is merely a third-party test taker. Indeed, Lau has not signed any agreement with AICPA that restrains his ability to engage in a profession or business of any kind. Lau has not signed any agreement with AICPA that contains any non-compete or non-solicitation provision.

Even if he had standing to assert a Section 16600 violation (which he does not), while unclear, Lau appears to allege that the NDA he signed with AICPA violates Section 16600 because "AICPA is wielding its power in an unfair manner designed to coerce candidates into unconscionable agreements, stifle public criticism over AICPA's role and the purported value it brings to the accounting profession, and intimidate exam candidates from speaking out."  (SACC, ¶ 89.)  These hyperbolic allegations are not plausible or legally viable.  The NDA merely requires exam takers to keep confidential and not disclose the Exam Content, which constitutes AICPA's confidential information.  (RJN, Exs. 3, 4.)  California law is unambiguous that these types of confidentiality and non-disclosure provisions do not run afoul of Section 16600.  *See Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34, 44 (1987) ("agreements designed to protect an employer's proprietary information do not violate section 16600."); *Loral Corp. v. Moyes*, 174 Cal.App.3d 268, 276 (1985) ("Section 16600 does not invalidate an employee's agreement not to disclose his former employer's confidential customer lists or other trade secrets or not to solicit those customers.").

### 3.    Lau Cannot Satisfy the "Unfair" Prong

Under the "unfair" prong, there are two possible tests for liability.  Under the "balancing" test, courts look at whether the business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" and balances defendant's conduct against the alleged harm.  *Davis v. HSBC Bank*, 691 F.3d 1152, 1169-70 (9th Cir. 2012).  Under the "tethering" test, courts look at whether there was an "unfair" act defined: "conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition."  *Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 187 (1999) ("[i]njury to a competitor is not equivalent to injury to competition; only the latter is the proper focus of antitrust laws.").

Under the "balancing" test, Lau has not alleged any harm to consumers at large, let alone any "immoral, unethical, oppressive, unscrupulous, or substantially injurious" conduct.  Nor does he allege any facts whatsoever "balancing" how the any harm outweighs the benefits and justifications for the actions, including the benefits to the public of confidentiality of the CPA Exam.  *See Davis*, 691 F.3d at 1170; *Doe v. CVS Pharmacy, Inc*., 982 F.3d 1204, 1215 (9th Cir. 2020).  Indeed, the AICPA has merely exercised its contractual rights to protect its intellectual property.  Accordingly, Lau fails to state any claim under this prong.

Under the "tethering" test, Lau has not alleged facts demonstrating any incipient violation of the antitrust laws, nor does the SACC explain how its causes of action relate to conduct that violates the policy or spirit of the antitrust laws.  While Lau broadly and vaguely claims that AICPA has engaged in "incipient violations of antitrust laws," this conclusory allegation is devoid of any underlying facts. Lau has not alleged any facts demonstrating injury to competition in general. The SACC does not identify any competitor to AICPA.

### 4.    Lau Cannot Satisfy the "Fraudulent" Prong

The "term 'fraudulent,' as used in the UCL, has required . . . a showing that members of the public are likely to be deceived." *Daugherty v. Am. Honda Motor*, 144 Cal.App.4th 824, 838 (2006); *see also In re Tobacco II Cases*, 46 Cal.4th 298, 312  (2009) (a fraudulent business practice is one that is likely to mislead consumers.) A plaintiff must sufficiently plead a probability "'that a significant portion of the general consuming public or of targeted consumers'" will be mislead.  *Becerra v. Dr Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228-1229 (9th Cir. 2019).  Allegations of fraudulent conduct made under the UCL must be pled with particularity under Rule 9(b).  *Id.*, 1228.

Lau's UCL claim fails under the "fraudulent" prong because he alleges no facts demonstrating that AICPA is likely to mislead reasonable consumers at large.  *See Becerra*, 945 F.3d at 1129 (failure to allege reasonable consumers would understand the word "diet" in a soda's name to promise weight loss).  This case is limited to Lau's conduct and the SACC does not identify, describe, or implicate any other "consumers."  Lau also fails to allege any facts, let alone sufficient facts under Rule 9(b), regarding any purported fraudulent conduct by AICPA.  Lau has not asserted any fraud claim and, even if he did, the SACC fails to satisfy the "who, what, when, where, how" requirements of a fraud claim.  *Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1175 (S.D.Cal. 2012) ("To satisfy Rule 9(b), Plaintiffs' complaint must identify the who, what, when, where, and how of the misconduct charged.").  For example, while Lau vaguely charges AICPA with "[d]eceptively gaining access to third party platforms like Reddit by misrepresenting that AICPA would above by platform terms of service," there are no underlying factual allegations.  Lau does not identify who from AICPA made the alleged misrepresentation, what exactly was misrepresented, when it occurred, or how it occurred.  Lau's UCL claim fails under the "fraudulent" prong.

## V.   CONCLUSION

For all of the foregoing reasons, Lau's Counterclaims 4–10 should be dismissed entirely under F.R.C.P. 12(b)(6), and with prejudice because Lau has already amended numerous times (ECF 28, 34, 42), and any further amendments would be futile because Lau cannot assert any plausible factual allegations that could support any of these claims.

Dated:  April 10, 2025          SHEPPARD MULLIN RICHTER & HAMPTON LLP

By   _____*/s/ Tenaya Rodewald*_____
                                        TENAYA RODEWALD
                                        KAZIM NAQVI

**PARKER POE ADAMS & BERNSTEIN LLP**
CHRISTOPHER M. THOMAS (*admitted pro hac vice*)
christhomas@parkerpoe.com
ANDREW P. TABELING (*admitted pro hac vice*)
andytabeling@parkerpoe.com
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina  27602-0389
Telephone: (919) 835-4626
Facsimile: (919) 834-4564

NICHOLAS H. LEE (*admitted pro hac vice*)
nicholaslee@parkerpoe.com
620 S. Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: 704-335-9876
Facsimile: 704-334-4706

Attorneys for Plaintiff and Counter-Defendant
AMERICAN INSTITUTE OF CERTIFIED
PUBLIC ACCOUNTANTS

**L.R. 11-6.1 Certification**

The undersigned, counsel of record for Counter-Defendant American Institute of Certified Public Accountants, certifies that this brief contains 6,998 words, which complies with the word limit of L.R. 11-6.1

Dated:  April 10, 2025          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ *Tenaya Rodewald*
          TENAYA RODEWALD
          KAZIM A. NAQVI
          Attorneys for Plaintiff
AMERICAN INSTITUTE OF CERTIFIED
          PUBLIC ACCOUNTANTS