ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
AVERY CARTWRIGHT (SBN 354724)
acartwright@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA  90071
Telephone:  +1 213 629 2020
Facsimile:  +1 213 612 2499

CHARLES WEINER (*Pro Hac Vice*)
charles@charlesweinerlaw.com
LAW OFFICE OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Telephone:  + 1 267-685-6311
Facsimile:  +1 215-340-768

Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>Plaintiff,<br><br>v.<br><br>STEPHEN LAU,<br><br>Defendant. | Case No. 5:24-cv-01940-SSS-SHKx<br><br>**MOTION FOR PRELIMINARY INJUNCTION** |
| STEPHEN LAU,<br><br>Cross-Complainant,<br><br>v.<br><br>AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>Cross-Defendant, | |

**TO THE COURT, ALL PARTIES, AND COUNSEL OF RECORD,**

**PLEASE TAKE NOTICE** that on May 23, 2025, Defendant and Counterclaimant Stephen Lau will move and hereby does moves pursuant to C.D. Cal. Local Civ. 65-1 and Fed. R. Civ. P. 65 for a preliminary injunction enjoining Cross-Defendant the American Institute of Certified Public Accountants ("AICPA") from:

> (i) withholding Mr. Lau's September 24, 2024 Financial Accounting and Reporting ("FAR") exam score and Performance Report;
>
> (ii) denying or interfering with Mr. Lau's entitlement to fair and equitable access to and implementation of the Uniform CPA Exam and Mr. Lau's ADA accommodations thereto.

Mr. Lau's motion is based on the accompanying Memorandum of Points and Authorities and supporting evidence; C.D. Cal. Local Civ. R. 7-19; Fed. R. Civ. P. 65; the Americans with Disabilities Act, California common law, and California's Unfair Competition Law. Mr. Lau's Application is also based on the pleadings on file in this action, all matters subject to judicial notice, and such other evidence and argument that may be received by the Court in connection with this Motion.

- 1 -

MOTION FOR PRELIMINARY
INvolved INJUNCTION
CASE No. 5:24-CV-01940-SSS-SHKx

# TABLE OF CONTENTS

Page No.

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND....................................................................................2

    The CBA and CPA Licensure .......................................................................... 2

    Accessing the Uniform CPA Examination in California ............................... 3

    California CPA Exam Scoring and Reporting ................................................ 4

    Retaking Failed Exam Sections in California ................................................ 6

    Mr. Lau's Efforts to Obtain a CPA License in California ............................. 7

    AICPA's Retaliatory Score Withholding...................................................... 8

LEGAL STANDARD ..............................................................................................9

ARGUMENT .........................................................................................................10

    I.  Mr. Lau Is Likely to Succeed on the Merits of His Interference, Discrimination, and Unfair Competition Law Claims............................ 10

        A. AICPA is Interfering with Mr. Lau's Contractual Rights ................. 10

            Existence of Contracts ...................................................................... 10

            AICPA's Knowledge ........................................................................ 11

            AICPA's Intentional Conduct.......................................................... 11

            AICPA's Causation of Disruption and Damages ............................ 12

        B.  AICPA is Retaliating Against Mr. Lau in Violation of the ADA.....12

            Protected Activity .............................................................................12

            Adverse Action .................................................................................13

            Causation...........................................................................................13

        C.  AICPA is Violating California's Unfair Competition Law .............15

            Standing.............................................................................................15

            Unlawful Practices ...........................................................................16

            Deceptive Practices...........................................................................16

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

Unfair ......................................................................................17

II. AICPA is Causing Mr. Lau Irreparable Harm .......................................17

III. The Balance of Equities and Public Interest Favor Mr. Lau.................20

CONCLUSION.........................................................................................21

MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKX

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adolph v. Coastal Auto Sales, Inc.*,
 184 Cal. App. 4th 1443 (2010)......................................................................14

*Arc of Cal. v. Douglas*,
 757 F.3d 975 (9th Cir. 2014).........................................................................20

*Ariz. Dream Act Coal. v. Brewer*,
 757 F.3d 1053 (9th Cir. 2014)..................................................................12, 18

*Bastidas v. Good Samaritan Hosp. LP*,
 2016 U.S. Dist.LEXIS 33405 (N.D. Cal. 2016)............................................13

*Boschma v. Home Loan Ctr., Inc.*,
 198 Cal. App. 4th 230 (2011)........................................................................17

*California. Aryeh v. Canon Bus. Sols., Inc.*,
 55 Cal. 4th 1185.............................................................................................16

*Cappello v. Walmart Inc.*,
 394 F. Supp. 3d 1015................................................................................15, 16

*Coleman v. Newburgh Enlarged City Sch. Dist.*,
 319 F. Supp. 2d 446 (S.D.N.Y. 2004) *overruled on other grounds*
 *as stated in R.G. v. Minisink Valley Cent. Sch. Dist.*, 531 F. App'x
 76 (2d Cir. 2013) (unpublished) ....................................................................19

*Dawson v. Entek Int'l*,
 630 F.3d ..........................................................................................................14

*Doe v. Samuel Merritt Univ.*,
 921 F. Supp. 958 (N.D. Cal. 2013)................................................................18

*Donovan v. RRL Corp.*,
 26 Cal. 4th 261 (2001) ..................................................................................10

*E.T. v. Morath*,
 2021 U.S. Dist. LEXIS 259581 (W.D. Tex. 2021) ........................................19

*Enyart v. Nat'l Conference of Bar Examiners*,
630 F.3d 1153 (9th Cir. 2011) .................................................................... 18, 21

*Estakhrian v. Obenstine*,
2017 U.S. Dist. LEXIS ................................................................................. 21

*Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*,
98 F.4th 1180 ................................................................................................ 10

*Gallagher v. San Diego Unified Port Dist.*,
2009 U.S. Dist. LEXIS 9277 ........................................................................ 13

*Gray v. Dignity Health*,
70 Cal. App. 5th 225 (2021) ......................................................................... 17

*Hernandez v. Grisham*,
494 F. Supp. 3d 1044 (D.N.M. 2020) ........................................................... 19

*Hudson v. United States Bureau of Prisons*,
1994 U.S. Dist. LEXIS 11664 (N.D. Cal. 1994) ..................................... 14, 15

*Huggard v. United Performance Metals, Inc.*,
2011 U.S. Dist. LEXIS 151276 ..................................................................... 12

*Irvin v. Roldan*,
2019 U.S. Dist. LEXIS 228183 ..................................................................... 13

*Johnson v. Jew*,
2021 U.S. Dist. LEXIS 154022 (N.D. Cal. 2021) .......................................... 16

*Johnson v. Macy*,
145 F. Supp. 3d 907 (C.D. Cal. 2015) ........................................................... 15

