SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real Suite 120
Menlo Park, California 94025-4111
Telephone:   650.815.2600
Facsimile:    650.815.2601

KAZIM A. NAQVI, Cal. Bar No. 300438
knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-7017
Telephone:   310.228.3700
Facsimile:    310.228.3701

PARKER POE ADAMS & BERNSTEIN LLP
CHRISTOPHER M. THOMAS (*admitted pro hac vice*)
christhomas@parkerpoe.com
ANDREW P. TABELING (*admitted pro hac vice*)
andytabeling@parkerpoe.com
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina  27602-0389
Telephone:   (919) 835-4626
Facsimile:    (919) 834-4564

NICHOLAS H. LEE (*admitted pro hac vice*)
nicholaslee@parkerpoe.com
620 S. Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: 704-335-9876
Facsimile: 704-334-4706

Attorneys for Plaintiff and Counter-Defendant AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>              Plaintiff,<br><br>      v.<br><br>STEPHEN LAU,<br><br>              Defendant. | Case No. 5:24-cv-01940-SSS-SHK<br><br>**COUNTER-DEFENDANT AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS' OPPOSITION TO COUNTER-CLAIMANT'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>[*Filed concurrently with Declarations of William Emmer and Michael Cannon, and Affidavit of Keith Woicieszek*] |

STEPHEN LAU,

        Counter-Claimant,

    v.

AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

        Counter-Defendant.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION .................................................................................................1

II.  FACTUAL BACKGROUND .............................................................................2

    A.   Lau's Wrongful Disclosures of Exam Content ........................................2

    B.   Lau's Baseless Counterclaims.................................................................4

    C.   Procedural History..................................................................................5

III. LEGAL STANDARD .........................................................................................5

IV.  THE MOTION SHOULD BE DENIED .............................................................6

    A.   Lau's Inexcusable Delay Confirms He Suffers No Irreparable Harm ......6

    B.   Lau Cannot Establish A Chance of Success on the Merits .......................7

        1.   Lau's Tortious Interference Claim Fails ........................................7

        2.   Any "Retaliation" Claim Fails .....................................................9

            a.   There Is No Possible ADA Discrimination Claim, so No Possible Retaliation Claim .............................................10

                (1)   The ADA's Retaliation Provision .......................................10

                (2)   AICPA Is Not Subject to the ADA .....................................10

            b.   Lau's Retaliation Claim Separately Fails Because His ADA Claim Was Not in Good Faith or Reasonable ...............11

            c.   Lau Cannot Establish Causation .........................................12

        3.   Lau's Unfair Competition Claim Fails.........................................13

            a.   Lau's Claim Fails under the Unlawful Prong...................13

            b.   Lau's Claim Fails under the "Unfair" and "Deceptive" Prongs..................................................................................14

    C.   Lau Cannot Establish Irreparable Harm................................................15

    D.   The Balance of the Equities Favor AICPA ............................................18

    E.   Denying the Motion is in the Public Interest..........................................19

V.   CONCLUSION ..................................................................................................20

Case No. 5:24-cv-01940-SSS-SHK
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## TABLE OF AUTHORITIES

**CASES**                                                                                                                    Page(s)

*Ariz. Dream Act Coal. v. Brewer*
    757 F.3d 1053 (9th Cir. 2014) ..................................................................17

*Berkadia Real Est. Advisors LLC v. Wadlund*
    2022 WL 18495279 (D.Ariz. Mar. 3, 2022) ...........................................16

*Binno v. American Bar Association*
    826 F.3d 338 (2016) ...................................................................................11

*Brisette v. Arnold*
    2016 WL 1670559, *3 (E.D.Cal. Apr. 27, 2016), *report and
    recommendation adopted*, 2016 WL 3351549 (E.D.Cal. June 16, 2016)..........16

*California by & through Becerra v. Azar*
    950 F.3d 1067 (9th Cir. 2020) (en banc)...................................................5

*Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*
    20 Cal.4th 163 (1999)...............................................................................15

*Chrysafis v. Marks*
    573 F.Supp.3d 831 (E.D.N.Y. 2021)........................................................16

*Clark Cty. Sch. Dist. v. Breeden*
    532 U.S. 268 (2001) ..................................................................................12

*Cypress Semiconductor Corp. v. Fujitsu Semiconductor Ltd.*
    2020 WL 906710 (N.D.Cal. Feb. 25, 2020)............................................16

*Daugherty v. Am. Honda Motor*
    144 Cal.App.4th 824 (2006).....................................................................14

*Doe v. CVS Pharmacy, Inc.*
    982 F.3d 1204 (9th Cir. 2020)...................................................................15

*Doe v. Samuel Merritt Univ.*
    921 F.Supp.2d 958 (N.D.Cal. 2013)..........................................................17

*ELT Sight, Inc. v. EyeLight, Inc.*
    2020 WL 7862134 (C.D.Cal. Aug. 28, 2020)..........................................18

*Enyart v. Nat'l Conf. of Bar Examiners, Inc.*
630 F.3d 1153 (9th Cir. 2011) ................................................................... 17

*Fenimore v. Lane Cty. Republican Cent. Comm.*
2023 U.S.Dist.LEXIS 40542 (D.Or. Mar. 10, 2023) ............................... 10

*Garcia v. Google, Inc.*
786 F.3d 733 (9th Cir. 2015) (en banc) .................................................... 5

*Goodwin v. Butte Cnty.*
2025 WL 821058 (E.D.Cal. Mar. 14, 2025).............................................. 13

*Green v. City of Phx.*
2019 U.S.Dist.LEXIS 144898 (D.Ariz. Aug. 26, 2019) ........................... 12

*Guess v. St. Martinus Univ.*
2022 WL 1224555 (6th Cir. Apr. 26, 2022)............................................... 11

*Henry Schein, Inc. v. Cook*
191 F.Supp.3d 1072 (N.D.Cal. 2016)........................................................ 20

*Herb Reed Enters., L.L.C. v. Fla. Ent. Mgmt.*
736 F.3d 1239 (9th Cir. 2013) ................................................................... 15

*Iceberg v. Brookstone Landscape & Design LLC*
2024 WL 1012895 (W.D.Wash. Mar. 8, 2024)........................................ 10

*Jones v. Nat'l Conference of Bar Exam'rs*
801 F. Supp. 2d 270 (D. Vt. 2011) ............................................................ 17

*Kent v. Microsoft Corp.*
2013 WL 3353875 (C.D.Cal. July 1, 2013) ............................................... 8

*L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*
634 F.2d 1197 (9th Cir. 1980) ................................................................... 18

*Latona v. Aetna U.S. Healthcare, Inc.*
82 F.Supp.2d 1089, 1096 (C.D.Cal. 1999)............................................... 19

*Levy v. Bd. Of Registration in Dentistry*
22 Mass. L. Rep. 509 (2007) .................................................................... 17

