SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real Suite 120
Menlo Park, California 94025-4111
Telephone:  650.815.2600
Facsimile:   650.815.2601

KAZIM A. NAQVI, Cal. Bar No. 300438
knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-7017
Telephone:  310.228.3700
Facsimile:   310.228.3701

PARKER POE ADAMS & BERNSTEIN LLP
CHRISTOPHER M. THOMAS (*admitted pro hac vice*)
christhomas@parkerpoe.com
ANDREW P. TABELING (*admitted pro hac vice*)
andytabeling@parkerpoe.com
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina  27602-0389
Telephone:  (919) 835-4626
Facsimile:   (919) 834-4564

Nicholas H. Lee (*admitted pro hac vice*)
nicholaslee@parkerpoe.com
620 S. Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: 704-335-9876
Facsimile: 704-334-4706

Attorneys for Plaintiff AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS,<br><br>             Plaintiff,<br><br>      v.<br><br>STEPHEN LAU,<br><br>             Defendant. | Case No. 24-cv-1940<br><br>**DECLARATION OF MICHAEL CANNON IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>**F9857H98 J9FG=CB C: 8C7I A9BH DFCDCG98 HC 69 : =@98 IB89F G95@** |

## DECLARATION OF MICHAEL CANNON

I, Michael Cannon, declare as follows:

1.      I am Director - Examination Content at the American Institute of Certified Public Accountants ("AICPA"). The AICPA is the world's largest member association representing the accounting profession. One of the AICPA's principal roles is to develop and design the Uniform CPA Examination (the "CPA Exam").

2.      The AICPA is the author of the questions, problems and suggested answers ("Exam Content"), which include the prefatory material, narrative passages, diagrams and answer choices that make up the test items used in the CPA Exam.

3.      The AICPA is the exclusive owner of the Exam Content and its associated intellectual property rights, and strictly controls its use and disclosure in order to maintain the validity and integrity of the CPA Exam. Mr. Lau's actions on Discord and Reddit, in which he disclosed Exam Content, infringed the AICPA's copyright rights, misappropriated the AICPA's trade secrets, and violated contracts he had with the AICPA.

4.      The AICPA develops the Exam Content through significant effort and expense. The AICPA treats its Exam Content trade secrets ("Trade Secrets") as trade secrets. The AICPA protects its Trade Secrets in many ways, including but not limited to: (i) maintaining the Trade Secrets on secured internet platforms; (ii) requiring confidentiality agreements and/or non-disclosure agreements from every person who might have access to or view the Trade Secrets, including without limitation, all persons who take the CPA Exam; (iii) limiting access to the Trade Secrets on a "need-to-know" basis and only to those who are developing or taking the CPA Exam; (iv) conditioning access to the Trade Secrets to accounts attributable to unique users, which are password-protected and require multi-factor authentication; (v) storing Exam Content in its final state in the AICPA's core content management system which can only be accessed using a secure connection on the AICPA virtual private network (VPN); (vi) limiting the ability of those who

-2-                                    Case No. 24-cv-1940

CONFIDENTIAL DECLARATION OF MICHAEL CANNON RE MOTION FOR PRELIMINARY INJUNCTION
PPAB 12321245v1

access the AICPA's Trade Secrets to print or export Exam Content; (vii) securely transmitting the CPA Exam to the exam administrator and ensuring that the exam administrator securely transmits the CPA Exam to its test centers and that it conducts security screening and monitoring of its testing facilities and testing candidates in its operations related to the CPA Exam; and (viii) using a private security firm to monitor internet traffic to identify any parties that have acquired, disclosed, or used its Trade Secrets without authorization.

5.    The AICPA derives significant economic value from the Exam Content by virtue of its secrecy. Unauthorized disclosures cause significant harm to the AICPA, including, but not limited to, creating the need to develop additional Exam Content to replace the disclosed Exam Content. The development of such "replacement Exam Content" involves significant effort and expense. The AICPA also licenses some of its retired Exam Content to CPA Exam review course providers, for which it is paid royalties.

