ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
AVERY CARTWRIGHT (SBN 354724)
acartwright@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
355 S. Grand Avenue
Los Angeles, CA  90071
Telephone:   +1 213 629 2020
Facsimile:    +1 213 612 2499

CHARLES WEINER (*Pro Hac Vice*)
charles@charlesweinerlaw.com
LAW OFFICE OF CHARLES WEINER
99 Lantern Drive, Suite 202
Doylestown, PA 18901
Telephone:  + 1 267-685-6311
Facsimile:   +1 215-340-768

Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, | Case No. 5:24-cv-01940-SSS-SHKx |
| Plaintiff, | **REPLY TO AICPA's OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| STEPHEN LAU, | |
| Defendant. | |
| STEPHEN LAU, | |
| Cross-Complainant, | |
| v. | |
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, | |
| Cross-Defendant, | |

**INTRODUCTION**

AICPA brazenly admits that is withholding Mr. Lau's 2024 FAR exam score because it wants to keep Mr. Lau from obtaining a California CPA license until the Court has fully "adjudicate[d] AICPA's claims against [Mr.] Lau" and "impose[d] appropriate restrictions" on him. Opp. at 17, fn.11. That is not how our justice system works. AICPA should have moved for a preliminary injunction if it wanted to "impose restrictions," like real trade secrets plaintiffs usually do.  Had AICPA moved for an injunction, Mr. Lau would have had notice and due process *before* he was deprived of his important contractual and statutory rights. AICPA cannot be permitted to achieve through self-help what it could not achieve under Rule 65.

AICPA has now had two opportunities to submit competent evidence that AICPA did not withhold Mr. Lau's score in retaliation for his assertion of disability rights claims. Both times, AICPA has chosen instead to rely on attorney arguments that test the bounds of Rule 11, like the argument that there is "zero evidence supporting the knowledge element" of Mr. Lau's contract interference claim, Opp. at 9, *contra* Ex.29 (AICPA's contractual acknowledgment of Mr. Lau's third-party contracts), and the argument that "AICPA has nothing whatever to do with offering or denying accommodations for the exam," Opp. at  11 *contra* Ex.39 (2019 DOJ Consent Decree with promise from AICPA to provide disability accommodations). AICPA's failure to meet its burden under the ADA's McDonald Douglas framework is dispositive for purposes of this motion.

The record is dispositive on Mr. Lau's tortious interference claim, too. On Wednesday, AICPA belatedly produced bombshell evidence that Mr. Lau has been asking for *since January*. This evidence leaves no doubt that AICPA is interfering with Mr. Lau's statutory and contractual rights, and that AICPA's efforts are legally baseless, malicious, and contrary to the public's interests. Exs.44-46. AICPA's misconduct in withholding this evidence is another factor that weighs heavily in balancing the equities.

- 1 -

## **ARGUMENT**

**I.      MR. LAU CANNOT BE FAULTED FOR ANY ALLEGED DELAY**

Mr. Lau did not learn that AICPA was withholding his September 2024 FAR score until January 21, 2025. Lau Decl. ¶17. Prior to that date, he thought the CBA was withholding his scores. *Id*.[1] Mr. Lau didn't obtain documentary evidence of AICPA's unlawful motives until March 27, when AICPA tried to justify its conduct by invoking a document Mr. Lau had never seen before. Exs.27-28. Delay caused by AICPA's deliberate concealment of key evidence is not attributable to Mr. Lau. *See, e.g., Sun World, Inc. v. Lizarazu Olivarria,* 804 F. Supp. 1264, 1268 (E.D. Cal. 1992) (non-moving party engaged in "delay and ball-hiding"); *see also Knight v. Wells Fargo Bank,* 2016 U.S. Dist. LEXIS 74837, at *17 (D. Mont. 2016) (similar). Delay caused by Mr. Lau's counsel's difficult circumstances is not attributable to Mr. Lau either. Uriarte Decl. ¶¶2-4.  Further, any alleged "tardiness is not particularly probative in the context of ongoing, worsening injuries" like those at issue here, *Arc of Cal. v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014), and "courts are loath to withhold relief" on the basis of delay, *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019). Mr. Lau's decision to "wait[] to file for preliminary relief until a credible case" could be made was "prudent rather than dilatory," and "the significance of such a prudent delay in determining irreparable harm may become so small as to disappear." *Arc of Cal.*, 757 F.3d at 991.  AICPA's egregious discovery misconduct, it's misrepresentations to the Court (*compare* Opp. at 11 *with* Ex. 39), and last-minute production of smoking gun evidence on the eve of this Reply establish that any delay on Mr. Lau's part "is reasonable based on the discovery history, even if not entirely unavoidable." *Netlist Inc. v. Diablo Techs., Inc.*, 2015 U.S. Dist. LEXIS 3285, at *29-31 (N.D. Cal. 2015).

