# EXHIBIT 39

**VOLUNTARY COMPLIANCE AGREEMENT**

**BETWEEN**

**THE UNITED STATES OF AMERICA**

**AND**

**THE AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS**

**AND THE NATIONAL ASSOCIATION OF STATE BOARDS OF ACCOUNTANCY**

1. The parties to this Voluntary Compliance Agreement (Agreement) are the United States of America (the United States), the American Institute of Certified Public Accountants (AICPA) and the National Association of State Boards of Accountancy (NASBA).

2. This matter was initiated by a complaint submitted to the U.S. Attorney's Office by Jane Doe, alleging that AICPA and NASBA discriminated on the basis of disability in violation of Title III of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12181-12189, and its implementing regulation, 28 C.F.R. Part 36.

**The Complaint**

3. Ms. Doe's complaint alleged AICPA and NASBA discriminated on the basis of disability in failing to provide necessary testing accommodations for individuals who are blind or have low vision in the provision of the Uniform Certified Public Accountant Exam (the Exam).

4. Ms. Doe has low vision and is legally blind.  Her low vision substantially limits a major life activity; therefore she is an individual with a disability under the ADA.  Ms. Doe met the requirements for applicants for the Exam and sought to take the Exam with modifications and auxiliary aids and services, necessary to accommodate her disability so that the examination results accurately reflect her aptitude and achievement, rather than her disability.  Ms. Doe submitted supporting documentation regarding her disability, including a recommendation regarding testing accommodations from a qualified professional.

5. AICPA and NASBA[1] are private entities that collaborate to offer examinations related to certification and credentialing for professional purposes and are therefore covered by Title III of the ADA.  42 U.S.C. § 12189; 28 C.F.R. § 36.309(a).  AICPA and NASBA have

contracted with Prometric to deliver the test via a computer based testing system.  This agreement does not address Prometric or its responsibilities under the ADA.

6. Ensuring that private entities that offer such examinations do not discriminate on the basis of disability is an issue of general public importance.  Title III of the ADA authorizes the United States to investigate alleged violations, to use alternative means of dispute resolution, where appropriate, including settlement negotiations to resolve disputes, and, if necessary, to bring a civil action in federal court in any case that raises issues of general public importance.  42 U.S.C. §§ 12188(b), 12212; 28 C.F.R. §§ 36.502, 503, 506.

7. In response to Ms. Doe's complaint, the U.S. Attorney's Office conducted an investigation under the ADA.

## Background

8. There are fifty-five (55) Certified Public Accountant (CPA) licensing jurisdictions across the United States and its territories.  The CPA license is the only license for accounting professionals.  All 55 jurisdictions require successful completion of the Exam.  The Exam is designed to assess the knowledge and skills that entry-level CPAs need to practice public accountancy.

9. The Exam consists of four sections, which individuals must take separately: Auditing and Attestation; Business Environment and Concepts; Financial Accounting and Reporting; and Regulation.  Each section is four hours unless testing accommodations include extended time.

10. The Exam requires that individuals search and utilize online databases of reference materials called Authoritative Literature.  The Authoritative Literature includes the Internal Revenue Code, the AICPA Professional Standards, the Financial Accounting Standards Board Codification, and the Public Company Accounting Oversight Board Auditing Standards.

11. The ADA requires that any private entity that offers examinations or courses related to applications, licensing, certification, or credentialing for secondary or postsecondary education, professional, or trade purposes offer such examinations or courses in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals.  42 U.S.C. § 12189; 28 C.F.R. § 36.309(a).

12. The ADA requires that any private entity offering such an examination must select and administer the examination so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills (except where those skills are the factors that the examination purports to measure). 28 C.F.R. § 36.309(b)(1).

13. A private entity must provide appropriate auxiliary aids for persons with impaired sensory, manual, or speaking skills, unless that private entity can demonstrate that offering a particular auxiliary aid would fundamentally alter the measurement of the skills or knowledge the examination is intended to test or would result in an undue burden. 28 C.F.R. § 36.309(b)(3).

14. AICPA and NASBA have a contract related to the offering and administering of the Exam.[2] AICPA is responsible for writing the Exam, including but not limited to the content, accuracy, and adequacy of the Exam, including software technologies utilized. NASBA is responsible for maintaining the National Candidate Database. In addition, NASBA processes applications of individuals wishing to take the Exam on behalf of certain State Boards of Accountancy, and is responsible for reviewing requests for testing accommodations from Exam applicants with disabilities in the CPAES jurisdictions.

