SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
TENAYA RODEWALD, Cal Bar No. 248563
trodewald@sheppardmullin.com
1540 El Camino Real Suite 120
Menlo Park, California 94025-4111
Telephone:  650.815.2600
Facsimile:   650.815.2601

KAZIM A. NAQVI, Cal. Bar No. 300438
knaqvi@sheppardmullin.com
1901 Avenue of the Stars, Suite 1600
Los Angeles, California 90067-7017
Telephone:   310.228.3700
Facsimile:    310.228.3701

PARKER POE ADAMS & BERNSTEIN LLP
CHRISTOPHER M. THOMAS (*admitted pro hac vice*)
christhomas@parkerpoe.com
ANDREW P. TABELING (*admitted pro hac vice*)
andytabeling@parkerpoe.com
301 Fayetteville Street, Suite 1400
Raleigh, North Carolina  27602-0389
Telephone:   (919) 835-4626
Facsimile:    (919) 834-4564

NICHOLAS H. LEE (*admitted pro hac vice*)
nicholaslee@parkerpoe.com
620 S. Tryon Street, Suite 800
Charlotte, North Carolina 28202
Telephone: 704-335-9876
Facsimile: 704-334-4706

Attorneys for Plaintiff and Counter-Defendant AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, <br><br> Plaintiff, <br><br> v. <br><br> STEPHEN LAU, <br><br> Defendant. | Case No. 5:24-cv-01940-SSS-SHK <br><br> **COUNTER-DEFENDANT AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS' SUR-REPLY IN SUPPORT OF OPPOSITION TO COUNTER-CLAIMANT'S MOTION FOR PRELIMINARY INJUNCTION** <br><br> [*Filed concurrently with Declaration of Christopher M. Thomas]*\ |

STEPHEN LAU,

Counter-Claimant,

v.

AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS

Counter-Defendant.

# TABLE OF CONTENTS

Page

I.    THE MOTION SHOULD BE DENIED ................................................................1

    B.    The Court Should Disregard the New "Evidence" Lau Submitted ..........................2

        1.    Exhibits 39-41 ....................................................................................2

        2.    Exhibits 42-46 ....................................................................................4

    C.    Lau Cannot Establish A Likelihood of Success on the Merits ...............................5

        1.    Lau's New Arguments Do Not Aid his ADA Claims ...................................5

        2.    Lau's New Arguments Do Not Establish a Likelihood of Success on his Tortious Interference or UCL Claims ......................................................6

            a.    Lau's Tortious Interference Claim ........................................6

            b.    Lau's UCL Claim .............................................................8

    D.    Lau Cannot Establish Irreparable Harm ..........................................................8

    E.    The Balance of the Equities and Public Interest Favor AICPA ..............................9

SMRH:4928-4422-6116

Case No. 5:24-cv-01940-SSS-SHK

SUR-REPLY ISO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

## I.   THE MOTION SHOULD BE DENIED

### A.   Lau's Admissions Prove Inexcusable Delay in Bringing the Motion.

In an effort to excuse his several month delay in bringing the Motion, Lau argues he "did not learn that AICPA was withholding his September 2024 FAR score until January 21, 2025" and that "[p]rior to that date, he thought the CBA was withholding his scores." (ECF 80 (hereinafter "Reply"), p. 2). Lau's arguments are contradicted by his own binding judicial admissions.

***In his original counterclaims filed on December 16, 2024***, Lau expressly alleged that "AICPA is interfering with Mr. Lau's ability to become licensed ***by causing the withholding of exam scores***" and AICPA "***is causing the scores for it to be unlawfully withheld***." (ECF 28, ¶¶ 240, 242, emphasis added). Notably, these allegations were not even made upon information and belief. These allegations are judicial admissions which are binding and cannot be unwound by Lau several months later. *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings ... unless amended, are considered judicial admissions conclusively binding on the party who made them."). Thus, Lau cannot now disingenuously claim that "he thought the CBA was withholding his scores."