*Jones v. Nat'l Conference of Bar Exam'rs*,
801 F. Supp. 2d 270 (D. Vt. 2011) ................................................................ 20

*Levy v. Bd. of Registration in Dentistry*,
22 Mass. .......................................................................................................... 18

*Lewis v. Garland*,
2023 U.S. Dist. LEXIS 231037 (C.D. Cal. July 31, 2023) .............................. 18

*Maczaczyj v. State of N.Y.*,
956 F. Supp. 403 (W.D.N.Y. 1997) ............................................................... 18

MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

*Meyers v. Kendall*,
2024 U.S. Dist. LEXIS ....................................................................................... 13

*Moran v. Prime Healthcare Mgmt., Inc.*,
3 Cal. App. 5th 1131 (2016) ............................................................................. 16

*Morrar v. United States*,
2019 U.S. Dist. LEXIS 108951 (E.D. Cal. 2019) ............................................. 20

*Pardi v. Kaiser Found. Hosps.*,
389 F.3d 840 (9th Cir. 2004) ............................................................................ 13

*Perez v. United States Postal Serv.*,
76 F. Supp. 3d 1168 (W.D. Wash. 2015) .......................................................... 14

*Pilot Life Ins. Co. v. Goold*,
2005 U.S. Dist. LEXIS 45931 (C.D. Cal. 2005) ............................................... 11

*Planned Parenthood Great Nw. v. Labrador*,
122 F.4th 825 (9th Cir. 2024) ........................................................................... 18

*Planned Parenthood of Kan. & Mid-Missouri, Inc. v. Lyskowski*,
2016 U.S. Dist. LEXIS 62192 (W.D. Mo. 2016) .............................................. 18

*Portée v. Morath*,
683 F. Supp. 3d 628 (W.D. Tex. 2023) ............................................................. 17

*Revival Health Pharmacy, LLC v. Ams. Pharmacy Source, LLC*,
2024 U.S. Dist. LEXIS 110051 (C.D. Cal. June 21, 2024) ............................... 17

*Ross v. Indep. Living Res. of Contra Costa Cty.*,
2010 U.S. Dist. LEXIS ...................................................................................... 12

*Sachar v. Magasinn*,
2023 Cal. Super. ................................................................................................ 16

*Servs. Co. v. Pirch, Inc.*,
2024 U.S. Dist. LEXIS 162376 (S.D. Cal. 2024) ............................................. 10

*Sonico v. Charter Communs.*,
LLC, 2021 U.S. Dist. LEXIS 15585 (S.D. Cal. 2021) ...................................... 10

*Sun World, Inc. v. Lizarazu Olivarria*,
804 F. Supp. 1264 (E.D. Cal. 1992) ................................................................. 20

*Tom T., Inc. v. City of Eveleth*,
    2003 U.S. Dist. LEXIS 3718 (D. Minn. 2003)....................................................18

*Twaite v. Allstate Ins. Co.*,
    216 Cal. App. 3d 239 (1989) ...........................................................................14

*Yates v. W. Contra Costa Unified Sch. Dist.*,
    2017 U.S. Dist. LEXIS ....................................................................................13

*Zhang v. Superior Court*,
    57 Cal. 4th 364 (2013) ....................................................................................16

*Zoom Video Communs., Inc. v. Ringcentral, Inc.*,
    2021 U.S. Dist. LEXIS 59902 (N.D. Cal. 2021).................................................21

**Statutes**

Accountancy Act ........................................................................................16, 18

ADA.............................................................................................................*passim*

ADA Section 503(a) ...........................................................................................12

C. AICPA is Violating California's Unfair Competition Law ...............................15

Cal. Bus. & Prof. Code §§ 480, 5100-5115.......................................................19

Cal. Bus. & Prof. Code § 5000.1 .......................................................................21

Cal. Bus. & Prof. Code § 5082.2 ........................................................................6

Cal. Bus. & Prof. Code §§ 5100, 5110 .........................................................16, 19

Cal. Bus. & Prof. Code §§5100,5102,5110........................................................19

Cal. Civ. Code § 1550........................................................................................10

Cal. Civ. Code § 1642........................................................................................14

Cal. Gov't. Code § 11500.............................................................................16, 19

California Accountancy Act, Cal. Bus.& Prof. Code §5000 *et seq.* ........................2

Discrimination, and Unfair Competition Law......................................................10

**Other Authorities**

"Apply for Examination Now." Ex. 6 ..........................................................................3

"The Uniform CPA Examination Conduct and Non-Disclosure
   Agreement." Ex. 19 ...............................................................................................4

AICPA. Similarly, A "Score Information"...............................................................5

Fourteenth Amendment ..........................................................................................18

L.R. 11-6.1 ..............................................................................................................21

L.R. 11-6.2 ..............................................................................................................21

Prometric "Pro Scheduler" .......................................................................................4

Prometric's "Pro Scheduler" ................................................................................3, 5

Rep. 509 (2007) ......................................................................................................18

Rule 26....................................................................................................................14

www.prometric.com/cpa...........................................................................................4

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Counterclaimant Stephen Lau is an aspiring CPA who is only one passing Uniform CPA Exam score away from obtaining his California license. Counterdefendant AICPA is actively interfering with Mr. Lau's ability to obtain his CPA license by unlawfully withholding Mr. Lau's score for a September 2024 FAR exam. By withholding Mr. Lau's score, AICPA is intentionally preventing Mr. Lau from being able to complete his license application or reschedule and retake the FAR exam if needed. The Court previously denied Mr. Lau's *ex parte* application (Dkt. 52) for an order compelling AICPA to release his score on the grounds that the record lacked "evidence from Lau that would justify relief before June 30, 2025, which is well within the time for Lau to bring a regularly-noticed motion for preliminary relief." Dkt. 62 at 2. Accordingly, Lau brings this regularly noticed motion for preliminary injunctive relief.

Mr. Lau seeks an order compelling AICPA to release to the California Board of Accountancy (CBA) his September 2024 FAR exam scores and Performance Report. Unbeknownst to Mr. Lau, AICPA began secretly withholding Mr. Lau's scores shortly after Mr. Lau threatened to bring disability rights claims against AICPA. After months of inquiry, Mr. Lau learned from the CBA on January 21, 2025 that AICPA was withholding his scores from CBA without explanation. Mr. Lau then learned on March 27, 2025 (after repeated requests for an explanation) that AICPA has no good faith justification for withholding his score, which confirmed Mr. Lau's suspicion of AICPA's retaliatory motives. AICPA's response to Mr. Lau's *ex parte* motion further confirmed that AICPA's actions are retaliatory, and that AICPA is holding Mr. Lau's score hostage to try and make him abandon his discrimination claims against AICPA. *See* Dkt. 59 at 1.