*Lewis v. Garland*
2023 U.S. Dist. LEXIS 231037 (C.D. Cal. July 31, 2023) ....................... 17

*Maczaczyj v. State of N.Y.*
956 F.Supp. 403 (W.D.N.Y. 1997) ................................................................17

*Mendoza v. Ruesga*
169 Cal.App.4th 270 (2008) ..........................................................................19

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*
2001 WL 283083 (C.D.Cal. Feb. 2, 2001) ....................................................19

*Midgett v. Tri-County Metro. Transp. Dist.*
254 F.3d 846 (9th Cir. 2001) .........................................................................15

*Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*
2020 WL 10965737 (C.D. Cal. Nov. 5, 2020) ...............................................8

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*
762 F.3d 1374 (9th Cir. 1985) .........................................................................6

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*
810 F.3d 631 (9th Cir. 2015) .........................................................................13

*Planned Parenthood Great Nw. v. Labrador*
122 F.4th 825 (9th Cir. 2024) ........................................................................17

*Planned Parenthood of Kan. & Mid-Missouri, Inc. v. Lyskowski*
2016 U.S. Dist. LEXIS 62192 (W.D. Mo. 2016) ..........................................18

*Playboy Enters. V. Netscape Communs. Corp.*
55 F.Supp.2d 1070 (C.D.Cal. 1999) ...............................................................6

*Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co.*
324 U.S. 806 (1945) ......................................................................................19

*Renewable Land, LLC v. Rising Tree Wind Farm LLC*
2013 WL 12106097 (E.D.Cal. Mar. 27, 2013) ..............................................18

*Revival Health Pharmacy, LLC v. Ams. Pharmacy Source, LLC*
2024 U.S. Dist. LEXIS 110051 (C.D. Cal. June 21, 2024) ...........................17

*Robinson v. Bodman*
333 F.App'x 205 (9th Cir. 2009)....................................................................12

*Rosales v. FitFlop USA, LLC*
882 F.Supp.2d 1168 (S.D.Cal. 2012) ............................................................14

*Salmon v. Dade Cty. Sch. Bd.*
    4 F.Supp.2d 1157 (S.D.Fla. 1998)...........................................................................12

*Sanchez v. Sanchez*
    2012 WL 6678223 (S.D.Cal. Dec. 21, 2012) ...........................................................8

*Saniefar v. Moore*
    2018 WL 3020458 (E.D.Cal. June 18, 2018)..........................................................10

*Silcox v. State Farm Mut. Auto. Ins. Co.*
    2014 WL 7335741 (S.D.Cal. Dec. 22, 2014)...........................................................14

*Stokely–Van Camp, Inc. v. Coca–Cola Co.*
    1987 WL 6300 (N.D.Ill.1987)....................................................................................6

*Stokes v. CitiMortgage, Inc.*
    2014 WL 4359193 (C.D.Cal. Sept. 3, 2014)...........................................................13

*Stormans, Inc. v. Selecky*
    586 F.3d 1109 (9th Cir. 2009)..................................................................................18

*T.B. v. San Diego Unified Sch. Dist.*
    806 F.3d 451 (9th Cir. 2015) ....................................................................................12

*Tipple v. Cnty. of San Diego*
    2006 WL 8455456 (S.D.Cal. May 5, 2006) .............................................................17

*In re Tobacco II Cases*
    46 Cal.4th 298 (2009)...............................................................................................14

*Tom T., Inc. v. City of Eveleth*
    2003 U.S. Dist. LEXIS 3718 (D. Minn. 2003) .......................................................17

*Valeo Intellectual Prop., Inc. v. Data Depth Corp.*
    368 F.Supp.2d 1121 (W.D.Wash. 2005) ...................................................................6

*Van Hulle v. Pac. Telesis Corp.*
    124 F.Supp.2d 642 (N.D.Cal. 2000)........................................................................10

*Velasquez v. Croteau*
    2009 WL 10676750 (N.D.Cal. Oct. 16, 2009).........................................................16

*WeRide Corp. v. Kun Huang*
    379 F.Supp.3d 834 (N.D.Cal. 2019).........................................................................19

*Wilkinson v. Clark Cty. Sch. Dist.*
 2010 U.S.Dist.LEXIS 131855 (D. Nev. Dec. 13, 2010) ....................................12

*Winter v. Nat. Res. Def. Council, Inc.*
 555 U.S. 7 (2008) ...............................................................................................15

**STATUTES**

42 U.S.C. § 12189...............................................................................................10

42 U.S.C. § 12203(a) ......................................................................................9, 10

Cal. Bus. & Prof. Code §§ 5100, 5102 ..............................................................13

Cal. Civ. Code § 3515.........................................................................................8

Cal. Gov't. Code § 11500 ...................................................................................13

**OTHER AUTHORITIES**

16 CCR § 7.1 ......................................................................................................15

Federal Rule of Evidence 408.............................................................................12

SMRH:4897-9745-3885.7
Case No. 5:24-cv-01940-SSS-SHK
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## I.   **<u>INTRODUCTION</u>**

Like almost any exam, the fairness and integrity of the Uniform CPA Exam ("CPA Exam") depends on confidentiality of the exam questions.  It creates an unfair advantage and erodes applicant and public trust in the exam, if some prospective test-takers are given more detailed knowledge of the contents of the exam in advance.  For this reason – just like with the bar exam and other professional licensing exams – candidates who take the CPA Exam must agree to keep its contents secret.  Counterclaimant Stephen Lau ("Lau") agreed to do just that.  He agreed to multiple NDAs in order to access and take sections of the CPA Exam.  He repeatedly breached these contracts by publicly posting Exam Content after taking at least two different CPA Exam sections.  His actions violated American Institute of Certified Public Accountants' ("AICPA's") trade secrets and copyrights.

Rather than accept responsibility for his actions, Lau has burdened the Court with a second request for a preliminary injunction (the "Motion" or "Mot.") *after his prior request was denied* (ECF 62).  He claims he is entitled to drastic preliminary injunctive relief to require AICPA to release his most recent exam score and allow him to access additional Exam Content, even though forcing such release would override AICPA's contractual right to withhold the test score under the Informed Consent Agreement (to which Lau agreed) and AICPA's right to protect its intellectual property, and would further compromise the integrity of the CPA Exam.  Lau is not entitled to such relief.

*First,* as this Court has already expressed, his over 5-month delay in bringing the Motion confirms he will not suffer irreparable harm.

*Second*, Lau consented to AICPA withholding his scores – the very action he now complains is the purported "wrongdoing."

*Third,* Lau cannot establish any viable claim against AICPA.  Lau's counterclaims are baseless, do not allege plausible facts, and are not likely to succeed

on the merits.[1]  Lau cannot obtain injunctive relief when he has no viable cause of action.