6.    The AICPA protects Exam Content under non-disclosure agreements. CPA candidates who decide to sit for the CPA Exam ("candidates" or "testing candidates") must choose to affirmatively accept the terms of the "The Uniform Examination Conduct and Non-Disclosure Agreement" (the "NDA") in order to schedule and sit for the CPA Exam.

7.    The NDA contains restrictions related to the access and use of Exam Content by testing candidates. For instance, the NDA requires each testing candidate to acknowledge that "Exam Content contains trade secrets and confidential information owned by the AICPA. Access to and use of such trade secrets and confidential information is strictly limited and controlled by the AICPA. Exam Content may not be captured digitally, copied, including by memorization, distributed, or otherwise disclosed, and may not be used in any way not expressly authorized by the AICPA."

-3-                                      Case No. 24-cv-1940

8.     The NDA also requires each testing candidate to certify that they (a) have not in the past, and (b) will not in the future "[c]opy[], photograph[], record[], or reproduc[e] Exam Content by any means, including but not limited to reconstruction through memorization" or "communicat[e] about Exam Content, including but not limited to in-person, online or via text, chat, instant or direct messaging, or email with anyone, at any time before, during, or after taking the Uniform CPA Exam."

9.     The AICPA also protects the Exam Content under copyright law. As the author of the Exam Content, the AICPA registers its copyrights in Exam Content by using special accommodations for registering copyrightable authorship in secure tests or groups of secure test items. This ensures, among other things, that unredacted copies of Exam Content are not available to the general public.

10.     Attached hereto as Exhibit 1 is a true and correct copy of the registration certificate and pertinent redacted deposit materials for U.S. Copyright Reg. No. TXu 2-287-113 (dated July 6, 2020).

11.     I have personal knowledge of the process by which Candidates schedule themselves to take the CPA Exam. Candidates schedule their exams with Prometric. Prometric is responsible for administering the CPA Exam.

12.     When a candidate wishes to schedule to take a section of the CPA Exam, they must access the Prometric Scheduler website specific to the CPA Exam, which is available at: https://www.prometric.com/exams/cpa. A true and correct copy of a screen grab of the pertinent part of Prometric's CPA Exam homepage is attached hereto as Exhibit 2.

13.     Once the candidate clicks "Schedule," they are directed to a screen that includes information associated with scheduling to take a section of the CPA Exam. A true and correct copy of the CPA Exam information on Prometric's website that appears after the candidate clicks "Schedule" is attached hereto as Exhibit 3.

-4-                                           Case No. 24-cv-1940

14.    Once the candidate clicks "Next" at the bottom of the web page shown in Exhibit 3, the candidate is presented with the NDA, which is titled "The Uniform CPA Examination Conduct and Non-Disclosure Agreement". True and correct copies of screen grabs of "The Uniform CPA Examination Conduct and Non-Disclosure Agreement" as it is presented on Prometric's website after a candidate clicks "Next" and scrolls through the agreement is attached hereto as Exhibit 4. The NDA as it appears in Exhibit 4 was implemented as part of this scheduling process in late 2023, replacing a prior version of the NDA, which is not substantively different from the NDA as it appears in Exhibit 4. The full text of the prior NDA is attached hereto as Exhibit 5.

15.    If the candidate does not click "I ACCEPT" or "I DO NOT AGREE" under the NDA and instead attempts to click "Next" to proceed with scheduling, the "Next" button will remain grey and cannot be used to proceed with scheduling.

16.    If a candidate chooses to click the "I DO NOT AGREE" button, then the "Next" button on the page remains grey and inactive, and a message in red appears above the NDA that reads "Error - if you do not accept the terms of this agreement, please contact your Test Sponsor and notify them accordingly." A true and correct screen grab of what is displayed if the user clicks the "I DO NOT AGREE" button is attached hereto as Exhibit 6.