---

[1] Mr. Lau has been requesting AICPA's communications with the CBA since January, but AICPA withheld this evidence until Wednesday, May 7. Uriarte Decl. ¶¶13-16.

- 2 -

REPLY RE MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-cv-01940-SSS-SHKx

## II.   <u>MR. LAU IS LIKELY TO SUCCEED ON THE MERITS</u>

### A.   <u>AICPA's Retaliatory Score Withholding Violates the ADA</u>

The ADA's anti-retaliation provision states in pertinent part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge…under this chapter." 42 U.S.C. § 12203(a).  "A prima facie case of retaliation under the ADA requires the plaintiff to show" that "(1) she engaged in a protected activity; (2) she suffered an adverse action; and (3) the adverse action occurred because of the protected activity." *Karam v. Univ. of Ariz.*, 2022 U.S. Dist. LEXIS 18997, at *15-16 (D. Ariz. 2022).

**AICPA Offers the Exam**. "[T]o the extent that [AICPA] exercises control over the manner in which the [Uniform CPA] examination is given, it is subject to [ADA] § 12189." *E.g.*, *Bonnette v. D.C. Court of Appeals*, 796 F. Supp. 2d 164, 179-180 (D.D.C. 2011); *Binno v. American Bar Association*, 826 F.3d 338, 347-48 (6th Cir. 2016) (test maker who "developed the content and format of the examination in question and had the actual ability to influence the manner and administration of the exam" is subject to § 12189).  AICPA admitted outright that it is subject to § 12189 in a 2019 Consent Decree. Exs. 39 & 40; *contra* Opp. at 10-11 (opposite representation to this Court). AICPA's prior admission that it is "covered by Title III of the ADA" (Ex. 39) is consistent with the record in this case. It is undisputed that "access to and use" of the CPA Exam are "strictly limited and controlled by the AICPA," Dkt. 30 (FAC)¶59, and that the Exam "is administered...by NASBA and the AICPA." Ex. 20 at 1. AICPA sets fees for the exam, *id.* at 14, and its control over exam administration extends to conducting "security screening and monitoring of [] testing facilities," FAC ¶45.  Like the defendant in cases like *Bonnette, Elder*, and *Enyart*, AICPA is the "entity in control of the [Exam's] content and format," *Binno*, 826 F.3d at 347, including whether and how the Exam is transmitted the exam to test proctors. FAC ¶ 45 (AICPA controls

how "the exam administrator securely transmits the CPA Exam to its test centers"); *compare Enyart,* 630 F.3d at 1156 (test maker's refusal to provide test in electronic format violated 42 U.S.C. § 12189). According to AICPA (FAC¶¶11-12; 45), AICPA also "requires state [boards] offering the [Uniform CPA Exam] to follow specific protocols in administering the test," purportedly "in order to protect the integrity of the test." *Elder v. Nat'l Conference of Bar Exam'rs,* 2011 U.S. Dist. LEXIS 15787, at *13 (N.D. Cal. 2011). State boards "are required to send the [test responses] back to [AICPA] for scoring," which confirms that AICPA "offers" the exam. *Id.*[2]

**Protected Conduct**. Mr. Lau engaged in "protected conduct" by "threatening a lawsuit under the ADA" on October 9, 2024. *Huggard v. United Performance Metals, Inc.,* 2011 U.S. Dist. LEXIS 151276, at *44-45 (S.D. Ohio 2011).[3] Mr. Lau's October 9 litigation threat was protected activity even if ADA's malicious conduct on the morning of September 24, 2024 doesn't rise to the level of ADA discrimination. *E.g., Harshbarger v. Sierra Pac. Power Co.,* 128 F. Supp. 2d 1302, 1308 (D. Nev. 2000). Mr. Lau could "reasonably believe" that AICPA denied his right to distraction limiting accommodations on the morning of September 24, and that is all that is required to establish protected conduct. *Clark Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 270 (2001). AICPA's argument that Mr. Lau's litigation threat "was not in good faith or reasonable" is based on the false premise that the accommodation owed to Mr. Lau "were *only* extra time and a

---

[2] AICPA's argument that it doesn't have "control over offering the accommodations" (Opp. at 11) is legally irrelevant because "Title III claims may be asserted against entities that do not administer an exam." *Binno,* 826 F.3d at 347. AICPA's argument is also factually false: AICPA *does* have the power to grant or deny accommodations, as it did for visually impaired candidates in the case underlying AICPA's 2019 Consent Decree. Ex.39, *compare Guess v. St. Martinus Univ.,* 2022 WL 1224555, *9 (6th Cir. Apr. 26, 2022) (unpublished)(no control).