### Investigation

15. The United States' investigation revealed that, for individuals who are blind, necessary testing accommodations (including modifications and auxiliary aids and services) for professional, educational, and computer testing purposes generally consist of:

    a. A qualified reader, and/or

    b. Screen reader software, designed for individuals who are blind, that reads aloud the content of a computer screen in its entirety, such as *JAWS Screen Reader*.

16. For individuals who have low vision, including Ms. Doe, necessary testing accommodations (including modifications and auxiliary aids and services) for professional, educational, and computer testing purposes generally consist of:

5/9/25, 1:20 PM    Settlement Agreement between the United States and the American Institute of Certified Public Accountants

Case 5:24-cv-01940-SSS-SHK    Document 80-3    Filed 05/09/25    Page 5 of 11    Page ID #:1876

    a. Software that allows an individual to zoom in on computer screen content to the precise, appropriate magnification level, such as *ZoomText Magnifier,* and/or

    b. Software with a screen reader that includes the magnification features above and also allows an individual to select at will specific content on a computer screen to have read aloud, such as *ZoomText Magnifier/Reader*.

17. Ms. Doe requested *ZoomText Magnifier/Reader,* which allows both magnification and screen reading of specific content, and submitted documentation from a qualified professional in support of that request. Further, Ms. Doe stated that *ZoomText Magnifier/Reader* is the accommodation she uses daily in her work as an accountant, and the accommodation she was provided throughout her undergraduate study.

18. When the United States began its investigation in August 2017, *Zoom Text Magnifier/Reader* was not available for use in any portion of the Exam. In addition, at that time, there was no screen reader software for certain portions of the Exam, including the Authoritative Literature, and thus individuals who are blind or have low vision needed a qualified reader for those portions.

19. Ms. Doe alleged that a qualified reader was not appropriate for her and did not ensure that the Exam results accurately reflected her aptitude. Other Exam applicants with low vision similarly requested software screen magnifier/reader accommodations, rather than a qualified reader, with supporting documentation from a qualified professional, but received a qualified reader for portions of the Exam.

20. AICPA did not demonstrate that the provision of screen reader software for the entirety of the Exam fundamentally alters the measurement of the skills or knowledge the Exam is intended to test or that the provision of *Zoom Text Magnifier/Reader* or a similar screen magnifier/reader for the entirety of the Exam fundamentally alters the measurement of the skills or knowledge the Exam is intended to test. AICPA did not demonstrate that the provision of either of these testing accommodations would result in an undue burden.

21. This Agreement does not constitute an admission by AICPA or NASBA of non-compliance with any provision of the ADA.

## Actions to be Taken by AICPA and NASBA

As a result of the United States' investigation, and because AICPA and NASBA are committed to fully complying with the ADA and offering the Exam in a manner accessible to persons with disabilities, AICPA and NASBA agree to the following:

22. AICPA and NASBA agree that they will continue to work together to offer all sections of the Exam in a place and manner accessible to persons with disabilities or offer alternative accessible arrangements for such individuals. 42 U.S.C. § 12189; 28 C.F.R. § 36.309(a).

23. AICPA and NASBA agree to continue to work together to assure that the Exam is selected and administered so as best to ensure that, when the Exam is administered to an individual with a disability, the Exam results accurately reflect the individual's aptitude, rather than reflecting the individual's disability (except where those skills are the factors that the Exam purports to measure). *See* 28 C.F.R. § 36.309(b)(1).

24. As of November 2017, AICPA began making available *ZoomText Magnifier/Reader* for the entirety of the Exam.

25. As of November 2017, AICPA has made the entirety of the text of the Authoritative Literature materials accessible through *JAWS Screen Reader*. AICPA is continuing to work with advocacy organizations and software developers to ensure ongoing accessibility for individuals with vision-related disabilities.

26. AICPA agrees to continue to ensure that the entirety of the Exam is compatible with appropriate software auxiliary aids, including screen reader and screen magnifier/reader software for individuals with vision-related disabilities. AICPA will continue to determine the menu of software auxiliary aids that will be available to Exam-takers with vision-related disabilities.

27. NASBA agrees to continue to review requests for testing accommodations from applicants with disabilities, including requests for screen readers and screen magnifier/reader software. For Exam-takers in CPAES jurisdictions, NASBA further agrees to continue to grant requests for accommodations from AICPA's menu of software auxiliary aids where appropriate under the ADA.