Also binding are Lau's allegations on December 16, 2024 that on "November 1, 2024, Lau learned that status postings between CBA and NASBA showed no FAR exam scheduled or attended for Lau." (ECF 28, ¶ 249).  A delay of six months from first discovering the exam withholding and five months from when he alleged AICPA was causing the withholding is inexcusable and demonstrates on its face there is no irreparable harm (just as this Court previously found when denying Lau's prior *Ex Parte* Application (ECF 62)).

All of the cases cited by Lau in his Reply regarding delay are distinguishable. For example, in *Sun World, Inc. v. Lizarazu Olivarria*, 804 F. Supp. 1264, 1268 (E.D. Cal. 1992), the plaintiff did not unreasonably delay because intervening events established a need for an injunction and the posture of the case at an earlier point

would not have supported an injunction. No such factors apply to Lau's delay. Nothing has changed since November and December 2024 when Lau alleges he knew AICPA was withholding the score.[1]

Finally, Lau's counsel also describes in his declaration various commitments he reports having on personal matters and other cases between December 2024 and March 2025 in an effort to argue that "any perceived delay should not be attributed to Mr. Lau." (ECF 80-1, ¶¶ 2-4). While AICPA understands and is sympathetic to personal and family matters, the excuse that he was busy traveling on other cases for bigger clients like Microsoft and e-Bay is not legitimate. Lau's counsel is a partner at a global law firm with more than 1,000 attorneys, and provides no explanation why another member of his firm could not have assisted Lau in moving for injunctive relief earlier. He also fails to explain why Lau did not even broach the subject of injunctive relief with AICPA's counsel until late March 2025. Lau's counsel makes a number of legal arguments in his declaration, which is improper and should be stricken. *McCoy v. Evans*, 2011 WL 3878374, *13 (N.D.Cal. Sept. 1, 2011) ("A declaration .... must contain only facts of which the declarant has personal knowledge; legal argument and case citations are improper in a declaration.").

**B.     The Court Should Disregard the New "Evidence" Lau Submitted**

**1.     Exhibits 39-41**

Lau seeks to have the instant Court take judicial notice of a 2019 Consent Decree (the "2019 Consent Decree"), along with related documents, entered into between the United States of America, AICPA and the National Association of State Boards of Accountancy (NASBA), for the purpose of proving that Title III of the

---

[1] Lau's other cases are equally inapposite. *Knight v. Wells Fargo Bank*, 2016 WL 3221593, *5 (D. Mont. June 8, 2016) (involving motion for judgment on the pleadings, and no claims of delay negating irreparable harm); *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (each instance of constitutional infringement was a new injury for determining if there was delay; but here there is only one act—7 months ago—about which Lau complains); *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014) (Lau misrepresents this case, which held while "delay is but a single factor to consider" and "courts are loath to withhold relief solely on that ground" also explained "a plaintiff's failure to seek judicial protection can imply the lack of need for speedy action"); *Netlist Inc v. Diablo Techs. Inc.*, 2015 WL 153724, *8 (N.D. Cal. Jan. 12, 2015) (involving the defendant's "refusal to produce information it was later ordered to produce").

ADA applies to the AICPA. For the reasons set forth below, this is entirely improper.

First, Federal Rule of Evidence 201(b) permits notice of "*a fact that is not subject to reasonable dispute*" if it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b) (emphasis added). In *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 999 (9th Cir. 2018), the Ninth Circuit clarified that "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth." *Id*. (court could not take judicial notice of facts mentioned in a judicially-noticeable transcript, because there was a reasonable dispute as to what the transcript established).

Here, the crux of the Parties dispute as to Lau's ADA claim is whether Title III of the ADA applies to AICPA. Lau says it does and AICPA says it does not. If the ADA does not apply, then Lau has no chance of success on the merits of his ADA retaliation claim. Lau attempts to offer the 2019 Consent Decree and related documents to presumptively prove Title III of the ADA applies. This is an entirely improper basis for judicial notice including because a court "cannot take judicial notice of disputed facts contained in such public records." *Khoja*, 899 F.3d at 999.