AICPA is currently inflicting several distinct irreparable harms on Mr. Lau. If Mr. Lau passed his exam, AICPA is preventing Mr. Lau from obtaining a CPA

- 1 -

license that is he already entitled to and preventing Mr. Lau from practicing his lawful profession. If Mr. Lau did not pass, then AICPA is preventing Mr. Lau from exercising his statutory right to retake the exam. AICPA is also preventing Mr. Lau from receiving the due process he is entitled under the California Accountancy Act, Cal. Bus.& Prof. Code §5000 *et seq.*

AICPA's conduct is also interfering with Mr. Lau's entitlement to reasonable disability accommodations under California and federal law. If Mr. Lau needs to retake the FAR exam, he must pass it before June 30, 2025 or risk expiration of his prior test scores. Even if the Court were to grant Mr. Lau's motion from the bench at the hearing on May 23, due to the time it takes Mr. Lau to pay for, schedule, study for, and retake the FAR exam, Mr. Lau will have at most two more opportunities to pass the exam before his prior scores will begin to expire. Mr. Lau cannot even effectively study for these exams in the interim because he needs his scores and Performance Report to do so. April 17, 2025 Declaration of Stephen Lau ("Lau Decl.") ¶¶34-37. The indefinite delay AICPA is imposing is particularly harmful to Mr. Lau given the way he processes information and studies for exams. *Id*. Mr. Lau needs his scores and Performance Report to focus his studying efforts and maximize his chance of passing on the two tries he has left before June 30, 2025. *Id*. Prompt relief is essential to protecting Mr. Lau's ability to fairly access the FAR exam.

## **FACTUAL BACKGROUND**

**The CBA and CPA Licensure**

Under the California Accountancy Act, Cal. Bus. & Prof. Code §5000 *et seq.*, the California Board of Accountancy (CBA) is responsible for issuing CPA licenses and protecting the public related to the practice of public accountancy in California. Ex. 2 at 1. There are three general requirements for CPA licensure in California. A candidate must (1) pass the Uniform CPA Examination, (2) complete the required education, and (3) obtain accounting experience. Mr. Lau has satisfied each of the

MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

requirements for licensure except passage of his final CPA exam section. Lau Decl. ¶5. Mr. Lau stands ready to complete his application and pay all necessary fees if he passed his 2024 FAR exam; if Mr. Lau did not pass, he wishes to reschedule and retake the exam as soon as possible. *Id*. ¶8.

**Accessing the Uniform CPA Examination in California**

In California, there are three organizations that a CPA exam candidate directly interfaces with in order to schedule, take, and receive scores for sections of the Uniform CPA exam: (i) the CBA; (ii) the National Association of Boards of Accountancy ("NASBA:); and (iii) Prometric. Ex. 4 at 2.

A California candidate must first create a client account with the CBA by visiting its website. Lau Decl. ¶10. A prominent "Examination" menu box on the CBA website contains two weblinks: one link for "Video and Information About How to Apply" and another link to "Apply for Examination Now." Ex. 6.  After setting up an account and completing the CBA website's exam scheduling flow, the CBA approves a qualified candidate to take a CPA exam and the applicant is directed to submit payment to NASBA. Ex. 4, Lau Decl. ¶13.

Persons wishing to submit a payment to NASBA for a California CPA examination may access NASBA's Payment Portal website. Ex. 14. A candidate visiting the NASBA payment portal must click the "pay exam fees" button and will then be prompted to login using NASBA account credentials. Lau Decl. ¶ 14. According to NASBA, after applying for the CPA Exam, being found eligible, and paying the associated fees to register for CPA Examination Sections, candidates will be issued a Notice to Schedule (NTS). Ex. 11 at 18. The NTS becomes available to view and print from an applicant's CPA Candidate Portal after the requirements have been met to issue the NTS, and once it issues, the NTS is an exam candidate's "ticket" used "to schedule and then take the specified Exam section." Ex. 30. Exam candidates may then use their NASBA-issued NTS to schedule an exam through Prometric's "Pro Scheduler" website. Ex. 11 at 12;

MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-cv-01940-SSS-SHKx

Lau Decl. ¶16; Ex. 17.

The "Pro Scheduler" website contains a link to a "Prometric Policy Page" that discusses Prometric's Testing Accommodations Policy. Ex. 18. A user who scrolls to the bottom of the Prometric Policy Page can see a section entitled "Important Information About Your Test Event," within which Prometric provides information and weblinks to inter alia NASBA's CPA Exam Candidate Guide and an AICPA website entitled "Everything you need to know about the CPA Exam." The latter link resolves to an AICPA controlled webpage that provides information about the CPA exam and its scoring. After clicking a "next" button on the Prometric Policy Page, users encounter a message entitled "The Uniform CPA Examination Conduct and Non-Disclosure Agreement." Ex. 19.

The CBA, Prometric, and NASBA all state that reasonable testing accommodations will be provided for individuals with disabilities. Clicking the "Apply for Examination Now" link takes users to a webpage that directs users to a Reasonable Accommodations Webpage that informs candidates that CBA "approves reasonable accommodations based on a physical or mental disability or medical condition." Lau Decl. ¶10; Ex. 9 at 1-2. CBA directs users to review a "CPA Exam Candidate Guide" provided on NASBA's website and to "[v]isit Prometric's website for information regarding items that are allowed in the testing room without prior CBA approval." Ex. 9. The NASBA Exam Candidate Guide informs uses that "Exams with approved testing accommodations are available for self-scheduling at www.prometric.com/cpa." Ex. 11 at 29.  The Prometric "Pro Scheduler" website contains a link to a "Prometric Policy Page" that discusses Prometric's Testing Accommodations Policy. Ex. 18; Ex. 20 at 1-2.

**California CPA Exam Scoring and Reporting**

The CBA tells candidates that answering "yes" to application question number 8 "will allow you to receive your exam scores in your [CBA] account." Ex. 7.  The CBA also tells candidates: "when you're ready for more [exam] sections

- 4 -

you just send us another remittance form and fee. You will receive your CPA exam scores…in your client account" once they are available. Ex. 7. CBA's Application Information webpage tells candidates that "[t]he CBA releases exam scores within two days following the publicly announced calendar of target score release dates. You may access your score(s) via your client account by selecting the 'Status' tab within your client account." Ex. 12. These statements accurately describe Mr. Lau's experience for all prior CBA exam sections and scores prior to the September 2024 FAR exam. Lau Decl. ¶12.