***Finally,*** Lau cannot establish any irreparable harm, that the balance of equities tips in his favor, or that the public intertest favors granting him relief.  Lau could easily ask the CBA to extend the validity date(s) of his prior exam(s), which would remove the need for any injunction, but he has conspicuously failed to do so.  Moreover, Lau admits to disclosing Exam Content.  Lau has unclean hands, and granting his request will further jeopardize the fairness and integrity of the exam, and unfairly prevent AICPA from protecting the exam and enforcing its contractual and intellectual property rights.

## II.    FACTUAL BACKGROUND

### A.    Lau's Wrongful Disclosures of Exam Content

AICPA was founded to establish, maintain, and advance public and client trust in the accountancy profession.  One way AICPA fulfills its mission is through the CPA Exam.  AICPA develops, designs and scores the CPA Exam.[2]  (Declaration of Michael Cannon, ¶1.)  The AICPA is the author of the questions, problems and suggested answers ("Exam Content") of the CPA Exam, and has registered copyrights in such content.  (*Id.*, ¶2-10, Ex. 1.)  The Exam Content is also comprised in large part of trade secrets.  (*Id.*)  The AICPA goes to great lengths to protect its intellectual property and keep the Exam Content secret and secure. (*Id.*)  California, like other states, requires CPA candidates to pass four exam sections before becoming licensed.

Lau entered into non-disclosure agreements ("NDAs") with AICPA to sit for sections of the CPA Exam in November 2023 and February 2024.  (*Id.*, ¶¶11-21, Ex. 11.)  He reaffirmed those NDAs immediately before taking the CPA Exam on those

---

[1]  Indeed, as shown in AICPA's Motion to Dismiss (ECFs 64, 73), Lau's claims fail to meet the pleading standards.

[2]  However, AICPA does not administer the CPA Exam, or control whether the Exam is required to become licensed, or control who takes the Exam.  (*Id.*)

days. (*Id.*, ¶¶22-25, Exs. 12-14.) Lau acknowledged and agreed, among other things, that he would not share, post, display, disclose, or communicate about Exam Content in any way, with anyone, at any time, including via the Internet, social media, chat or any other medium. (*Id.*, Ex. 4 at 1, Ex. 5 at 1; ECFs 30-2, 30-3 at 1-2). On at least February 4, 2023, Lau also affirmatively acknowledged that he had read, understood, and accepted the terms of the Informed Consent Agreement. (Declaration of William Emmer, ¶¶7-17, Exs. 3-5.) He explicitly agreed, in Section II(c), that NASBA or AICPA may, among other things, "refuse to release your scores" if "your conduct violates . . . the rules or conduct and non-disclosure requirements of AICPA.".[3] (*Id.*, Ex. 3, p. 3-4.)

Nevertheless, on the day after he took an exam section in November 2023 and on the same day he took an exam section in February 2024, Lau violated his NDAs, infringed AICPA's copyright rights, and misappropriated AICPA's trade secrets by publicly disclosing Exam Content online on Discord and Reddit. (Cannon Decl., ¶¶27-40, Exs.15-26.) For example, Lau disclosed an entire multiple choice question including all potential answers. (*Id.*, Ex. ¶31, Exs. 15-16; Affidavit of Keith Wojcieszek, ¶¶1-2, 8, 11; Ex. 3)..) Lau also described the details of numerous other portions of the exams such that prospective test-takers who saw the posts would unfairly know the details of portions of the exam in advance. (Cannon Decl., ¶¶32-40, Exs. 17-26; Wojcieszek Affidavit ¶¶8-12; Exs. 1-4.) ***Lau does not deny he made the posts*** (under pseudonyms designed to conceal his identity). (ECF 42 [Answer], ¶¶74-77, 84-85.)

Lau's acts violated the law and his contractual obligations and jeopardized the integrity and fairness of the CPA Exam by providing advance notice to people who read his posts of specific Exam Content they would encounter on the exam. (Cannon

---

[3] This provision is not limited to the particular *section* as to which a candidate commits a violation. "Test" is the entire "Uniform CPA Examination," which includes all the sections and days of testing. And the agreement permits withholding of scores and results (plural).

Decl., ¶¶3-10, 21, 25, 27-40, 42-45, Exs. 1, 4-5, 11-26.)  In order to protect its intellectual property rights and safeguard the Exam Content, and maintain the public trust, AICPA filed this action against Lau.[4]  (ECFs 1, 30.)

AICPA does not control who registers or sits for exams, and Lau subsequently sat for another section of the CPA Exam on September 24, 2024.[5]  Discovery in this action has just commenced, and AICPA does not presently know if Lau made additional disclosures after the September exam (particularly given that Lau's prior disclosures were under pseudonyms).  (Cannon Decl., ¶28, 44, 47.)  To protect its trade secrets during the pendency of this litigation and provide time to investigate the full scope of Lau's violations of AICPA's rights, including whether those violations continue to the present day, and as permitted by the Informed Consent Agreement (described below), AICPA withheld the results of Lau's September 24 exam.  (ECF 52-2, ¶4; ECF 30, ¶24; Cannon Dec. ¶¶45-48; Emmer Decl., Ex. 3 p. 3-4.)

**B.     Lau's Baseless Counterclaims**

Lau has filed three answers and counterclaims—each time alleging even more baseless counterclaims.  (ECF 28, 34, 42.)  In all of Lau's pleadings, he admits he made his public disclosures of Exam Content under pseudonyms that initially hid his identity. (ECF 42 [Answer], ¶¶74, 84; [Second Amended Counterclaims ("SACC")], ¶¶52-71.) But he claims that he did not agree to any NDAs with AICPA and is not bound by them.  (*E.g.,* ECF 42, Sixteenth, Seventeenth, Nineteenth, Twentieth Affirmative Defenses & SACC, ¶¶67, 130-36, 299-329, 393-98).  For various baseless technical reasons, he also claims that the Exam Content is not trade secret and he did not commit copyright infringement.   Thus, Lau's position is that he has no confidentiality obligations as to the Exam Content and has the legal right to disclose

---

[4]  After many failed attempts, AICPA was only able to personally serve Lau on the morning of the September 24, 2024 exam.  (ECF 58.)

[5]  Lau alleges he also took an exam in June 2024.  AICPA was not aware that he had done so until after it had released the scores.  (Cannon Decl., ¶41.)

Exam Content he might learn in the future, including during the pendency of this litigation. Thus, until the Court rules on AICPA's claims, there is a substantial risk that Lau will disclose additional Exam Content.

### C.    Procedural History

Lau previously sought the same injunctive relief by way of an *Ex Parte* Application (ECF 55), which the Court denied because Lau failed to provide evidence for relief on an ex parte basis. (ECF 62.) The Court also expressed concern with Lau's delay in seeking preliminary relief. Since then, AICPA moved to dismiss all of Lau's affirmative counterclaims because he fails to adequately plead them and they cannot succeed. (ECF 64.)