17.    Alternatively, a candidate who chooses to affirmatively click the button next to "I ACCEPT" at the end of the NDA is able to click the "Next" button, which turns green upon the acceptance of the NDA, and proceed with scheduling to sit for the CPA Exam. A true and correct copy of a screen grab of what is displayed if the candidate chooses to click the "I ACCEPT" button at the end of the NDA is attached hereto as Exhibit 7.

18.    After accepting the NDA, the candidate must review and acknowledge the terms of the "Personal Data Privacy Disclosure & Consent". At the end of the Personal Data Privacy Disclosure and Consent, there are three boxes the candidate

CONFIDENTIAL DECLARATION OF MICHAEL CANNON RE MOTION FOR PRELIMINARY INJUNCTION
PPAB 12321245v1

must check to both: confirm their ability to consent; and to consent to the collection, processing and transfer of their personal data. True and correct copies of screen grabs showing the Personal Data Privacy Disclosure & Consent as it appears after the candidate accepts the NDA are attached collectively hereto as Exhibit 8. If the candidate chooses to not check each of the three boxes indicating their capacity and consent to the Personal Data Privacy Disclosure & Consent, the "Next" button remains grey and cannot be used to proceed with scheduling.

19.    Alternatively, if all three boxes are affirmatively clicked, the "Next" button turns green, and the candidate may click it to continue with scheduling. A true and correct copy of a screen grab of what is displayed if the candidate clicks all three boxes is attached hereto as Exhibit 9.

20.    If a candidate accepts the terms of the Personal Data Privacy Disclosure and Consent, the candidate may schedule themselves to sit for a section of the CPA Exam using their eligibility information. A true and correct copy of a screen grab of the scheduling screen that appears if the candidate clicks the green "Next" button after accepting and consenting to the Personal Data Privacy Disclosure & Consent is attached hereto as Exhibit 10.

21.    Through log information provided by Prometric, the AICPA learned that Mr. Lau chose to affirmatively click the "I ACCEPT" button after reviewing the NDA at least three times, each time as part of the process of scheduling himself to sit for a section of the CPA Exam. Specifically, the log information shows that while scheduling himself to sit for CPA Exam sections to take place on November 25, 2023 (REG), February 3, 2024 (ISC), and September 24, 2024 (FAR), Mr. Lau accepted the NDA as it then appeared on Prometric's scheduling page on November 16, 2023 (REG), December 28, 2023 (ISC), and August 12, 2024 (FAR), respectively. The AICPA learned that Mr. Lau took the REG section of the CPA Exam on November 25, 2023, the ISC section on February 3, 2024, and the FAR section on September 24, 2024. A true and correct copy of a screen grab of

Prometric log information showing Mr. Lau's affirmative acceptances of the NDA in the process of scheduling each of those three sections of the CPA Exam is attached hereto as Exhibit 11.

22.    Immediately before taking a section of the CPA Exam, a candidate again acknowledges and agrees to the Policy Statement and Confidentiality Agreement. True and correct copies of screen grabs from a sample test which shows the Policy Statement and Confidentiality Agreement as it appears to testing candidates before taking a section of the CPA Exam is attached hereto as Exhibit 12.

23.     If the candidate affirmatively clicks the "ACCEPT AND BEGIN EXAM" button below the Policy Statement and Confidentiality Agreement, they may proceed with taking that section of the CPA Exam.

24.    If the candidate clicks the "DECLINE" button below the Policy Statement and Confidentiality Agreement, a screen appears that tells the candidate that they must accept the Policy Statement and Confidentiality Agreement prior to taking the CPA Exam. A true and correct copy of a screen grab from a sample test which shows the message that is displayed when a testing candidate chooses to click the "DECLINE" button below the Policy Statement and Confidentiality Agreement is attached hereto as Exhibit 13. If the candidate chooses to click the orange "REVIEW POLICY" button, they are able to review the Policy Statement and Confidentiality Agreement and, if they choose to proceed, may affirmatively indicate this by clicking "ACCEPT AND BEGIN EXAM". If the candidate instead chooses to not agree, they may click "QUIT EXAM".