[3] Rule 408 does not render inadmissible Mr. Lau's threat to bring disability claims, even though that threat was made during settlement discussions. *E.g., Corp. v. Blasdell,* 154 F.R.D. 675, 681 (D. Ariz. 1993); *Samadi v. Quality Furniture LLC,* 2012 U.S. Dist. LEXIS 192291, at *10 (D. Ariz. July 23, 2012) (collecting cases).

separate testing room." Opp. at 11-12 (original emphasis). What the ADA *actually* requires is for AICPA to "assure that . . . [t]he examination is selected and administered so as to *best ensure* that…the examination results accurately reflect the individual's aptitude…rather than reflecting the individual's impaired…skills." *Enyart*, 630 F.3d at 1161 (original emphasis) (quoting 28 C.F.R. § 36.309(b)(1)(i)). A nominal grant of accommodations does not preclude a discrimination claim when the accommodations are intentionally nullified. *E.g.*, *Holt v. Cmty. Action Council for Lexington-Fayette,* 2024 U.S. Dist. LEXIS 105151, at *7 (E.D. Ky. 2024).

**Causation.** The burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973) applies to retaliation claims under the ADA. *E.g.*, *T.B. v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 472-73 (9th Cir. 2015). Under that framework, once the plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant "to produce a legitimate, nonretaliatory reason" for the challenged action. *Mooney v. Fife*, 118 F.4th 1081, 1089 (9th Cir. 2024). Mr. Lau established a prima facie case of retaliation by adducing evidence of (i) AICPA's "knowledge that [Mr. Lau] engaged in protected activities" by threatening to bring disability rights claims on October 9; and (ii) "the proximity in time between [Mr. Lau's] protected action" and AICPA's decision to withhold Mr. Lau's scores sometime prior to October 31. *E.g.*, *Meyers v. Kendall*, 2024 U.S. Dist. LEXIS 99412, at *26 (C.D. Cal. 2024); *Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024). Mr. Lau's showing shifted to AICPA the burden "to produce a legitimate, nonretaliatory reason" for its action. AICPA failed to meet this burden.

AICPA's inability to put forth a witness to attest to the reasons for AICPA's score withholding is dispositive under the McDonald Douglas framework. Even without burden shifting, AICPA's inability to put forth evidence of non-retaliatory motives is damning: "failure to produce relevant evidence within its control gives rise to an inference that the evidence would be unfavorable to it." *United States v.*

- 5 -

*Tory*, 52 F.3d 207, 211 (9th Cir. 1995). The attorney argument (*not* evidence) AICPA offers about the Consent Agreement doesn't help its cause, because (i) that Agreement doesn't even authorize AICPA's conduct, (ii) AICPA only began withholding Mr. Lau's scores after he asserted his disability rights in October 2024; and (iii) AICPA didn't raise the Consent Agreement until six months into this case. Where a "defendant's purported nondiscriminatory reasons" are "reasons that not been previously asserted" and contradict past conduct, such reasons are discredited. *See, e.g., Johnson*, 145 F. Supp. 3d at 917.

### B.    AICPA is Tortiously Interfering with Mr. Lau's Contracts

Mr. Lau entered into contracts with NASBA, Prometric, and the CBA in scheduling his September 2024 FAR exam, and the terms of those contracts are evidenced by the written representations made during contract formation and the parties' conduct. *Donovan v. RRL Corp.*, 26 Cal. 4th 261, 271, (2001). AICPA cannot seriously argue it was unaware of these contracts. The Consent Agreement AICAP relies on refers to "other applicable contractual obligations" with NASBA, Prometric, and CBA and states that the Consent Agreement "is a separate legal agreement" from other agreements entered into "in the course of applying to sit" for an exam "or having your Test scored." Ex. 29 at 2. AICPA's argument that Mr. Lau "expressly agreed" to AICPA's tortious, discriminatory score withholding is wrong. Opp. at 7-8.  There is no evidence that AICPA acted pursuant to the Consent Agreement when it withheld Mr. Lau's scores. AICPA's belated invocation of the Consent Agreement reeks of pretext and bad faith. *See, e.g., Adolph v. Coastal Auto Sales, Inc.*, 184 Cal. App. 4th 1443, 1452-53 (2010) ("[N]ot breathing a word about the existence of an arbitration agreement" and "withholding production" of it evidences bad faith.).