28. As the Exam is changed over time with new content or Authoritative Literature, AICPA agrees to ensure the accessibility of the new content to individuals who are blind or have low vision through appropriate auxiliary aid software, unless it can demonstrate the particular

5/9/25, 1:20 PM Settlement Agreement between the United States and the American Institute of Certified Public Accountants

Case 5:24-cv-01940-SSS-SHK    Document 80-3    Filed 05/09/25    Page 7 of 11    Page ID #:1878

auxiliary aid would fundamentally alter the measurement of the skills or knowledge the Exam is intended to test or would result in an undue burden. 28 C.F.R. § 36.309(b)(3).

29. As screen reading technology, or software technology that more generally ensures accessibility for individuals who are blind or have low vision, evolves and progresses in the future, AICPA agrees to examine new software technologies and consider offering new software technologies as testing accommodations in accordance with AICPA's obligations set forth in this Agreement.

30. AICPA and NASBA will continue to communicate with each other regularly regarding efforts to ensure ongoing capability with software auxiliary aids, issues with software compatibility or problems, auxiliary aid software requests from Exam-takers, and plans for future implementation of auxiliary aid software.

## Reporting and Implementation

31. AICPA and NASBA shall have the reporting and implementation requirements set forth below.  In addition, AICPA will send copies of all its required reports to NASBA and subject to contractual responsibilities regarding candidate confidentiality, NASBA will send copies of all its required reports to AICPA.  The parties acknowledge and agree that some of these documents below may contain proprietary business information and protected health information and/or medical records within the scope of 45 C.F.R. § 160.103.  Therefore, all parties will keep reports and documents produced in conjunction with this Agreement strictly confidential.

   a. For two (2) years after the effective date of this Agreement, AICPA shall submit to the United States every six (6) months an update, in narrative form, describing progress in ensuring testing accommodations, including auxiliary aid software, as described in this Agreement, are available for test takers who are blind or have low vision, including but not limited to: describing any problems in ensuring software compatibility and any changes or updates to Exam content that could result in gaps in the provision of auxiliary aids.  For two (2) years after the effective date of this Agreement, AICPA shall submit to the United States every twelve (12) months a report on their activities conducted under Paragraph 29.

5/9/25, 1:20 PM Settlement Agreement between the United States and the American Institute of Certified Public Accountants

Case 5:24-cv-01940-SSS-SHK    Document 80-3    Filed 05/09/25    Page 8 of 11    Page ID #:1879

b. For two (2) years after the effective date of this Agreement, NASBA shall submit to the United States every six (6) months information regarding each applicant who is blind or has low vision who requested testing accommodations in the previous six months. To the extent legally permitted to so do, for each request, NASBA shall specify the individual's disability, the accommodation(s) requested, the accommodation(s) ultimately granted (if any), and whether the individual passed the section of the Exam that he or she was taking.

c. For two (2) years after the effective date of this Agreement and to the extent legally permitted to so do, AICPA and NASBA shall submit to the United States every six (6) months a report showing all complaints that each has received that relate to the provision of the Exam to individuals who are blind or have low vision.

d. For two (2) years after the effective date of this Agreement and to the extent legally permitted to so do, AICPA and NASBA shall submit to the United States every six (6) months a report showing all incidents of problems that they are made aware of occurring in the provision of the Exam to individuals who are blind or have low vision, including computer or software malfunctions and/or the provision of the wrong examination or wrong questions to a test-taker, and include details on how the problem was resolved.

**Monetary Relief**

A. <u>Jane Doe</u>

32. Within thirty (30) days of AICPA's receipt of the completed release attached hereto as Attachment A, AICPA agrees to pay and deliver fifteen thousand dollars ($15,000) in full and final settlement of all claims to the individual identified in this Agreement as Jane Doe by check made payable to Jane Doe in her full legal name as identified in the completed version of a written release (in the form of Attachment A) of all claims, legal or equitable, that he or she might have against AICPA and NASBA. The check should be sent by certified or overnight mail to the address provided by the United States. A copy of the check and the accompanying letter shall be sent to counsel for the United States.

B. <u>Aggrieved Persons</u>

33. The United States shall identify additional aggrieved persons. Aggrieved persons will be individuals who: (a) are blind or have low vision; (b) took any section of the Exam between January 1, 2016 and January 1, 2019; and (c) received a software-related auxiliary aid that was not appropriate or a reader that was not qualified or appropriate and did not ensure that the Exam results accurately reflected their aptitude.