Moreover, whether the ADA applies is not a "fact." *It is a legal conclusion*. In the instance of the 2019 Consent Decree (as explained further below), it was a legal conclusion that AICPA may have admitted because (at least as to 2017), AICPA acknowledged that it exercised some control over whether to grant *the specific accommodation at issue in that case*. But such legal conclusion based on circumstances in 2017 is not a "fact" that can be judicially noticed in this, entirely different case, based on different circumstances, 8 years later.

Finally, a court cannot take judicial notice of facts which are irrelevant to the case at issue. *See Gavin v. City of L.A.*, 2007 U.S.Dist.LEXIS 105027, *34 (C.D.Cal. Aug. 7, 2007) (refusing judicial notice of consent decree because state of the LAPD when the decree was written was irrelevant to plaintiff's claims); *Jones v. Chapman*,

-3-

2017 U.S.Dist.LEXIS 64781, *12-13 (D.Md. Aug. 28, 2017) (consent decree did not specifically pertain to the incident at issue in the suit and was therefore irrelevant).

The 2019 Consent Decree is entirely irrelevant here. It relates to a complaint lodged against both the AICPA and NASBA in 2017. The 2017 complaint involved a visually impaired test-taker who was allegedly prohibited from using her preferred software technology aid. The 2019 Consent Decree described AICPA's role as being "responsible for writing the Exam" and deciding what "software technologies [could be] utilized" by test-takers. The circumstances for the 2019 Consent Decree are entirely distinguishable from those here. Here, Lau admits that he applied for and was granted all accommodations he sought *by entities other than AICPA*, and his pleadings show AICPA had no role in evaluating, granting or providing his accommodations. (ECF 77, 11:14-20 & n. 7; ECF 64, 7:23-8:15; ECF 69-2, ¶60, ECF 70-23, PageID #1470) Thus, the 2019 Consent Decree deals with entirely different facts and circumstances and is irrelevant to the case at hand. Fed. R. Evid. § 401.

**2.      Exhibits 42-46**

Lau refers to communications involving AICPA and the CBA (attached as Exhibits 42-46 to the Reply) claims, without explanation, that they are "bombshell" or "blockbuster" evidence and "leave[] no doubt that AICPA is interfering with Mr. Lau's statutory and contractual rights." (Reply, p. 1). This is a ridiculous assertion.

Exhibits 42 and 43 are communications from AICPA and its counsel to the CBA explaining the underlying facts of AICPA's claims against Lau, and requesting that the CBA not permit Lau to sit for further CPA Examination. Exhibits 44-46 constitute communications from NASBA and CBA to AICPA asserting their opinion that AICPA lacks authority to withhold Lau's exam scores. These exhibits should be disregarded because they contain third-party opinions about the purported legality of AICPA's conduct which are incompetent, irrelevant and inadmissible legal conclusions. *E.g., Zeiger v. WellPet LLC*, 526 F.Supp.3d 652, 679-80 (N.D.Cal. 2021) (legal conclusions of lay witnesses are inadmissible); *Est. of DeCrane v. Tenke*, 646

F.Supp.3d 1296, 1300-01 (D.Mont. 2022) (legal conclusions of expert witnesses are inadmissible). They are also not facts or evidence based on personal knowledge, lack authentication, and lack a proper foundation. *See* Fed. R. Evid. §§ 401, 402, 701, 901.

To the extent the Court is inclined to consider Exhibits 42-46, it should also consider the responsive correspondence from AICPA to the CBA showing the CBA has no legal basis for its opinions. In a February 17, 2025 email and February 26, 2025 letter (Declaration of Christopher Thomas, Exs. A, B), AICPA explains there is nothing in the California Accountancy Act that "gives the CBA exclusive authority over release of an exam score." AICPA also pointed out nothing in Cal. Bus. & Prof. Code 5000 *et seq*. prohibits AICPA from withholding an exam score. (*Id*.) AICPA asked CBA to identify language giving CBA exclusive authority over release of exam scores—but the CBA never responded on this. (*Id*., ¶ 3, Ex. B). AICPA also noted that the CBA "has no separate agreement with its candidates" (whereas AICPA does), and asked the CBA for the legal basis supporting its position. (*Id*., Ex. A). Again, the CBA never responded. (*Id*., ¶ 2). AICPA and CBA's disagreement on a legal issue certainly does not prove Lau has a likelihood of success on the merits of his claims.