Pages 49-50 of NASBA's Candidate Guide contain a section entitled "Receive Your Scores" which informs candidates that their test responses "are forwarded to the AICPA for scoring," and that when "scores become available, the AICPA forwards them to NASBA, which then matches the scores to individual candidates. NASBA then forwards the scores to Boards of Accountancy for approval and subsequent release to candidates." Ex. 11. The Candidate Guide further states that scores "will be released by NASBA to state Boards of Accountancy based upon the target score release date timeline" provided by the AICPA. Similarly, A "Score Information" link on the NASBA Payment Portal page informs candidates that "You can refer to the score release timeline from the AICPA to see when your scores will be sent to NASBA…All scores for that 'release date' should be posted within 48 hours from when NASBA started receiving the scores." *Id*. Unlike in "all other states," California candidates are told they will obtain their scores "from your board of accountancy's website." Ex. 15 at 1-2; *see also* Ex. 16 at 3. NASBA tells California candidates that their scores will be posted on the CBA portal "within 72 hours from when your advisory score is posted," and that a "candidate performance report" will be available for failed scores.

Prometric's "Pro Scheduler" website contains a link to a "Prometric Policy Page" that discusses Prometric's Testing Accommodations Policy. Ex. 18. A user

- 5 -

who scrolls to the bottom of the Prometric Policy Page can see a section entitled "Important Information About Your Test Event," within which Prometric provides information and weblinks to inter alia NASBA's CPA Exam Candidate Guide and an AICPA website entitled "Everything you need to know about the CPA Exam." The latter link resolves to an AICPA controlled webpage that provides information about the CPA exam and its scoring.

The CBA has a contract with AICPA pursuant to which the Uniform CPA Exam given in California "is written and graded by the [AICPA]." Ex. 2 at 11. AICPA's FAQ website (Ex. 20) provides links where candidates are told "when you'll get your CPA Exam score" and "how we score the CPA Exam." Exs. 21 & 22. AICPA represents to exam applicants that scores will be released on pre-scheduled "release dates" and acknowledges that predictably about "when you can expect to receive your score" is important to "help[] you to better plan your testing schedule." Ex. 21. With respect to methodology, AICPA informs exam applicants that "[s]coring is fully automated for all CPA Exam components," and that "CPA Exam scoring is treated with a high level of importance..." Ex. 20 at 6-7. AICPA also advertises on its website that "[w]hen you fail an Exam section, you'll…receive a Candidate Performance Report that assesses your performance on that specific section." Ex.22 at 1.

**Retaking Failed Exam Sections in California**

By law, a California "candidate who fails [a Uniform CPA exam section] shall have the right to reexamination pursuant to the provisions of this article and regulations adopted by the board."  Cal. Bus. & Prof. Code § 5082.2.  The applicable regulations state that:

> (3) Applicants who fail any core test section may retake that section subject to the requirements in Section 8.2. Requests to retake a failed test section are accepted on a continuous basis by the submission of an application for an Authorization to Test that is approved by the Board…

16 Cal.Code.Reg § 7.1. The Regulations further provide that "[a]n Authorization to

Test (ATT) is issued by the Board to permit the applicant to test for specified sections," that the ATT "shall go into effect (be open) on the date of issuance," and that the applicant shall submit the ATT to NASBA and obtain an NTS within 90 days of obtaining the ATT. 16 Cal.Code.Reg § 8.1 (a).  "The NTS will enable the applicant to schedule testing at an examination test center."  16 Cal.Code.Reg § 8.1(b).

If an applicant does not pass an exam section, "the applicant cannot test for that section until the applicant reapplies and is issued another ATT for that section pursuant to Section 8.2."  16 Cal.Code.Reg § 8.1(c). "An applicant shall not have more than one open ATT for any section of the examination at the same time." 16 Cal.Code.Reg § 8.2(b).  A candidate cannot obtain another ATT to retake a failed exam section until the CBA receives the candidates score for that section. Lau Decl. ¶25; Ex. 37.

**Mr. Lau's Efforts to Obtain a CPA License in California**

Mr. Lau is an individual diagnosed with Autism Spectrum Disorder, Attention Deficit Disorder, and Language Processing Disorder. Despite challenges, Mr. Lau earned a B.S. Degree in Accounting from the University of Southern California in May 2004 and has been working hard to pass the Uniform CPA Exam since then. In November 2017, the CBA provided Mr. Lau with written confirmation of his entitlement to testing accommodations pursuant to the ADA. Ex. 23. Subsequent to CBA's Accommodation Letter, the CBA, AICPA, NASBA, and Prometric all communicated and cooperated to afford Mr. Lau testing accommodations. Mr. Lau's accommodations include extra time and a private room equipped with a white noise machine and other features designed to minimize unnecessary distractions. Lau Decl.¶4.

Mr. Lau has passed three out of four sections of the Uniform CPA Exam. Lau Decl. ¶6, Ex. 24. He attempted to pass his final section, the FAR exam, on June 22, 2024, but received a fail score on July 31, 2024. Lau Decl. ¶17. In August 2024,

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

Mr. Lau scheduled a FAR exam for September 24, 2024. *Id.* Mr. Lau paid all necessary fees, received an NTS, and appeared for the exam at the appointed time and place. Mr. Lau completed his exam within the allotted time, complied with all exam rules, and expected to timely receive his scores as usual. Lau Decl. ¶18.

**AICPA's Retaliatory Score Withholding**

On October 9, 2024, Mr. Lau informed AICPA that if the parties were unable to promptly reach a settlement of the claims asserted in AICPA's complaint, Mr. Lau intended to bring disability discrimination claims against AICPA's based on AICPA's intentional effort to prevent Mr. Lau from receiving disability accommodations for his September 2024 FAR exam. Lau Decl.¶22; Dkt. 52-2 ¶3. Shortly thereafter, AICPA retaliated against Mr. Lau by secretly withholding the scores for his September 2024 FAR exam. In November, December, and January, Mr. Lau investigated the status of his September 2024 FAR exam scores with Prometric, NASBA, and the CBA, finally learning from the CBA on January 21, 2025 that AICPA was withholding his score without explanation. Lau Decl. ¶¶18,19; Exs.32-36. Mr. Lau then asked AICPA why his score was being withheld and AICPA did not even respond to him. Lau Decl. ¶63, Ex.26.