## III.    LEGAL STANDARD

Lau references a "sliding scale" approach and implies he need only raise "serious questions" as to the merits of his claims. Lau's assertion is at odds with the Ninth Circuit's *en banc* opinions holding that "'[t]he first [*Winter*] factor—likelihood of success on the merits—is the most important factor.'" *California by & through Becerra v. Azar*, 950 F.3d 1067, 1083 (9th Cir. 2020) (en banc) (quoting *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc)).

Moreover, Lau ignores that the standard for granting an injunction is "doubly demanding" when, as here, the movant seeks a mandatory injunction, *i.e.,* an injunction that "orders a responsible party to take action." *Garcia*, 786 F.3d at 740 (internal quotation marks omitted). This is because "a mandatory injunction goes well beyond simply maintaining the status quo pendente lite [and] is particularly disfavored." *Id*. (internal citations omitted). Accordingly, ***"[t]he district court should deny such relief unless the facts and law clearly favor the moving party."*** *Id*. (internal citations omitted, emphasis added).

Here, Lau seeks an order requiring AICPA to take affirmative action—release his exam scores—as opposed to being enjoined from taking action. Thus, Lau must establish that the "facts and law clearly favor" him. He has not met this burden.

## IV.   THE MOTION SHOULD BE DENIED

### A.   Lau's Inexcusable Delay Confirms He Suffers No Irreparable Harm

A plaintiff's long delay before seeking a preliminary injunction "implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Pub. Co*., 762 F.3d 1374, 1377 (9th Cir. 1985).  Indeed, in its prior order denying Lau's *Ex Parte* Application, the Court stated its concern "that Lau has delayed seeking preliminary injunction" given that Lau "filed his counterclaims in December 2024 but brought this application almost four months later." (ECF 62).

As confirmed by this Court, Lau's inexcusable delay in bringing the Application and this Motion provides ample confirmation that there are no exigent circumstances and no irreparable harm.  Lau was aware of the withholding of his test score and purported harm for months.  In his original counterclaims filed on December 16, 2024, Lau complained AICPA was withholding his test score. (ECF 28, ¶¶240, 242).  Lau even acknowledged that "FAR exam scores were released on October 30 and/or October 31, 2024" and that on ***November 1, 2024***, Lau learned that status postings between CBA and NASBA showed no FAR exam scheduled or attended for Lau." (*Id*., ¶¶248, 249).  Lau also alleged in his first and second amended counterclaims that CBA told him ***in January 2025*** that AICPA placed a hold on his scores—a fact he affirms in his Motion.  (ECF 34, ¶283; SACC, ¶324).

Thus, it ***is undisputed that Lau has been aware of the alleged wrongdoing and harm for six months***.  Courts regularly find delays of this length to show a lack of irreparable harm. *E.g., Playboy Enters. V. Netscape Communs. Corp.*, 55 F.Supp.2d 1070, 1080, 1090 (C.D.Cal. 1999) (five-month delay demonstrated lack of irreparable harm); *Stokely–Van Camp, Inc. v. Coca–Cola Co.*, 1987 WL 6300, *3 (N.D.Ill.1987) (same, three month delay); *Valeo Intellectual Prop., Inc. v. Data Depth Corp*., 368 F.Supp.2d 1121, 1128 (W.D.Wash. 2005) (same, three month delay).

Now, Lau argues for the first time that he is "not guilty of any lack of diligence" because he did not learn of AICPA allegedly withholding his test score "until January

21, 2025" and "didn't obtain admissible evidence of the AICPA wrongdoing he now seeks to enjoin until March 27, 2025." (Mot., 20:8-12). The purported "admissible evidence" that Lau points to is a March 27, 2025 e-mail from the AICPA's counsel explaining why Lau's exam scores were withheld after being prompted by Lau's counsel. (ECF 70-28.)

As a threshold matter, ***Lau's claim that he did not know that the AICPA had withheld his exam score until January 21, 2025 is demonstrably false given that he alleged in his counterclaims on December 16, 2024 that the AICPA was withholding his score***. Even assuming Lau could not have filed the instant Motion until January 21, 2025 (which is false), Lau provides no explanation or evidence why it took him three months after January 21, 2025 to file the instant Motion. Lau also does not explain why he could not have sought injunctive relief prior to the AICPA's counsel's March 27, 2025 e-mail. Lau does not explain why he did not ask for this information before March 26, 2025. Indeed, if Lau's harm is as serious as he says it is, he would have immediately moved for relief after discovering his exam score was withheld back on November 1, 2024, several weeks after being sued by the AICPA. The AICPA initiated this lawsuit in September 2024, and Lau was placed on clear notice of his wrongful conduct at that time. For Lau to claim he could not have moved for relief until after receiving an e-mail from the AICPA's counsel explaining the grounds for withholding his test scores is disingenuous at best. The record confirms that Lau has sat on his hands for months even while actively litigating against the AICPA. His inexcusable delay alone requires denial of the Motion.

**B.      Lau Cannot Establish A Chance of Success on the Merits**

**1.      Lau's Tortious Interference Claim Fails**

As a threshold matter, Lau's tortious interference claim fails because he explicitly agreed to the Informed Consent Agreement, in which he expressly agreed that AICPA could withhold his scores if he violated his contractual obligations to AICPA (including his confidentiality and non-disclosure obligations). (Emmer Decl.,

¶¶7-17; Ex. 3, p. 3-4.)  It is black letter law that "[a] person who consents to an act is not wronged by it."  Cal. Civ. Code § 3515.  Further, courts are unambiguous that where the claimant has expressly consented to or authorized the allegedly wrongful conduct, there can be no tortious interference claim.  *Kent v. Microsoft Corp.*, 2013 WL 3353875, *6 (C.D.Cal. July 1, 2013) ("plaintiffs generally may not assert a wrong arising out of an action which they consented to. Cal. Civ. Code § 3515"); *Sanchez v. Sanchez*, 2012 WL 6678223, *5 n.3 (S.D.Cal. Dec. 21, 2012) ("consent is a defense to intentional torts. See Cal Civ.Code § 3515.").  Accordingly, Lau cannot bring a tort claim for an act to which he expressly agreed.[6]

Lau's attachment of 18 webpages, online manuals, videos, and exam guides to his declaration entirely fails to establish his claim.  (ECF 69-2, Exs. 1-18).  Nowhere does Lau establish that each of these documents constitutes a valid contract between Lau and a third party.  *See Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.,* 2020 WL 10965737, *5 (C.D. Cal. Nov. 5, 2020) (a claim for intentional interference with contract requires "(1) a valid contract between plaintiff and a third party").  Indeed, a cursory look at the webpages confirms they are merely public-facing web pages with information about registering and taking the CPA Exam.  Lau has not met his burden to establish these are valid, enforceable contracts.  Further, nowhere does Lau specifically identify any third-party contractual provision governing the release of Lau's test score.  Generally citing to and attaching online brochures that provide general information about the testing process is insufficient.  Lau cannot establish an entitlement to relief, and so cannot seek an injunction on this claim.