25.    The AICPA learned that Mr. Lau had accepted the Policy Statement and Confidentiality Agreement when he took the ISC section of the CPA Exam on February 3, 2024. A true and correct copy of a screen grab of the Test Driver Log from Mr. Lau's February 3, 2024 ISC exam is attached hereto as Exhibit 14. Specifically, one of the highlighted portions of Exhibit 14 indicate that Mr. Lau clicked the "ACCEPT AND BEGIN EXAM" button identified in Exhibit 12.

-7-

26. Under The Amended and Restated CBT Services Agreement Among American Institute of Certified Public Accountants, National Association of State Boards of Accountancy and Prometric Inc., each party agreed that it will perform as an independent contractor, and not as an agent or employee of the other Parties.

27. I have personal knowledge of matters related to the CPA Exam and the AICPA's role in investigating a series of unauthorized disclosures of material comprised of, pertaining to and/or describing the questions, problems, and suggested answers from the CPA Exam by a person using the user names "WesleySakamoto" and "omgitsalobster82" on the online services Discord and Reddit, respectively.

28. I also have personal knowledge of Kroll Associates, Inc. ("Kroll")'s work for AICPA in connection with the investigation. Kroll's work included capturing posts made by "WesleySakamoto" and "omgitsalobster82" on the online services Discord and Reddit as detailed in the Affidavit of Keith Wojcieszek dated October 25, 2024 (the "Wojcieszek Affidavit").

29. After conducting an initial investigation of Exam Content posted by a user named WesleySakamoto on Discord, the AICPA concluded that this user had posted Exam Content specifically related to the ISC section of the CPA Exam administered in the first quarter of 2024. When Kroll's investigation revealed that other activity from a related Reddit account under the name omgitsalobster82 discussed other portions of the CPA Exam, the AICPA's analysis concluded that this user had described Exam Content related to the REG section of the CPA Exam administered in the fourth quarter of 2023.

30. I have reviewed the Reddit and Discord posts captured by Kroll as part of its investigation, and attached as Exhibits to the Wojcieszek Affidavit.

31. I have reviewed and conducted an analysis of the Discord post captured in Exhibit 3 to the Wojcieszek Affidavit. An enlarged version of a true and correct copy of the screen grab of this post, which Kroll captured and preserved as Exhibit 3 to the Wojcieszek Affidavit, is attached to hereto as Exhibit 15. This post from user

-8-

CONFIDENTIAL DECLARATION OF MICHAEL CANNON RE MOTION FOR PRELIMINARY INJUNCTION
PPAB 12321245v1

WesleySakamoto states: "████████████████████████████████ ████████████████████████████████████ ████████████████████████████████████ ████████████████████████████████" This post is a near word-for-word reproduction and unauthorized public display of a question that was included in Panel 2 of the ISC section of the CPA Exam from the first quarter of 2024, specifically Item ID 505041. A true and correct copy of Item ID 505041 is attached hereto as Exhibit 16. Item ID 505041 is included in U.S. Copyright Reg. No. TXu 2-287-113. The AICPA did not authorize this disclosure of Exam Content.

32.    I have reviewed and conducted an analysis of the Discord post captured in Exhibit 2 to the Wojcieszek Affidavit. An enlarged version of a true and correct copy of the screen grab of this post, which Kroll captured and preserved as Exhibit 2 to the Wojcieszek Affidavit, is attached to hereto as Exhibit 17. This post from user WesleySakamoto describes their experience taking the ISC section of the CPA Exam. This post also states: "████████████████████████ ████████████████████████████████████ ████████████████████████████" This statement clearly describes the subject matter and details covered in many of the questions in a task-based simulation included in Panel 2 of the ISC section of the CPA Exam from the first quarter of 2024, specifically Item ID 513313_01. A true and correct screen grab of the relevant portions of Item ID 513313_01 is attached hereto as Exhibit 18. The AICPA did not authorize this disclosure of Exam Content.