The text of the Consent Agreement doesn't authorize AICPA to withhold scores for an exam absent an allegation of misconduct with respect to that exam. It states AICPA can refuse to release scores only if AICPA has "reason to believe

- 6 -

your Test scores may not be valid or result from any fraudulent activity…or in the event that your conduct violates the rules..." Ex.29 at 3-4. "Test" is a defined term, and it is defined by reference to "*your application* to sit for *an administration* of the Uniform CPA Examination." *Id*. at 3 (emphasis added). The plain text and overall context of the Consent Agreement both make clear that the Agreement relates to "Specific Test conditions" associated with a *particular* "administration" of a "Test" resulting from a particular "application." *Id*.  To the extent there is any ambiguity on this score, it must be resolved in Mr. Lau's favor as the non-drafting consumer. *Lyons v. Coxcom, Inc.,* 718 F. Supp. 2d 1232, 1237 (S.D. Cal. 2009).

*After* AICPA already knew about Mr. Lau's 2023 and 2024 study group posts, Mr. Lau received scores for three exams he took in March and June 2024. *See* Lau Decl. ¶17. AICPA also permitted Mr. Lau to pay for, schedule, and sit for the September 2024 FAR exam. The manifest "construction given to [a contract] by the acts and conduct of the parties with knowledge of its terms, before any controversy has arisen as to its meaning, is entitled to great weight" as "a practical construction placed by the parties upon the instrument is the best evidence of their intention." *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 52, 111 Cal. Rptr. 3d 313, 321 (2010) (citations omitted). Mr. Lau relied on the parties' prior course of dealing when he paid fees for his September 2024 FAR exam with the expectation that AICPA would timely tender his scores, so estoppel applies. *E.g., Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal. App. 5th 56, 78 (2017).

### C.    <u>AICPA is Violating the UCL</u>

AICPA is violating the UCL in at least two different ways. First, it is engaged in unlawful conduct like retaliation in violation of the ADA; tortious interference with Mr. Lau's exam-related contracts; and deliberate interference with the CBA's rules for testing, licensure, and affording exam candidates due process. Exs.42-46. Contrary to AICPA's argument, "Rule 8 does not require that a specific statute be invoked in a complaint." *Novobilski v. Specialized Loan Servicing, LLC*,

REPLY RE MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

2022 U.S. Dist. LEXIS 88993, at *8 (C.D. Cal. 2022). Second, AICPA's unlawful conduct is also unfair because it "violates established public policy…is immoral, unethical, oppressive [and] unscrupulous." *Gray v. Dignity Health*, 70 Cal. App. 5th 225, 238 (2021).[4] The blockbuster evidence AICPA produced two days ago makes clear that AICPA's actions are unethical, contrary to public interest, and violative of contractual and statutory rights. Exs.42-46. AICPA's attempt to hide this evidence from the public with improper confidentiality designations underscores the unfairness and immorality of AICPA's tactics.

## III. MR. LAU IS SUFFERING IRREPARABLE HARM

Mr. Lau is suffering several distinct types of irreparable harm, including deprivation of a professional license, the inability to properly study; the loss of due process rights; and the risk that prior passing scores will expire. AICPA focuses mostly on the latter harm, arguing that Mr. Lau's failure to initiate administrative proceedings before the CBA is "fatal" to Mr. Lau's motion. But the possibility that the CBA might extend the life of Mr. Lau's prior passing scores does not undercut Mr. Lau's irreparable harm showing. *See, e.g., AIDS Healthcare Found. v. Cal. Dep't of Health Care Servs.*, 2022 U.S. Dist. LEXIS 214048, at *61 (C.D. Cal. 2022). In any event, potential expiration of Mr. Lau's prior passing scores is only one of multiple types of harm Mr. Lau is suffering.

The rest of AICPA's irreparable harm arguments erroneously conflate Mr. Lau's various distinct forms of harm with the inapposite concept of employment termination. Loss of employment can ordinarily be compensated with money damages, which is why AICPA's cases like *Velasquez v. Croteau* (Opp. at 16-17) are irrelevant. 2009 U.S. Dist. LEXIS 137289, at *4 (N.D. Cal. 2009) ("plaintiff…could regain her job with back pay if she prevailed on her claims"). By

---

[4] AICPA's citation to *Cel-Tech Comm's, Inc. v. Los Angeles Cellular Telephone C*o., is inapposite since Mr. Lau is not a competitor. 20 Cal.4th 163, 187 n.12 (1999)("Nothing we say relates to actions by consumers."). AICPA's feigned surprise that Mr. Lau seeks a UCL injunction cannot be credited. Dkt. 42 ¶ 419 (requesting equitable relief).