34. Upon notice to counsel for AICPA and NASBA, AICPA and NASBA shall produce, to the extent each is legally permitted to so do, any records in the possession, custody, or control of AICPA and NASBA, its agents or employees that the United States believes to be useful in identifying aggrieved persons who may be entitled to relief under this Agreement.

35. Nothing in this Agreement shall preclude the United States from undertaking its own efforts to locate and provide notice to potential aggrieved persons.

36. AICPA agrees to pay and deliver between $1-10,000 to each aggrieved person identified by the United States in full and final settlement of all claims. The United States will determine the amount of compensation each aggrieved person will receive, based on the details and extent of the discrimination they suffered.

37. Within six (6) months of the entry of this Agreement, the United States shall identify all aggrieved persons, make a determination of an appropriate amount of damages that should be paid to each such person, and notify AICPA. AICPA shall have a right, within thirty (30) days of such notice, to challenge the identification of any person identified by the United States as aggrieved by providing documentary proof to the United States that they did not suffer discrimination under the ADA. Within thirty (30) days of receipt of such documentary proof, the United States shall then consider the documentary proof, decide in good faith whether to change its identification, and notify AICPA of its decision. Within thirty (30) days of such notice of the original identification (if not challenged by AICPA) or within thirty (30) days of notice of the decision of the United States upon a challenge (if one is made), AICPA shall deliver to counsel for the United States, by overnight mail, checks payable to the aggrieved persons in the amounts specified by the United States, provided that the United States

shall not deliver payment to an aggrieved person pursuant to this paragraph before the aggrieved person has executed and provided to counsel for the United States a written release (in the form of Attachment B) of all claims, legal or equitable, that he or she might have against AICPA and NASBA.

## Enforcement

38. This Agreement fully and finally resolves any and all of the Title III allegations raised in the complaint and investigated by the United States.  It is not intended to remedy any other potential violations of the ADA or any other federal law by AICPA or NASBA.

39. Failure by the United States to enforce this Agreement with regard to any deadline or any other provision herein shall not be construed as a waiver of the United States' right to enforce other deadlines and provisions of this Agreement.

40. This Agreement shall be binding on the United States; on AICPA, its agents, employees, and staff; and on NASBA, its agents, employees, and staff.

41. This Agreement constitutes the entire agreement between the United States and AICPA and NASBA on the matters raised in the Agreement and no other statement, promise, or agreement, either written or oral, made by any party or agents of any party, that is not contained in this written Agreement, including its attachments, shall be enforceable.

42. The person signing this Agreement for AICPA represents that he or she is authorized to bind AICPA to this Agreement and is fully authorized to execute this Agreement on behalf of AICPA.

43. The person signing this Agreement for NASBA represents that he or she is authorized to bind NASBA to this Agreement and is fully authorized to execute this Agreement on behalf of NASBA.

44. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, except for Attachments A and B, to the public.

45. A copy of this document or any information contained in it will be made available to any person, on request, by AICPA, NASBA, or the United States.

46. The effective date of this Agreement is the date of the last signature below.

47. The duration of this Agreement will be two (2) years from the effective date.

5/9/25, 1:20 PM    Settlement Agreement between the United States and the American Institute of Certified Public Accountants

Case 5:24-cv-01940-SSS-SHK    Document 90-3    Filed 05/09/25    Page 11 of 11    Page ID #:1882

1Through CPA Examination Services (CPAES), NASBA provides a comprehensive array of services related to the Exam to certain state boards of accountancy. This Agreement covers only the CPAES jurisdictions. *See* https://nasba.org/exams/exam-resources/nasbacpaesjurisdictions/.

2Under the ADA, Title III entity is prohibited from doing anything "through contractual, licensing, or other arrangements" that it is prevented from doing "directly." 42 U.S.C. § 12182(b)(1)(A)(i).

---

**For the American Institute of Certified Public Accountants:**

/s/ Barry Melancon
Barry Melancon
President and Chief Executive Officer
American Institute of Certified Public Accountants

**For the National Association of State Boards of Accountancy:**

/s/ Ken L. Bishop
Ken L. Bishop
President and Chief Executive Officer
National Association of State Boards of Accountancy

**For the United States:**

Andrew E. Lelling
United States Attorney

/s/ Torey B. Cummings
Torey B. Cummings
Assistant United States Attorney
United States Attorney's Office
District of Massachusetts

Dated: April 1, 2019

---

Cases & Matters by ADA Title Coverage | Legal Documents by Type & Date | archive.ADA.gov Home Page