**C.     Lau Cannot Establish A Likelihood of Success on the Merits**

     **1.     Lau's New Arguments Do Not Aid his ADA Claims**

None of Lau's new arguments show any chance of success on the merits of his ADA claim. Lau's reply relies almost exclusively on the 2019 Consent Decree for his position that he is likely to succeed on the merits of his ADA claim. Lau is wrong and the 2019 Consent Decree cannot be admitted for the purpose of establishing that Title III of the ADA applies to AICPA as this is a disputed issue to be determined by the instant Court and not a "fact" subject to judicial notice. *See* Section I.B.1, *supra*.[2]

Next, the cases cited by Lau do not support that Title III of the ADA applies to AICPA; but rather, they evidence that whether or not Title III of the ADA applies is

---

[2] And even if the 2019 Consent Decree were considered, it only confirms AICPA's role was limited to "writing the Exam, including but not limited to the content, accuracy, and adequacy of the Exam, including software technologies utilized." None of this has any relation to granting or providing the types of accommodations Lau sought and received.

a very fact intensive evaluation.  Lau attempts to assert that an entity involved in the facilitation of a standardized test – no matter how small their role may be – always "offers" the test for purposes of the application of § 12189.  Lau is wrong. Courts examine the specific facts to determine if an entity plays a role in offering the accommodations at issue. As the court correctly stated in *Binno v. ABA*, 826 F.3d 338, 347 (6th Cir. 2015), "[b]ecause the statute states that an entity that 'offers' exams must do so 'in a place and manner accessible' to disabled persons or else offer alternative accommodations, the entity must have some ability to grant those accommodations in the administration of the exam . . . [and] [a]n entity without the authority to grant such accommodations would not be able to effectuate the purpose of Section 309."  *Id.*   Here, none of Lau's new reply evidence or arguments change the reality that AICPA did not have control over granting the accommodations that Lau requested (and received). (ECF 77, p. 10-11.) Accordingly, AICPA is not within the ADA's scope here and Lau's ADA claim has no chance of success.[3]

**2.      Lau's New Arguments Do Not Establish a Likelihood of Success on his Tortious Interference or UCL Claims**

**a.      *Lau's Tortious Interference Claim***

***Lau Still Cannot Identify a Third-Party Contract.*** Lau argues in conclusory fashion, as he has done from the start of this litigation, that "Mr. Lau entered into contracts with NASBA, Prometric, and the CBA in scheduling his September 2024 FAR exam." (Reply, p. 6). Notably, despite arguing this issue for at least the third time, ***Lau still does not identify any third-party contract or terms therein with any degree of specificity***. This deficiency, by itself, shows that Lau cannot establish a likelihood of success on this claim. *E.g., Teledyne Risi, Inc. v. Martin-Baker Aircraft Co. Ltd.*, 2016 WL 8857029, a*5 (C.D.Cal. Feb. 2, 2016); ECF 64 at 16-17.

***The Informed Consent Agreement Applies***. Lau then argues that there "is no evidence that AICPA acted pursuant to the Informed Consent Agreement when it

---

[3]  Finally, Lau's claim AICPA did not provide evidence of its legitimate, non-retaliatory reasons for withholding the score is patently false.  (ECF 77-1, ¶¶ 7-17; ECF 77-4; ECF 77-7, ¶¶ 42-48.)

withheld Mr. Lau's scores." (*Id.*). Lau ignores the Declaration of William Emmer, who describes in detail and attaches the Informed Consent Agreement that Lau agreed to on February 4, 2023, and explains that it applies to "any CPA Exam candidate who uses the new CPA Portal, including CPA candidates in California who schedule CPA Exam section tests, as Lau has done." (ECF 77-1, ¶¶ 7-17, Exs. 3-5). AICPA provided ample evidence regarding the effect of the Informed Consent Agreement.[4]