During meet and confer discussions in late March 2025, AICPA attempted to justify its score withholding by invoking Mr. Lau's study group communications about *different* tests Mr. Lau took in November 2023 and February 2024. AICPA also invoked an "Informed Consent" document that was never mentioned until March 27, 2025, more than six months into this case. Exs.27-28. AICPA's counsel was unable during a March 28, 2025 meet and confer session to provide a factual basis for its assertion that Mr. Lau agreed to the Informed Consent document—apparently because it had none. Dkt. 52-2 ¶6. In response to Mr. Lau's *ex parte* application, AICPA introduced yet another purported "Consent" agreement (different from the "Informed Consent" agreement presented on March 27) that AICPA says Mr. Lau and AICPA are parties to. Ex.29, Dkt. 56-3. AICPA's

- 8 -

lawyers argue that either Ex. 27 or Ex. 29 authorize AICPA to withhold Mr. Lau's score, *see* Ex. 28, but neither of the documents supports AICPA's new position. AICPA has no factual basis to accuse Mr. Lau of any misconduct with respect to his September 24, 2024 Far Exam, Dkt. 57 ¶28, so there is no basis for AICPA to withhold the 2024 FAR Exam Score under the authority of Exhibits 27 or 29 even if one or both of those documents do apply to Mr. Lau.

This motion is being noticed for hearing on May 23, 2025. Hypothetically, if the Court orders release of Mr. Lau's September 2024 FAR exam score on May 23, that would still not provide Mr. Lau sufficient time to schedule, prepare for, and sit for an exam in time to obtain scores in May. Lau Decl. ¶¶34-37. Instead, Mr. Lau's next feasible testing window would be during the first week in June. Id. ¶37. If Mr. Lau is able to take the exam during the first week of June but does not pass, he would receive his scores and performance report on June 17 and would have only approximately 9 business days to schedule and prepare for one final attempt to pass the exam before his REG score expire on June 30, 2025. *Id.* In other words, as it currently stands, if he prevails on this motion on May 23, Mr. Lau will have at most a total of two chances to pass the FAR exam before his REG score expires.

## **LEGAL STANDARD**

A party seeking a preliminary injunction must establish that (1) it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *E.g., Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit also employs an alternative "serious questions" standard "under which "[the court] weigh[s] the preliminary injunction factors on a sliding scale, such that where there are only serious questions going to the merits—that is, less than a likelihood of success on the merits—a preliminary injunction may still issue so long as the balance of hardships tips sharply in the plaintiff's favor and the other two factors are satisfied." *Am. Express Travel Related*

MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

*Servs. Co. v. Pirch, Inc*., 2024 U.S. Dist. LEXIS 162376, at *7 (S.D. Cal. 2024); *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1191 (9th Cir. 2024) (affirming sliding scale standard).

## **ARGUMENT**

### I. **Mr. Lau Is Likely to Succeed on the Merits of His Interference, Discrimination, and Unfair Competition Law Claims**

Mr. Lau seeks injunctive relief pursuant to, and is likely to succeed on the merits of: (i) his tortious interference claim (Dkt. 42, SACC ¶¶404-411); (ii) his ADA retaliation claim (¶¶346-369); and (iii) his unfair competition claim ("UCL" claim) (SACC¶412-419).

#### **A. AICPA is Interfering with Mr. Lau's Contractual Rights**

Tortious interference with contractual relations requires "(1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Ixchel Pharma, LLC v. Biogen, Inc*., 9 Cal. 5th 1130, 1141 (2020)

**Existence of Contracts.** California Civil Code § 1550 requires four elements for contract formation: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Sonico v. Charter Communs.,* LLC, 2021 U.S. Dist. LEXIS 15585, at *13 (S.D. Cal. 2021). Here, Mr. Lau entered into contracts with NASBA, Prometric, and the CBA, and the terms of those contracts are evidenced by the written representations and the parties' conduct reflecting their mutual assent to those terms. *Donovan v. RRL Corp*., 26 Cal. 4th 261, 271, (2001); Exs.1-18. California processed and approved Mr. Lau's examination application and remittance form; NASBA took Mr. Lau's payment and issued to Mr. Lau an NTS; and Prometric permitted Mr. Lau to use his NTS to schedule, appear for, access, and complete the September 2024 FAR Exam. Lau

Decl.¶¶9-18. In scheduling, paying for, and taking the September 2024 FAR Exam, Mr. Lau acted in reliance on representations by the CBA, NASBA, and Prometric, and Mr. Lau paid exam fees in exchange for the promises that (i) he would timely receive his exam score; and (ii) have the ability to promptly receive a performance report and reschedule exams as needed. Lau Decl. ¶15.

Although the thicket of websites, terms of services, and disparate forms presented to Mr. Lau over the years is difficult to comprehend, *see* Dkt. 42 ¶¶92-137, with respect to the September 2024 FAR Exam, the essence of Mr. Lau's agreements with NASBA, Prometric, and the CBA was that if he paid each of them to take the Exam and completed it as instructed, he would timely receive his scores, timely be able to reschedule the exam if needed, and would have a Performance Report to help him study. Lau Decl. ¶¶15,34.

**AICPA's Knowledge**. AICPA is aware of Mr. Lau's contracts with NASBA, Prometric, and the CBA. AICPA's websites provide links to some of the contract documents; AICPA's business model depends on these types of contracts; and AICPA appears to have an agent-principal relationship with at least NASBA and Prometric, both of whom perform tasks necessary for AICPA to conduct its exam scheduling, scoring, and disability accommodations responsibilities. Ex.19; Ex. 20 at 1-2 (directing candidates to contact NASBA for information about accommodations and stating that AICPA and NASBA administer exam via Prometric). Indeed, it appears that AICPA pocketed at least some of the money collected from Mr. Lau for the September 2024 FAR exam. Ex. 11 at 15. As a matter of law, AICPA is charged with the knowledge of its agents. E.*g., Jefferson Pilot Life Ins. Co. v. Goold*, 2005 U.S. Dist. LEXIS 45931, at *6 (C.D. Cal. 2005). As a matter of fact, AICPA new exactly where Mr. Lau was going to be on the morning of September 24, 2024 because AICPA had access to NASBA and/or Prometric NTS information.

**AICPA's Intentional Conduct**. AICPA has admitted that it is intentionally

withholding Mr. Lau's exam scores. Ex. 28. AICPA is doing so knowing that obtaining his exam score is the reason Mr. Lau entered into agreements with the CBA, NASBA, and Prometric and paid money to take the September 2024 FAR exam. Ex. 21.

**AICPA's Causation of Disruption and Damages**. Mr. Lau paid money to take a test that he still doesn't have scores for, which is an injury to his contractual rights. If he did pass, then every day that AICPA continues to withhold his score is a day that Mr. Lau is unable to obtain a California CPA license that he already qualifies for. If he did not pass, Mr. Lau is being deprived of his right to reschedule his exam and prepare to retake it with the benefit of a performance report. Ex 11 at 49. In addition to loss of the value of the time and money he invested to prepare for and take the September 2024 FAR Exam, Mr. Lau is also suffering psychological harm every day that goes by because he cannot reschedule or even properly prepare for retaking the test if he needs to do so. Lau Decl.¶¶23-24;34-37.