Lau must also establish "defendant's knowledge of [the third party] contract." *Nat'l Funding, Inc.,* 2020 WL 10965737, *5.  Instead of submitting admissible

---

[6] Lau's agreement covers all his test scores. *See* footnote 3. Nor is it correct that AICPA's claims are unrelated to the September 2024 exam section.  AICPA alleges Lau is likely to have continued his actions and seeks to enjoin him (ECF 30, ¶130, prayer ¶¶7-9), and, given Lau previously violated AICPA's rights via pseudonymous accounts that concealed his identity, and discovery began recently, AICPA does not know if Lau disclosed Exam Content from September 2024.  (Cannon Decl., ¶47.)

evidence with facts, Lau rattles off nothing but speculative attorney argument regarding AICPA's purported knowledge of third party contracts.  For example, Lau claims (with no evidentiary support) that "AICPA *appears* to have an agent-principal relationship with at least NASBA and Prometric."  (Mot., 11:16-17 (emphasis added)).  This speculation is contradicted by the facts. (Cannon Dec. ¶26.)  Lau similarly speculates, with no evidentiary support, "it *appears* that AICPA pocketed at least some of the money collected from Mr. Lau for the September 2024 FAR exam." (Mot., 11:21-22 (emphasis added)).  Lau's speculation and what "appears" to him do not constitute admissible evidence sufficient to meet his high burden seeking a preliminary injunction.   Because Lau provides zero evidence supporting the knowledge element, for this reason as well, Lau has not met his burden to show the "facts and law clearly favor the moving party."

### 2.    Any "Retaliation" Claim Fails

Lau does not specifically plead a cause of action pursuant to the ADA's retaliation provision at 42 U.S.C. § 12203(a) (referred to in the Motion as "Section 503(a)").  He mentions the statute nowhere in his counterclaims.  Even if he had, such claim would have no chance of success.  Lau alleges the following purported scenario: (a) AICPA served Lau with AICPA's original complaint in this action before his exam and outside the exam facility (Mot., 8:8-10; ECF 69-2, ¶22; SACC, ¶¶4, 355-357); (b) these actions allegedly "discriminated" against him in violation of the ADA by "distracting" him and so "interfering" with testing accommodations he was granted (*id.*); (c) during settlement communications, Lau's counsel claims he said Lau would bring disability discrimination counterclaims "if the parties were unable reach a settlement" (ECF 52-2, ¶3); (d) AICPA then allegedly "retaliated" by withholding Lau's score.

Every element of this story fails.

SMRH:4897-9745-3885.7

a.      ***There Is No Possible ADA Discrimination Claim, so No Possible Retaliation Claim***

AICPA is not within the scope of the ADA's *discrimination* provisions and so cannot be liable for any *retaliation* claim.  Put simply, "Defendants who are not otherwise subject to ADA remedies cannot be sued for retaliation under the ADA." *Saniefar v. Moore*, 2018 WL 3020458, *6 (E.D.Cal. June 18, 2018).

(1)      ***The ADA's Retaliation Provision***

The ADA prohibits discrimination in three areas: employment (Subchapter I); public services (Subchapter II); and public accommodations (Subchapter III).  Section 12203, prohibits retaliation or coercion against individuals who "oppose[] **acts made unlawful by** [the ADA]."  42 U.S.C. § 12203(a).

Thus, the anti-retaliation provision is contingent upon the substantive provisions of the ADA applying in the first instance.  ***"[A] plaintiff cannot maintain an ADA retaliation claim against entities which are not otherwise subject to Subchapters I, II, and III of the ADA.***" *Van Hulle v. Pac. Telesis Corp.*, 124 F.Supp.2d 642, 645-46 (N.D.Cal. 2000) (collecting authority) (because "Cigna [was] not a 'place of public accommodation' under Subchapter III," it could not be liable for retaliation).  Similarly, in *Saniefar,* sinde plaintiff was not within the scope of Subchapter III at the relevant time, there was no potential retaliation claim.  *Saniefar,* 2018 WL 3020458, *5-6.  *See also, e.g., Iceberg v. Brookstone Landscape & Design LLC*, 2024 WL 1012895, *3 (W.D.Wash. Mar. 8, 2024); *Fenimore v. Lane Cty. Republican Cent. Comm.*, 2023 U.S.Dist.LEXIS 40542, *13 (D.Or. Mar. 10, 2023).

(2)      ***AICPA Is Not Subject to the ADA***

Lau alleges that 42 U.S.C. § 12189 makes AICPA subject to the ADA, Subchapter III.  (SACC, ¶348.)  Under section 12189, "any person that offers examinations. . . *shall offer* such examinations . . . *in a place and manner accessible to persons with disabilities*. . ."  42 U.S.C. § 12189 (emphasis added).

To be governed by this section, AICPA must have **significant control** over the

granting and providing **accommodations**.  *Binno v. American Bar Association*, 826 F.3d 338, 346-47 (2016); *Guess v. St. Martinus Univ.*, 2022 WL 1224555, *3 (6th Cir. Apr. 26, 2022).  To "offer" a test, "the entity must have some ability to grant those accommodations in the administration of the exam." *Binno*, 826 F.3d at 347.  Thus, in *Binno*, the ABA did not "offer" the LSAT, because plaintiff could not plead facts showing the ABA had "authority to grant accommodations or make other arrangements in connection with the exam." *Id*., 348.  And in *Guess*, a case with strikingly similar facts as here, the court dismissed ADA claims because, as here, "[plaintiff] presented no evidence that [defendant] or any other named party ha[d] any 'authority to grant accommodations' for that exam." *Guess*, 2022 WL 1224555, *3. Cases that Lau relies on in other briefing confirm that a defendant must have *control over offering the accommodations* at issue to be within the ADA's scope.  (*See* ECF 73, 3:25-4:25.)

Lau admits and affirmatively alleges that ***AICPA <u>did not</u> offer the exam.*** Lau's own "factual" allegations about AICPA's role—that AICPA writes and scores the exam, owns the Exam Content, requires an NDA, ensures secure transfer of the exam to exam centers and security of exam centers (*e.g.,* ECF 68, 8:4-19)—confirm AICPA has nothing whatever to do with offering or denying *accommodations* for the exam. Moreover, Lau admits that his requested accommodations were evaluated, granted and provided by entities other than AICPA.[7]

Thus, AICPA does not "offer" the exam and is not within the ADA's scope. Lau's "retaliation" claim fails for this reason alone.