33.    This same post further states, "████████████████████ ██████" This statement clearly describes the subject matter covered in Task 2 of a task based-simulation included in Panel 2 of the ISC section of the CPA Exam from the first quarter of 2024, specifically Item ID 511364_01. A true and correct screen grab of the relevant portions of Item ID 511364_01 is attached hereto as Exhibit 19. The AICPA did not authorize this disclosure of Exam Content.

Case No. 24-cv-1940

34.    I have reviewed and conducted an analysis of the Discord post captured in Exhibit 1 to the Wojcieszek Affidavit. An enlarged version of a true and correct copy of the screen grab of this post, which Kroll captured and preserved as Exhibit 1 to the Wojcieszek Affidavit, is attached to hereto as the first page of Exhibit 20. Further enlargements of the same screen grab are included on pages 2 and 3 of Exhibit 20. This post from user WesleySakamoto describes their experience taking the ISC section of the CPA Exam and states: "███████████████████ ████████████████████████████████████████" This statement describes the subject matter and format of a task-based simulation included in Panel 2 the ISC section of the CPA Exam from the first quarter of 2024, specifically Item ID 600656_01. A true and correct screen grab of the relevant portions of Item ID 600656_01 is attached hereto as Exhibit 21. The AICPA did not authorize this disclosure of Exam Content.

35.    I have reviewed and conducted an analysis of the post captured in Exhibit 4 to the Wojcieszek Affidavit. An enlarged version of a true and correct copy of the screen grab of this post, which Kroll captured and preserved as Exhibit 4 to the Wojcieszek Affidavit, is attached to hereto as Exhibit 22. It comes from Reddit user omgitsalobster82 describing their experience taking the REG section of the CPA Exam on the CPA subreddit. This post states "████████████████ ████████████████████████████████████████████ ████████████████" This statement describes the subject matter and details of a question included in Panel 10 of the REG section of the CPA Exam from the fourth quarter of 2023, specifically Item ID 508692. A true and correct screen grab of Item ID 508692 is attached hereto as Exhibit 23. The AICPA did not authorize this disclosure of Exam Content.

36.    The same post also states, "█████████████████ ███████████████████████████████████████████████ ████████████████████████" This statement describes subject matter of a

-10-                    Case No. 24-cv-1940

question included in Panel 10 of the REG section of the CPA Exam from the fourth quarter of 2023, specifically Item ID 506612. A true and correct screen grab of Item ID 506612 is attached hereto as Exhibit 24. The AICPA did not authorize this disclosure of Exam Content.

37.    The same post also states, "█████████████████████████ ████████████████████████████████████" This statement describes the subject matter of a question included in Panel 10 of the REG section of the CPA Exam from the fourth quarter of 2023, specifically Item ID 67031. A true and correct screen grab of Item ID 67031 is attached hereto as Exhibit 25. The AICPA did not authorize this disclosure of Exam Content.

38.    The same post also states, "█████████████████████████████ █████████████████████████████████████████ ████████" This statement describes the subject matter and details of a question included in Panel 10 of the REG section of the CPA Exam from the fourth quarter of 2023, specifically Item ID 82868. A true and correct screen grab of Item ID 82868 is attached hereto as Exhibit 26. The AICPA did not authorize this disclosure of Exam Content.

39.    The AICPA learned from NASBA that Mr. Lau sat for the ISC section of the CPA Exam on February 3, 2024. Based on Lau's Exam Section ID ("ESID") provided by NASBA, the AICPA confirmed that each of the test items identified in Paragraphs 31–34 appeared on the version of the ISC section of the CPA Exam that Mr. Lau took on February 3, 2024.