REPLY RE MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

contrast, licensure deprivation and exclusion from one's chosen profession cannot be remedied by money damages. *E.g., Enyart,* 630 F.3d at 1165-66. Due process denials can't be remedied by money damages either. *Nelson v. Nat'l. Aeronautics and Space Admin.*, 530 F.3d 865 (9th Cir. 2008). Having to study for the CPA exam "under discriminatory conditions" can't be remedied with money either. *Bonnette*, 796 F. Supp. 2d 164, 186 (D.D.C. 2011); Lau Decl.¶¶34-35. Mr. Lau "has been trying to become a licensed [CPA] for many years since [he] obtained [his accountancy degree], and this fact makes further delay more irremediable, not less as [AICPA] urge[s]." *Bonnette*, 796 F. Supp. 2d at 187.

## IV.     THE EQUITIES AND PUBLIC INTEREST FAVOR MR. LAU

Whether Mr. Lau violated AICPA's NDA in November 2023 or February 2024 has nothing to do with the equities of this motion. The scores Mr. Lau seeks are for an exam for which he has not been accused of doing anything wrong, so AICPA's "unclean hands" argument fails. *E.g., Precision Inst. Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945) (considering "inequitableness or bad faith relative to the matter in which he seeks relief"). The only entity acting with unclean hands with respect to the scores at issue is AICPA. *See* Exs. 43-46. Critically, AICPA presents no *evidence* of any harm that would be caused by releasing Mr. Lau's September 2024 FAR exam score.[5] AICPA suggests it faces a risk of harm if Mr. Lau is permitted to take another FAR exam, but there is no evidence of record that Mr. Lau even needs to do so—if he passed the 2024 FAR exam, he has no exams left to take. Even if he does need to retest, AICPA's make-believe fear that Mr. Lau might discuss exam information is simply bogus.

The public interest does not favor AICPA's breach of its obligations to Mr. Lau, the CBA, and the public. *See id.*; Cal. Bus. & Prof. Code §§ 5100, 5110; Cal.

---

[5] Prior alleged NDA violations are not evidence of propensity for future NDA violations. *See, e.g.*, *Kaufman LLC v. Est. of Feinberg*, 2022 U.S. Dist. LEXIS 192988, at \*29 (D. Conn. Oct. 24, 2022) (applying Fed. R. Evid. 404(b))

REPLY RE MOTION FOR PRELIMINARY
INJUNCTION
CASE NO. 5:24-CV-01940-SSS-SHKx

Gov't. Code § 11500; Exs. 43-46. On the contrary, the public interest demands that the Court "prevent the sort of self-help" AICPA has engaged in here. *Physicians Indem. Risk Retention Grp. v. Risk Mgmt. Ctr., Inc.*, 2009 U.S. Dist. LEXIS 149264, at *25 (D. Nev. 2009). It is also "in the public interest to prevent a party that has not obtained a judgment to take coercive actions as if it had a judgment." *Id.*; *Alton & S. Ry. v. Bhd. of Maint. of Way Employes.*, 883 F. Supp. 755, 765 (D.D.C 1995) ("exercising self help…would be contrary to the public interest.").

AICPA's argument that Mr. Lau should have to post a security bond of $126,000 is unhinged and untethered to the relief Mr. Lau seeks. If Mr. Lau passed the exam, no monitoring is required. Even if he did not pass, there is no evidence to suggest that enhanced monitoring would be necessary. AICPA's feigned fears are fantastically farfetched. AICPA is already trying to ruin Mr. Lau's life over study group posts he made more than a year ago. The notion that Mr. Lau would risk giving AICPA more ammunition to use against him in this lawsuit by posting more information while this case is pending—when he has nothing to gain from doing so but everything to lose—is simply unbelievable. The cost of a retest is $50 dollars. Lau Decl. ¶ 13. That is the amount of security Mr. Lau should have to post, if any.

## CONCLUSION

For the foregoing reasons, Mr. Lau respectfully requests that his motion be granted in its entirety.

Dated: May 9, 2025                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: */s/ Robert L. Uriarte*
ROBERT L. URIARTE
Attorneys for Defendant/Cross-Complainant
STEPHEN LAU

REPLY RE MOTION FOR PRELIMINARY INJUNCTION
CASE NO. 5:24-cv-01940-SSS-SHKx