Lau also appears to argue that the February 4, 2023 Informed Consent Agreement only applies to administration of one specific exam section and could not have applied to the September 2024 exam section at issue. (Reply, pp. 6-7). Lau points to the definition of "Test", which is "your application to sit for an administration of the Uniform CPA Examination." (ECF 77-4, p. 1). Lau claims the "plain text and overall context of the Consent Agreement" demonstrate that it applies to only a "particular" administration of a "Test" resulting from a "particular" application. (Reply, p. 7). But, the word "particular" exists nowhere in the Informed Consent Agreement. There is no language indicating that it applies to sitting for any specific exam section, and does not identify any particular exam administration or section by name or date. Rather, by its own terms, it applies to an "application to sit for an administration of the Uniform CPA Examination." It is undisputed that the Uniform CPA Examination requires passing multiple exam sections – and that a single application for the Uniform CPA Exam can cover multiple sections. (SACC, ¶¶ 29, 104.) Under its plain terms, and as declared by Mr. Emmer under penalty of perjury, the Informed Consent Agreement applies to any exam which constitutes "an administration of the Uniform CPA Examination", including the September 2024 exam section at issue.

***Lau's Estoppel Argument Fails***. Finally, Lau makes the outlandish argument

---

[4]  Lau contends AICPA raising the Informed Consent Agreement in opposition to his Motion "reeks of pretext and bad faith." (Reply, p. 6). AICPA had no obligation to disclose it earlier, and Lau does not cite any legal authority that it did. AICPA is not relying on the agreement for its affirmative claims. It appropriately raised the agreement as a defense to Lau's requests for injunctive relief, which was the first opportunity for AICPA to introduce evidence supporting its defenses.

that "estoppel applies" because he "relied on the parties' prior course of dealing when he paid fees for his September 2024 FAR exam with the expectation that AICPA would timely tender his scores." (Reply, p. 7). This argument has nothing to do with AICPA's alleged tortious interference with the unidentified third-party contracts. Regardless, the single case relied upon by Lau is completely off-base both factually and procedurally. *Wind Dancer Prod. Grp. v. Walt Disney Pictures*, 10 Cal.App.5th 56, 83 (2017) (involving no tortious interference claims, and instead the issue of whether "Disney may be estopped from asserting the contractual limitations period as a defense to the producers' claims").

### b.    *Lau's UCL Claim*

Lau argues that AICPA's conduct is "unlawful" and "unfair." (Reply, pp. 7-8). However, in his opposition to AICPA's pending Motion to Dismiss, Lau expressly abandoned all his UCL arguments except those under the "unlawful" prong. (ECF 73, p. 10l ECF 77, p. 14). Thus, any claim under the unfair prong must be dismissed and Lau has waived a likelihood of success on the merits under the "unfair" prong.

Lau's arguments under the "unlawful" prong continue to fail because he does not respond whatsoever to AICPA's arguments that the statutes purportedly relied upon by Lau for this claim exist nowhere in his operative pleading, and they do not impose any requirements, burdens or mandates on AICPA whatsoever. (ECF 77, pp. 13-14). Lau's reliance on the purported "blockbuster evidence" is meritless for the same reasons described above in Section I.B.2, *supra*.

### D.    Lau Cannot Establish Irreparable Harm

Lau concedes that he can, but has not, applied to the CBA to extend the validity period of his prior test scores. *See* 16 CCR § 7.1. Instead, Lau argues the "possibility that the CBA might extend the life of Mr. Lau's prior passing scores does not undercut Mr. Lau's irreparable harm showing." (Reply, p. 8). Lau fails to support this conclusory argument. Lau's claims of irreparable harm are undercut by his failure to pursue other, available alternatives. The lone case cited by Lau is off-base. *See Aids*

*Healthcare Found. v. Cal. Dep't of Health Care Servs.*, 2022 WL 17252189, \*20 (C.D.Cal. Nov. 28, 2022) (a party was not required to exhaust an administrative proceeding that was unlikely to provide relief, but here Lau failed to seek alternative relief that is likely to provide Lau complete relief.)