### B. AICPA is Retaliating Against Mr. Lau in Violation of the ADA

Section 503(a) of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this Act or because such individual made a charge…under this Act." *Ross v. Indep. Living Res. of Contra Costa Cty.*, 2010 U.S. Dist. LEXIS 32775, at *6 (N.D. Cal. 2010) (quoting 42 U.S.C. § 12203(a)). "A prima facie case of retaliation under the ADA requires the plaintiff to show by a preponderance that (1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) the adverse action occurred because of the protected activity. *Karam v. Univ. of Ariz.*, 2022 U.S. Dist. LEXIS 18997, at *15-16 (D. Ariz. 2022) (citing *Brown v. City of Tucson*, 336 F.3d 1181, 1187 (9th Cir. 2003)).

**Protected Activity**. On October 9, 2024, Mr. Lau engaged in "protected conduct" by "threatening a lawsuit under the ADA." *Huggard v. United Performance Metals, Inc.*, 2011 U.S. Dist. LEXIS 151276, at *44-45 (S.D.

- 12 -

Ohio 2011); *Irvin v. Roldan*, 2019 U.S. Dist. LEXIS 228183, at \*16 (C.D. Cal. 2019) (citing *Entler v. Gregoire*, 872 F.3d 1031, 1042 (9th Cir. 2017) ("threatening to file a [discrimination] charge" is "is clearly protected"); *Williams v. Ala. DOT*, 509 F. Supp. 2d 1046, 1064 (M.D. Ala. 2007)(litigation "'threat' is protected conduct")(collecting cases).

**Adverse Action**. On October 31, 2024, AICPA withheld Mr. Lau's FAR exam scores, thereby preventing Mr. Lau from obtaining his CPA license—or even knowing the fate of his 2024 FAR Exam. AICPA's conduct is "reasonably likely" to deter persons like Mr. Lau from engaging in protected activity and is therefore actionable under the "expansive view" of adverse action in the retaliation context. *Pardi v. Kaiser Found. Hosps.*, 389 F.3d 840, 850 (9th Cir. 2004) (employment context). Under the ADA "[a]ny action that is reasonably likely to deter a person from engaging in the protected activity at issue constitutes an 'adverse action,' and such an action can include failing to timely update…records." *Isbell v. Oklahoma*, 2018 U.S. Dist. LEXIS 112871, at \*10 (N.D. Cal. 2018) (citing *Pardi,* supra); *accord Gallagher v. San Diego Unified Port Dist.,* 2009 U.S. Dist. LEXIS 9277, at \*20-21 (S.D. Cal. 2009) (ignoring requests and ultimately denying renewal request); *Yates v. W. Contra Costa Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 123594, at \*25 (N.D. Cal. 2017) ("Reporting…adverse information to a credentialing agency"); *Bastidas v. Good Samaritan Hosp. LP*, 2016 U.S. Dist.LEXIS 33405, at \*5 (N.D. Cal. 2016) (failure to institute a proctoring program).

**Causation**. Causation between protected activity and adverse action "may be inferred from circumstantial evidence." *Meyers v. Kendall*, 2024 U.S. Dist. LEXIS 99412, at \*26 (C.D. Cal. 2024). Here, AICPA's "knowledge that [Mr. Lau] engaged in protected activities and the proximity in time between the protected action" and AICPA's withholding of Mr. Lau's scores is sufficient to carry Mr. Lau's burden of production. *Id.* "[T]emporal proximity can by itself constitute

- 13 -

sufficient circumstantial evidence of retaliation." *Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011). AICPA's attempts to justify its score withholding by invoking conduct that predates the September 2024 FAR Exam and a never-before-seen-or-pled "Informed Consent" document confirms AICPA's retaliatory motives, as its post-hoc justification is inconsistent with AICPA's past conduct.[1]

If AICPA thought it could withhold Mr. Lau's 2024 FAR scores based on statements he made about the 2023 REG and 2024 ISC exams, why did AICPA release Mr. Lau's failing FAR scores in July 2024? Lau ¶17. AICPA's position is also inconsistent with its conduct in permitting Mr. Lau to schedule, sit for, and complete the September 24, 2024 FAR exam. Why would AICPA take his money and allow him to sit for the September 2024 FAR exam in the first place if it intended to prevent him from obtaining his scores for it? And why wouldn't AICPA follow any formal procedures for revoking Mr. Lau's permissions via NASBA, Prometric, or the CBA to stop Mr. Lau from scheduling or taking the exam? *Compare Perez v. United States Postal Serv.*, 76 F. Supp. 3d 1168, 1190 (W.D. Wash. 2015) ("deviation from its own policies and procedures" held to "provide circumstantial evidence of retaliatory intent."). It was not until October 31, 2024, after Mr. Lau raised ADA claims, that AICPA began surreptitiously withhold Mr. Lau's scores. And when Mr. Lau reached out to AICPA to inquire about his scores, AICPA refused to provide him with any answer. *Compare Hudson v. United States Bureau of Prisons*, 1994 U.S. Dist. LEXIS 11664, at *14 (N.D. Cal. 1994) ("Defendants' divergent, and often contradictory, justifications…smack of post hoc

---

[1] It is unclear whether either new agreement is actually part of Mr. Lau's contractual relationship with AICPA. If such a document is part of the parties' contractual relationship, AICPA would have had a duty to plead it. *E.g., Twaite v. Allstate Ins. Co.,* 216 Cal. App. 3d 239, 252-53 (1989); Cal. Civ. Code § 1642 AICPA certainly would've had a duty to produce it under Rule 26 and the Court's Standing Order, Dkt. 29 at 2, and this duty is particularly important given the document's mandatory arbitration clause. *See Adolph v. Coastal Auto Sales, Inc.,* 184 Cal. App. 4th 1443, 1452-53 (2010).

MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

rationalization"); *Johnson v. Macy*, 145 F. Supp. 3d 907, 917 (C.D. Cal. 2015)(similar).

AICPA's belated invocation of a new "Informed Consent" document also betrays AICPA's true retaliatory motives. Assuming *arguendo* that at least one of the new alleged contracts AICPA invoked on March 27 and April 3 does apply to Mr. Lau, the terms of those documents do not even support AICPA's position. The language AICPA invokes says "AICPA may refuse to process your Test results, refuse to release your scores, or recommend that the State Board cancel your Test scores in the event NASBA or AICPA have reason to believe your Test scores may not be valid or result from any fraudulent activity." Exs. 27&28.  But there is no question about the validity of Mr. Lau's September 2024 FAR Exam scores and AICPA has no basis to accuse Mr. Lau of any "fraudulent activity" concerning that exam.  Dkt. 57 ¶ 28. Where, as here, "defendant's purported nondiscriminatory reasons" are "reasons that not been previously asserted" and contradict past conduct, such reasons are discredited. *See, e.g., Johnson, 145 F. Supp. 3d at 917*; *Hudson*, 1994 U.S. Dist. LEXIS 11664, at *14.