      **b.**     ***<u>Lau's Retaliation Claim Separately Fails Because His</u>***
                ***<u>ADA Claim Was Not in Good Faith or Reasonable</u>***

Lau's claim also fails because he is not alleging he was denied any

---

[7]  Lau admits the dispositive facts: (a) **CBA** determined whether to grant Lau's accommodation request; (b) **CBA** granted the request in full, (c) **NASBA and Prometric** then provided those accommodations. (*See* ECF 64, 7:23-8:15; ECF 69-2, ¶60, ECF 70-23, PageID #1470; SACC, ¶¶2, 13-17, 19-20, 316-318.)

accommodations. He alleges the CBA granted the accommodations he requested, as confirmed by the CBA's letter, and those accommodations were *only* extra time and a separate testing room. (SACC, ¶¶2, 13-14; ECF 69-2, ¶60, ECF 70-23 at Page ID #1470.) ***He admits he received both things***. (*Id*.) Lau cannot misrepresent his requested (and granted) testing accommodations as a "distraction free environment," or modifications outside of the testing facility or before the test period.[8] Since he knows he received all the accommodations he requested, Lau cannot have had a good faith, reasonable belief he was denied any accommodation. Thus, his retaliation claim fails. *See, e.g., Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001).

### c.    *Lau Cannot Establish Causation*

Any purported retaliation claim also fails because Lau cannot show a ***but-for*** causal link between any purported "complaint" about discrimination[9] and the alleged "retaliation". *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015) (*In University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 352 (2013) requires "but-for" causation standard for ADA retaliation claims). Lau cites a *pre-Nassar*, *pre-T.B.* case from 2011 for the proposition that all he must show is "temporal proximity" to establish causation. (ECF 69, 13:25-14:2) However, under *Nassar's* but-for test, temporal proximity alone is not sufficient to establish a *prima facie* case of retaliation. *Green v. City of Phx*., 2019 U.S.Dist.LEXIS 144898, *31 (D.Ariz. Aug. 26, 2019) (collecting cases). But this is all Lau can offer.[10] His claim

---

[8]  Indeed, he could not demand or be granted such accommodation since this is not within the scope of the ADA. *Robinson v. Bodman*, 333 F.App'x 205, 208 (9th Cir. 2009) (ADA does not require a defendant to provide accommodations outside the workplace); *Salmon v. Dade Cty. Sch. Bd.*, 4 F.Supp.2d 1157, 1163 (S.D.Fla. 1998) (same).

[9]  AICPA also objects to Lau's disclosure of and reliance on settlement communications. This violates the plain text of Federal Rule of Evidence 408. *See Wilkinson v. Clark Cty. Sch. Dist*., 2010 U.S.Dist.LEXIS 131855, *4-5 (D. Nev. Dec. 13, 2010).

[10]  AICPA did not know that Lau had taken the June 2024 exam until after it released the score, and AICPA does not control who sits for the exam. (Cannon Decl., ¶41.) There is no "policy or procedure" that AICPA is deviating from, and Lau points to none. AICPA also filed the instant action to enforce its rights. Further, ***AICPA did not plead the Informed Consent Agreement or raise it earlier because AICPA's claims are not based on it.*** (ECF 30, ¶¶51-69.) Lau points to no authority that AICPA must disclose or attach agreements it is not relying on in its complaint.

therefore fails for this reason as well.

### 3. Lau's Unfair Competition Claim Fails

Lau argues the AICPA has violated the UCL on various grounds, including through "unlawful", "deceptive", and "unfair" practices. (Mot., pp. 15-17).

### a. *Lau's Claim Fails under the Unlawful Prong*

Lau's claim under the "unlawful" prong fails because it is predicated on his other counterclaims addressed above, which fail. *Stokes v. CitiMortgage, Inc.*, 2014 WL 4359193, *11 (C.D.Cal. Sept. 3, 2014) (if "a plaintiff cannot state a claim under the predicate law . . . [the UCL] claim also fails.").

In his Motion, Lau argues that AICPA's actions are "unlawful" because it is "violating the Accountancy Act," namely: Cal. Bus. & Prof. Code §§ 5100, 5102 and Cal. Gov't. Code § 11500. (Mot., p. 18). ***None of these statutes are mentioned anywhere in the SACC***.  However, there must be "a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015).  "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id*.  Thus, Lau would have no basis for obtaining relief under these statutes which are not the basis for his UCL claim in the SACC.  Similarly, because Lau did not plead any request for injunctive relief for his UCL claim in the SACC, he is barred from such relief now. *See Goodwin v. Butte Cnty*., 2025 WL 821058, *1 (E.D.Cal. Mar. 14, 2025) ("Because plaintiff does not assert a claim for injunctive relief in her amended complaint, the court cannot grant preliminary injunctive relief.").

In any event, none of the statutes to which Lau now points purport to regulate AICPA at all.  They impose no requirements, burdens or mandates on AICPA whatsoever.  *See* Cal. Bus. & Prof. Code §§ 5100, 5102 (regulating actions of Accounting Board); Cal. Gov't. Code § 11500 (governing "state boards, commission and officers").  Nor do they purport to override AICPA's right to protect its

-13-

intellectual property, or force AICPA to disclose exam scores to an individual who has breached his confidentiality commitments in his NDAs with AICPA.  AICPA cannot be liable under statutes it is not subject to.  *See Silcox v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 7335741, \*5 (S.D.Cal. Dec. 22, 2014) (dismissing UCL "unlawful" prong claim because "the three alleged statutory violations fail for lack of specificity as to how these statutes or code sections are applicable and were allegedly violated").

        **b.**    *<u>Lau's Claim Fails under the "Unfair" and "Deceptive" Prongs</u>*

In his opposition to AICPA's pending Motion to Dismiss, Lau expressly abandoned all his UCL arguments except those under the "unlawful" prong.  (ECF 73, p. 10).  Thus, Lau has waived a likelihood of success on the merits, and he cannot be granted injunctive relief, under any other prong.

Moreover, his UCL claim fails under the other prongs.  While waived, Lau argues AICPA violated the "fraudulent" prong of the UCL because it "permitted Mr. Lau to schedule, pay for, and sit for the 2024 FAR exam, knowing all along that it would withhold Mr. Lau's scores indefinitely without even telling him."  (Mot., 16:27-17:1).  But Lau asserts that he scheduled with and paid NASBA, and sat for the exam with Prometric.  (*E.g.*, SACC, ¶15.)  Moreover, the purported "fraud" is limited to Lau and Lau only.  The "term 'fraudulent,' as used in the UCL, has required . . . a showing that members of the public are likely to be deceived."  *Daugherty v. Am. Honda Motor*, 144 Cal.App.4th 824, 838 (2006); *see also In re Tobacco II Cases*, 46 Cal.4th 298, 31 (2009) (a fraudulent business practice is one that is likely to mislead consumers).  Lau provides no evidence that AICPA is likely to mislead consumers at large.  Lau also fails to allege any facts or provide evidence regarding any purported fraudulent conduct ***by AICPA***.  And the SACC (and Motion) fail to satisfy the "who, what, when, where, how" requirements of a fraud claim.  *See Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1175 (S.D.Cal. 2012).