40.    The AICPA learned from NASBA that Mr. Lau sat for the REG section of the CPA Exam on November 25, 2023. Based on Mr. Lau's Exam Section ID ("ESID") provided by NASBA, the AICPA confirmed that each of the test items identified in Paragraphs 35–38 appeared on the version of the REG section of the CPA Exam that Mr. Lau took on November 25, 2023.

Case No. 24-cv-1940

41. To the best of my knowledge, the AICPA did not request Mr. Lau's full test history from NASBA until September 9, 2024. As a result, the AICPA did not learn of, and was not aware until after September 9, 2024, that Mr. Lau took the FAR section of the CPA Exam on June 22, 2024. The AICPA released Mr. Lau's score from this section of the CPA Exam to NASBA on July 30, 2024. The AICPA has no knowledge of when Mr. Lau received this score. The AICPA did not learn that he scheduled himself to take the FAR section of the CPA Exam on September 24, 2024 until days before that exam and shortly after it had filed its lawsuit against Mr. Lau.

42. As his posts demonstrate, Mr. Lau's actions posed a direct threat to the integrity of the CPA Exam which could undermine public trust in the CPA Exam. Specifically, Mr. Lau's disclosed confidential and secret information about the CPA Exam that could provide some candidates with an unfair advantage over other candidates.

43. He did so after agreeing to the terms of the NDAs.

44. Mr. Lau made these posts under two different aliases.

45. Mr. Lau's past and any future unauthorized disclosures of Exam Content provide an unfair advantage to those who see them. This disrupts the AICPA's efforts to ensure that the CPA Exam experience is as uniform as possible for those who take the CPA Exam. Conduct that creates an uneven playing field can cause significant damage to the AICPA and risks undermining public trust in the integrity of CPA Exam. In this case, the AICPA has had to expend significant time and resources as a result of Mr. Lau's unauthorized disclosures, including but not limited to, conducting an investigation into his unauthorized disclosures and taking measures to have Exam Content removed from the relevant internet sites.

46. The AICPA not only has a legal right to protect Exam Content and an obligation to do as the owner of the trade secrets in such content, it also has a fiduciary duty to take actions necessary to maintain public trust in the CPA Exam.

47.   Further, the AICPA does not presently know if Lau made additional disclosures after taking the FAR section of the CPA Exam on September 24, 2024.

48.   The AICPA's decision to hold Mr. Lau's score for the FAR section of the CPA Exam that he took on September 24, 2024, was made because the AICPA was and remains very concerned that Mr. Lau having access to additional Exam Content during this litigation will lead to more disclosures of Exam Content and further damage to the integrity of the CPA Exam.

49.   The AICPA does not control when an individual CPA candidate's exam scores expire.

50.   The AICPA asked Kroll to provide a proposal and estimate for heightened monitoring of Mr. Lau's online activities related to the CPA Exam and its content in the event the Court grants Mr. Lau's requested injunction and he schedules additional exam sections.

51.   For the 14-month period beginning in May 2025 and through the June 2026 trial date, Kroll estimated that the cost of identifying and continuously monitoring Mr. Lau's known social media accounts, verifying and analyzing the results of such monitoring, summarizing and reporting findings concerning communications related to the CPA Exam and/or Exam Content would cost between $75,000 - $126,000, depending on variables including budget uplifts based on the identification of potential new accounts and analysis related to them.

I declare under penalty of perjury under the laws of the State of California and of the United States that the foregoing is true and correct.

Executed this 1st day, of May , 2025 in Burlington, New Jersey .

(city, state)

Michael Cannon

Case No. 24-cv-1940

-13-

CONFIDENTIAL DECLARATION OF MICHAEL CANNON RE MOTION FOR PRELIMINARY INJUNCTION
PPAB 12321245v1