The new cases Lau relies upon are also distinguishable and do not support a finding of irreparable harm here. *See Nelson v. NASA.*, 530 F.3d 865, 881 (9th Cir. 2008), *rev'd and remanded*, 562 U.S. 134 (2011) (employees alleged NASA's requirement for in-depth background investigations was unlawful, the court found a likelihood of success on informational privacy claim and held that balance of hardships favored appellants because they "face[d] a stark choice—either violation of their constitutional rights or loss of their jobs"); *Bonnette v. D.C. Ct. App.*, 796 F. Supp. 2d 164, 187 (D.D.C. 2011) (irreparable harm where legally blind law school student sought order allowing her to take bar exam using screen-reading program). As with the cases Lau relied upon in his Motion, neither of these new cases involve an exam result being withheld during pendency of *litigation against the examinee because he repeatedly violated his NDAs and misappropriated the exam creator's intellectual property*, **and** *a valid contract* (the Informed Consent Agreement) *permitting the withholding*. Further, both of these cases involve loss of something beyond merely delay in taking a licensing exam, which does not exist here.

### E.     The Balance of the Equities and Public Interest Favor AICPA

Lau argues "[w]hether Mr. Lau violated AICPA's NDA in November 2023 or February 2024 has nothing to do with the equities of this motion." (Reply, p. 9). Lau also argues in similar fashion that "[p]rior alleged NDA violations are not evidence of propensity for future NDA violations." (*Id.*). This argument turns the law on its head. Lau cannot dispute that the doctrine of unclean hands is "a complete defense to legal as well as equitable causes of action." *Mendoza v. Ruesga*, 169 Cal. App. 4th 270, 279 (2008). Here, there is no dispute that Lau disclosed AICPA's Exam Content. AICPA does not know if Lau made any additional disclosures in connection with the

September 2024 exam. (ECF 77-7, ¶ 47). That he conclusively did so in connection with prior exams is certainly relevant to Lau's unclean hands in connection with the September 2024 exam, especially where he agreed via the Informed Consent Agreement that AICPA may withhold his exam scores for ***any administration*** of the CPA exam. due to Lau's unlawful conduct. Lau appears to claim that even though he violated the NDAs and violated AICPA's intellectual property rights in prior exams, he should be permitted to obtain his score and sit for future exams such that he can again receive access to AICPA's protected Exam Content. Such a position strains credibility, and Lau is not entitled to equitable relief.

Lau also argues "AICPA presents no *evidence* of any harm that would be caused by releasing Mr. Lau's September 2024 FAR exam score." (Reply, p. 9). False. Lau ignores the declaration of Michael Cannon which describes, in detail, the harm posed by Lau's unlawful conduct, including harm that would flow from the release of Lau's September 2024 exam. (See ECF 77-7, ¶¶ 42-48). Specifically, "Lau having access to additional Exam Content during this litigation will lead to more disclosures of Exam Content and further damage to the integrity of the CPA Exam." (*Id*., ¶ 48).

Lau also characterizes AICPA's conduct as improper and unauthorized "self-help." (Reply, p. 9). It is not "self-help" when Lau entered into a contract (the Informed Consent Agreement) that expressly authorizes AICPA to withhold Lau's exam score because of his contractual breaches and intellectual property violations. AICPA is merely enforcing its contractual and intellectual property rights. The cases Lau cites are easily distinguishable and in fact support the enforcement of AICPA's contractual rights. *See Physicians Indem. Risk Retention Grp., Inc. v. Risk Mgmt. Ctr., Inc.*, 2009 WL 10694305, *7 (D.Nev. Dec. 2, 2009) (holding "it is generally in the public interest to uphold parties' contractual arrangements" but plaintiff's self-help was contrary to the parties' contracts); *Alton & S. Ry. Co. v. Bhd. of Maint. of Way Employes*, 883 F. Supp. 755, 756 (D.D.C.) (enjoining the defendant from "self help, including [labor] strikes" which were not authorized by contract).

Dated:  May 18, 2025        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        /s/ *Tenaya Rodewald*

TENAYA RODEWALD
KAZIM A. NAQVI
Attorneys for Plaintiff
AMERICAN INSTITUTE OF CERTIFIED
PUBLIC ACCOUNTANTS

SMRH:4928-4422-6116    SUR-REPLY ISO OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION    Case No. 5:24-cv-01940-SSS-SHK