### C. AICPA is Violating California's Unfair Competition Law

The UCL broadly proscribes "any unlawful, unfair or fraudulent business act or practice . . . ." *Cappello v. Walmart Inc*., 394 F. Supp. 3d 1015, 1018 (N.D. Cal. 2019). "[T]o bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition." Id.

**Standing**. Mr. Lau has suffered economic harm due to AICPA's unlawful conduct including by "surrender[ing] in a transaction more, or acquires in a transaction less, than he…otherwise would have," as he agreed to obligations, paid money, and performed his obligations, but has not received his test scores. In addition, both his ability to obtain a license and ability to earn money as a licensed CPA are being diminished. *Cappello*, 394 F. Supp. 3d at 1019. He has also been put to the expense of spending money on this motion. *Id.; E. & J. Gallo Winery v.*

- 15 -

*Andina Licores S.A.*, 2007 U.S. Dist. LEXIS 11281, at \*9 (E.D. Cal. Jan. 29, 2007) (discussing attorneys fees as damages); *Sachar v. Magasinn*, 2023 Cal. Super. LEXIS 11102 (Cal. Sup. 2023) (same, collecting cases).

**Unlawful Practices**. The "UCL borrows violations of other laws" and "makes those unlawful practices actionable under the UCL." *Moran v. Prime Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1142 (2016). As discussed above, AICPA is tortiously interfering with Mr. Lau's contractual rights, which is an unlawful practice in *California. Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1196 (2013); *Zhang v. Superior Court*, 57 Cal. 4th 364, 384 (2013)("conduct that violates…statutes or the common law" can give rise to a UCL action). AICPA is also violating the ADA by retaliating against Mr. Lau. *Leonel v. Am. Airlines, Inc.*, 400 F.3d 702, 715 (9th Cir. 2005) (ADA violations are UCL predicates). AICPA is also violating the false advertising law by withholding Mr. Lau's scores in a manner inconsistent with the representations by AICPA and its agents about score release timelines and performance reports. Exs. 19-22; *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (UCL and FAL prohibit "any statement … which is untrue or misleading, and which is known, or … should be known, to be untrue or misleading …"). AICPA is also violating the Accountancy Act by intentionally usurping and preventing CBA from exercising its statutory authority and depriving Mr. Lau of due process. Cal. Bus. & Prof. Code §§ 5100, 5110; Cal. Gov't. Code § 11500; Ex. 2 at 9. AICPA is also violating the law by retaliating against Mr. Lau simply because AICPA and Mr. Lau "are adverse parties in a lawsuit," which is "exactly the type of behavior" that anti-retaliation laws aim to prevent. *See, e.g., Johnson v. Jew*, 2021 U.S. Dist. LEXIS 154022, at \*10 (N.D. Cal. 2021).

**Deceptive Practices**. The UCL prohibits "any fraudulent business act or practice" and any "deceptive, untrue or misleading advertising." Bus. & Prof. Code, § 17200. AICPA is engaged in deceptive practices to the extent it permitted Mr. Lau to schedule, pay for, and sit for the 2024 FAR exam, knowing all along that it

MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

would withhold Mr. Lau's scores indefinitely without even telling him. See, e.g., *Boschma v. Home Loan Ctr., Inc.,* 198 Cal. App. 4th 230, 253-54 (2011)("statement couched in such a manner that it is likely to mislead or deceive the consumer…is actionable under the UCL").

**Unfair**. "It is frequently stated that '[a] business practice is unfair within the meaning of the UCL if it violates established public policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.'" *Gray v. Dignity Health*, 70 Cal. App. 5th 225, 238 (2021). AICPA's conduct is all of the above. It is extremely unscrupulous and oppressive for AICPA to pocket Mr. Lau's cash, secretly withhold his scores, and then use its unlawful score withholding as a de facto barrier to Mr. Lau's ability to pursue his lawful profession. It is also immoral for AICPA to treat Mr. Lau as it has. At a minimum, AICPA's conduct violates the California Legislature's carefully crafted regime for giving CBA control over CPA licensure, and for affording candidates due process before invalidating exam scores or denying access to a CPA license or the Uniform CPA Exam.

## II. AICPA is Causing Mr. Lau Irreparable Harm

Mr. Lau is currently suffering several distinct types of irreparable harm. If Mr. Lau passed his September 2024 FAR exam, then he is entitled to a license today, and AICPA is preventing him from obtaining it. Deprivation of a license needed to pursue one's profession is irreparable harm. *Revival Health Pharmacy, LLC v. Ams. Pharmacy Source, LLC*, 2024 U.S. Dist. LEXIS 110051, at *8 (C.D. Cal. June 21, 2024) (irreparable harm due to Defendant's failure to transfer ownership of the pharmacy licenses); *Portée v. Morath*, 683 F. Supp. 3d 628, 636 (W.D. Tex. 2023) ("Defendants' ongoing failure to recognize her out-of-state licenses as valid is preventing her from pursuing employment opportunities in her chosen profession."); *Tom T., Inc. v. City of Eveleth*, 2003 U.S. Dist. LEXIS 3718, at *25 (D. Minn. 2003) (onerous licensing requirements that permitted arbitrary

- 17 -

denial of licenses to professional dancers created risk of irreparable harm); *Ariz. Dream Act Coal. v. Brewer,* 757 F.3d 1053, 1068 (9th Cir. 2014) ("Plaintiffs' inability to obtain driver's licenses likely causes them irreparable harm by limiting their professional opportunities."); *see also Planned Parenthood Great Nw. v. Labrador*, 122 F.4th 825, 840, 844 (9th Cir. 2024) ("professional licensing penalties" supported finding of irreparable harm)

If Mr. Lau did not pass, then he is suffering irreparable harm in the form of his inability to access and retake the exam needed to pursue his profession. *Enyart v. Nat'l Conference of Bar Examiners*, 630 F.3d 1153, 1165 (9th Cir. 2011) ("irreparable harm in the form of the loss of opportunity to pursue her chosen profession."); *Doe v. Samuel Merritt Univ.,* 921 F. Supp. 958 (N.D. Cal. 2013) (plaintiff would be irreparably harmed because she would be "preclude[ed] from advancing her professional career.") *Maczaczyj v. State of N.Y.,* 956 F. Supp. 403, 408 (W.D.N.Y. 1997) (similar).