Finally—although also waived—Lau argues AICPA violated the "unfair"

prong because it allegedly "pocket[ed] Mr. Lau's cash, secretly with[eld] his scores, and then use[d] its unlawful score withholding as a de facto barrier to Mr. Lau's ability to pursue his lawful profession." (Mot., 17:10-12.) This is, again, inconsistent with Lau's own pleadings and otherwise lacks underlying evidence. Lau says he gave his "cash" to CBA and NASBA (ECF 69 at 20, 26), and provides no evidence regarding harm to consumers at large, let alone any "immoral, unethical, oppressive, unscrupulous, or substantially injurious" conduct. *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1215 (9th Cir. 2020). As demonstrated herein, it is not immoral for AICPA to assert its contractual rights and protect its intellectual property. Lau also has not demonstrated any incipient violation of the antitrust laws, nor does the SACC explain how its causes of action relate to conduct that violates the policy or spirit of the antitrust laws. *See Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 187 (1999).

### C.    Lau Cannot Establish Irreparable Harm

Plaintiff bears a heavy burden to show "irreparable injury is likely in the absence of an injunction." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 21-22 (2008). A plaintiff must show that she faces "a real or immediate threat of substantial or irreparable injury." *Midgett v. Tri-County Metro. Transp. Dist.*, 254 F.3d 846, 850 (9th Cir. 2001). Conclusory or speculative allegations are not enough. *Herb Reed Enters., L.L.C. v. Fla. Ent. Mgmt.*, 736 F.3d 1239, 1250 (9th Cir. 2013).

First, Lau cannot establish the irreparable harm factor because he delayed for several months in seeking injunctive relief. (Section IV.A, *supra*.)

Second, Lau's lack of irreparable harm is underscored by the fact that he can apply to the CBA to extend the validity period of his prior test scores. *See* 16 CCR § 7.1 (CBA can extend the validity period of scores for numerous reasons ***including "because the applicant was prevented from sitting for an unpassed test section or sections before credit for passed test sections expired"*** or "other good cause.") Even though the AICPA raised this argument in opposition to the *Ex Parte* Application

(ECF 55, 19:11-16), Lau still has not done this.  His inaction is fatal to his Motion, given an extension from the CBA would moot any need for the Motion and would provide the very relief Lau now seeks.  Indeed, "[c]ourts have found 'irreparable harm' claims to be overly speculative where the aggrieved party has alternative options."  *Cypress Semiconductor Corp. v. Fujitsu Semiconductor Ltd.*, 2020 WL 906710, *2 (N.D.Cal. Feb. 25, 2020) (denying preliminary injunction where plaintiff could have made an alternative payment to avoid alleged harm); *see also Chrysafis v. Marks*, 573 F.Supp.3d 831, 849 (E.D.N.Y. 2021) (failure to utilize available statutory remedies "undermines their claims of irreparable harm"); *Berkadia Real Est. Advisors LLC v. Wadlund*, 2022 WL 18495279, *17 (D.Ariz. Mar. 3, 2022) (no irreparable harm where the "Plaintiff could exercise self-help").  And there is no irreparable harm where a plaintiff has alternative methods of relief, even if the plaintiff "may find fault with those alternatives, as long as they are available[.]"  *Brisette v. Arnold*, 2016 WL 1670559, *3 (E.D.Cal. Apr. 27, 2016), *report and recommendation adopted*, 2016 WL 3351549 (E.D.Cal. June 16, 2016).

Even aside from these issues, Lau cannot adequately demonstrate any irreparable harm.  Lau argues he is being harmed because: (1) if he passed his exam, "then he is entitled to a license today, and AICPA is preventing him from obtaining it"; (2) if he did not pass his exam, the harm is "his inability to access and retake the exam needed to pursue his profession"; (3) of the "denial of his statutory rights to reschedule the exam and receive due process before being deprived of rescheduling opportunities"; (4) of the "inability to properly study for the exam with the benefit of a performance report"; and (5) of his "scores will begin to expire, requiring him to go back and retake exams." (Mot., pp. 17-19).

None of these suffice.  First, loss of employment, or here, Lau's claim he is being delayed in obtaining employment as a CPA during the pendency of this litigation, is ***not*** irreparable harm.  *E.g., Velasquez v. Croteau*, 2009 WL 10676750, *2 (N.D.Cal. Oct. 16, 2009) ("Discharging an employee may cause irreparable harm

only in genuinely extraordinary situations" and "the Supreme Court has made clear that insufficient savings, damage to reputation, or difficulty in obtaining other employment are external factors . . . and, thus, will not support a finding of irreparable harm"); *Tipple v. Cnty. of San Diego*, 2006 WL 8455456, *8 (S.D.Cal. May 5, 2006) (injuries such as "loss of reputation, loss of income and difficulty in finding other employmen[t] do not constitute the irreparable harm necessary to obtain a preliminary injunction").[11]   Second, Lau's remaining assertions of irreparable harm (alleged loss of access to retaking the exam, claimed inability to reschedule the exam and purported difficulty in studying for the exam) are all simply allegations that he is being delayed in further testing to become a CPA during the pendency of the litigation.   But these are only harmful to the extent they delay Lau becoming employed as a CPA, so they fail for the same reasons as described above.   Finally, even as to the claim that his prior scores will start expiring, if this were truly a problem, Lau can and should have requested CBA extend the expiration date(s)—which he has conspicuously failed to do.[12]

---

[11]   Lau's authority does not aid him.   In *Jones*, the court affirmed that "***mere delay in taking a professional entrance or licensing exam is generally not considered irreparable harm***" but held that "here there is no evidence that time will make any significant difference."   *Jones v. Nat'l Conference of Bar Exam'rs*, 801 F. Supp. 2d 270, 286 (D. Vt. 2011).   But in this case, time will make a significant difference by allowing the Court to adjudicate AICPA's claims against Lau, adjudicate his obligation to maintain confidentiality of Exam Content, and impose appropriate restrictions on further improper disclosures.   In Lau's cases *Enyart*, *Doe*, and *Maczaczyj*, each plaintiff alleged irreparable harm ***other than*** delay in employment.   *Enyart v. Nat'l Conf. of Bar Examiners, Inc.*, 630 F.3d 1153, 1166 (9th Cir. 2011) (plaintiff would lose two-year, public-interest fellowship); *Doe v. Samuel Merritt Univ.*, 921 F.Supp.2d 958 (N.D.Cal. 2013) (plaintiff would not be able to earn her degree from SMU); *Maczaczyj v. State of N.Y.*, 956 F.Supp. 403 (W.D.N.Y. 1997) (plaintiff denied entry into master's program).   By contrast Lau is, ***at most***, facing delay in employment as a CPA—he is not facing irreparable loss of something else.   Lau's other authority (Mot. at 17-20) is even more inapposite.   As just examples, *Revival Health Pharmacy* involved a complex business purchase and threatened abandonment of the business's operations.   *Tom T.* and *Planned Parenthood Great Nw*,   involved irreparable harm from government violation of First Amendment rights.   In *Arizona Dream Act,* plaintiffs were denied *driver's licenses* which impacted their ability to have *any* employment whatsoever.