Mr. Lau is also suffering irreparable harm in the form of denial of his statutory rights to reschedule the exam and receive due process before being deprived of rescheduling opportunities. *Lewis v. Garland*, 2023 U.S. Dist. LEXIS 231037, at *10 (C.D. Cal. July 31, 2023) ("Deprivation of constitutional rights unquestionably constitutes irreparable injury.")(citation omitted); *Planned Parenthood of Kan. & Mid-Missouri, Inc. v. Lyskowski*, 2016 U.S. Dist. LEXIS 62192, at *9 (W.D. Mo. 2016) ("The threat of deprivation of this property and process in violation of the Fourteenth Amendment constitutes an immediate irreparable injury appropriate for redress by an injunction."); *Levy v. Bd. of Registration in Dentistry*, 22 Mass. L. Rep. 509 (2007) (irreparable harm if license is denied without a hearing). The Accountancy Act gives the CBA responsibility for "[ensuring] that only candidates who meet [the CBA's] qualifications are allowed to take the national Uniform CPA Examination" in California. Ex. 2 at 1. California law also gives CBA the authority to determine whether to take

disciplinary action against a licensee or license candidate. Cal. Bus. & Prof. Code §§ 5100, 5110. Because of the important due process implications of such a decision, the CBA's authority is constrained by formal procedures that must be followed before adverse action can be taken against a candidate. Cal. Bus. & Prof. Code §§ 480, 5100-5115. Only "[a]fter notice and hearing" may the CBA deny an applicant's license or restrict access to the Uniform CPA Exam. *See, e.g.*, Cal. Bus. & Prof. Code §§5100,5102,5110; Cal. Gov't. Code § 11500. AICPA has usurped CBA's authority and appointed itself as the *de facto* gatekeeper of Mr. Lau's licensure by holding up Mr. Lau's scores as a means of preventing him from moving forward with his licensure efforts and receiving due process.

Mr. Lau is also suffering irreparable harm in the form of inability to properly study for the exam with the benefit of a performance report. Lau Decl. ¶¶34-37; Ex. 38; *see, e.g.*, *E.T. v. Morath,* 2021 U.S. Dist. LEXIS 259581, at *6 (W.D. Tex. 2021)(denial of opportunity to learn on an equal basis as peers without disabilities is irreparable harm); *Hernandez v. Grisham*, 494 F. Supp. 3d 1044, 1148-49 (D.N.M. 2020) (loss of learning opportunities held to be irreparable harm); *Coleman v. Newburgh Enlarged City Sch. Dist.,* 319 F. Supp. 2d 446, 452 (S.D.N.Y. 2004) (suspension from school threatened irreparable harm to student who was "academically challenged and need[ed] extra help" to avoid loss of college opportunities) *overruled on other grounds as stated in R.G. v. Minisink Valley Cent. Sch. Dist.,* 531 F. App'x 76, 78 n.1 (2d Cir. 2013) (unpublished). Denying Mr. Lau the Performance Report and time he needs to properly prepare for the FAR exam is especially harmful because of Mr. Lau's disabilities and the way he learns and studies for exams; such harms that are worsening as time goes by and may become permanent absent injunctive relief. Lau Decl. ¶¶34-37.

Mr. Lau also faces the impending prospect of further additional harm if he is unable to complete his Uniform CPA Exam requirements before June 30, 2025. His scores will begin to expire, requiring him to go back and retake exams to complete

MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 5:24-cv-01940-SSS-SHKx

the "arduous process of becoming licensed." *Morrar v. United States*, 2019 U.S. Dist. LEXIS 108951, at *24 (E.D. Cal. 2019).  Again, this harm is magnified due to Mr. Lau's disabilities.  It has taken him 20 years to get to this point. Further "passage of time is likely to exacerbate [Mr. Lau's] harm" as it will make it harder for him to pass all exam sections and will "delay [his] entry into [his] chosen professional field." *Jones v. Nat'l Conference of Bar Exam'rs*, 801 F. Supp. 2d 270, 286-87 (D. Vt. 2011).

Mr. Lau is not guilty of any lack of diligence, as Mr. Lau did not learn that AICPA was withholding his September 2024 FAR score until January 21, 2025. *See* Lau Decl.  ¶¶17-21. Because of AICPA's surreptitious activity and failure to respond to repeated inquiries, Mr. Lau didn't obtain admissible evidence of the AICPA wrongdoing he now seeks to enjoin until March 27, 2025. *See* Ex. 27-28. Delays caused by AICPA's efforts to conceal its' misconduct are not attributable to Mr. Lau. *See, e.g., Sun World, Inc. v. Lizarazu Olivarria,* 804 F. Supp. 1264, 1268 (E.D. Cal. 1992) (rejecting argument that movant waited too long to seek injunction where non-moving party engaged in "delay and ball-hiding").

Importantly, any alleged "tardiness is not particularly probative in the context of ongoing, worsening injuries" like those at issue here. *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014).  Each day that goes by is another depravation of Mr. Lau's rights, and if he needs to retake the FAR exam, time is running out.

**III. The Balance of Equities and Public Interest Favor Mr. Lau**

The balance of equities favors Mr. Lau. AICPA has nothing legitimate to lose by releasing Mr. Lau's score. None of the misconduct alleged in AICPA's FAC has anything to do with the equities of this motion. AICPA can still have its day in court to argue about Mr. Lau's November 2023 and February 2024 conduct. AICPA is not entitled to act as Mr. Lau's judge, jury, and career executioner by withholding scores for a September 2024 exam for which Mr. Lau is not even accused of doing anything wrong. Such self help is antithetical to equity and to the

- 20 -

public's interest. *Zoom Video Communs., Inc. v. Ringcentral, Inc.*, 2021 U.S. Dist. LEXIS 59902, at \*14 (N.D. Cal. 2021) (citation omitted).

The public has a strong interest in upholding the CBA's authority and due process protections, see Cal. Bus. & Prof. Code § 5000.1("Protection of the public shall be the highest priority for the California Board of Accountancy"), enforcing disability discrimination statutes like the ADA, *e.g., Enyart*, 630 F.3d at 1167, upholding contractual rights, *Zoom*, 2021 U.S. Dist. LEXIS 59902, at \*14, and enforcing California's UCL, e.*g., Estakhrian v. Obenstine*, 2017 U.S. Dist. LEXIS 224790, at \*5 (C.D. Cal. 2017). All of these interests are magnified here, as AICPA is abusing the position of trust and privilege bestowed upon AICPA by the CBA.

## CONCLUSION

For the foregoing reasons, Mr. Lau respectfully requests that his motion be granted in its entirety.

## Civil Local Rule 11-6.2. Certificate of Compliance

The undersigned, counsel of record for Stephen Lau, certifies that this Memorandum of Points and Authorities contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 23, 2025      ORRICK, HERRINGTON & SUTCLIFFE LLP

By: */s/ Robert L. Uriarte*
ROBERT L. URIARTE
Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

- 21 -