[12]   Further, AICPA is not violating any due process because, among other reasons, Lau contractually consented that AICPA could withhold his score in the present circumstances.   (Section IV.B.1.)   Lau's cases (Mot., 18:17-25) are wholly inapposite.   *None* hold that a *private party* can violate "due process" by enforcing its *contractual rights*.   (*Lewis* addresses a petitioner in custody for 27 months

---

Moreover, none of Lau's cases warrant a finding of irreparable harm because they do not involve remotely similar circumstances. None involve an exam result being withheld during pendency of *litigation against the examinee because he repeatedly violated his NDAs and misappropriated the exam creator's intellectual property*, **and** *a valid contract* (the Informed Consent Agreement) *permitting the withholding*. Indeed, "[a] moving party cannot simply point to irreparable harm suffered, but must also show a nexus to the allegedly wrongful conduct." *ELT Sight, Inc. v. EyeLight, Inc.*, 2020 WL 7862134, *26 (C.D.Cal. Aug. 28, 2020). Because the alleged harm Lau complains of was caused by his own contractual breaches and wrongful conduct, he cannot establish irreparable harm caused by the AICPA. *See Renewable Land, LLC v. Rising Tree Wind Farm LLC*, 2013 WL 12106097, *5 (E.D.Cal. Mar. 27, 2013) (ordering injunctive relief "merely to rectify a harm that was created in part by Addison's own doing strikes this court as inequitable").

### D.      The Balance of the Equities Favor AICPA

"To qualify for injunctive relief, Plaintiff[s] must establish that 'the balance of the equities tips in [their] favor.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20). A court has the "duty . . . to balance the interests of all parties and weigh the damage to each." *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980).

Here, Lau disclosed Exam Content after at least two different exams under pseudonyms that hid his identity. (Section II.A.) It is not certain how many other times he has done so. (*Id*.) He takes the position that he is not bound by AICPA's NDAs and he is free to disclose Exam Content in the future (Section II.B)—further compromising AICPA's rights and the fairness and trustworthiness of the exam. AICPA has taken actions to allow it time to pursue its claims against him, investigate

---

without a bond hearing. *Planned Parenthood of Kan.* and *Levy* involved *government taking* of a property right in violation of the Fifth and/or Fourteenth Amendment). The statutes Lau cites also do not apply to or regulate AICPA.

whether Lau also violated his NDA and AICPA's legal rights with respect to the September 24 exam before releasing the score, and to prevent Lau from accessing, possessing, using, or disclosing AICPA's trade secrets and further violating the applicable contracts.  (ECF 30; Cannon Decl., ¶¶42-48.)  AICPA is taking actions **_Lau consented to by contract_**.  (Sections II.A, IV.B.1.)  Under these circumstances, the balance of equities tips heavily in AICPA's favor.  *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Chung*, 2001 WL 283083, *6 (C.D.Cal. Feb. 2, 2001) (balance of the equities favored enjoining potential misappropriation because "an injunction merely prohibits Defendants from misappropriating the trade secrets of Merrill Lynch, and requires them to comply with the reasonable terms of their Agreements").

Further, the doctrine of unclean hands is "a complete defense to legal as well as equitable causes of action." *Mendoza v. Ruesga*, 169 Cal.App.4th 270, 279 (2008). And it is certainly reason enough to deny a preliminary injunction, which seeks extraordinary relief.  *Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant").  Here, Lau admits he disclosed Exam Content.  He violated the equal playing field for other test-takers, violated his contractual commitments to AICPA, and committed trade secret misappropriation and copyright infringement.  He is not entitled to equitable relief.

**E.**     **<u>Denying the Motion is in the Public Interest</u>**

"Courts often find that the public has a strong interest in protecting intellectual property rights."  *WeRide Corp. v. Kun Huang*, 379 F.Supp.3d 834, 854 (N.D.Cal. 2019).  Though California has a strong public policy in favor of vigorous competition, that interest "yields to California's interest in protecting a company's trade secrets." *Latona v. Aetna U.S. Healthcare, Inc.*, 82 F.Supp.2d 1089, 1096 (C.D.Cal. 1999).  "The public interest is served when [a] defendant is asked to do no more than abide by trade laws and the obligations of contractual agreements signed with [his]

employer.  The public interest is also served by enabling the protection of trade secrets." *Henry Schein, Inc. v. Cook*, 191 F.Supp.3d 1072, 1078 (N.D.Cal. 2016) (citing *Bank of Am., N.A. v. Lee*, 2008 WL 4351348, *7 (C.D.Cal. Sept. 22, 2008)). The public interest also favors protecting the integrity of the CPA Exam with respect to someone who admits having unfairly disclosed Exam Content.  Accordingly, the public interest lies in requiring Lau to abide by trade laws, protect AICPA's trade secrets, and honor his ongoing contractual obligations to AICPA.

## V.   CONCLUSION

Lau's Motion should be denied.  However, if the Court grants Lau's Application in any form, AICPA requests that Lau be ordered to abide by AICPA's NDA and not disclose any Exam Content whatsoever to anyone.  This is necessary given that Lau admits disclosing Exam Content on several prior instances, and he claims he is not subject to the NDAs and has no duty to refrain from disclosing the Exam Content.  Additionally, AICPA requests that the Court impose a security—as required by FRCP 65(c).  AICPA requests a security of $126,000, to cover the costs of monitoring and attempting to investigate if Lau again discloses Exam Content by way of additional exams.  (Cannon Decl., ¶¶50-51.)

Dated:  May 2, 2025          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By          /s/ *Tenaya Rodewald*

TENAYA RODEWALD
KAZIM A. NAQVI
Attorneys for Plaintiff
AMERICAN INSTITUTE OF CERTIFIED
PUBLIC ACCOUNTANTS

**L.R. 11-6.1 Certification**

The undersigned, counsel of record for Counter-defendant American Institute of Certified Public Accountants, certifies that this brief contains 6992 words, which complies with the word limit of L.R. 11-6.1

Dated:  May 2, 2025            SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        /s/ *Tenaya Rodewald*
TENAYA RODEWALD
KAZIM A. NAQVI
Attorneys for Plaintiff
AMERICAN INSTITUTE OF CERTIFIED
PUBLIC ACCOUNTANTS

SMRH:4897-9745-3885.7
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION